**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC., | Civil Action No.: _____ |
| Plaintiff, | |
| -against- | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC, | |
| Nominal Defendant. | |

Plaintiff China AI Capital Limited ("China AI" or "Plaintiff"), by its undersigned attorneys, brings this shareholder derivative complaint against Defendants DLA Piper LLP (US) ("DLA") and Caryn G. Schechtman ("Schechtman" and together with DLA, the "Defendants") and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for legal malpractice that Defendants committed against nominal defendant Link Motion, Inc. f/k/a NQ Mobile Inc. (the "Company"). Plaintiff, a registered shareholder of the Company, brings this derivative action on behalf of the Company because Defendants' malpractice has rendered the Company

incapable of defending its own rights, as laid out below, and caused the Company to suffer damages in excess of USD$180,400,000.[1]

2.      In July 2018, the Company retained Defendants to provide legal advice in connection with a subscription agreement for the issuance of Class B shares of stock. To provide the necessary advice for this matter, DLA knew or should have known the identities of each of the 26 registered shareholders of the Company. Under the laws of the Cayman Islands, which govern the internal affairs of the Company, only those 26 registered shareholders have standing to act derivatively on behalf of the Company.

3.      In December 2018, Wayne Baliga ("Baliga") filed a purported derivative complaint against the Company and two of its officers in *Baliga v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642 (S.D.N.Y.) (the "Baliga Action"). Baliga was represented by The Seiden Law Group LLP, a New York law firm ("The Seiden Law Group"). The day after the complaint was filed, Baliga moved by order to show cause for a temporary restraining order, preliminary injunction, and appointment of Robert W. Seiden, the managing partner of The Seiden Law Group, as receiver for the Company.

4.      Defendants undertook to represent the Company in the Baliga Action and appeared in court as counsel for the Company. Defendants failed to consider whether Baliga, a holder of the Company's ADS but not a registered shareholder of the Company, had standing under Cayman Island law to bring derivative claims or request provisional equitable relief.

---

[1] All references to "USD$" refer to United States Dollars.

5.     Defendants knew that Baliga lacked standing: Because of their ongoing legal work for the Company, Defendants had a copy of the registry of shareholders of the Company, on which Baliga was not listed.

6.     Because Baliga was not a registered shareholder of the Company, he lacked standing under Rule 23.1 of the Federal Rules of Civil Procedure to bring derivative claims against the Company or to seek provisional equitable relief on behalf of the Company.

7.     Defendants did not inform the Company – their client – that Baliga lacked standing and the Company had a meritorious defense to the entire Baliga Action on that basis. Defendants never told the court that Baliga lacked standing. Without informed consent from the Company, Defendants represented to the court that the Company consented to a preliminary injunction and the appointment of Mr. Seiden as Receiver for the Company.

8.     By consenting to the preliminary injunction and appointment of the Receiver and failing to assert the defense of lack of standing, the Defendants prevented the Company from fulfilling its obligations under a pre-existing contract, resulting in an arbitration award of more than USD$390,000,000 against the Company.

9.     Defendants also failed to conduct even the most basic investigation into Mr. Seiden's qualifications (or lack thereof) to serve as receiver for the Company. Mr. Seiden was unqualified to serve as a receiver because he had a financial interest in the outcome of the Baliga Action and represented a hostile

group of former stakeholders who were actively attacking the Company. This information was readily available to Defendants and the public in general. The appointment of the Receiver resulted in unnecessary expenses incurred by the Receiver during the receivership, reputational damage, and the loss of corporate assets transferred to the Receiver's affiliates.

10.     In consenting to the provisional equitable relief requested by Baliga, without proper authority from the Company and without asserting the defense of lack of standing, and failing to raise the obvious conflicts of interest of Mr. Seiden, Defendants failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and caused the Company to sustain actual and ascertainable damages.

11.     But for the Defendants' legal malpractice, the Company would not have suffered damages.

## II.    JURISIDCTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of USD$75,000, exclusive of interest and costs, and the controversy is between citizens or subjects of a foreign state and citizens of a State. For purposes of diversity jurisdiction, nominal defendant the Company should be realigned as a party plaintiff.

