**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Nancy Hart
Direct: +1 212.351.3897
Fax: +1 212.351.6273
NHart@gibsondunn.com

September 21, 2022

<u>VIA ECF</u>
The Honorable Victor Marrero, U.S.D.J.
Daniel Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    *China AI Capital Ltd. v. DLA Piper LLP (US) et al.*, No. 1:21-cv-10911 (S.D.N.Y.)

Dear Judge Marrero:

We represent Defendants in this derivative action (the "China AI Action"). This letter responds to this Court's September 14, 2022 Order concerning recent actions purportedly on behalf of Link Motion Inc. ("Link Motion"). Even though the Receivership ordered in *Baliga v. Link Motion, Inc.*, No. 1:18-cv-11642 (S.D.N.Y.) (the "Baliga Action") has not been dissolved, China AI purportedly "consented" to Link Motion pursuing a direct claim against DLA that the Receiver expressly declined to bring. *China AI* ECF 26 at 2. The Link Motion board then supposedly met, approved pursuing that direct claim against DLA, hired counsel, and authorized that counsel to file suit against DLA in New York Supreme Court and to serve DLA. *Id.*; *see Link Motion Inc. v. DLA Piper, et al.*, No. 653322/2022 (N.Y. Sup. Ct.) (the "NYS Action"). The same law firm is thus simultaneously representing Link Motion in the NYS Action, China AI in the China AI Action, and Vincent Shi in the Baliga Action—a blatant conflict of interest. Those same conflicted lawyers have provided no information about who constituted this purported board,[1] or their authority to file the NYS Action. Instead, we are told only that the board's actions were "entirely proper," and further (misleadingly) that the preliminary injunction had been dissolved in August 2022. *China AI* ECF 26 at 2. Notably, those same lawyers previously attempted to persuade this Court to ignore the notice requirements of FRCP 41 in the China AI Action.

These improper actions violated multiple Court orders, which this Court has jurisdiction to enforce. The NYS Action is the latest artifice in violation of this Court's orders and aimed at side-stepping the consequences for doing so. Defendants will pursue a Rule 11 motion in this Court regarding the China AI Action, and will seek further sanctions and other relief once the NYS Action is removed.

   1.   *The Purported Actions By The Link Motion Board Violated This Court's Orders In The Baliga Action*

On February 1, 2019, this Court issued an Order with two parts: (i) the "Preliminary Injunction," and (ii) the "Appointment of Temporary Receiver." *Baliga* ECF 26 (the "Receivership Order"). While the Preliminary Injunction was recently lifted, the powers granted to the Receiver in the Receivership Order remain until the Receivership is dissolved. Those powers include preventing "any director, officer,

---

[1]   The group undoubtedly included Shi, as well as Bruson Li, China AI's representative. Directors Lingyun Guo, Tiewei Li, and Vincent Wu would not have been part of the meeting because Guo and Li are aligned with the shareholder group opposed to Shi (*China AI* ECF 1, Compl. ¶¶ 30–31), and Wu is a representative of Zhongzhi, which seeks to enforce a $144 million judgment against Shi. *Zhongzhi Hi-Tech Overseas Inv. Ltd. v. Shi*, No. 1:22-cv-06977 (S.D.N.Y.).

employee, independent contractor, or agent of the Company, including any Individual Defendant, from control of, management of, or participation in, the affairs of the Company," commencing and controlling "any action" brought "in the name of the Company," and maintaining control over Link Motion's attorney-client privileges. *Id.* at § II.2(b), (e).[2] The *Baliga* Defendants cannot "interfere with the Receiver's performance of his duties under this Order." *Id.* § II.4.[3]

China AI's suggestion that the dissolution of the Preliminary Injunction authorized the purported Link Motion board to assume management of the Company, hire attorneys, and file a forum-shopped lawsuit is unfounded. In fact, in the decision China AI cites, Magistrate Judge Freeman recommended *against* unwinding any prior actions by the Receiver (who had declined to pursue a malpractice claim against DLA on behalf of Link Motion), *against* reinstating Shi "to his prior positions of Chairman of the Board and Chief Operation Officer of the Company," and *against* reinstating "any other former Directors of the Company who may have been removed by the Receiver." *Baliga* ECF 275 at 41. Magistrate Judge Freeman further recommended "that the discharge of the Receiver not be effectuated until" after "a full accounting," and that the board could act on Link Motion's behalf only "[o]nce the Receiver's discharge is effective." *Id.* This Court adopted those recommendations "in their entirety." *Baliga* ECF 331 at 2.

The impropriety of this purported board meeting and its aftermath is underscored by the fact that the Link Motion shareholders will imminently meet to vote on the board's composition (assuming Lingyun Guo can be located). At the time the board allegedly acted, the issue of when an emergency shareholder meeting ("EGM") could be convened to appoint and remove directors was pending before this Court. *Baliga* ECF 331 at 8-9, 20. On September 15, 2022, this Court ruled that the Receiver retained the authority to convene the EGM, which will be held once the Receiver's agent, Mr. Guo (who controls 40% of the voting shares), can participate. *Baliga* ECF 338 at 2, 6-12. Accordingly, Plaintiff's counsel knew as of September 12, 2022 that the Receiver was still in place and that there were significant questions pending before this Court concerning who should act on behalf of Link Motion currently and when the Receivership is dissolved following the shareholder meeting. For these reasons, the filing of the copycat NYS Action against DLA unquestionably violated this Court's Orders.

