UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC.,

        Plaintiff,

-against-

DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECTMAN, a natural person,

        Defendants,

-and-

LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC.

        Nominal Defendant.

------------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

**NOTICE OF MOTION SEEKING SANCTIONS PURSUANT TO RULE 11**

    **PLEASE TAKE NOTICE** that, upon all papers served and proceedings had herein, including this Notice of Motion, the March 7, 2021 letter from Nancy Hart, counsel for Defendants DLA Piper and Caryn G. Schechtman (the "Rule 11 Letter," Ex. N[1]), the accompanying Memorandum of Law and Declaration of Nancy Hart in Support of Defendants' Motion Seeking Sanctions Pursuant to Rule 11, including the exhibits thereto, and such other and further papers and proceedings as may be filed or had, Defendants will move this Court at a time and date to be determined by this Court, before the Honorable Victor Marrero, United States District Judge, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street,

---

[1] "Exhibit" or Ex." refer to the exhibits to the Declaration of Nancy Hart filed in conjunction with this Motion and the accompanying Memorandum of Law in Support of this Motion.

Courtroom 15B, New York, NY 10007, for an order imposing sanctions against Plaintiff China AI Capital Limited ("China AI") and its counsel, pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure, for the filing of Plaintiff's Complaint in this action ("Compl."). Specifically, Defendants seek an order dismissing the Complaint with prejudice, directing payment to Defendants of their reasonable attorneys' fees and costs incurred in defending against the Complaint and bringing this motion for sanctions, and granting such other and further penalties, sanctions, and/or relief as the Court deems appropriate.

Prior to filing this Notice of Motion, Defendants satisfied the requirements of Fed. R. Civ. P. 11(c). On March 7, 2022, Defendants' counsel sent Plaintiff's counsel the Rule 11 Letter, enclosing a draft of this Notice of Motion "describ[ing] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2); *see* Ex. N. Twenty-one days have passed since that letter was served. *Id.*

For the reasons stated below and as detailed in the accompanying Rule 11 Letter, which is fully incorporated herein, China AI's Complaint violates Rule 11 for at least three reasons. *First*, the Complaint is premised on demonstrably false and misleading allegations—namely those concerning the sham arbitration allegedly initiated by Tongfang against Link Motion concerning the FL Mobile transaction (the "Tongfang Arbitration"), the award purportedly entered against Link Motion in that arbitration (the "Tongfang Award"), and DLA's limited role in initial proceedings in *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (S.D.N.Y.) (the "*Baliga* Action")—which are directly refuted by information and documents available to Plaintiff and its counsel. *Second*, Plaintiff's malpractice claim is utterly devoid of legal merit: China AI cannot establish any of the elements of a malpractice cause of action, and plainly lacks standing to bring such a claim under applicable law. *Third*, China AI appears to be directly connected to Dr.

2

Vincent Shi[2], a former Link Motion director also represented by Plaintiff's counsel in the *Baliga* Action who has, according to Link Motion's Receiver, engaged in a "pattern of egregious misconduct in which he has looted [Link Motion], sabotaged its operations, and breached his fiduciary duties," Dkt. 269 (2/9/2022 Receiver Ltr. to Court) at 2[3], and who, in direct violation of an order of the Court in the *Baliga* Action, manufactured the sham Tongfang Arbitration and Award.  The instant action appears to be yet another manifestation of Dr. Shi's fraudulent scheming, and an improper effort to use China AI to intimidate and extort Defendants with a frivolous threat of hundreds of millions of dollars in nonexistent damages.

It is thus is inconceivable that Plaintiff and its counsel can reasonably and in good faith maintain that it has conducted "an inquiry reasonable under the circumstances" and concluded that "the factual contentions" in the Complaint "have evidentiary support," that its meritless cause of action is warranted by "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or that this action was initiated for anything other than the "improper purpose" of harassing Defendants.  Fed. R. Civ. P. 11(b)(1)–(3).  Sanctions are accordingly warranted.