13.     This Court has jurisdiction over each of the Defendants because each of them is either a legal or natural person conducting business and operating in this

District; has, as set forth herein, engaged in tortious conduct that occurred in this District; or is otherwise a legal or natural person with sufficient minimum contacts with this District under federal law and/or N.Y. CPLR 302(1), (2), or (3).

14.     Venue is proper in this district in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### III.     PARTIES

15.     Plaintiff is a limited company organized under the laws of the British Virgin Islands. Plaintiff's registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.

16.     On information and belief, Defendant DLA is a limited liability partnership organized under the laws of the State of Maryland and authorized to conduct business in the State of New York. On information and belief, DLA maintains offices in New York at 1251 Avenue of the Americas, 27th Floor, New York, NY 10020.

17.     On information and belief, Defendant Schechtman is a natural person residing in New York or otherwise maintaining a legal office in New York at 1251 Avenue of the Americas, 27th Floor, New York, NY 10020. On information and belief, Defendant Schechtman is an attorney authorized to practice law in the State of New York and is associated with DLA.

18.     On information and belief, nominal defendant Link Motion, Inc. is a limited company organized and existing under the laws of the Cayman Islands. The

Company's registered office address is c/o Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. The Company is a Chinese technology business originally founded by Dr. Henry Yu Lin ("Dr. Lin"), Dr. Vincent Wenyong Shi ("Dr. Shi"), and Mr. Xu Zhou ("Mr. Zhou") in the People's Republic of China ("PRC").  The Company was incorporated in the Cayman Islands in 2007. In and around May 2011, the Company successfully completed an initial public offering (the "IPO") of American depositary shares ("ADS") on the New York Stock Exchange ("NYSE"). On information and belief, at all relevant times the Company's primary offices have been located in Beijing, PRC.

## IV.    FACTUAL BACKGROUND

### The Company's Founders Disagree on its
### Business Plan and Split Acrimoniously

19. Beginning in and around 2014, a dispute arose regarding the direction of the Company. Dr. Lin wanted to continue to develop the Company's legacy businesses, including the FL Mobile and Showself business segments, which were PRC affiliates of the Company. Other stakeholders wanted to divest these legacy businesses and enter the smart car business.

20. The dispute ultimately led to the resignation of Dr. Lin as Chairman and CEO, the appointment of Dr. Shi as Chairman of the Board of Directors, and the retention of a new CEO. Dr. Lin and other stakeholders who disagreed with the new strategic plan contested for control over the direction of the Company, and lost..

21.    A special committee and outside counsel (Loeb & Loeb LLP) investigated allegations by Dr. Lin and others and, in an August 27, 2018 report, found the allegations to be unfounded.

### In 2018, the Company Retains DLA as Counsel in Connection With Efforts to Execute its Strategic Plan

22.    Once the special committee found the allegations to be unfounded, the Company proceeded with its efforts to complete the divestiture of its legacy FL Mobile and Showself assets and execute its strategic plan to enter the smart car technology business. That plan required additional capital.

23.    Plaintiff agreed to provide capital to the Company, through an investment and purchase of Class B shares, together with the right to appoint two directors to the Company's Board of Directors.

24.    The Company engaged Defendant DLA to represent the Company in connection with the issuance of Class B shares to Plaintiff. The scope of DLA's representation was limited to "general corporate advice as well as in connection with an issuance of Class B Shares."

25.    In and around July 2018, the Company and Plaintiff entered into a subscription agreement with Plaintiff for the issuance of 70,175,439 Class B shares of the Company's common stock in exchange for an investment of USD$20,000,000 and two seats on the Company's Board of Directors.

26.    On or about July 19, 2018, Plaintiff made the first of two installments of USD$10,000,000 for the Class B shares as provided for in the subscription agreement.

27.    At or around the same time, Plaintiff's nominated directors were appointed to the Board of Directors of the Company.

28.    Once the Class B shares were issued to Plaintiff, it was necessary for the Company to update its registry of shareholders to reflect Plaintiff's status as a registered shareholder. As the Company's legal advisors on the transaction, the Defendants would have completed this task or, at the very least, advised regarding its completion.

29.    During the course of Defendants' work on the Class B share issuance, Defendants knew or should have known the identities of each of the 26 registered shareholders of the Company.

### The Seiden Law Group Was Retained by a Dissident Group of Former Stakeholders

30.    Having lost the contest for control through the ordinary corporate process, disgruntled former stakeholders retained the The Seiden Law Group in connection with a scheme to wrongfully subvert the Board of Director's exercise of business judgment for their own personal interests and benefit.