    2.    *This Court Has Jurisdiction To Enforce Its Orders, To Regulate The Actions Of Counsel Before It, And To Oversee Actions On Behalf Of A Company In Receivership*

While this Court's ability to prevent unnamed, non-parties from meeting may be limited, this Court certainly has jurisdiction to address violations of its orders by parties and counsel before it, as well as ancillary jurisdiction over matters to enable this Court to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994).

A receiver "is acting as an officer of the court," and his "authority is wholly determined by the order of the appointing court." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988). And this Court

---

[2] The Preliminary Injunction only ordered the *Baliga* Defendants to "take **corrective** action **as necessary**" to "ensure that litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." *Baliga* ECF 26 § I.2 (emphasis added).

[3] The Cayman Islands Court recognized the powers granted pursuant to the Receivership Order. *Baliga* ECF 173-16, 17. While the Receiver could not appoint or remove directors (a power reserved for the shareholders) under Cayman Islands law, it nonetheless fully endorsed the remainder of the Receivership Order, including the Receiver's ability to "exercise his recognized powers and functions in the Cayman Islands to the exclusion of any other person." *Id.*

The Honorable Victor Marrero
Page 3

has "broad discretion to fashion remedies as equity requires, to ensure compliance with [its] orders." *Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009); *see In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) ("A court can take any reasonable action to secure compliance, and the scope of a district court's equitable powers to remedy past wrongs is broad."); *Roberson v. Giuliani*, 346 F.3d 75, 83 (2d Cir. 2003) (citing district courts' "inherent jurisdiction to enforce . . . orders of the court"). Accordingly, where parties before the Court—including Shi, China AI, Link Motion, and their shared counsel—take action (or assist others in taking action) inconsistent with, or in violation of, authority granted to the Receiver, this Court unquestionably has the power to act. That power extends to restricting the actions of parties and counsel who were well aware of this Court's orders, yet who participated in filing the NYS Action in violation of those orders. *See In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 188 (S.D.N.Y. 2020) ("[A] federal court has the power to regulate the conduct of counsel appearing before it, even where such regulation affects non-parties to the case itself.").

       3.     *The NYS Action Can Be Removed And Deemed Related To The Baliga Action*

This Court has "supplemental jurisdiction over the malpractice claims [under 28 U.S.C. § 1367(a)] because it has original jurisdiction over the underlying securities claims" in the Baliga Action. *Achtman v. Kirby, McInerney Squire*, 464 F.3d 328, 334-35 (2d Cir. 2006) (affirming supplemental jurisdiction over malpractice claim alleged in separate action). As in *Achtman*, the "facts underlying the present malpractice claims and the underlying securities claims 'substantially overlap,' creating a common nucleus of operative fact." *Id.* at 336. This Court is "thus well-placed to consider the issues that would arise in the malpractice action," including "whether [DLA] asserted all appropriate [defenses]," *id.*, and whether, as Plaintiffs allege, this Court "would not have granted the Provisional Equitable Relief" and appointed a receiver, NYS Compl. ¶ 82.

This Court also has jurisdiction because the NYS Action "necessarily raise[s]" numerous substantial and disputed federal issues on the face of its complaint. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). First, Link Motion "will be required to prove—in order to demonstrate causation [against DLA]—that it did not violate the Federal securities laws." *Reserve Mgm't Co. v. Willkie Farr & Gallagher LLP*, 2012 WL 4378058, at *5 (S.D.N.Y. Sept. 25, 2012). Link Motion must show in the NYS Action that, "but for" DLA's actions, it would have successfully argued, for example, that "Baliga lacked standing under Rule 23.1 of the Federal Rules of Civil Procedure," that Baliga "failed to state causes of action for violation of the federal securities laws," and that "Baliga's securities claims . . . failed to support his request" for a receivership—and thus that this Court "would not have granted the Provisional Equitable Relief." NYS Compl. ¶¶ 78, 82. "[G]iven the comprehensive federal securities regime, and the fact that Congress has granted federal courts exclusive jurisdiction over federal securities law actions, there is a strong federal interest in the federal securities law issues raised in [Link Motion's NYS Action] malpractice complaint." *Willkie Farr*, 2012 WL 4378058, at *6.

Further, Link Motion's causation theory in the NYS Action implicates the authority of the Receiver, acting as this Court's agent, to act; and federal courts have a substantial interest in actions involving their receiverships. *See, e.g.*, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Devel. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (noting "the primacy of federal law in the practice of federal receiverships").

GIBSON DUNN

The Honorable Victor Marrero
Page 4

Respectfully Submitted,

/s/ *Nancy Hart*

Nancy Hart

cc:     All counsel of record (*via ECF*)