***Plaintiff's Claim Is Premised On Allegations That Are Demonstrably False.***  Critical to China AI's lone malpractice claim, purportedly asserted on behalf of Link Motion, is the assertion that Link Motion was prevented from transferring its interests in a company called FL Mobile to Tongfang Investment Fund Series SPC ("Tongfang") pursuant to a Stock Purchase Agreement (the "SPA"), due to "the TRO entered because of Defendant's malpractice."  Compl.

---

[2]  In status reports in the *Baliga* Action, the Receiver has explained that, "by late 2018," Link Motion's former Vice Chairman "was the sole shareholder of China AI," and that "Mr. Shi engineered the sale of LKM's Class B shares to his close associates through China AI in order to illegally secure greater power over LKM's board and control the Company through the additional voting power of the Class B shares."  Dkt. 220-B at 2.

[3]  "Dkt." cites refer to the filings in the *Baliga* Action.

¶¶ 8, 59, 65.  Plaintiff further alleges that a court-appointed Receiver "refused to perform or seek court approval for the Company to perform its obligations under the SPA" and "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group."  *Id.* ¶ 86.  As a result, Plaintiff claims that Tongfang commenced an arbitration (the "Tongfang Arbitration") that resulted in an award against Link Motion of approximately "USD$396,000,000" (the "Tongfang Award").  *Id.* ¶ 88.

Every aspect of these allegations is demonstrably false.

***First***, on its face, the Tongfang Award is a sham, orchestrated by Dr. Shi in violation of the Court's February 1, 2019 preliminary injunction in the *Baliga* Action.  *See* Dkt. 26.  According to the Tongfang Award, on April 23, 2019, Tongfang filed a notice of arbitration against Xinjiang NQ Mobile Venture Capital Investment Co. Ltd., and Link Motion.  At that time, the Receiver already had been appointed by Judge Marrero.  Dkt. 26.  The Court's February 1, 2019 Order imposing the injunction and appointing the Receiver mandated that the Baliga defendants (Link Motion, Vincent Wenyong Shi, Jia Lian, and Xiao Yu) ensure that all "litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver."  *Id.* at I.2.  It further provided that "the Receiver shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise . . . wherever such proceeding is located, in the United States of America, the People's Republic of China, or elsewhere."  *Id*. at II.2(e).

Despite this Order, the Receiver was never notified of the Tongfang Arbitration—apparently by design.[4] Dkt. 269 (2/9/2022 Receiver Letter to Court). According to the arbitrator, Link Motion was "not [] legally represented in this arbitration" and was only aware of the arbitration "through Mr. Shi." Dkt. 269-1 at 4. In fact, Dr. Shi, in direct violation of the *Baliga* Court's Order, unilaterally wrote to the arbitrator on May 5, 2019 to confirm that he alone "was acting on behalf of [Link Motion]." *Id.* This was false; Dr. Shi had been given no such authority. The Receiver has confirmed that "Defendant Shi secretly arrogated to himself the authority to speak for the Company in the Tongfang Arbitration." Dkt. 269 at 1. Thereafter, Dr. Shi, who appears to have an ownership interest in Tongfang (and likely instigated the Tongfang Arbitration)[5], thereafter refused to file *any* defense or respond to any of the arbitrator's questions or Tongfang's submissions on behalf of Link Motion, Dkt. 269-1 at ¶¶ 11–12, ensuring an award to Tongfang despite the meritless nature of its claim.

Compounding this malfeasance, Dr. Shi and Plaintiff's counsel deliberately withheld the Tongfang Award from the Court in the *Baliga* Action. *See* Dkt. 228 (claiming "Receiver has caused the Company to lose the Tongfang Arbitration" but attaching a wholly unrelated arbitral award brought by Zhongzhi Hi-Tech Overseas Invstment Ltd. against Dr. Shi personally); Dkt. 246 at 14–15 (clarifying in reply papers that the "Tongfang Arbitration" merely referred to the Zhongzhi arbitration brought against Dr. Shi). In fact, the *Baliga* Court only became aware of the actual Tongfang Award when the Receiver attached it to his recent letter. *See* Dkt. 269.

---

[4] Tongfang indisputably knew that the Receiver had been appointed, as the Receiver had made a demand for payment of the Tongfang note on April 19, 2019, just weeks before this arbitration was commenced.