31.    On information and belief, this group included Dr. Lin, Matt Mathison (the Company's then Vice President of Capital Markets), Ms. Lingyun Guo (Dr. Lin's wife, the Company's then Chief Strategy Officer, and a member of the Company's board of directors), and William Tiewei Li (another member of the Company's board of directors).

32.    To subvert the business judgment of the Board of Directors for their own personal interests and benefits, the disgruntled stakeholders formed an

unincorporated association known as "LKMForward" in or around October 2018, created the website lkmforward.com which described them as "shareholders and investors," and threatened to take legal action on behalf of and in the name of the Company. On information and belief, no members of the LKMForward group were registered shareholders of the Company.

33.    On October 17, 2018, LKMForward disclosed on its website that "[t]he shareholders initiative at LKM forward has retained The Seiden Law Group as its legal counsel in this matter. The group has experience in both shareholder rights actions and expertise in resolving disputes and achieving recovery for investors in China."

34.    At all relevant times, Robert W. Seiden, Esq. was the managing partner of The Seiden Law Group and, on information and belief, exercised supervisory control over and a financial interest in that firm's litigation matters.

35.    On information and belief, Mr. Seiden played a substantial role in his firm's engagement by the LKMForward group to subvert the business judgment of the Board of Directors, including but not limited to investing substantial resources into the claims that the LKMForward group desired to bring against the Company. In that capacity, Mr. Seiden developed a financial interest in the outcome of such claims and acted as a zealous advocate for the LKMForward group.

36.    As a result of his financial interest in the outcome of claims against the Company and his position as an advocate for the LKMForward group and one or

more of that group's members, Mr. Seiden became unable to serve in any impartial or unbiased capacity with respect to the Company.

## The Seiden Law Group Wrongfully Files the
## Baliga Action as a Derivative Action

37.     On information and belief, in or around the October to December 2018 period, The Seiden Law Group and/or one or more members of the LKMForward group recruited Baliga to be the named plaintiff in the Baliga Action against the Company.

38.     In Baliga's derivative complaint, The Seiden Law Group, on behalf of Baliga, alleged that "Mr. Baliga is currently and has at all material times of this Action been a shareholder of LKM."[2] The Seiden Law Group, on behalf of Baliga, further alleged that "Mr. Baliga brings this action derivatively in the right and for the benefit of LKM to redress the wrongful and illegal conduct outlined herein by the Individual Defendants" and "Mr. Baliga will adequately represent the interests of LKM and its shareholders in enforcing and prosecuting its rights."[3]

39.     The Complaint was signed by a junior attorney of The Seiden Law Group who, on information and belief, lacked authority to sign papers on behalf of that firm without the consent of its managing partner, Robert W. Seiden.

40.     The foregoing allegations were false at the time they were made because Baliga is not, and never has been, a registered shareholder of the Company.

---

[2] Baliga Action, Dkt. No. 1, at ¶ 4.
[3] Baliga Action, Dkt. No. 1, at ¶¶ 32, 33.

41.     At all relevant times, Baliga, a natural person residing in Indiana, was a holder of the Company's ADSs that were listed on the NYSE.[4]

42.     Pursuant to the internal affairs doctrine, the internal affairs of the Company are governed by the laws of the jurisdiction of incorporation. *See*, *e.g.*, *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011); *Winn v. Schafer*, 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007). This includes the issue of standing of any investor as a shareholder to bring derivative claims. *See*, *e.g.*, *id.*

43.     The Company is a Cayman Islands limited company.

44.     Under the laws of the Cayman Islands, only registered owners of shares have standing to bring derivative claims on behalf of the Company.[5]

45.     Under the laws of the Cayman Islands, beneficial owners such as holders of ADSs do not have standing to bring derivative claims on behalf of the Company.[6]

46.     Baliga owns ADSs of the Company and, as such, he is only a beneficial owner of shares of stock in the Company. Baliga, at all relevant times, lacked standing to bring any derivative action on behalf of the Company.[7]

47.     There is no exception under Cayman Islands law that would allow Baliga to have standing to bring a derivative claim on behalf of the Company.[8]

---

[4] Sometime after the Receiver was appointed, the NYSE delisted the Company's ADSs.