[5] Like China AI, Dr. Shi appears to have significant ties to Tongfang. In the *Baliga* Action, the Receiver has explained that China AI is owned through the entity "True Hero Ventures Limited," which "also appears to be the entity through which [Dr.] Shi owned Tongfang." Dkt. 220 at 3.

***Second***, the allegation that Link Motion was "prevented" from conveying its interests in FL Mobile to Tongfang—or that the that the Receiver transferred those interests to an affiliate—is equally specious. The uniform record establishes that Link Motion fulfilled its duties more than a year before the Receiver was even appointed. Publicly available SEC filings *signed by Dr. Shi* (who is represented by Plaintiff's counsel in the *Baliga* Action) confirm the transfer of FL Mobile to Tongfang was completed on or before *December 2017*. Ex. G (Apr. 26, 2017 Link Motion 20-F) at 6 ("Pursuant to the contracts with these purchasers of FL Mobile and Showself (Beijing), we have completed the delivery of our interests in FL Mobile and Showself (Beijing), while the purchasers still have certain period to complete its payment obligations."); Ex. H (Dec. 15, 2017 Link Motion 6-K) at Ex. 99-1, 99.2 (announcing that Link Motion "has completed the FL Mobile Divestment" ). The Equity Pledge Agreement entered into between Tongfang and Link Motion at the same time Tongfang provided Link Motion with a senior note for RMB1.77 billion due December 14, 2018 (the "Senior Note"), further confirmed that Tongfang held the equity interests in FL Mobile and pledged its equity interests to Link Motion in the event Tongfang breached the agreement in any way, including by not repaying the debt or the interests of the Senior Note. Indeed, in a February 7, 2018 letter to Link Motion shareholders, Dr. Shi represented that *he* had taken possession of the FL Mobile shares at the request of the Tongfang-led purchasing group, and that "[t]he transaction completed on December 14, 2017." Ex. I (Feb. 9, 2018 Link Motion 6-K) at Ex. 99.1; *see also* Dkt. 262 at 2 n.5 (Plaintiff's counsel conceding that Dr. Shi "received the shares of FL Mobile . . . as part of the process of the closing of the transaction with Tongfang").

***Third***, Plaintiff's assertion that the Receiver "refused to perform or seek approval for the Company to perform its obligations under the SPA" is also untrue. Leaving aside that there were

6

no obligations left to fulfill, the Receiver has confirmed that he never received the Tongfang Arbitration demand or any other demand relating to the Tongfang transaction.  Dkt. 269 at 1–2 (explaining that Dr. Shi "failed to notify the Receiver of the existence of [the Tongfang Arbitration]" and appears not to have "disclosed the fact that this Court had appointed a receiver over the Company" to the arbitrator).  It was thus not the Receiver but Dr. Shi who exposed Link Motion to the ostensible $390 million damages award, a continuation of Dr. Shi's "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties."  *Id.* at 2.

*Fourth*, China AI's assertion that DLA was engaged to "represent the Company competently in connection with the defense of Baliga's derivative claims and the Company's opposition to the motion for a TRO, preliminary injunction, and appointment of a receiver" is also knowingly and demonstrably false, further warranting sanctions.  Compl. ¶ 59.  DLA was only involved in the *Baliga* action for a very brief time, and exclusively in an effort to protect Link Motion's immediate interests.  DLA was never engaged and never agreed to undertake the defense of the *Baliga* action.  When the *Baliga* Action was filed, Link Motion was already in arrears with its previous legal bills; it refused to meaningfully engage with DLA regarding the potential new matter or provide guidance; and admitted that it could not afford to pay DLA to undertake the defense of the litigation.  And although the Complaint cherry-picks communications to create the false impression that Link Motion's lack of response to DLA's inquiries was due to short notice and the time difference between the U.S. and China, the truth, as even a cursory review of the full record of communications makes clear, is that DLA repeatedly made efforts to receive instruction from the company for ***more than a month***, to no avail.  In fact, DLA contacted Dr. Shi and/or Link Motion no fewer than ***twenty-one times***