[5] *See* Declaration of Katharine L. B. Pearson, dated 3 March 2020, Baliga Action, Dkt. No. 131. In her declaration, Ms. Pearson, a Cayman Islands attorney, opines that, under the laws of the Cayman Islands, holders of ADSs do not have standing to act derivatively on behalf of Cayman Islands limited companies.

[6] *See id.*

[7] *See id.*

[8] *See id.*

## Defendants Commit Malpractice

48.     On or about the same day the Baliga Action was filed, the Seiden Law Group sent DLA copies of the filed papers and informed Defendants that The Seiden Law Group intended to file an order to show cause for a temporary restraining order, preliminary injunction, and appointment of a receiver for the Company.

49.     In its papers, The Seiden Law Group sought to appoint Robert Seiden, the managing partner of The Seiden Law Group, as receiver for the Company with extensive powers of control over the affairs and assets of the Company. At the same time, The Seiden Law Group served as counsel for Baliga in the action.

50.     In an email to the Company dated December 14, 2018, Defendant Schechtman advised that DLA would "send an associate" to appear before the Court in connection with Baliga's application for a temporary restraining order (the "TRO") and to advise the Court that "we have received no instruction from the Company due to the time difference and language barriers."

51.     In that email, Defendants failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the temporary injunctive relief.

52.     DLA appeared at the December 14, 2018 TRO hearing on behalf of the Company.

53.     At the time of the hearing, because of their previous representation of the Company, Defendants knew or should have known that Baliga was not a

registered shareholder and, therefore, lacked standing under Rule 23.1 and Cayman Island law to bring the derivative claims alleged in the Baliga Action.

54.     Defendants also knew or should have known that because of Baliga's lack of standing, the court lacked jurisdiction to grant any of the provisional equitable relief requested by Baliga.

55.     On information and belief, Defendants did not present to the Court any argument that Baliga lacked standing or any evidence, such as the shareholder registry in Defendants' possession, that would establish the Company's defense.

56.     Without the benefit of the knowledge that Baliga lacked standing, the Court entered a TRO against the Company on December 14, 2018, in the form requested by Mr. Seiden and The Seiden Law Group.

57.     Following the December 14, 2018 TRO hearing, DLA filed papers on behalf of the Company and otherwise acted as counsel for the Company in connection with the Baliga Action.

58.     By appearing in the Baliga Action and submitting papers on behalf of the Company, DLA undertook a new attorney client relationship with the Company.

59.     This representation gave rise to a duty on the part of Defendants to represent the Company competently in connection with the defense of Baliga's derivative claims and the Company's opposition to the motion for a TRO, preliminary injunction, and appointment of a receiver.

60.     On information and belief, at all relevant times Defendant Schechtman supervised and directed DLA's representation of the Company in the Baliga Action.

## Defendants Failed to Correct Their Mistakes and Omissions Causing the Company to Breach Obligations to Third Parties

61. At the time the Baliga Action was commenced, the Company was in the midst of a transaction to divest the FL Mobile and Showself legacy businesses, as part of the Board of Directors' approved plan to change the Company's business strategy.

62. The Company was party to a Share Purchase Agreement ("SPA") with Tongfang Investment Fund Series SPC ("Tongfang SPC") that involved the Company's divesture of its legacy businesses. Among other things, the SPA required the Company to cause shares of FL Mobile to be transferred to Tongfang SPC.

63. At the time the TRO was entered, the SPA was executory: Tongfang SPC had already conveyed to the Company consideration for the transaction, in the form of cash payments equivalent in value to RMB¥1,350,000,000[9] and USD$30,000,000 and a note payable in the amount of RMB¥1,770,000,000 (approximately USD$277,000,000) (the "Tongfang Note"). The Company had already caused the transfer of Showself to Tongfang SPC in exchange for consideration paid.

64. What remained to be performed under the SPA was the Company's obligation to cause the transfer of FL Mobile shares in accordance with the SPA.

65. But, as a result of the TRO entered because of Defendants' malpractice, the Company was restrained from performing its obligations to cause the transfer of FL Mobile shares in accordance with the SPA.

---

[9] All references to "RMB¥" refer to PRC Renmimbi.