between December 13 and January 21, seeking instruction and making clear that DLA could not take on a new matter unless Link Motion paid its bills and retained DLA.  *See* Ex. N (Rule 11 Letter) at 7–11; *see also* Exs. A–E (email and WeChat communications between Defendants and Dr. Shi and/or the Link Motion Board, attached to Rule 11 Letter).  Link Motion consistently declined to respond or engage, and expressly refused to retain or pay DLA in the *Baliga* Action. The Baliga Court permitted DLA to withdraw from the matter altogether because, as explained in a declaration by Ms. Schechtman, Link Motion did not "pay DLA's legal fees" and "failed to cooperate in the representation . . . by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively."  Dkt. 28.  Thus, Plaintiff's claim that "[a]fter failing to give the Defendants competent advice, the Defendants dropped the Company like the proverbial hot potato" is patently false.  Compl. ¶ 84. DLA only withdrew once Link Motion confirmed that it had no intention to retain or compensate DLA, and after DLA had expended a substantial effort trying to get Link Motion to engage in the litigation process.  As China AI and its counsel were undoubtedly aware (or should have been had the requisite reasonable inquiry been undertaken), DLA was never retained to substantively defend the *Baliga* Action, and thus it could not be negligent merely by endeavoring to protect Link Motion from a default judgment until it retained other counsel.

*** Plaintiff's Legal Claims Are Plainly Not "Warranted By Existing Law."***  China AI's malpractice claim is also not "warranted by existing law" because it is "'patently clear that [Plaintiff's] claim[s] ha[ve] absolutely no chance of success.'"  *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127–29 (N.D.N.Y. 1996) (quoting *Sussman v. Bank of Isr.*, 56 F.3d 450, 457 (2d Cir. 1995)); *see* Fed. R. Civ. P. 11(b)(2) (legal contentions must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing

law"). Indeed, not only does Plaintiff completely fail to establish any of the requisite elements of malpractice, including negligence, proximate cause, and actual damages, Plaintiff critically lacks standing to assert a derivative claim under applicable Cayman Islands law. Any of these fatal defects is plainly sufficient to doom Plaintiff's claim.

*First*, Plaintiff has not (and cannot) pled that a "tight causal relationship exists" between DLA's conduct and the alleged damages to Link Motion. *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006). To the contrary, its claim would require finding that a long chain of speculative (and counterfactual) events would not have occurred but for Ms. Schechtman's conduct, including without limitation (1) the Receiver would not have been appointed; (2) the Receiver would not have refused to fulfill Link Motion's purported obligation to transfer its interests in FL Mobile; (3) the Receiver would not have then diverted the FL Mobile assets for himself; (4) Tongfang would not have brought a claim in an arbitration; (5) Dr. Shi would not have violated the Court's injunction order by purporting to act on behalf of Link Motion in the Tongfang Arbitration; (6) Dr. Shi would not have misled the arbitrator concerning his authority (or lack thereof) to so act; and (7) Dr. Shi would not have failed to defend the Tongfang Arbitration, resulting in an ostensible $390 million award. Not only are these allegations blatantly false and fraudulent, but they reflect an alleged causal chain riddled with myriad intervening causes between Defendants' alleged actions and the already-completed FL Mobile transaction or supposed Tongfang Award, including the Receiver's alleged misconduct, the Court's independent oversight of the receivership, and of course, Dr. Shi's own conduct in deliberately failing to defend the Tongfang Arbitration. *See, e.g.*, *Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014).

Plaintiff's causation argument is fatally flawed in other respects. As an initial matter, it is premised on a novel standing argument that had never previously been tested in a New York court. *See Lichtenstein v. Willkie Farr & Gallagher LLP*, 120 A.D.3d 1095, 1098 (2014) (dismissing malpractice claim based on failure to raise an argument regarding standing, when law was unsettled at the time). Moreover, after DLA's brief involvement in the action, successor counsel had more than a "sufficient opportunity to protect the [client's] rights" and raise the potential standing argument after Baliga disclosed in a court hearing in April 2019 that he only held American Depository shares in Link Motion, which also defeats causation and constitutes independent grounds to dismiss China AI's derivative claim. *Schutz*, 2013 WL 3357921, at *6. Unlike DLA, Link Motion's successor counsel was actually retained to research potential defenses and file substantive motions. Yet even though it knew that Baliga held ADSs and made lengthy motions to dismiss and to discharge the receivership, it did not timely raise any argument that Baliga lacked derivative standing.