66.   In December 2018, counsel for Baliga requested the Defendants' consent to an extension of the TRO until the court ruled on Baliga's application for a preliminary injunction and appointment of a receiver.

67.   On December 19, 2018, Defendants wrote to the Company regarding the request. In the email, Defendants again failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of a preliminary injunction or appointment of a receiver.[10]

68.   At the time Defendants sent the December 19,  2018 email, Defendants knew of time difference and language barriers to the rendering of competent legal advice to the Company.

69.   The Company did not give informed consent to continuing the TRO.

70.   Without advice from Defendants concerning the Company's defense based on Baliga's lack of standing, it was impossible for the Company to give informed consent to continue the TRO.

71.   Even though Baliga had no standing and without properly advising the Company or obtaining the informed consent or authorization of the Company, Defendant Schechtman co-signed a "Joint Letter" that was filed in the Baliga Action on December 21, 2018, stating that "[the Company] does consent" to continuing the TRO.[11]

---

[10] On information and belief, the content of the December 19, 2018 email was drafted by Defendant Schechtman.
[11] Baliga Action, Dkt. No. 7.

72.     On January 15, 2019, the Defendants wrote an email to the Company regarding the pending application by Baliga for a preliminary injunction and appointment of a receiver.

73.     In the email, Defendants again failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing under Rule 23.1 to bring any derivative claims or to seek a preliminary injunction or appointment of a receiver.[12]

74.     On January 19, 2019, the Defendants wrote an email to the Company's executives, who were in Beijing, advising that "if we do not hear back from you within 24 hours, DLA will *assume* that we have Link Motion's consent not to oppose the motion." (emphasis added.)

75.     At the time Defendants sent the January 19,  2019 email, Defendants knew of time difference and language barriers to the rendering of competent legal advice to the Company.

76.     In the January 19, 2019 email, Defendants again failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing under Rule 23.1 to bring any derivative claims or seek entry of a preliminary injunction or appointment of a receiver.[13]

77.     The Company did not give informed consent to entry of a preliminary injunction and appointment of a receiver.

---

[12] On information and belief, the content of the January 15, 2019 email was drafted by Defendant Schechtman.

[13] On information and belief, the content of the January 19, 2019 email was drafted by Defendant Schechtman.

78.     Without advice from Defendants concerning the Company's defense based on Baliga's lack of standing, or the ramifications of entry of the preliminary injunctive order and appointment of a receiver, it was impossible for the Company to give informed consent to entry of a preliminary injunction and appointment of a receiver.

79.     The Defendants signed a "Stipulation" filed in the Baliga Action on January 21, 2019.[14] Defendants stipulated that the Company "does not oppose the Preliminary Injunction." In the Stipulation, Defendants purported to make only a "limited appearance" and claimed that the Company "has preserved and is not waiving and have not waived any objections, defenses or responses to the Complaint."

80.     Defendants made this Stipulation without the informed consent of the Company.

81.     On the basis of the Defendants' misrepresentation of the Company's informed consent, and Defendants' failure to assert the meritorious defense of lack of standing, on February 1, 2019, the Court entered an order appointing Mr. Seiden as Receiver for the Company and preliminarily enjoining the Company from transferring any of its assets.[15]

82.     By letter dated March 1, 2019, Defendants moved for leave to withdraw as counsel to the Company. In their withdrawal papers, Defendants failed to advise the Court of the Company's defense that the Baliga lacked standing or

---

[14] Baliga Action, Dkt. No. 22.
[15] Baliga Action, Dt. No. 26.

that Defendants had purported to "consent" to the TRO, preliminary injunction, and appointment of the receiver without the informed consent of the Company.

83.     Defendants' failure to recognize Baliga's fundamental lack of standing and to assert that lack of standing as a defense to the Baliga Action, and specifically their failure to assert the defense in opposition to Baliga's request for provisional equitable relief, constitutes professional malpractice.

84.     After failing to give the Defendants competent advice, the Defendants dropped the Company like the proverbial hot potato.

### Defendants' Bad Advice Was the But-For Cause of the Company's Actual and Ascertainable Damages

85.     The entry of the TRO and the preliminary injunction prevented the Company from satisfying its obligation to non-party Tongfang SPC (causing the transfer of the Company's legacy business, FL Mobile) after Tongfang SPC had already paid the Company consideration as required by the SPA.