**Second**, damages cannot be premised on the false and speculative allegations that Tongfang would have paid the full amount owed to Link Motion for FL Motion but for the receivership—particularly given that Tongfang had already failed to satisfy the Senior Note issued to Link Mobile in partial consideration for the FL Mobile transaction before the Receiver was ever appointed. *See Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) (finding allegations "wholly speculative and do not give rise to a reasonable inference that any damages exist"). Nor can Defendants be liable for a sham Tongfang Award that Tongfang has never sought to enforce, and which has not been paid by Link Motion. And neither Defendants nor the Receiver are responsible for alleged damages to Link Motion that are actually the result of misconduct of Dr. Shi, who manufactured the Tongfang Award, controls Link Motion's

10

primary bank accounts in China (which he froze without authorization), and has continued to misappropriate the Company's assets and frustrate the Receiver's efforts. Dkt. 220-C at 2–3; *see* Compl. ¶¶ 93–94 (alleging that the Receiver has "exhausted all the Company's available cash," "incurred unnecessary liabilities," and "prevented the Company from resolving employment claims by former employees in the PRC."). The Receiver—whose appointment and actions at all times have been overseen by the Court—is not responsible for any of this alleged harm to the Company, and thus neither is DLA or Ms. Schechtman even under China AI's erroneous causation theory

**Third**, Plaintiff cannot not pled that DLA was negligent because, as stated above, DLA was never retained to substantively defend Link Motion in the *Baliga* action. *See Allegrino v. Ruskin Moscou Faltischek, P.C.*, 2021 WL 5500084, at *1 (2d Cir. Nov. 24, 2021) ("A plaintiff cannot state a legal malpractice claim against an attorney where the actions of the attorney giving rise to the claim fall outside of the scope of the attorney's representation.").

**Fourth**, Plaintiff lacks derivative standing to bring a claim on behalf of Link Motion. *See Winn v. Schafer*, 499 F. Supp. 2d 390, 397 (S.D.N.Y. 2007) (cited at Compl. ¶ 95). Cayman Islands law, which governs the issue of derivative standing, broadly prohibits derivative actions, subject to a few narrow exceptions. A plaintiff "must demonstrate that he meets the specific requirements of one of the well-established" exceptions to this general Cayman Islands rule "in order to have standing to bring suit." *Winn*, 499 F. Supp. 2d at 397. Plaintiff has not even attempted to plead that its negligence-based claim falls within any exception—and cannot.

**<u>Plaintiff's Claim Is A Transparent Attempt To Harass Defendants</u>**. China AI's claims also warrant sanctions because they were brought for the "improper purpose" of "harass[ing]" Ms. Schechtman and DLA. Fed. R. Civ. P. 11(b)(1) ("By presenting to the court a pleading . . .

11

an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] it is not being presented for any improper purpose, such as to harass . . . ."); *see also Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 130 (D.N.J. 1998) (imposing sanctions where the only purpose in bringing the lawsuit "was to harass [the defendant]"); *Carlton v. Jolly*, 125 F.R.D. 423, 431 (E.D. Va. 1989) ("Extorting a settlement . . . [is an] 'improper purpose[]' under Rule 11."). As noted above, the Receiver's investigation has uncovered substantial links between China AI and Dr. Shi, who has engaged in a "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties." Dkt. 269 at 2. Plaintiff is now trying to use knowingly false allegations about the FL Mobile transaction, a manufactured Tongfang Award and a wholly meritless malpractice claim to conjure up hundreds of millions of dollars in nonexistent damages to intimidate and extort a settlement from Defendants.

*     *     *

For the foregoing reasons, sanctions are warranted against Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11.

Dated:  September 26, 2022
        New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Nancy Hart
    Nancy Hart
    200 Park Avenue
    New York, New York 10166-0193
    nhart@gibsondunn.com
    Telephone:  (212) 351-4000

*Counsel for Defendants*