86.     The Receiver, who was conflicted, refused to perform or seek court approval for the Company to perform its obligations under the SPA. Instead, on information and belief, the Receiver transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group.

87.     In response to the Company's failure to perform, Tongfang SPC commenced arbitration proceedings against the Company and one of its affiliates before the Hong Kong International Arbitration Centre (the "HKIAC"). Tongfang SPC demanded an award of damages in the amount of RMB¥2,520,000,000,

representing the consideration it had already paid to the Company pursuant to the SPA for the FL Mobile business.

88.     In an award dated March 19, 2020, the HKIAC arbitrator awarded Tongfang SPC damages against the Company in the amount of RMB¥2,520,000,000 and HKD$756,712,[16] along with interest at 5% per annum and costs of HK$608,000 (the "Award"). This is the approximate equivalent of USD$396,000,000.

89.     The entry of the preliminary injunction and appointment of the Receiver also significantly impaired the value of the Tongfang Note, one of the Company's most valuable assets at the time.

90.     The Company had reported on April 10, 2018 a "deferred net gain" of USD$180,400,000 for the FL Mobile transaction.[17] The value of that net gain has been lost by the Company's inability to complete the transfer of FL Mobile.

91.     But for the entry of the preliminary injunction and appointment of the Receiver, the Company would have been able to satisfy its obligations under the SPA to Tongfang SPC and would not have suffered the damages caused by Defendants' malpractice.

92.     The foregoing malpractice has also caused damage to the Company by way of the loss of profits and business revenue caused by the interference with the ability of the duly elected Board of Directors to manage the affairs of the Company's operations in the PRC and the incurrence of unnecessary costs and expenses, including amounts received by the Receiver from assets of the Company.

---

[16] All references to "HKD$" refer to Hong Kong Dollars.
[17] *See* https://www.sec.gov/Archives/edgar/data/1509986/000114420418020127/tv490863_ex99-1.htm.

93.     Among other things, the Receiver has (i) exhausted all the Company's available cash and (ii) incurred unnecessary liabilities on behalf of the Company (*e.g.*, the retention of unnecessary legal and service providers in the PRC, Hong Kong,  and elsewhere), which, on information and belief, exceed USD$1,000,000.

94.     The loss of control over the affairs of the Company also prevented the Company from resolving employment claims by former employees in the PRC. As a result, judgments were entered against the Company and/or its affiliates in the PRC, which on information and belief exceed RMB¥1,014,453 (approximately USD$159,334) in value.

### Plaintiff Has Standing to Assert This Malpractice Claim Derivatively

95.     Pursuant to the corporate affairs doctrine, the issue of standing to bring derivative claims is governed by the laws of the jurisdiction of incorporation. *See*, *e.g.*, *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011); *Winn v. Schafer*, 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007).

96.     The Company is a Cayman Islands limited company.

97.     Under Cayman Island law, only registered shareholders have standing to bring derivative claims on behalf of the Company.[18]

98.     Plaintiff has standing to bring this action because Plaintiff has been, and continues to be, a registered shareholder of the Company at all relevant times.

---

[18] *See* Declaration of Katharine L. B. Pearson, dated 3 March 2020, Baliga Action, Dkt. No. 131.

### The Requirements of Rule 23.1 Have Been Satisfied

99.   As a registered shareholder of the Company, Plaintiff can fairly and adequately represent the interests of other registered shareholders who are similarly situated.

100.   Because the Receiver has not yet been discharged, the Board of Directors of the Company has no authority to decide to take legal action on behalf of the Company.

101.   On September 21, 2021, Plaintiff's former counsel made a demand on the Receiver to bring the malpractice claim described herein against the Defendants.

102.   As of the date of this Complaint, the Receiver has refused to bring the claim.

103.   The Receiver's refusal to bring the claim against the Defendants is not due to an "unprejudiced exercise of judgment." *See*, *e.g.*, *Koral v. Savory, Inc.*, 276 N.Y. 215, 220 (1937).

104.   At all relevant times, the Receiver has been operating under a conflict of interest because he is also the managing partner of The Seiden Law Group which acted as counsel for the LKMForward group and Baliga, and the Receiver has a financial interest in the outcome of the Baliga Action. On information and belief, the Receiver also has a direct or indirect interest in FL Mobile, the Company's legacy business segment.

105.   The Receiver is also conflicted from asserting this claim because doing so would require him to allege that the court in the Baliga Action lacked jurisdiction

to appoint the Receiver in the first instance. Such allegation would expose his law firm, The Seiden Law Group, to potential liability.

106.   The order appointing the Receiver grants to the Receiver the power to, among other things, "join in" litigations brought on behalf of the Company, but the order does not grant the Receiver the exclusive power to commence litigation on behalf of the Company.[19]

107.   This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

## FIRST CAUSE OF ACTION
### (Legal malpractice against all Defendants)

108.   Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

109.   Defendants undertook to represent and defend the Company in the Baliga Action by, *inter alia*, appearing in and making submissions to the court on behalf of the Company.

110.   In undertaking the representation of the Company, Defendants represented that they possessed the ordinary and reasonable skill, diligence, and knowledge of New York attorneys and had the requisite skill and experience necessary to represent the Company adequately in connection with the defense of Baliga's asserted derivative claims.

111.   Defendants breached the duty of care owed to the Company by failing to exercise the ordinary and reasonable skill, diligence, and knowledge of member of

---

[19] Baliga Action, Dkt. No. 26 § II(2)(e).

the New York Bar by errors and omissions as alleged above, including but not limited to

  a. failing to recognize that Baliga lacked standing to assert derivative claims under Cayman law;

  b. failing to recognize the defense that Baliga lacked standing under Rule 23.1;

  c. failing to advise the Company that Baliga lacked any standing to bring derivative claims or to seek a temporary restraining order, preliminary injunction, or appointment of a receiver;

  d. failing to advise the court that Baliga lacked any standing to bring derivative claims or to seek provisional equitable relief under Article VIII of the Federal Rules of Civil Procedure;

  e. advising the court, without first obtaining the informed consent of the Company, that the Company consented to the TRO;

  f. advising the court, without first obtaining the informed consent of the Company, that the Company did not oppose entry of the preliminary injunction or appointment of the receiver; and

  g. withdrawing as counsel for the Company under circumstances that caused prejudice to the Company.

112. But for Defendants' negligent actions, errors, and omissions, the Company would have obtained a better result in regards to the entry of a

preliminary injunction and appointment of a receiver to manage the affairs of the Company.

113.   Specifically, had Defendants advised the Company or the court that Baliga lacked standing under Rule 23.1, the TRO would have been avoided or dissolved, the preliminary injunction would not have been entered, the Receiver would not have been appointed, the Company would have caused the transfer of FL Mobile to Tongfang SPC in satisfaction of its obligations under the SPA, and the value of the Tongfang Note and the net gain on the sale of FL Mobile would not have been impaired.

114.   As a result of Defendants' negligence and malpractice, the Company has suffered damages in an amount to be determined at trial but not less than USD$180,400,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, and in favor of the Company as follows:

(a)   Awarding to the Company general, special, and consequential damages in amounts to be determined at trial but not less than USD$180,400,000;

(b)   Awarding the Company punitive damages;

(c)   Awarding the Company pre-judgment interest, post-judgment interest, and attorney's fees;

(d)   Awarding the Company the costs and disbursements of this action, including reasonable allowance of fees and costs for attorneys, experts, and accountants; and

(e)   Granting the Company such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims so triable.

Dated: New York, New York        FELICELLO LAW P.C.
       December 20, 2021

By:   */s/ Michael James Maloney*
       Michael James Maloney
       Rosanne E. Felicello
366 Madison Avenue, 3rd Fl.
New York, NY 10017
(212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com

*Attorneys for Plaintiff China AI Capital Limited*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC., | Civil Action No.: _____ |
| Plaintiff, | |
| -against- | **VERIFICATION** |
| DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC, | |
| Nominal Defendant. | |

HUA JINGYUAN, hereby deposes and says, pursuant to 28 U.S.C. § 1746, that he is the sole director of Plaintiff China AI Capital Limited ("China AI" or "Plaintiff"), that he has read the Verified Shareholder Derivative Complaint (the "Complaint"), and he knows the contents of the Complaint to be true to the best of his knowledge, except as to those matters alleged on information and belief, and as to those matters, he believes them to be true.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Executed on: December 20, 2021.

_____化景元_____

HUA JINGYUAN