# EXHIBIT N

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Nancy Hart
Direct: +1 212.351.3897
Fax: +1 212.351.6273
NHart@gibsondunn.com

March 7, 2022

VIA HAND DELIVERY AND ELECTRONIC MAIL

Mr. Michael James Maloney
Ms. Rosanna E. Felicello
Felicello Law P.C.
366 Madison Avenue, 3rd Fl.
New York, NY 10017
mmaloney@felicellolaw.com
rfelicello@felicellolaw.com

Re:     *China AI Capital Limited v. DLA Piper LLP (US) et al.*, Case No. 1:21-cv-10911
        (S.D.N.Y.)

Dear Mr. Maloney and Ms. Felicello:

As you are aware, we are counsel for DLA Piper LLP (US) ("DLA") and Caryn G.
Schechtman in connection with the above-captioned lawsuit brought by China AI Capital
Limited ("China AI") on a purported derivative basis on behalf of Link Motion Inc. ("Link
Motion" or the "Company").  We write to provide you with the Notice of Motion Seeking
Sanctions Pursuant to Rule 11 enclosed as Exhibit A.  As you know, Rule 11 of the Federal
Rules of Civil Procedure (i) imposes a duty to ensure that factual allegations "have
. . . [or] will likely have evidentiary support," Fed. R. Civ. P. 11(b)(3), (ii) requires your legal
claims to be "warranted by existing law," Fed. R. Civ. P. 11(b)(2), and (iii) prohibits filings
made "for any improper purpose," Fed. R. Civ. P. 11(b)(1).  The Complaint filed in this case
fails to comply with all of these Rule 11 duties, apparently in order to coerce a settlement
from DLA and Ms. Schechtman.  We hereby demand, pursuant to Rule 11's safe harbor
provisions, that you withdraw your Complaint (Dkt. No. 1, "Compl.") against our clients in
its entirety.

## I.      Sanctions Are Warranted Under Rule 11(B)(3) Because The Complaint Is Premised On Allegations That Are Demonstrably False

China AI's Complaint is replete with factual allegations that are "objectively without rational
basis," plainly warranting sanctions.  *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D.
114, 128 (S.D.N.Y. 2007).

### A.      Link Motion Performed Its Obligations To Tongfang, And The Tongfang Arbitral Award Is A Sham

China AI bases its malpractice claim on the assertion that our clients' alleged conduct
"prevented the Company from fulfilling its obligations under a pre-existing contract resulting

# GIBSON DUNN

in an arbitration award of more than USD $390,000,000 against the Company." Compl. ¶ 8. Specifically, China AI claims that the Company was prevented from transferring its interests in one of its legacy businesses, FL Mobile, to Tongfang Investment Fund Series SPC ("Tongfang") pursuant to a Stock Purchase Agreement dated March 30, 2017 (the "SPA"). China AI alleges that this was due to "the TRO entered because of Defendant's malpractice." *Id.* ¶ 65. China AI further alleges that the court-appointed Receiver, Mr. Robert Seiden, "refused to perform or seek court approval for the Company to perform its obligations under the SPA" and "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group." *Id.* ¶ 86. As a result, China AI alleges that Tongfang commenced arbitration proceedings that resulted in an award against the Company of approximately "USD$396,000,000" (the "Tongfang Award"). *Id.* ¶ 88.

Every aspect of those allegations is demonstrably false.

***First***, on its face, the Tongfang Award is a sham. It is the result of egregious misconduct by Vincent Shi in violation of the Court's preliminary injunction order in the *Baliga* action. According to the Tongfang Award, on April 23, 2019, Tongfang filed a notice of arbitration against Xinjiang NQ Mobile Venture Capital Investment Co. Ltd., and Link Motion. At that time, the Receiver already had been appointed by Judge Marrero. Dkt. 26. The Court's February 1, 2019 Order imposing the injunction and appointing the Receiver mandated that the *Baliga* defendants (Link Motion, Vincent Wenyong Shi, Jia Lian, and Xiao Yu) ensure that all "litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." *Id.* at I.2. It further provided that "the Receiver shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise . . . wherever such proceeding is located, in the United States of America, the People's Republic of China, or elsewhere." *Id.* at II.2(e). You are well aware that these provisions are enforceable, given that your filings in the *Baliga* action acknowledge that only the Receiver may control litigation on behalf of the company. *See, e.g.*, Dkt. 214 at 9 ("[P]aragraph 2(e) of the existing receivership order delegates solely to the Receiver the power to bring litigation on behalf of the Company").

Despite this Order, the Receiver was never notified of the Tongfang Arbitration—apparently by design.[1] Dkt. 269 (2/9/2022 Receiver Letter to Court). According to the arbitrator, Link

---

[1] Tongfang indisputably knew that the Receiver had been appointed, as the Receiver had made a demand for payment of the Tongfang note on April 19, 2019, just weeks before this arbitration was commenced. Moreover, the Receiver has uncovered evidence that Dr. Shi owned and controlled Tongfang. *See* Dkt. 220 at 3 ("True Hero Ventures Limited also appears to be the entity through which Defendant Shi owned Tongfang"). Dr. Shi thus appears to have been the clandestine instigator of the Tongfang Arbitration; then *(Cont'd on next page)*

# GIBSON DUNN

Motion was "not [] legally represented in this arbitration" and was only aware of the arbitration "through Mr. Shi." Dkt. 269-1 at 4. In fact, Dr. Shi, in direct violation of the *Baliga* Court's Order, unilaterally wrote to the arbitrator on May 5, 2019 to confirm that he alone "was acting on behalf of the Respondents." *Id.* This was false; Dr. Shi had been given no such authority. The Receiver has confirmed that "Defendant Shi secretly arrogated to himself the authority to speak for the Company in the Tongfang Arbitration." Dkt. 269 at 1. Thereafter, Dr. Shi refused to file *any* defense or respond to any of the arbitrator's inquiries or Tongfang's submissions—despite the fact that Tongfang's claim was meritless. As described below, there is no question that Link Motion had transferred its interests in FL Mobile, and that Tongfang had pledged those interests back to Link Motion in the event that it failed to pay RMB1.77 billion to Link Motion by December 14, 2018 (which it did not). Tongfang tellingly has never dared to try to enforce this award—nor could it; the award was obviously the result of an orchestrated fraud.

Compounding this malfeasance, Dr. Shi and your firm deliberately withheld the Tongfang Award from the Court in the *Baliga* action. In a sworn declaration submitted on June 11, 2021, Dr. Shi made the completely spurious claim that the "Receiver has caused the Company to lose the Tongfang Arbitration," Dkt. 228, when Dr. Shi himself was responsible for the purported loss. Rather than a monetary award, however, Dr. Shi then claimed the arbitrator "granted Tongfang's request for rescission" and "terminated" the sale of the business units, FL Mobile and Showself. *Id.* Yet the purported arbitral award Dr. Shi attached was not the Tongfang Award—but rather a wholly unrelated arbitration brought by Zhongzhi Hi-Tech Overseas Investment Ltd. ("Zhongzhi") against Dr. Shi personally. *Id.* After this discrepancy was noted by the Receiver, Dr. Shi did an abrupt about-face in his reply papers, filed by your firm, suddenly claiming that the "Tongfang Arbitration" merely referred to the Zhongzhi arbitration "brought against Shi individually." *Id.* At no point did Dr. Shi—or your firm—provide the Court with the *real* Tongfang Award, as doing so would have immediately revealed Dr. Shi's mendacity.

In fact, the *Baliga* Court only became aware of the actual Tongfang Award when the Receiver attached it to his recent letter. *See* Dkt. 269. Your letter in response, which is a preposterous attempt to shift blame for Dr. Shi's misconduct to the Receiver, is filled with even more obvious falsehoods contradicted by the face of the award. Citing nothing, you claim "the Award itself explains that the arbitrator communicated with persons via '@lkmotion.com' email addresses" rather than Dr. Shi. Dkt. 270 at 2. But the award repeatedly identifies Dr. Shi *by name* as the person speaking on behalf of the company. *See*

---

claimed that he was the sole representative of respondent Link Motion despite his obvious conflict; and instead acted in Tongfang's interest and against Link Motion's interest by failing to present any defense on behalf of Link Motion.

Dkt. 269-1 at ¶¶ 9, 11, 12. Nowhere does the award even mention any "@lkmotion.com" email address. In addition, you claim that the Receiver "triggered" the arbitration because he sent a "demand" for payment to Tongfang (rather than a demand for arbitration), Dkt. 270, even though there is no question that Tongfang was the claimant who "commenced the[] proceedings . . . by Notice of Arbitration." Dkt. 269-1 ¶ 3. The Award makes no mention of the Receiver appointed for Link Motion, confirming that the Receiver was not aware of it or involved in any way. That China AI would now attempt to use this fraudulently obtained Tongfang Award against DLA is reprehensible and sanctionable.

***Second***, China AI's claim that Link Motion was "prevented" from conveying its interests in FL Mobile to Tongfang due to DLA's alleged misconduct in the *Baliga* action is equally specious. The uniform record establishes that Link Motion fulfilled its duties more than ***a year before*** the *Baliga* action was filed:

- On March 31, 2017, Link Motion announced in its 6-K that it had entered into the SPA with Tongfang, whereby Tongfang would acquire a 63% equity interest in FL Mobile (which was the entirety of the equity interest beneficially owned by Link Motion) in exchange for RMB2,520 million. According to the SPA (Dkt. 228-4), the Company agreed to transfer the equity interests in FL Mobile after receiving RMD645 million from Tongfang.

- In its 20-F filing on April 26, 2017, the Company reported, "We have entered into definitive agreements to sell our equity interest in FL Mobile and Showself (Beijing), which both represent a significant portion of our operations. Pursuant to these agreements, ***we have transferred our equity interests in FL Mobile and Showself while the purchasers still have certain periods to complete their payment obligations***. . . . We sold (i) 16.34% equity interest in FL Mobile to Dr. Vincent Wenyong Shi, our chairman and chief operating officer in March 2016; (ii) total of 20.66% of equity interests in FL Mobile to several affiliates of Beijing Jinxin in May 2016 and August 2016; and (iii) the remaining 63% equity interests in FL Mobile and all our interests in Showself (Beijing) to an affiliate private equity investment fund of Tsinghua Tongfang in March 2017. Pursuant to the contracts with these purchasers of FL Mobile and Showself (Beijing), ***we have completed the delivery of our interests in FL Mobile and Showself (Beijing), while the purchasers still have certain period to complete its payment obligations***."

- On December 14, 2017, Tongfang paid the remaining RMB1.77 billion in the form of a senior note to Link Motion (the "Senior Note"). The Senior Note bore an interest rate of 8% per annum and matured on December 14, 2018.

GIBSON DUNN

- At the same time Tongfang provided the Senior Note, Tongfang and Link Motion also entered into an Equity Pledge Agreement in order to further ensure timely payment of the Senior Note (attached hereto as Exhibit B).  Pursuant to the Equity Pledge Agreement, Tongfang expressly acknowledged that 63% of the equity of FL Mobile and 65% of Beijing Showself ***"are held by [Tongfang]*."**  *Id.* at 1.  It then pledged its equity interests in both FL Mobile and Beijing Showself to Link Motion "[i]n order to protect the rights of [Link Motion] as the creditor and pledgee, if [Tongfang] breaches the Agreement in any means, including but not limited to not repaying the debit or the interests" of the Senior Note.  *Id.* ¶ 1.1.

- On December 15, 2017, Link Motion filed a 6-K attaching a December 14 press release relating to the Tongfang transaction.  In that press release ("NQ Mobile Inc. Completes the FL Mobile Divestment and the Sale of Showself's Live Social Video Business"), the Company announced that "***it has completed*** the FL Mobile Divestment and the sale of Showself's live social video business."

- The December 15, 2017 6-K also attached Link Motion's consolidated financial statements, which reported that the "Company ***delivered*** 63% equity interest of FL Mobile and 63% equity interest of Showself to Tongfang" in exchange for the cash payment and Senior Note; it termed the divestment as "***complete*.**"  The financial results of FL Mobile and Showself thus were deconsolidated as of December 14, 2017 and reclassified in the consolidated financial statements as "***discontinued operations*.**"

- On February 9, 2018, Link Motion filed a 6-K attaching a letter from Dr. Shi.  In his letter to the Company's shareholders, Dr. Shi represented that the "Tongfang Investment Fund Series SPC ('Tongfang') is an independent third party that led the purchasing group, which I joined anew for this specific transaction, to purchase from the Company certain equity interests of FL Mobile and Beijing Showself.  ***I have been facilitating the transaction and acted as a trustee for our Company when the purchasing group requested that the shares should be registered under a new individual shareholder to satisfy structural arrangements related to future capital market requirements of the divested assets.  The arrangements are made to ensure the successful completion of the transaction.  The transaction completed on December 14, 2017***, and the total consideration received by us as of December 14, 2017 amounted to approximately RMB3.32 billion in cash and senior note from Tongfang. The majority of the cash received has been in Chinese currency, which factors into our overall cash and treasury functions especially as it relates to foreign currency needs under the tight regulation of the Chinese foreign exchange body."

**GIBSON DUNN**

- Tongfang never paid the Senior Note, which matured on December 14, 2018.

Accordingly, your allegations that DLA's purported conduct in the *Baliga* action—which was not even filed until December 13, 2018—prevented Link Motion from fulfilling its obligations to Tongfang are false. On the contrary, Link Motion performed its obligations by December 2017, and it was **_Tongfang_** that breached its obligations to the Company.

Tellingly, in the many filings seeking discharge of the receivership in the *Baliga* action, neither Dr. Shi nor China AI has ever made the spurious accusation that the Receiver fraudulently transferred FL Mobile to an affiliate. The obvious reason is that the *Baliga* Court would never be duped by that allegation when the ample record in that action demonstrates the opposite. Indeed, your own filings admit that Dr. Shi "received the shares of FL Mobile . . . as part of the process of the closing of the transaction with Tongfang." Dkt. 262. This attempt to deceive the parties and Court in a new litigation with false and contradictory allegations is equally reprehensible and sanctionable.

**_Third_**, China AI's assertion that the Receiver "refused to perform or seek approval for the Company to perform its obligations under the SPA" with Tongfang is also untrue. Leaving aside that there were no obligations left to fulfill, the Receiver has confirmed no demand was ever made to him relating to the Tongfang transaction. Similarly, the Tongfang Arbitration demand was never sent to the Receiver. Dkt. 269 (2/9/2022 Receiver Letter to Court) at 1. Indeed, his letter confirms that he had absolutely no knowledge of the Tongfang Arbitration until you revealed the purported Tongfang Award to us on February 4, 2022. *Id.* (explaining that Dr. Shi "failed to notify the Receiver of the existence of this arbitration" and appears not to have "disclosed the fact that this Court had appointed a receiver over the Company" to the arbitrator). *Id.* at 1–2. Without a doubt, it was not the Receiver but Dr. Shi who exposed Link Motion to the ostensible $390 million damages award as part of Dr. Shi's "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties." *Id.* at 2.

### B. DLA Was Never Engaged To Substantively Defend Link Motion

China AI's assertion that DLA was engaged to "represent the Company competently in connection with the defense of Baliga's derivative claims and the Company's opposition to the motion for a TRO, preliminary injunction, and appointment of a receiver" is also knowingly and demonstrably false, further warranting sanctions. Compl. ¶ 59.

As you are aware (and have acknowledged in the Complaint), the scope of Link Motion's only engagement of DLA during the relevant time period was "limited to 'general corporate

advice as well as in connection with an issuance of Class B Shares',," wholly unrelated to the *Baliga* action. Compl. ¶ 24. And as you are also aware (from your representation of Dr. Shi), DLA was only involved in the *Baliga* action for a very brief time, and exclusively in an effort to protect Link Motion's immediate interests. Contrary to the Complaint's spurious suggestion otherwise, DLA was ***never engaged*** and ***never agreed*** to undertake the defense of the *Baliga* action. As even the most cursory investigation would have revealed, Link Motion was already in arrears with its previous legal bills; it refused to meaningfully engage with DLA regarding the matter or provide guidance; and admitted that it could not afford to pay DLA to undertake the defense of the litigation.

The Complaint cherry-picks communications to create the false impression that Link Motion's lack of response to DLA's inquiries was due to short notice and the time difference between the U.S. and China. But the full record of communications demonstrates that DLA repeatedly made efforts to receive instruction from the company for ***more than a month***, but to no avail. In fact, the relevant communications highlighted below demonstrate that DLA reached out to Link Motion no fewer than ***twenty-one times*** between December 13 and January 21, that Link Motion expressly refused to retain or pay DLA in the *Baliga* action, and that Dr. Shi approved DLA's limited actions on behalf of Link Motion (including the stipulation not opposing the TRO):

- On December 13, 2018, Baliga's counsel sent DLA a copy of the Complaint and TRO application. *See* Ex. C at 1. Ms. Schechtman promptly forwarded this email to Dr. Shi asking: "Please instruct DLA if you would like us to respond. We should have a call immediately to discuss — as action will be taking place tomorrow. In addition DLA has still not received a retainer so we would need to receive that as well." *Id.*

- Ms. Schechtman also followed up with Dr. Shi via WeChat on December 13, asking "Did you see the lawsuit that was filed. They are going into court in 12 hours to get a restraining order against the company." Ex. D at 4. Dr. Shi responded, "i saw it, Can we have call around 12:00 bj [*sic*] time?" *Id.*

- That call apparently did not happen, as the next day, December 14, 2018, Ms. Schechtman emailed Dr. Shi and Larry Chi: "We will send an associate to Court in 12 hours to advise the Court that we have received no instruction from the Company due to the time difference and language barriers. It is possible that the Court will grant the application anyway. Even if the Court does not, it won't put it off past Monday. How would you like us to handle?" Ex. E at 1.

- Ms. Schechtman again repeated the message via WeChat, asking Dr. Shi: "Do you want me to send an associate?"  Dr. Shi responded "OK thanks."  Ex. D at 3.

- On December 17, 2018, Ms. Schechtman sent Dr. Shi a WeChat message, stating: "Vincent we need to discuss how the company wants us to handle the derivative action."  Ex. D at 4.  Nearly eight hours later Dr. Shi responded, "I'm on travel, let's talk tonight," but did not provide any specific time when he could speak.  *Id.*

- On December 18, 2018, Ms. Schechtman again urged Dr. Shi to respond, stating: "We have to discuss the derivative action.  We need to enter a scheduling order on Friday US."  *Id.*  Dr. Shi professed to agree to talk, but again failed to follow through with scheduling a time.

- On December 20, 2018, Ms. Schechtman requested payment of long-outstanding invoices, asking Dr. Shi: "Can you please bring us current on invoices[?]"  *Id.* at 3.  Dr. Shi did not respond.

- On December 21, 2018, Ms. Schechtman spoke with Dr. Shi in a telephone call during which Dr. Shi queried whether the Company's insurance would cover the defense of the *Baliga* action.  Ms. Schechtman made clear that DLA would only take on the case and develop strategy if insurance coverage was in place.

- On December 28, 2018, Ms. Schechtman followed up: "I need payment on outstanding invoices to be able to open up a litigation matter."  *Id.* at 2.  Dr. Shi did not respond.

- On January 6, 2019, Ms. Schechtman sent a WeChat message to Dr. Shi, stating: "Vincent, we won't be able to draft the briefs that are due on the 21st.  Because we can't open the matter as we have not received the retainer and we are not up to date on payment."  *Id.*  Dr. Shi did not respond.

- On January 7, 2019, Ms. Schechtman stated to Dr. Shi: "Let me know when we can speak.  The insurance policy has a 2.5 million dollar retention which means it won't kick in until the company has paid 2.5 million toward legal fees on the claim, and, several hours later, "Can we speak?"  *Id.*  Dr. Shi did not respond.
.

- On January 14, 2019, Ms. Schechtman contacted Dr. Shi by WeChat, asking: "When can we speak.  I need to let the other side and the court know what we are doing.  We have to start drafting today.  It's one week out...."  *Id.*  Dr. Shi did not respond.

- Shortly thereafter, Jason Chang at DLA emailed the Link Motion Board: "Defendants opposition to Plaintiff's motion is due next Monday, January 21, 2019.  To oppose the motion, we should get an affidavit or other evidence from Defendants that explains the business or financial reasons for the transfers and abandonment of business.  Also, we need to understand what is going on with the NYSE delisting, and whether the Company will get relisted, or the Company's reasons for not filing the forms on time.  If we do nothing, the motion may be granted, which may include other relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets.  It may also include relief as to Plaintiff's request for an order requiring the Defendants to restore all assets transferred to third parties within the past ninety days.  ***We have repeatedly asked for instruction on how to proceed but have not received any guidance from the Company or the individual defendants and advised that if we do not receive payment for legal services, we cannot take on this litigation matter.***  Attached is the Plaintiff's motion and complaint, and the TRO for reference." Ex. F at 2.  No one from Link Motion responded.

- On January 15, 2019, Ms. Schechtman informed Dr. Shi by WeChat: "Please advise.  If I do not hear from you in 24 hours ***I will need to alert the Court that we have not been engaged to proceed further on the Company's behalf***." Ex. D. at 2.  Dr. Shi did not respond.

- On January 17, 2019, Ms. Schechtman again reached out to Dr. Shi, further emphasizing the urgency of the situation:  "Vincent - I have not heard from you.  We have not prepared briefs and will not be in a position to represent the company in the derivative action. … Can you give me a quick call.  I want to avoid withdrawing as Counsel on the derivative action because it will look bad for the company.  Instead I would prefer for the company to agree that it isn't submitting papers on Jan 21. . . .  But we need to discuss." *Id.* at 1–2.  She reached out repeatedly that same day, asking: "We must speak.  When can you talk?" and "I need you to confirm that we can tell the court you aren't responding." *Id.* at 1.

- On January 18, 2019, Jason Chang followed up with the Link Motion Board.  He stated that DLA had not received a response to its prior email on January 14, and that, "[a]s a result, if we do not hear back from you within 24 hours, DLA will assume that we have Link Motion's consent not to oppose the motion." Ex. F at 1.  Mr. Chang "reiterate[d] that if Link Motion does not respond, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary

injunction restricting the Company from transferring assets, attorneys' fees and costs, and other such relief that the Court may deem appropriate." *Id.* He further stated, "if we do not hear back from you within 24 hours, we will also assume that we have Link Motion's consent to withdraw from representation." *Id.* No one responded.

- On January 19, 2019, Ms. Schechtman asked Dr. Shi for a call: "Vincent please call me. we need to speak." Ex. D at 1. Dr. Shi did not respond.

- Ms. Schechtman also reached out to Dr. Shi and Chrystal Zhanglu via WeChat, stating: "Crystal it is important that I speak with you and Vincent as soon as possible. When can we speak." *Id.* at 4. Neither Dr. Shi nor Ms. Zhanglu responded.

- On January 20, 2019, Ms. Schechtman followed up again with Dr. Shi: "Vincent - you owe me the courtesy of a call. Please call me." Dr. Shi finally responded that he would call her soon. *Id.* at 1.

- Later that day, Ms. Schechtman asked Dr. Shi: "Do you want us to do the answer. We will need some payment. Otherwise I'm not sure what to recommend. You don't want a default judgment entered. Answers are not that expensive.... I would like your consent for us to withdraw as your counsel from the litigation if you determine not to pay us to go forward.... I am trying to do what is best for the company but we cannot work for no payment." *Id.* Dr. Shi did not respond.

- Ms. Schechtman also sent a draft email to opposing counsel for Dr. Shi's review, which stated: "Mike, After consultation with the Company, it has determined not to oppose the preliminary injunction. It would like, however, your consent to an extension of its time to answer the complaint for another 30 days to determine whether it will defend the remaining aspects of the Complaint. If you agree, we have prepared the attached stipulation for your review that would inform the Court that the Company is not opposing the preliminary injunction and that it has until February 20, 2019 to answer or move to dismiss the Complaint." Ex. G at 1. Dr. Shi did not respond.

- On January 21, 2019, Ms. Schechtman sent Dr. Shi a WeChat message, stating: "Vincent pls respond. The other option is we also withdraw as Counsel now." Ex. D. at 1. Dr. Shi finally responded: "Thanks Caryn. I fully respect and appreciate your excellent work. But at this moment, it's very hard to make any further payment arrangement, even employees' payrolls were impacted. I'm very sorry about this situation and also bear huge pressure from many parties. I still try my best to solve

> issues or at least to maintain the company.  But it is very hard to predict the timeframe and the results."  *Id.*

- On a subsequent telephone call, Dr. Shi consented to DLA filing the proposed stipulation.

- On January 21, 2019, DLA filed the "Proposed Stipulation and Order" that provided, in part: "Defendant Link Motion does not oppose the Preliminary Injunction.  Defendant Link Motion's time to move, answer, or otherwise respond to the Complaint shall be extended until February 20, 2019.  By entering into this Stipulation, Link Motion contends that it is making only a limited, and not general appearance, for the sole purpose of obtaining an extension of time to answer, move, or otherwise respond to the Complaint.  Link Motion has preserved and is not waiving and have not waived any objections, defenses or responses to the Complaint."  Dkt. 22.

The *Baliga* Court entered the proposed stipulation and order on February 1, 2019.  Shortly thereafter, the Court permitted DLA to withdraw from the matter altogether because, as explained in a declaration by Ms. Schechtman, Link Motion did not "pay DLA's legal fees" and "failed to cooperate in the representation . . . by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively."  Dkt. 28.

Ms. Schechtman's and DLA's efforts to protect Link Motion were laudable, notwithstanding the fact that the Company utterly failed to timely respond to inquiries; made clear it did not wish to retain DLA for substantive work on the matter; and was unwilling to take any action to address the considerable unpaid DLA invoices.  In fact, Link Motion was already in arrears with DLA for corporate work performed prior to the *Baliga* action.  And Link Motion has not paid anything for any of the work DLA performed for the Company in its limited representation in the *Baliga* action.  Thus, Plaintiff's claim that "[a]fter failing to give the Defendants competent advice, the Defendants dropped the Company like the proverbial hot potato" is patently false.  Compl. ¶ 84.  DLA only withdrew once Link Motion confirmed that it had no intention to retain or compensate DLA, and after DLA had expended a substantial effort trying to get Link Motion to engage in the litigation process.  As you and China AI are undoubtedly aware (or should have been had the requisite reasonable inquiry been undertaken), DLA was ***never*** retained to substantively defend the *Baliga* action and thus, it could not be negligent merely by endeavoring to protect Link Motion from a default judgment until it retained other counsel.

\*          \*          \*

Based on the foregoing demonstrably false allegations, both China AI and you as its counsel have flouted your Rule 11 obligations to make "an inquiry reasonable under the circumstances" and to verify that "the factual contentions [in your client's pleading] have evidentiary support." Fed. R. Civ. P. 11(b)(3). Sanctions are warranted under Rule 11 where a complaint's assertions are unsupported by "tangible evidence" and "grossly mischaracterize" a defendant's actions. *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127–29 (N.D.N.Y. 1996) (awarding monetary sanctions for attorney fees and nonmonetary sanctions based on complaint allegations that lacked a factual and legal basis). This District has made clear that "[a] baseless factual contention" warrants severe sanctions because it "poses a greater threat to justice than a baseless legal contention." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124, 128, 132 (S.D.N.Y. 2007); *see also Shetiwy v. Midland Credit Mgmt.*, 2014 WL 3739512, at \*3 (S.D.N.Y. July 29, 2014) (finding that Rule 11 was violated where attorneys "fail[ed] to ensure a factual basis for each of their allegations").

## II. Sanctions Are Warranted Under Rule 11(B)(2) Because The Complaint Asserts Legal Claims Not "Warranted By Existing Law"

China AI's malpractice claim is not "warranted by existing law" because it is "'patently clear that [Plaintiff's] claim[s] ha[ve] absolutely no chance of success.'" *Binghamton Masonic*, 168 F.R.D. at 126 (quoting *Sussman v. Bank of Isr.*, 56 F.3d 450, 457 (2d Cir. 1995)). As detailed above, the factual allegations that are central to your pleadings are demonstrably false based on a sham arbitral award. In light of these allegations, China AI cannot plausibly allege the requisite elements of causation or damages. *See Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc.*, 14 Misc. 3d 1224(A) (N.Y. Cty. 2007) (elements of malpractice claim include "that [attorneys'] negligence was a proximate cause of [plaintiff's] losses" and "proof of actual damages"). In addition, China AI cannot plausibly allege that Ms. Schechtman and DLA were negligent, because they were never engaged to defend Link Motion in the *Baliga* action. China AI also lacks standing to bring this claim.

***First***, China AI's allegations do not even approach the requirement of showing that a "tight causal relationship exists" between Ms. Schechtman's alleged failure to raise an argument regarding Baliga's standing and the purported misconduct by the Receiver. *Flutie Bros. v. Hayes*, 2006 WL 1379594, at \*5 (S.D.N.Y. May 18, 2006). China AI's claim depends on finding that a long chain of speculative (and counterfactual) events would not have occurred but for Ms. Schechtman's conduct, including without limitation (1) the Receiver would not have been appointed; (2) the Receiver would not have refused to fulfill Link Motion's purported obligation to transfer its interests in FL Mobile; (3) the Receiver would not have

Michael James Maloney
Rosanne E. Felicello
March 7, 2022
Page 13

then diverted the FL Mobile assets for himself; (4) Tongfang would not have brought a claim in an arbitration; (5) Dr. Shi would not have violated the Court's injunction order by purporting to act on behalf of Link Motion in the Tongfang Arbitration; (6) Dr. Shi would not have misled the arbitrator concerning his authority (or lack thereof) to so act; and (7) Dr. Shi would not have failed to defend the Tongfang Arbitration, resulting in an ostensible $390 million award.

Not only are these allegations blatantly false and fraudulent, but they reflect an alleged causal chain riddled with myriad intervening causes between Ms. Schechtman's alleged actions and the supposed arbitration award. Moreover, both the Receiver's alleged misconduct and the Court's independent oversight of the receivership alone sever the causal chain. *See, e.g.*, *Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014) (finding approval of settlement by a board of directors is an "'intervening and superseding' cause"). And of course, Dr. Shi's own conduct in failing to defend the Tongfang Arbitration is yet another intervening cause. Beyond all of that, China AI's causation argument is premised on a novel standing argument that had never previously been tested in a New York court, which itself defeats causation. *See, e.g.*, *Lichtenstein v. Willkie Farr & Gallagher LLP*, 120 A.D.3d 1095, 1098 (2014) (dismissing malpractice claim based on failure to raise an argument regarding standing, when law was unsettled at the time). Lastly, after DLA's brief involvement in the action, successor counsel had more than a "sufficient opportunity to protect the [client's] rights" and raise the potential standing argument after Baliga disclosed in a court hearing in April 2019 that he only held American Depository shares in Link Motion, which also defeats causation and constitutes independent grounds to dismiss China AI's derivative claim. *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013). Unlike DLA, Link Motion's successor counsel was actually retained to research potential defenses and file substantive motions. Yet even though it knew that Baliga held ADSs and made lengthy motions to dismiss and to discharge the Receivership, it did not timely raise any argument that Baliga lacked derivative standing.

***Second***, damages cannot be premised on the false and speculative allegations that Tongfang would have paid the full amount owed to Link Motion but for the receivership. *See Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) (finding allegations "wholly speculative and do not give rise to a reasonable inference that any damages exist."). In addition, DLA Piper cannot be liable for the amount of an unenforceable, sham award, which Link Motion has not paid. Indeed, Tongfang had already failed to pay down its outstanding note to Link Motion before DLA even appeared in the matter. The remainder of the alleged damages are a preposterous attempt to shift blame for Dr. Shi's misconduct to the court-appointed Receiver. The Complaint alleges that the Receiver has "exhausted all the Company's available cash," "incurred unnecessary liabilities," and "prevented the Company

from resolving employment claims by former employees in the PRC." Compl. ¶¶ 93–94. But the Receiver has detailed how "[Dr.] Shi, not the Receiver, is in control of the primary bank account . . . in China" and how Dr. Shi has continued to misappropriate the Company's assets and frustrate the Receiver's efforts. Dkt. 220-C at 2. While you attempt to blame the Receiver for the employment claims, it was Dr. Shi who obtained an unauthorized freezing order over the Company's Chinese bank account, which "led to [Link Motion] employees not receiving their wages." *Id.* at 3. The Receiver—whose appointment and actions at all times have been overseen by the Court—is not responsible for any of this alleged harm to the Company, and thus neither is DLA or Ms. Schechtman even under your erroneous causation theory.

**Third**, China AI cannot plead negligence because Link Motion never engaged DLA to substantively represent it in the *Baliga* action, which is abundantly clear from the documents referenced in the Complaint and the public record (and recounted above). It is black letter law that "[a] plaintiff cannot state a legal malpractice claim against an attorney where the actions of the attorney giving rise to the claim fall outside of the scope of the attorney's representation." *Allegrino v. Ruskin Moscou Faltischek*, P.C., 2021 WL 5500084, at *1 (2d Cir. Nov. 24, 2021).

**Fourth**, China AI lacks derivative standing, as you should know from the cases you cited in the Complaint. *See* Compl. ¶ 95 (citing *Winn v. Schafer*, 499 F. Supp. 2d 390, 397 (S.D.N.Y. 2007)). Cayman Islands law, which governs the issue of derivative standing, broadly prohibits derivative actions, subject to a few narrow exceptions. A plaintiff "must demonstrate that he meets the specific requirements of one of the well-established" exceptions to this general Cayman Islands rule "in order to have standing to bring suit." *Winn*, 499 F. Supp. 2d at 397. Plaintiff has not even attempted to plead that its negligence-based claim falls within any exception. It does not.

Any one of this phalanx of independent reasons clearly dooms your claim. Given the existence of numerous compelling avenues for dismissal, it cannot be seriously disputed that this action is unwarranted under the law. *Albinder v. U.S.*, 703 F. Supp. 246, 247 (S.D.N.Y. 1987) (awarding Rule 11 sanctions for costs where a reasonable inquiry would have demonstrated to counsel that the legal claim brought was not "well grounded in fact and . . . warranted by existing law").

### III. Sanctions Are Warranted Under Rule 11(B)(1) Because The Complaint Is A Transparent Attempt To Harass Ms. Schechtman and DLA

China AI's claims also warrant sanctions because they were brought for the "improper purpose" of "harass[ing]" Ms. Schechtman and DLA. Fed. R. Civ. P. 11(b)(1) ("By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] it is not being presented for any improper purpose, such as to harass . . . ."). The Receiver appointed for Link Motion has extensively detailed Dr. Shi's "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties." Dkt. 269 at 2. This action appears to be yet another manifestation of his fraudulent machinations.

The Receiver's investigation has uncovered substantial links between Dr. Shi and China AI. Among other things, the Receiver's May 2, 2020 letter to the Court detailed that "by late 2018," Link Motion's former Vice Chairman "was the sole shareholder of China AI" and that "Mr. Shi engineered the sale of LKM's Class B shares to his close associates through China AI in order to illegally secure greater power over LKM's board and control the Company through the additional voting power of the Class B shares." Dkt. 220-B at 2. Neither Dr. Shi nor China AI have disputed these findings. *See* Dkt. 220-C at 1. In a May 3, 2021 letter to the Court, the Receiver explained that the purported sole owner and director of China AI owns his interest in China AI through the entity "True Hero Ventures Limited," which "also appears to be the entity through which [Dr.] Shi owned Tongfang." Dkt. 220 at 3.

Your clients are trying to use the manufactured Tongfang Award to conjure up hundreds of millions of dollars in nonexistent damages in an obvious attempt to intimidate and extort a settlement. But filing false allegations and frivolous claims for this improper purpose of harassment also constitutes sanctionable behavior. *See, e.g.*, *Knipe v. U.S.*, 151 F.R.D. 24, 26 (N.D.N.Y. 1993) (finding violation of Rule 11 where court determined that counsel was "pursuing a personal agenda"); *Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 130 (D.N.J. 1998) (imposing sanctions where the only purpose in bringing the lawsuit "was to harass [the defendant]"); *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1375 (M.D. Ga. 2009).

*          *          *

Your client's conduct in bringing this action is patently sanctionable for the reasons noted above. The numerous blatant misrepresentations of fact and invocation of a fraudulent arbitration award are not innocent mistakes, but rather part of an orchestrated pattern of

**GIBSON DUNN**

intentional misconduct.  We therefore urge you to dismiss this lawsuit in its entirety within the 21 day safe-harbor.


Sincerely,

/s/ Nancy Hart

Nancy Hart

cc:     Kevin S. Rosen

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British
Virgin Islands limited company, derivatively
on behalf of LINK MOTION INC., a Cayman
Islands limited company f/k/a NQ MOBILE
INC.,

          Plaintiff,

  -against-

DLA PIPER LLP (US), a Maryland limited
liability partnership, and CARYN G.
SCHECTMAN, a natural person,

          Defendants,

  -and-

LINK MOTION INC., a Cayman Islands
limited company f/k/a NQ MOBILE INC.

          Nominal Defendant.

-------------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

**NOTICE OF MOTION
SEEKING SANCTIONS
PURSUANT TO RULE 11**

 

**PLEASE TAKE NOTICE** that, upon all papers served and proceedings had herein,

including this Notice of Motion, the March 7, 2021 letter from Nancy Hart, counsel for

Defendants DLA Piper and Caryn G. Schechtman (the "Rule 11 Letter," Ex. A[1]), the

accompanying Memorandum of Law and Declaration of Nancy Hart in Support of Defendants'

Motion Seeking Sanctions Pursuant to Rule 11, including the exhibits thereto, and such other and

further papers and proceedings as may be filed or had, Defendants will move this Court at a time

and date to be determined by this Court, before the Honorable Victor Marrero, United States

District Judge, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street,

---

[1] "Exhibit" or Ex." refer to the exhibits to the Declaration of Nancy Hart filed in conjunction with this Motion
and the accompanying Memorandum of Law in Support of this Motion.

Courtroom 15B, New York, NY 10007, for an order imposing sanctions against Plaintiff China

AI Capital Limited ("China AI") and its counsel, pursuant to Rule 11(b) and (c) of the Federal

Rules of Civil Procedure, for the filing of Plaintiff's Complaint in this action ("Compl.").

Specifically, Defendants seek an order dismissing the Complaint with prejudice, directing

payment to Defendants of their reasonable attorneys' fees and costs incurred in defending against

the Complaint and bringing this motion for sanctions, and granting such other and further

penalties, sanctions, and/or relief as the Court deems appropriate.

Prior to filing this Notice of Motion, Defendants satisfied the requirements of Fed. R.

Civ. P. 11(c). On March 7, 2022, Defendants' counsel sent Plaintiff's counsel the Rule 11

Letter, enclosing a draft of this Notice of Motion "describ[ing] the specific conduct that allegedly

violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2); *see* Ex. A. Twenty-one days have passed since

that letter was sent, and yet Plaintiff has declined to withdraw or appropriately correct its

Complaint or any of the claims or allegations therein. *Id.*

For the reasons stated below and as detailed in the accompanying Rule 11 Letter, which

is fully incorporated herein, China AI's Complaint violates Rule 11 for at least three reasons.

*First*, the Complaint is premised on demonstrably false and misleading allegations—namely

those concerning the sham arbitration allegedly initiated by Tongfang against Link Motion

concerning the FL Mobile transaction (the "Tongfang Arbitration"), the award purportedly

entered against Link Motion in that arbitration (the "Tongfang Award"), and DLA's limited role

in initial proceedings in *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (S.D.N.Y.) (the "*Baliga*

Action")—which are directly refuted by information and documents available to Plaintiff and its

counsel. *Second*, Plaintiff's malpractice claim is utterly devoid of legal merit: China AI cannot

establish any of the elements of a malpractice cause of action, and plainly lacks standing to bring

such a claim under applicable law. *Third*, China AI appears to be directly connected to Dr.

Vincent Shi[2], a former Link Motion director also represented by Plaintiff's counsel in the *Baliga*

Action who has, according to Link Motion's Receiver, engaged in a "pattern of egregious

misconduct in which he has looted [Link Motion], sabotaged its operations, and breached his

fiduciary duties," Dkt. 269 (2/9/2022 Receiver Ltr. to Court) at 2[3], and who, in direct violation of

an order of the Court in the *Baliga* Action, manufactured the sham Tongfang Arbitration and

Award. The instant action appears to be yet another manifestation of Dr. Shi's fraudulent

scheming, and an improper effort to use China AI to intimidate and extort Defendants with a

frivolous threat of hundreds of millions of dollars in nonexistent damages.

It is thus is inconceivable that Plaintiff and its counsel can reasonably and in good faith

maintain that it has conducted "an inquiry reasonable under the circumstances" and concluded

that "the factual contentions" in the Complaint "have evidentiary support," that its meritless

cause of action is warranted by "existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law or for establishing new law," or that this action was initiated

for anything other than the "improper purpose" of harassing Defendants. Fed. R. Civ. P.

11(b)(1)–(3). Sanctions are accordingly warranted.

**_Plaintiff's Claim Is Premised On Allegations That Are Demonstrably False._** Critical to

China AI's lone malpractice claim, purportedly asserted on behalf of Link Motion, is the

assertion that Link Motion was prevented from transferring its interests in a company called FL

Mobile to Tongfang Investment Fund Series SPC ("Tongfang") pursuant to a Stock Purchase

---

[2]  In status reports in the *Baliga* Action, the Receiver has explained that, "by late 2018," Link Motion's former Vice Chairman "was the sole shareholder of China AI," and that "Mr. Shi engineered the sale of LKM's Class B shares to his close associates through China AI in order to illegally secure greater power over LKM's board and control the Company through the additional voting power of the Class B shares." Dkt. 220-B at 2.

[3]  "Dkt." cites refer to the filings in the *Baliga* Action.

Agreement (the "SPA"), due to "the TRO entered because of Defendant's malpractice." Compl. ¶¶ 8, 59, 65. Plaintiff further alleges that a court-appointed Receiver "refused to perform or seek court approval for the Company to perform its obligations under the SPA" and "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group." *Id.* ¶ 86. As a result, Plaintiff claims that Tongfang commenced an arbitration (the "Tongfang Arbitration") that resulted in an award against Link Motion of approximately "USD$396,000,000" (the "Tongfang Award"). *Id.* ¶ 88.

Every aspect of these allegations is demonstrably false.

***First,*** on its face, the Tongfang Award is a sham, orchestrated by Dr. Shi in violation of the Court's February 1, 2019 preliminary injunction in the *Baliga* Action. *See* Dkt. 26. According to the Tongfang Award, on April 23, 2019, Tongfang filed a notice of arbitration against Xinjiang NQ Mobile Venture Capital Investment Co. Ltd., and Link Motion. At that time, the Receiver already had been appointed by Judge Marrero. Dkt. 26. The Court's February 1, 2019 Order imposing the injunction and appointing the Receiver mandated that the Baliga defendants (Link Motion, Vincent Wenyong Shi, Jia Lian, and Xiao Yu) ensure that all "litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." *Id.* at I.2. It further provided that "the Receiver shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise . . . wherever such proceeding is located, in the United States of America, the People's Republic of China, or elsewhere." *Id.* at II.2(e).

Despite this Order, the Receiver was never notified of the Tongfang Arbitration—apparently by design.[4] Dkt. 269 (2/9/2022 Receiver Letter to Court). According to the arbitrator, Link Motion was "not [] legally represented in this arbitration" and was only aware of the arbitration "through Mr. Shi." Dkt. 269-1 at 4. In fact, Dr. Shi, in direct violation of the *Baliga* Court's Order, unilaterally wrote to the arbitrator on May 5, 2019 to confirm that he alone "was acting on behalf of [Link Motion]." *Id.* This was false; Dr. Shi had been given no such authority. The Receiver has confirmed that "Defendant Shi secretly arrogated to himself the authority to speak for the Company in the Tongfang Arbitration." Dkt. 269 at 1. Thereafter, Dr. Shi, who appears to have an ownership interest in Tongfang (and likely instigated the Tongfang Arbitration)[5], thereafter refused to file *any* defense or respond to any of the arbitrator's questions or Tongfang's submissions on behalf of Link Motion, Dkt. 269-1 at ¶¶ 11–12, ensuring an award to Tongfang despite the meritless nature of its claim.

Compounding this malfeasance, Dr. Shi and Plaintiff's counsel deliberately withheld the Tongfang Award from the Court in the *Baliga* Action. *See* Dkt. 228 (claiming "Receiver has caused the Company to lose the Tongfang Arbitration" but attaching a wholly unrelated arbitral award brought by Zhongzhi Hi-Tech Overseas Invstment Ltd. against Dr. Shi personally); Dkt. 246 at 14–15 (clarifying in reply papers that the "Tongfang Arbitration" merely referred to the Zhongzhi arbitration brought against Dr. Shi). In fact, the *Baliga* Court only became aware of the actual Tongfang Award when the Receiver attached it to his recent letter. *See* Dkt. 269.

---

[4] Tongfang indisputably knew that the Receiver had been appointed, as the Receiver had made a demand for payment of the Tongfang note on April 19, 2019, just weeks before this arbitration was commenced.

[5] Like China AI, Dr. Shi appears to have significant ties to Tongfang. In the *Baliga* Action, the Receiver has explained that China AI is owned through the entity "True Hero Ventures Limited," which "also appears to be the entity through which [Dr.] Shi owned Tongfang." Dkt. 220 at 3.

**Second**, the allegation that Link Motion was "prevented" from conveying its interests in FL Mobile to Tongfang—or that the that the Receiver transferred those interests to an affiliate—is equally specious. The uniform record establishes that Link Motion fulfilled its duties more than a year before the Receiver was even appointed. Publicly available SEC filings *signed by Dr. Shi* (who is represented by Plaintiff's counsel in the *Baliga* Action) confirm the transfer of FL Mobile to Tongfang was completed on or before *December 2017*. Ex. B (Apr. 26, 2017 Link Motion 20-F) at 6 ("Pursuant to the contracts with these purchasers of FL Mobile and Showself (Beijing), we have completed the delivery of our interests in FL Mobile and Showself (Beijing), while the purchasers still have certain period to complete its payment obligations."); Ex. C (Dec. 15, 2017 Link Motion 6-K) at Ex. 99-1, 99.2 (announcing that Link Motion "has completed the FL Mobile Divestment" ). The Equity Pledge Agreement entered into between Tongfang and Link Motion at the same time Tongfang provided Link Motion with a senior note for RMB1.77 billion due December 14, 2018 (the "Senior Note"), further confirmed that Tongfang held the equity interests in FL Mobile and pledged its equity interests to Link Motion in the event Tongfang breached the agreement in any way, including by not repaying the debt or the interests of the Senior Note. Indeed, in a February 7, 2018 letter to Link Motion shareholders, Dr. Shi represented that *he* had taken possession of the FL Mobile shares at the request of the Tongfang-led purchasing group, and that "[t]he transaction completed on December 14, 2017." Ex. D (Feb. 9, 2018 Link Motion 6-K) at Ex. 99.1; *see also* Dkt. 262 at 2 n.5 (Plaintiff's counsel conceding that Dr. Shi "received the shares of FL Mobile . . . as part of the process of the closing of the transaction with Tongfang").

**Third**, Plaintiff's assertion that the Receiver "refused to perform or seek approval for the Company to perform its obligations under the SPA" is also untrue. Leaving aside that there were

no obligations left to fulfill, the Receiver has confirmed that he never received the Tongfang Arbitration demand or any other demand relating to the Tongfang transaction. Dkt. 269 at 1–2 (explaining that Dr. Shi "failed to notify the Receiver of the existence of [the Tongfang Arbitration]" and appears not to have "disclosed the fact that this Court had appointed a receiver over the Company" to the arbitrator). It was thus not the Receiver but Dr. Shi who exposed Link Motion to the ostensible $390 million damages award, a continuation of Dr. Shi's "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties." *Id.* at 2.

**Fourth**, China AI's assertion that DLA was engaged to "represent the Company competently in connection with the defense of Baliga's derivative claims and the Company's opposition to the motion for a TRO, preliminary injunction, and appointment of a receiver" is also knowingly and demonstrably false, further warranting sanctions. Compl. ¶ 59. DLA was only involved in the *Baliga* action for a very brief time, and exclusively in an effort to protect Link Motion's immediate interests. DLA was never engaged and never agreed to undertake the defense of the *Baliga* action. When the *Baliga* Action was filed, Link Motion was already in arrears with its previous legal bills; it refused to meaningfully engage with DLA regarding the potential new matter or provide guidance; and admitted that it could not afford to pay DLA to undertake the defense of the litigation. And although the Complaint cherry-picks communications to create the false impression that Link Motion's lack of response to DLA's inquiries was due to short notice and the time difference between the U.S. and China, the truth, as even a cursory review of the full record of communications makes clear, is that DLA repeatedly made efforts to receive instruction from the company for ***more than a month***, to no avail. In fact, DLA contacted Dr. Shi and/or Link Motion no fewer than ***twenty-one times***

between December 13 and January 21, seeking instruction and making clear that DLA could not take on a new matter unless Link Motion paid its bills and retained DLA. *See* Ex. A (Rule 11 Letter) at 7–11; *see also* Exs. E–I (email and WeChat communications between Defendants and Dr. Shi and/or the Link Motion Board, attached to Rule 11 Letter). Link Motion consistently declined to respond or engage, and expressly refused to retain or pay DLA in the *Baliga* Action. The Baliga Court permitted DLA to withdraw from the matter altogether because, as explained in a declaration by Ms. Schechtman, Link Motion did not "pay DLA's legal fees" and "failed to cooperate in the representation . . . by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively." Dkt. 28. Thus, Plaintiff's claim that "[a]fter failing to give the Defendants competent advice, the Defendants dropped the Company like the proverbial hot potato" is patently false. Compl. ¶ 84. DLA only withdrew once Link Motion confirmed that it had no intention to retain or compensate DLA, and after DLA had expended a substantial effort trying to get Link Motion to engage in the litigation process. As China AI and its counsel were undoubtedly aware (or should have been had the requisite reasonable inquiry been undertaken), DLA was never retained to substantively defend the *Baliga* Action, and thus it could not be negligent merely by endeavoring to protect Link Motion from a default judgment until it retained other counsel.

**_Plaintiff's Legal Claims Are Plainly Not "Warranted By Existing Law."_** China AI's malpractice claim is also not "warranted by existing law" because it is "'patently clear that [Plaintiff's] claim[s] ha[ve] absolutely no chance of success.'" *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127–29 (N.D.N.Y. 1996) (quoting *Sussman v. Bank of Isr.*, 56 F.3d 450, 457 (2d Cir. 1995)); *see* Fed. R. Civ. P. 11(b)(2) (legal contentions must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing

law"). Indeed, not only does Plaintiff completely fail to establish any of the requisite elements of malpractice, including negligence, proximate cause, and actual damages, Plaintiff critically lacks standing to assert a derivative claim under applicable Cayman Islands law. Any of these fatal defects is plainly sufficient to doom Plaintiff's claim.

*First*, Plaintiff has not (and cannot) pled that a "tight causal relationship exists" between DLA's conduct and the alleged damages to Link Motion. *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006). To the contrary, its claim would require finding that a long chain of speculative (and counterfactual) events would not have occurred but for Ms. Schechtman's conduct, including without limitation (1) the Receiver would not have been appointed; (2) the Receiver would not have refused to fulfill Link Motion's purported obligation to transfer its interests in FL Mobile; (3) the Receiver would not have then diverted the FL Mobile assets for himself; (4) Tongfang would not have brought a claim in an arbitration; (5) Dr. Shi would not have violated the Court's injunction order by purporting to act on behalf of Link Motion in the Tongfang Arbitration; (6) Dr. Shi would not have misled the arbitrator concerning his authority (or lack thereof) to so act; and (7) Dr. Shi would not have failed to defend the Tongfang Arbitration, resulting in an ostensible $390 million award. Not only are these allegations blatantly false and fraudulent, but they reflect an alleged causal chain riddled with myriad intervening causes between Defendants' alleged actions and the already-completed FL Mobile transaction or supposed Tongfang Award, including the Receiver's alleged misconduct, the Court's independent oversight of the receivership, and of course, Dr. Shi's own conduct in deliberately failing to defend the Tongfang Arbitration. *See, e.g.*, *Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014).

Plaintiff's causation argument is fatally flawed in other respects. As an initial matter, it is premised on a novel standing argument that had never previously been tested in a New York court. *See Lichtenstein v. Willkie Farr & Gallagher LLP*, 120 A.D.3d 1095, 1098 (2014) (dismissing malpractice claim based on failure to raise an argument regarding standing, when law was unsettled at the time). Moreover, after DLA's brief involvement in the action, successor counsel had more than a "sufficient opportunity to protect the [client's] rights" and raise the potential standing argument after Baliga disclosed in a court hearing in April 2019 that he only held American Depository shares in Link Motion, which also defeats causation and constitutes independent grounds to dismiss China AI's derivative claim. *Schutz*, 2013 WL 3357921, at *6. Unlike DLA, Link Motion's successor counsel was actually retained to research potential defenses and file substantive motions. Yet even though it knew that Baliga held ADSs and made lengthy motions to dismiss and to discharge the receivership, it did not timely raise any argument that Baliga lacked derivative standing.

**Second**, damages cannot be premised on the false and speculative allegations that Tongfang would have paid the full amount owed to Link Motion for FL Motion but for the receivership—particularly given that Tongfang had already failed to satisfy the Senior Note issued to Link Mobile in partial consideration for the FL Mobile transaction before the Receiver was ever appointed. *See Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) (finding allegations "wholly speculative and do not give rise to a reasonable inference that any damages exist"). Nor can Defendants be liable for a sham Tongfang Award that Tongfang has never sought to enforce, and which has not been paid by Link Motion. And neither Defendants nor the Receiver are responsible for alleged damages to Link Motion that are actually the result of misconduct of Dr. Shi, who manufactured the Tongfang Award, controls Link Motion's

primary bank accounts in China (which he froze without authorization), and has continued to misappropriate the Company's assets and frustrate the Receiver's efforts. Dkt. 220-C at 2–3; *see* Compl. ¶¶ 93–94 (alleging that the Receiver has "exhausted all the Company's available cash," "incurred unnecessary liabilities," and "prevented the Company from resolving employment claims by former employees in the PRC."). The Receiver—whose appointment and actions at all times have been overseen by the Court—is not responsible for any of this alleged harm to the Company, and thus neither is DLA or Ms. Schechtman even under China AI's erroneous causation theory

*Third*, Plaintiff cannot not pled that DLA was negligent because, as stated above, DLA was never retained to substantively defend Link Motion in the *Baliga* action. *See Allegrino v. Ruskin Moscou Faltischek, P.C.*, 2021 WL 5500084, at \*1 (2d Cir. Nov. 24, 2021) ("A plaintiff cannot state a legal malpractice claim against an attorney where the actions of the attorney giving rise to the claim fall outside of the scope of the attorney's representation.").

*Fourth*, Plaintiff lacks derivative standing to bring a claim on behalf of Link Motion. *See Winn v. Schafer*, 499 F. Supp. 2d 390, 397 (S.D.N.Y. 2007) (cited at Compl. ¶ 95). Cayman Islands law, which governs the issue of derivative standing, broadly prohibits derivative actions, subject to a few narrow exceptions. A plaintiff "must demonstrate that he meets the specific requirements of one of the well-established" exceptions to this general Cayman Islands rule "in order to have standing to bring suit." *Winn*, 499 F. Supp. 2d at 397. Plaintiff has not even attempted to plead that its negligence-based claim falls within any exception—and cannot.

**_Plaintiff's Claim Is A Transparent Attempt To Harass Defendants_**. China AI's claims also warrant sanctions because they were brought for the "improper purpose" of "harass[ing]" Ms. Schechtman and DLA. Fed. R. Civ. P. 11(b)(1) ("By presenting to the court a pleading . . .

an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] it is not being presented for any improper purpose, such as to harass . . . ."); *see also Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 130 (D.N.J. 1998) (imposing sanctions where the only purpose in bringing the lawsuit "was to harass [the defendant]"); *Carlton v. Jolly*, 125 F.R.D. 423, 431 (E.D. Va. 1989) ("Extorting a settlement . . . [is an] 'improper purpose[]' under Rule 11."). As noted above, the Receiver's investigation has uncovered substantial links between China AI and Dr. Shi, who has engaged in a "pattern of egregious misconduct in which he has looted the Company, sabotaged its operations, and breached his fiduciary duties." Dkt. 269 at 2. Plaintiff is now trying to use knowingly false allegations about the FL Mobile transaction, a manufactured Tongfang Award and a wholly meritless malpractice claim to conjure up hundreds of millions of dollars in nonexistent damages to intimidate and extort a settlement from Defendants.

*     *     *

For the foregoing reasons, sanctions are warranted against Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11.

Dated: March __, 2022
      New York, New York

                        Respectfully submitted,

                        GIBSON, DUNN & CRUTCHER LLP

                        By: _____
                            Nancy Hart
                            200 Park Avenue
                            New York, New York 10166-0193
                            nhart@gibsondunn.com
                            Telephone: (212) 351-4000

                            *Counsel for Defendants*

# EXHIBIT B

# 关于质押协议的备忘录

# Memorandum on Equity Pledge Agreement

甲方：NQ International Limited.

Party A: NQ International Limited.

乙方：Tongfang Investment Fund Series SPC

Party B: Tongfang Investment Fund Series SPC

鉴于，乙方为完成收购北京飞流九天科技有限公司 63%的股权及思享时代（北京）科技有限公司 65%的股权（以下合称"收购资产"，两家公司合称为"标的公司"）的交易（以下简称"交易"），于 2017 年 12 月 14 日发行总额为 1，770，000，000 元人民币的固定利率优先债券（以下简称"债券"）给甲方作为前述收购资产的部分转让对价。为担保乙方按期偿还债务，甲乙双方签署了质押协议，乙方将其持有的 FL Holdings 79.34%以及 Showself Inc. 65%的股份（以下简称"质押物"）质押给甲方作为担保。境外的质押物以及境内的收购资产均由乙方所有，境外质押物 FL Holdings 以及 Showself Inc.通过协议控制享有收购资产的权益，就质押权的实现及质押期间质押物的处置，双方重申并且认可以下事项：

Whereas, in order to close the transaction (hereinafter referred to as the "Transaction") on the acquisition of 63% equity of FL Mobile Jiutian Technology Co., Ltd. and 65% equity of Beijing Showself Technology Co., Ltd. (hereinafter referred to as the "Target Assets", the two companies above are referred to as the "Target Companies"), Party B issued a fixed-rate senior note totaled ￥1,770,000,000.00 as part of the consideration for the above Target Assets. To ensure Party B's debit repayment on time, Party A and Party B has entered into the Equity Pledge Agreement, under which Party B pledged to Party A 79.34% equity of FL Holdings and 65% equity of Showself Inc. in its holdings (hereinafter referred to as the "Pledged Equity"). Both the Target Assets and Pledged Equity are held by Party B, Pledged Equity offshore control and own economic benefits of the Target Assets through contractual arrangements. Both Parties restated and confirmed the following items on the enforcement of the pledge and the disposal of the Pledged Equity.

1、质押权的实现

1、Enforcement of the Pledge

1.1. 为保证甲方作为债权人及质押权人的合法权益，如果乙方产生违约之情形，包括但不限于未按债券的约定偿还债务或支付利息的，乙方承诺全力积极配合以确保甲方质押权之实现。

1.1 In order to protect the rights of Party A as the creditor and pledgee, if Party B breaches the Agreement in any means, including but not limited to not repaying the debit or the interests according to the requirements of the bonds, Party B committed that it will actively cooperate Party A to ensure the enforcement of Party B's Pledge right.

1.2. 乙方在此同意，甲方有权选择以乙方持有的 FL Mobile Inc. 79.34%以及 Showself Inc. 65%的股份或乙方境内资产北京飞流九天科技有限公司 79.34%以及思享时代（北京）科技有限公司 65%的股权来实现质押权。

1.2 Party B hereby agrees that Party A has the right to enforce its pledge right on either Pledged Equity, or Party B's domestic equity, including 79.34% equity interest in FL Mobile Jiutian Technology Co., Ltd. and 65% equity interest in Beijing Showself Technology Co., Ltd., in its sole discretion.

1.3. 乙方在此同意，甲方有权利自行或指定其他境内主体来实现质押权。

1.3 Party B hereby agrees that Party A has the right to enforce the pledge right itself or appoint a third party to enforce the pledge right.

2、乙方作为出质人，甲方作为质权人，乙方承诺如下：

2. Party B, as the pledgor committed to Party A, the pledgee as follows:

2.1 在任何时候，一旦甲方根据质押协议行使甲方的权利或实现质权时，不应有来自任何其他方的合法权利要求或正当干预。甲方有权以法律法规及双方签署之各协议规定的方式行使质权。

2.1 At any time, once Party A exercises its right or enforces its pledge right according to the Equity Pledge Agreement, there should be no claims or intervention from any other parties. Party A has the right to enforce its pledge right according to laws and regulations or agreements executed by both parties.

2.2 股权质押期间,未经甲方事先书面同意,标的公司不分配任何股息、红利,或采取任何利润分配方案。

2.2 During the term of Equity Pledge, the Target Companies shall not distribute any dividends, bonuses, or adopt any profit distribution schemes, without the prior written consent from Party A.

2.3 未经甲方事先书面同意,乙方不得向任何第三人转让股权,不得设立或允许存在任何可能影响甲方权利和利益的质押等任何其他权利负担或任何形式的第三人担保权益。

2.3 Party B shall not transfer any of the equities to any third parties, and shall not place or allow to place any pledges or other encumbrances that have a possible impact on the rights and interests of the Party A, or any kind of security interests of any third parties on the Pledged Equity, without the prior written consent from Party A.

2.4 将任何可能导致对出质人股权或其任何部分的权利产生重大财务影响的事件通知甲方,并获得甲方书面同意。

2.4 Party B shall give prior written notice to and received written consent from Party A on any events that have a possible financial impact on the Equites or any part of rights and interests of the Pledger.

3、法律适用和争议解决

3. Governing Law and Disputes Settlement

3.1 本备忘录的签署、有效性、履行和解释,以及争议的解决受中华人民共和国法律管辖,依中华人民共和国法律解释。

3.1 The execution, validity, performance and interpretation and the dispute settlement of this Memorandum shall be governed and construed by the laws or regulations of People's Republic of China.

3.2 在本备忘录各方就本备忘录项下条款的解释和履行发生争议时,各方应善意通过协商解决该争议。协商不成,任何一方均可将有关争议提交中国

国际经济贸易仲裁委员会按照其届时有效的仲裁规则仲裁解决。仲裁地点为北京，仲裁使用之语言为中文。仲裁裁决应是终局性的，对各方均有拘束力。

3.2 Any dispute on the interpretation and performance arising from this Memorandum shall be settled by both Parties through friendly consultation. In the event that such dispute cannot be settled through consultation, such dispute shall be submitted to China International Economic and Trade Arbitration Commission ("CIETAC") in Beijing to be arbitrated in accordance with the Arbitration Rules in force at the moment. Proceedings shall be conducted in Chinese. The award of CIETAC shall be final and binding upon the Parties.

3.3 除各方发生争议的事项外，各方仍应当本着善意的原则按照本备忘录的规定继续履行各自义务。

3.3 Except for the events at issue, each party shall continue the performance of the obligations under this Memorandum in good faith.

4、其他

4. Miscellaneous

4.1 本备忘录的任何修改、补充或变更、均须采用书面形式，经各方签字盖章后生效。

4.1 Any modifications. supplements or amendments shall be made in writing and come into force after being signed and sealed by the Parties.

4.2 各方在此确认本备忘录为各方在平等互利的基础之上达成的公平合理的约定。如果本备忘录项下的任何条款因与有关法律不一致而无效或无法强制执行、则该条款仅在有关法律管辖范围之内无效或无执行力，并且不得影响本备忘录其他条款的法律效力。

4.2 The Parties hereby confirm that the Memorandum is made based on equality and mutual benefits. If any provision of this Memorandum is invalid and unenforceable for being inconsistent with the applicable law. such invalidity or unenforceability does not in substance have any material adverse effect on the remaining provisions of this Memorandum.

4.3 本备忘录以中英文书就,以中文为准,正本一式两(2)份,各方各持一(1)份。

4.3 This Memorandum is made in Chinese and English, Chinese version shall be privilege, this Memorandum is executed in two(2) originals in and each Party keeps one(1) original.

[此页无正文，为《关于质押协议的备忘录》签署页]

甲方：NQ International Limited.

盖章：

日期：

乙方：Tongfang Investment Fund Series SPC

盖章：

日期：

# EXHIBIT C

| To: | vincent@lkmotion.com[vincent@lkmotion.com]; larry.rui.chi@gmail.com[larry.rui.chi@gmail.com] |
|---|---|
| Cc: | Kantrowitz, Jack[Jack.Kantrowitz@dlapiper.com]; Chang, Jason[Jason.Chang@dlapiper.com] |
| From: | Schechtman, Caryn G.[/O=PIPER & MARBURY/OU=PM/CN=RECIPIENTS/CN=CM11847] |
| Sent: | Thur 12/13/2018 6:19:20 PM (UTC) |
| Subject: | Fwd: Link Motion |

LKM Complaint FILED.pdf
ATT00001.htm

Please see below. Please instruct DLA if you would like us to respond. We should have a call immediately to discuss — as action will be taking place tomorrow.
In addition DLA has still not received a retainer so we would need to receive that as well.

Thank you

Sent from my iPhone

Begin forwarded message:

> **From:** <mcilento@seidenlegal.com>
> **Date:** December 13, 2018 at 12:51:27 PM EST
> **To:** <jack.kantrowitz@dlapiper.com>
> **Cc:** <jason.chang@dlapiper.com>, <caryn.schechtman@dlapiper.com>, Rob Seiden
> <rseiden@seidenlegal.com>
> **Subject: Link Motion**

**[EXTERNAL]**

Jack -

I understand that you and DLA Piper represent Link Motion Inc. I wanted to reach out and let you know that I filed the attached complaint today in the SDNY against, inter alia, Link Motion.

I would also like to advise you that I plan on going to the SDNY tomorrow to file an OSC for preliminary injunction and temporary receiver along with an immediate TRO against Link Motion in order to prevent any further transferring or dissipating of Link Motion assets. Please let me know if you would like to oppose this in the SDNY tomorrow. I don't have my papers finished yet, but my arguments will be based on the attached complaint.

Feel free to give me a call or email to discuss.

Thanks
Mike

 --
**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended

recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。



# EXHIBIT D

| DisplayName | Name | Message | Date |
|---|---|---|---|
| wenlige2012 | 史文勇 Vincent | I completely understand. Let me see what I can do that will make the most sense and I will get right back to you. | 01/21/2019 05:48:19 |
| wenlige2012 | 史文勇 Vincent | Thanks Caryn, I fully respect and appreciate your excellent work. But at this moment, it's very hard to make any further payment arrangement, even employees' payrolls were impacted. I'm very sorry about this situation and also bear huge pressure from many parties. I still try my best to solve issues or at least to maintain the company. But it is very hard to predict the timeframe and the results. | 01/21/2019 00:22:49 |
| wenlige2012 | 史文勇 Vincent | Vincent pls respond. The other option is we also withdraw as Counsel now | 01/21/2019 00:01:15 |
| wenlige2012 | 史文勇 Vincent | I am trying to do what is best for the company but we cannot work for no payment | 01/20/2019 13:53:40 |
| wenlige2012 | 史文勇 Vincent | We can do that after we put in this response today so that it does not have to be done in a "noisy" way | 01/20/2019 13:53:13 |
| wenlige2012 | 史文勇 Vincent | Vincent - I would like your consent for us to withdraw as your counsel from the litigation if you determine not to pay us to go forward | 01/20/2019 13:52:49 |
| wenlige2012 | 史文勇 Vincent | Do you want us to do the answer. We will need some payment. Otherwise I'm not sure what to recommend. You don't want a default judgment entered. Answers are not that expensive | 01/20/2019 12:54:07 |
| wenlige2012 | 史文勇 Vincent | Get the company more time to answer | 01/20/2019 12:53:32 |
| wenlige2012 | 史文勇 Vincent | Answer due on January 10.  We will try and get the client | 01/20/2019 12:53:22 |
| wenlige2012 | 史文勇 Vincent | With the complaint | 01/20/2019 12:53:09 |
| wenlige2012 | 史文勇 Vincent | Vincent it looks like the company was served with the co on December 20. Did you get a copy of the service. Your answer was due on Dec | 01/20/2019 12:53:03 |
| wenlige2012 | 史文勇 Vincent | Thank you. | 01/20/2019 09:13:56 |
| wenlige2012 | 史文勇 Vincent | Will call you soon | 01/20/2019 09:13:43 |
| wenlige2012 | 史文勇 Vincent | Vincent - you owe me the courtesy of a call. Please call me | 01/20/2019 09:05:52 |
| wenlige2012 | 史文勇 Vincent | Vincent please call me. we need to speak. | 01/19/2019 12:08:05 |
| wenlige2012 | 史文勇 Vincent | I need you to confirm that we can tell the court you aren't responding | 01/17/2019 19:11:40 |
| wenlige2012 | 史文勇 Vincent | We must speak. When can you talk? | 01/17/2019 19:11:01 |
| wenlige2012 | 史文勇 Vincent | But we need to discuss. | 01/17/2019 11:18:56 |

| DisplayName | Name | Message | Date |
|---|---|---|---|
| wenlige2012 | 史文勇 Vincent | Can you give me a quick call. I want to avoid withdrawing as Counsel on the derivative action because it will look bad for the company. Instead I would prefer for the company to agree that it isn't submitting papers on Jan 21 | 01/17/2019 11:18:51 |
| wenlige2012 | 史文勇 Vincent | Vincent - I have not heard from you. We have not prepared briefs and will not be in a position to represent the company in the derivative action | 01/17/2019 03:36:39 |
| wenlige2012 | 史文勇 Vincent | Please advise. If I do not hear from you in 24 hours I will need to alert the Court that we have not been engaged to proceed further on the Company's behalf. | 01/15/2019 16:56:38 |
| wenlige2012 | 史文勇 Vincent | When can we speak. I need to let the other side and the court know what we are doing. We have to start drafting today. It's one week out... | 01/14/2019 08:07:50 |
| wenlige2012 | 史文勇 Vincent | Thank you | 01/10/2019 21:09:17 |
| wenlige2012 | 史文勇 Vincent | Ok | 01/10/2019 21:09:13 |
| wenlige2012 | 史文勇 Vincent | Within half hour | 01/10/2019 21:09:07 |
| wenlige2012 | 史文勇 Vincent | When can we speak | 01/10/2019 21:08:50 |
| wenlige2012 | 史文勇 Vincent | Okay. Thank you | 01/08/2019 06:46:19 |
| wenlige2012 | 史文勇 Vincent | Yes | 01/08/2019 06:45:42 |
| wenlige2012 | 史文勇 Vincent | Okay. Friday morning Beijing Time? | 01/08/2019 06:45:26 |
| wenlige2012 | 史文勇 Vincent | I'm on travel, how about Friday morning when I go back to Beijing. | 01/08/2019 06:44:07 |
| wenlige2012 | 史文勇 Vincent | What time can we speak this morning | 01/08/2019 06:19:28 |
| wenlige2012 | 史文勇 Vincent | Can we speak? | 01/07/2019 12:51:00 |
| wenlige2012 | 史文勇 Vincent | Let me know when we can speak. The insurance policy has a 2.5 million dollar retention which means it won't kick in until the company has paid 2.5 million toward legal fees on the claim | 01/07/2019 09:05:47 |
| wenlige2012 | 史文勇 Vincent | Because we can't open the matter as we have not received the retainer and we are not up to date on payment | 01/06/2019 10:33:11 |
| wenlige2012 | 史文勇 Vincent | Vincent we won't be able to draft the briefs that are due on The 21st | 01/06/2019 10:32:48 |
| wenlige2012 | 史文勇 Vincent | I need payment on outstanding invoices to be able to open up a litigation matter | 12/28/2018 20:16:02 |
| wenlige2012 | 史文勇 Vincent | Any update on insurance for the derivative action. We need to give notice | 12/27/2018 14:24:19 |
| wenlige2012 | 史文勇 Vincent | To represent the company in the arbitration? | 12/22/2018 07:34:37 |

| DisplayName | Name | Message | Date |
|---|---|---|---|
| wenlige2012 | 史文勇 Vincent | Do you want DLA | 12/22/2018 07:34:24 |
| wenlige2012 | 史文勇 Vincent | Can you please bring us current on invoices. | 12/20/2018 22:00:45 |
| wenlige2012 | 史文勇 Vincent | Yes | 12/16/2018 19:22:59 |
| wenlige2012 | 史文勇 Vincent | Okay. Does everyone understand the order? | 12/16/2018 19:22:41 |
| wenlige2012 | 史文勇 Vincent | still keep discussing | 12/16/2018 19:22:14 |
| wenlige2012 | 史文勇 Vincent | Did you speak with the board | 12/16/2018 11:07:57 |
| wenlige2012 | 史文勇 Vincent | We haven't had it yet but when we do it will not go well bc Marcum won't be on it and we have made no progress | 12/15/2018 09:41:22 |
| wenlige2012 | 史文勇 Vincent | Oh, how about the call with nyse? | 12/15/2018 09:32:56 |
| wenlige2012 | 史文勇 Vincent | yeah | 12/15/2018 09:19:24 |
| wenlige2012 | 史文勇 Vincent | Do you still want to talk? | 12/15/2018 09:18:40 |
| wenlige2012 | 史文勇 Vincent | I just forwarded | 12/15/2018 05:55:39 |
| wenlige2012 | 史文勇 Vincent | i haven't received any email about it yet | 12/15/2018 01:10:28 |
| wenlige2012 | 史文勇 Vincent | Ok | 12/14/2018 21:05:48 |
| wenlige2012 | 史文勇 Vincent | Sure. 9am my time. Just wechat call me | 12/14/2018 21:05:39 |
| wenlige2012 | 史文勇 Vincent | Ok, how about 10:00pm? | 12/14/2018 21:05:24 |
| wenlige2012 | 史文勇 Vincent | We should have a call to discuss. I am available in your evening time | 12/14/2018 21:04:03 |
| wenlige2012 | 史文勇 Vincent | The company can make payroll and pay lawyers and accountants and engage in other everyday expenses but it cannot transfer or provide security interests in other assets | 12/14/2018 21:03:42 |
| wenlige2012 | 史文勇 Vincent | Let me know if you don't have it | 12/14/2018 21:02:51 |
| wenlige2012 | 史文勇 Vincent | Plaintiffs counsel also sent it to you. | 12/14/2018 21:02:42 |
| wenlige2012 | 史文勇 Vincent | Yes. It was entered in a modified form. Jason should be emailing it to you. I will send it to you now | 12/14/2018 21:02:01 |
| wenlige2012 | 史文勇 Vincent | Any update about TRO? | 12/14/2018 21:01:21 |
| wenlige2012 | 史文勇 Vincent | OK, thanks | 12/14/2018 07:16:30 |
| wenlige2012 | 史文勇 Vincent | Do you want me to send an associate? | 12/14/2018 06:36:05 |

| DisplayName | Name | Message | Date |
|---|---|---|---|
| wenlige2012 | 史文勇 Vincent | i saw it, Can we have call around 12:00 bj time? One hour later | 12/13/2018 21:50:02 |
| wenlige2012 | 史文勇 Vincent | Did you see the lawsuit that was filed. They are going into court in 12 hours to get a restraining order against the company | 12/13/2018 21:48:33 |
| | | | |
| 8717170310@ chatroom | 史文勇 Vincent,crystal, | Crystal it is important that I speak with you and Vincent as soon as possible. When can we speak. | 01/19/2019 12:08:49 |
| | | | |
| 6208195872@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师 | 史文勇 Vincent: I'm on travel, let's talk tonight | 12/17/2018 18:02:04 |
| 6208195872@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师 | Vincent we need to discuss how the company wants us to handle the derivative action | 12/17/2018 10:29:36 |
| 6208195872@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师 | Jason 平真 -- 美国律师: Hi @史文勇 Vincent see attached bill. Your prompt payment would be greatly appreciated. | 12/17/2018 07:31:59 |
| | | | |
| 8989134766@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师,fionakou🈁 | Has to be earlier. I have a 9am meeting | 12/18/2018 22:15:57 |
| 8989134766@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师,fionakou🈁 | 史文勇 Vincent: ok, let's talk in 9:00-10:00am your time? | 12/18/2018 22:15:37 |
| 8989134766@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师,fionakou🈁 | We have to discuss the derivative action. We need to enter a scheduling order on Friday US | 12/18/2018 22:14:22 |
| 8989134766@ chatroom | 史文勇 Vincent,Jack Kantrowitz,Jason 平真 -- 美国律师,fionakou🈁 | Vincent can We speak in your evening time. | 12/18/2018 22:14:02 |



**EXHIBIT E**

**To:** vincent@lkmotion.com[vincent@lkmotion.com]; larry.rui.chi@gmail.com[larry.rui.chi@gmail.com]
**Cc:** Kantrowitz, Jack[Jack.Kantrowitz@dlapiper.com]; Chang, Jason[Jason.Chang@dlapiper.com]
**From:** Schechtman, Caryn G.[/O=PIPER & MARBURY/OU=PM/CN=RECIPIENTS/CN=CM11847]
**Sent:** Fri 12/14/2018 2:52:01 AM (UTC)
**Subject:** Fwd: Link Motion

LKM OSC with TRO combined application.pdf
ATT00001.htm

We will send an associate to Court in 12 hours to advise the Court that we have received no instruction from the Company due to the time difference and language barriers.
It is possible that the Court will grant the application anyway. Even if the Court does not, it won't put it off past Monday.

How would you like us to handle?

CS

Sent from my iPhone

Begin forwarded message:

> **From:** "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
> **To:** "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
> **Cc:** "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>,
> "Rob Seiden" <rseiden@seidenlegal.com>, "Silverman, Marc" <Marc.Silverman@dlapiper.com>
> **Subject: RE: Re: Link Motion**
>
> Caryn - see attached combined application that I will present tomorrow. My cell phone number is 732-779-1380 - please feel free to call me tonight or tomorrow if you have any questions or need to discuss anything. You can also email. I'll assume your firm is not showing up unless you tell me otherwise.
>
> Thanks
> Mike
>
> --
> **Michael D. Cilento, Esq.**
> The Seiden Group
> Attorneys at Law
> 469 7th Ave, 5th Floor
> New York, NY 10018
> (Office) 646.766.1723
> www.seidenlegal.com
>
> CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.
>
> 保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。
>
> --------- Original Message ---------
> Subject: Re: Link Motion
> From: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>

Date: 12/13/18 4:09 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
Cc: "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason"
<Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>, "Silverman, Marc"
<Marc.Silverman@dlapiper.com>

Thank you for writing back. As we discussed, given the time difference and language barriers - it is
highly unlikely that we will have an opportunity to speak with the Company in any meaningful way
(or possibly at all) before 11am tomorrow.

Sent from my iPhone

On Dec 13, 2018, at 4:01 PM, "mcilento@seidenlegal.com" <mcilento@seidenlegal.com> wrote:

> Caryn - after speaking with you on the phone, I also spoke to my client, and reviewed
> the situation: we cannot agree to wait until next week to pursue the TRO. It would give
> too much time for the Individual Defendants to further transfer assets out of the
> Company. Please note that the TRO will simply seek an Order preventing the
> Individual Defendants from transferring or otherwise dissipating any more assets of
> LKM. This is something that your client may actually be in favor of.
>
> I will go at 11am (if that's any help) to the Orders and Judgment Clerk in room 200 of
> the SDNY courthouse. Please advise if someone will attend from your end.
>
> I will send you my papers when I am finished (within the next few hours), but again the
> TRO will be based on the fact that assets have been transfered out of LKM.
>
> Feel free to call or email to discuss.
>
>  --
> **Michael D. Cilento, Esq.**
> The Seiden Group
> Attorneys at Law
> 469 7th Ave, 5th Floor
> New York, NY 10018
> (Office) 646.766.1723
> www.seidenlegal.com
>
> CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended
> solely for the addressee(s) and may contain confidential and/or privileged information and may be
> legally protected from disclosure. If you are not the intended recipient of this message or their agent, or
> if this message has been addressed to you in error, please immediately alert the sender by reply email and
> then delete this message and any attachments. If you are not the intended recipient, you are hereby
> notified that any use, dissemination, copying, or storage of this message or its attachments is strictly
> prohibited.
>
> 保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正
> 确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用
> 作任何其他用途、或透露本邮件之内容。
>
>
>  --------- Original Message ---------
>  Subject: Re: Link Motion
>  From: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
>  Date: 12/13/18 3:16 pm
>  To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
>  Cc: "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason"
>  <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

Mike,

I tried calling you but there was no answer. Please give me a ring back at 9176505115.

Sent from my iPhone

On Dec 13, 2018, at 12:54 PM, "mcilento@seidenlegal.com" <mcilento@seidenlegal.com> wrote:

**[EXTERNAL]**

---

Jack -

I understand that you and DLA Piper represent Link Motion Inc. I wanted to reach out and let you know that I filed the attached complaint today in the SDNY against, inter alia, Link Motion.

I would also like to advise you that I plan on going to the SDNY tomorrow to file an OSC for preliminary injunction and temporary receiver along with an immediate TRO against Link Motion in order to prevent any further transferring or dissipating of Link Motion assets. Please let me know if you would like to oppose this in the SDNY tomorrow. I don't have my papers finished yet, but my arguments will be based on the attached complaint.

Feel free to give me a call or email to discuss.

Thanks
Mike

--
**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

<LKM Complaint FILED.pdf>

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to **postmaster@dlapiper.com**. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to **postmaster@dlapiper.com**. Thank you.



**EXHIBIT F**

**To:** litwxd@sina.com[litwxd@sina.com]; 'vincent'[vincent@lkmotion]; 'lianjia8123'[lianjia8123@sina.com]; '842460194'[842460194@qq.com]; 'ly'[ly@hh-medic.com]; 'zzlangk'[zzlangk@icloud.com]; 'wuxichun'[wuxichun@zhsr-capital.com]; '□*□_guolingyun'[guolingyun@nq.com]
**Cc:** Schechtman, Caryn G.[caryn.schechtman@dlapiper.com]; Kantrowitz, Jack[Jack.Kantrowitz@dlapiper.com]; Silverman, Marc[Marc.Silverman@dlapiper.com]
**From:** Chang, Jason[/O=PIPER & MARBURY/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHANG, JASON2CE]
**Sent:** Fri 1/18/2019 10:03:57 PM (UTC)
**Subject:** RE: Link Motion: Opposition to OSC / □□

PRIVILEGED & CONFIDENTIAL

Dear Vincent Shi and Board of Directors:
□□□□□□□□□□□□*
We have not heard back from you on the below. As a result, if we do not hear back from you within 24 hours, DLA will assume that we have Link Motion's consent not to oppose the motion. As explained below, we reiterate that if Link Motion does not respond, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets, attorneys' fees and costs, and other such relief that the Court may deem appropriate. It may also include relief as to Plaintiff's request for an order requiring the Defendants restore all assets transferred to third parties within the past ninety days. It may include other relief as well.
□□□□□□□□□□□□□□□□□□□□□□□* 24□□□□□□□□□□□□□* DLA Piper□□□□□□□□□□□□□□□* link Motion, inc□□□□□□□□□□□□□□□□□□□□□□□* link Motion, inc□□□□□□□□□□□□□□□□□□□□□□□□□*
□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□*
□□□□□□□□□□□□□□□□□□□□□□□□□□□□□*

Further, if we do not hear back from you within 24 hours, we will also assume that we have Link Motion's consent to withdraw from representation. In that event, we will file a letter with the Court that states:
□□□□□□□□□* 24□□□□□□□□□□□□□□□□□□□□□□□* Link Motion, inc□□□□□□□□* □□□□□□□□□□□*
□□□□□□□□□□□*

> Dear Hon. Marrero:
> □□* Marrero□□*
>
> We write to inform you that Defendant Link Motion Inc. ("Link Motion") will not submit an opposition to Plaintiff Wayne Baliga's motion for a preliminary injunction and appointment of a temporary receiver. Additionally, if the Court requires, DLA Piper will be seeking leave to withdraw from this matter.
> □□□□□□□□□□□□□* Link Motion, Inc□□□□* Wayne Baliga□□□□□□□□□□□□□□□□□□□□□□* * □□□□□□□* DLA Piper□□□□□□□□□□□□*
> Thank you,
> □*

If you disagree with any of the above, please respond within 24 hours. If you do not, we will assume we have your consent to not oppose the motion and to withdraw from representation if the Court requires.
□□□□□□□□□□□□□□* 24□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□*

**Jason Chang**
Of Counsel
**T** +1 415.836.2519
**F** +1 415.659.7319
**M** +1 415.595.8709
**E** jason.chang@dlapiper.com



DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
United States
www.dlapiper.com

**From:** Chang, Jason

**Sent:** Monday, January 14, 2019 9:36 PM
**To:** 'litwxd@sina.com' <litwxd@sina.com>; 'vincent' <vincent@lkmotion.com>; 'lianjia8123' <lianjia8123@sina.com>; '842460194' <842460194@qq.com>; 'ly' <ly@hh-medic.com>; 'zzlangk' <zzlangk@icloud.com>; 'wuxichun' <wuxichun@zhsr-capital.com>; '□□* _guolingyun' <guolingyun@nq.com>
**Cc:** Schechtman, Caryn G. <caryn.schechtman@dlapiper.com>; Kantrowitz, Jack <Jack.Kantrowitz@dlapiper.com>; Silverman, Marc <Marc.Silverman@dlapiper.com>
**Subject:** Link Motion: Opposition to OSC / □*

Dear Vincent Shi and Board of Directors:
□□□□□□□□□*

On December 14, 2018, Plaintiff Wayne Baliga filed an Order to Show Cause for Temporary Restraints, for a Preliminary Injunction, and for the appointment of a Temporary Receiver against Defendant Link Motion, Inc., Vincent Wenyong Shi, Jia Lian, and Xiao Yu ("Defendants"). Plaintiff claims that relief is required because Defendants have allegedly: (1) failed to take steps to prevent Link Motion's involuntary delisting from NYSE; (2) directed or allowed Link Motion to abandon certain business lines, including ceasing communications with a subsidiary in Finland and Texas, and operating entities in China; and, (3) wrongfully transferred ownership interests of Link Motion's assets in Showsell, SyberOS and Rideshare businesses to unknown third parties, without the consent or knowledge of the Board or shareholders.
2018* 12* 14□□□* Wayne Baliga□□□□□□□□* (Link Motion, Inc.)* □* □* Jia Lian* Xiao Yu* * □* □□* □□□* * □□* □□□□□□* * □* □□□□□* * □□□□□□□□□□□□□□* 1□□□□□□□□□□□□□□□□□□□□□□□□□* 2□□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□* 3□□□□□□□□□□□□□□□□□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□□□□□□□*

On December 14, 2018, the Court entered an order to temporarily restrain and enjoin Defendants from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion" (the "TRO"). Following the issuance of the TRO, the parties agreed to extend the TRO pending the Court's determination of the Plaintiff's motion for preliminary injunction and a temporary receiver.
2018* 12* 14□□□□□□□□□□□□□□□* "□□□□□□□□□□□□□□□□□□□□□* /□□□□□□□□□□□□□□□□□□□* □□□□□□□* "* "□□□□* "□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□* □*

Defendants opposition to Plaintiff's motion is due next Monday, January 21, 2019. To oppose the motion, we should get an affidavit or other evidence from Defendants that explains the business or financial reasons for the transfers and abandonment of business. Also, we need to understand what is going on with NYSE delisting, and whether the Company will be getting relisted, or the Company's reasons for not filing forms on time.
□□□□□□□□□□□□□□□□□* 2019* 1* 21□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□*

If we do nothing, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets. It may also include relief as to Plaintiff's request for an order requiring the Defendants restore all assets transferred to third parties within the past ninety days.
□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□□*

We have repeatedly asked for instruction on how to proceed but have not received any guidance from the Company or the individual defendants and advised that if we do not receive payment for legal services, we cannot take on this litigation matter. Attached is the Plaintiff's motion and complaint, and the TRO for reference.
□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□□* □□□□□□□□□□□□□□□□□□□□□□□□*

Thank you.
□□*

**Jason Chang**
Of Counsel
**T** +1 415.836.2519
**F** +1 415.659.7319
**M** +1 415.595.8709
**E** jason.chang@dlapiper.com

DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
United States
www.dlapiper.com

# EXHIBIT G

**Cc:**       Silverman, Marc[Marc.Silverman@dlapiper.com]
**To:**       vincent@lkmotion.com[vincent@lkmotion.com]
**From:**   Schechtman, Caryn G.[/O=PIPER & MARBURY/OU=PM/CN=RECIPIENTS/CN=CM11847]
**Sent:**   Sun 1/20/2019 6:50:38 PM (UTC)
**Subject:**  Fwd: Link Motion 1:18-cv-11642
Link _ Stip Prelim Inj and Answer.DOC
ATT00001.htm

Vincent please see the attached. We plan to send it to opposing counsel today.
CS


DRAFT


Mike,


After consultation with the Company, it has determined not to oppose the preliminary injunction.  It would like, however, your consent to an extension of its time to answer the complaint for another 30 days to determine whether it will defend the remaining aspects of the Complaint.


If you agree, we have prepared the attached stipulation for your review that would inform the Court that the Company is not opposing the preliminary injunction and that it has until February 20, 2019 to answer or move to dismiss the Complaint.


Best,




**From:** mcilento@seidenlegal.com <mcilento@seidenlegal.com>
**Sent:** Friday, December 28, 2018 10:16 AM
**To:** Silverman, Marc <Marc.Silverman@dlapiper.com>; Schechtman, Caryn G. <caryn.schechtman@dlapiper.com>
**Cc:** Kantrowitz, Jack <Jack.Kantrowitz@dlapiper.com>; Chang, Jason <Jason.Chang@dlapiper.com>; Rob Seiden <rseiden@seidenlegal.com>
**Subject:** RE: Re: Link Motion 1:18-cv-11642


**[EXTERNAL]**

---

See attached Order from Judge Broderick (for some reason not Marrero) endorsing your proposed schedule. Nice job.


-Mike


--
**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor

New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

**保密申明**：本电邮(包括任何附件)可能含有机密资料并**受法律保护**。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: RE: Re: Link Motion 1:18-cv-11642
From: "Silverman, Marc" <Marc.Silverman@dlapiper.com>
Date: 12/21/18 2:25 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>, "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Cc: "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

You too, Mike.  Thanks much.

**From:** mcilento@seidenlegal.com <mcilento@seidenlegal.com>
**Sent:** Friday, December 21, 2018 2:15 PM
**To:** Silverman, Marc <Marc.Silverman@dlapiper.com>; Schechtman, Caryn G. <caryn.schechtman@dlapiper.com>
**Cc:** Kantrowitz, Jack <Jack.Kantrowitz@dlapiper.com>; Chang, Jason <Jason.Chang@dlapiper.com>; Rob Seiden <rseiden@seidenlegal.com>
**Subject:** RE: Re: Link Motion 1:18-cv-11642

**[EXTERNAL]**

---

Enjoy the holidays!

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure.

If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

**保密申明**：**本**电邮(包括任何附件)**可能含有机密**资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: RE: Re: Link Motion 1:18-cv-11642
From: "Silverman, Marc" <Marc.Silverman@dlapiper.com>
Date: 12/21/18 1:37 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>, "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Cc: "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

Mike,

Just a few nits and changes to signature block, and we are signed off:

Defendant respectfully requests that the Court enter the following schedule: an opposition response date of January 21, 2019, and a reply date of January 28, 2019. Plaintiffs seeks a shorter schedule despite already having a TRO in place restricting any transfers and despite Defendant's consent to keep the TRO in place until a determination on the motion is made by the Court. Plaintiff's motion seeks extraordinary relief to install a receiver over Link Motion. All of the Defendants and Link Motion's operations are located in China, which is a 13 hour time difference from New York. Moreover, there are significant language barriers, which result in the parties needing additional time and resources to obtain translation of both verbal and written communications. In light of this as well as the upcoming holidays, Defendant requests the Court enter the schedule Defendant has set forth.

**DLA Piper LLP (US)**

By:  */s/ Caryn G. Schechtman*

Caryn G. Schechtman

Marc A. Silverman

1251 Avenue of the Americas, 27th Floor

New York, NY 10020

Tel:  212-335-4500

Fax:  212-335-4501

caryn.schechtman@dlapiper.com

marc.silverman@dlapiper.com

*Counsel for Defendant, Link Motion Inc.*

**From:** mcilento@seidenlegal.com <mcilento@seidenlegal.com>
**Sent:** Friday, December 21, 2018 1:20 PM
**To:** Schechtman, Caryn G. <caryn.schechtman@dlapiper.com>
**Cc:** Silverman, Marc <Marc.Silverman@dlapiper.com>; Kantrowitz, Jack <Jack.Kantrowitz@dlapiper.com>; Chang, Jason <Jason.Chang@dlapiper.com>; Rob Seiden <rseiden@seidenlegal.com>
**Subject:** RE: Re: Link Motion 1:18-cv-11642

Thanks. Have a look at the attached final letter. Please confirm okay, and I will file.

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: Re: Link Motion 1:18-cv-11642
From: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Date: 12/21/18 1:12 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
Cc: "Silverman, Marc" <Marc.Silverman@dlapiper.com>, "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

For now we represent the Company

Sent from my iPhone

On Dec 21, 2018, at 1:07 PM, "mcilento@seidenlegal.com"
<mcilento@seidenlegal.com> wrote:

> If the answer is yes you are representing everyone, I will change my
> language which indicates you only represent the company. If you don't
> represent the individuals, I will change the "defendants" language in your
> statement to the singular. Thanks

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any
attachments are intended solely for the addressee(s) and may contain confidential and/or
privileged information and may be legally protected from disclosure. If you are not the
intended recipient of this message or their agent, or if this message has been addressed
to you in error, please immediately alert the sender by reply email and then delete this
message and any attachments. If you are not the intended recipient, you are hereby
notified that any use, dissemination, copying, or storage of this message or its
attachments is strictly prohibited.

**保密申明**：本电邮(包括任何附件)可能含有机密资料并受法律保护。
如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不
要将本电邮进行复制并用作任何其他用途、**或透露本**邮件之内容。

--------- Original Message ---------

Subject: RE: Re: Link Motion 1:18-cv-11642
From: mcilento@seidenlegal.com
Date: 12/21/18 12:55 pm
To: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Cc: "Silverman, Marc" <Marc.Silverman@dlapiper.com>,
"Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang,
Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden"
<rseiden@seidenlegal.com>

Thanks. One other question: your statement reads as if you are
representing all the Defendants, including the individuals - is this
the case?

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: Re: Link Motion 1:18-cv-11642
From: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Date: 12/21/18 12:50 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
Cc: "Silverman, Marc" <Marc.Silverman@dlapiper.com>, "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

We will remove it.

Sent from my iPhone

On Dec 21, 2018, at 12:48 PM, "mcilento@seidenlegal.com" <mcilento@seidenlegal.com> wrote:

[EXTERNAL]

Marc - if you include the line about Plaintiff's originally agreeing, I will have to include more language, including, inter alia, that I checked my notes and confirmed the clerk asked us to have a hearing within the first two weeks of January, and that I let you know this immediately after our first call which did not end in an agreement but you saying you have to check back with Caryn. Would you be willing to simply remove that one line from your statement? If not, no problem.

Thanks

Mike

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: RE: Re: Link Motion 1:18-cv-11642
From: "Silverman, Marc" <Marc.Silverman@dlapiper.com>
Date: 12/21/18 12:39 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>, "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Cc: "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

Thanks, Mike.  Please add the following for our statement:

Defendants respectfully request that the

Court enter the following schedule: an opposition response date of January 21, 2019, and a reply date of January 28, 2019. Plaintiffs originally agreed to this schedule but now have appeared to change their minds. Plaintiffs seek a shorter schedule despite already having a TRO in place restricting any transfers and despite Defendants' consent to keep the TRO in place until a determination on the motion is made by the Court. Plaintiffs' motion seeks extraordinary relief to install a receiver over Link Motion. All of the Defendants and Link Motion's operations are located in China, which is a 13 hour time difference from New York. Moreover, there are significant language barriers, which result in the parties needing additional time and resources to obtain translation of both verbal and written communications. In light of this as well as the upcoming holidays, Defendants request the Court enter the schedule Defendants have set forth.

**From:** mcilento@seidenlegal.com <mcilento@seidenlegal.com>
**Sent:** Friday, December 21, 2018 10:18 AM
**To:** Schechtman, Caryn G. <caryn.schechtman@dlapiper.com>
**Cc:** Silverman, Marc <Marc.Silverman@dlapiper.com>; Kantrowitz, Jack <Jack.Kantrowitz@dlapiper.com>; Chang, Jason <Jason.Chang@dlapiper.com>; Rob Seiden <rseiden@seidenlegal.com>
**Subject:** RE: Re: Link Motion 1:18-cv-11642

Marc and Caryn - see attached joint letter that we need to submit today. I decided to add a few-sentences statement, so I imagine you will want to do so as well. Please fill in your statement, send back to me, and let me know if you have any other issues to discuss. I am hoping to stop working a bit early today, so please revert sometime soon if possible.

Thanks

Mike

--

**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

--------- Original Message ---------

Subject: Re: Link Motion 1:18-cv-11642
From: "Schechtman, Caryn G." <caryn.schechtman@dlapiper.com>
Date: 12/20/18 1:01 pm
To: "mcilento@seidenlegal.com" <mcilento@seidenlegal.com>
Cc: "Silverman, Marc" <Marc.Silverman@dlapiper.com>, "Kantrowitz, Jack" <Jack.Kantrowitz@dlapiper.com>, "Chang, Jason" <Jason.Chang@dlapiper.com>, "Rob Seiden" <rseiden@seidenlegal.com>

Marc will get back to you around 4:30 today after he and I speak internally. Thanks.

Sent from my iPhone

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A MOBILE INC.),<br><br>Plaintiff,<br><br>vs.<br><br>LINK MOTION INC. (F/K/A MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, and XIAO YU,<br><br>Defendants,<br><br>and<br><br>LINK MOTION INC. (F/K/A MOBILE INC.),<br><br>Nominal Defendant. | Case No.: 1:18-CV-11642-VM<br><br>**STIPULATION OF NON-OPPOSITION TO A PRELIMINARY INJUNCTION AND CONSENT ORDER TO EXTEND TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT** |

This matter having been brought before the Court on the joint application of Defendants Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or "Defendant"), by its counsel, DLA Piper LLP (US), and Plaintiff Wayne Baliga, derivatively on behalf of Link Motion, by his counsel The Seiden Group, for the entry of a Stipulation of Non-Opposition to a Preliminary Injunction and Consent Order to extend the time for Defendant to answer, move or otherwise respond to the Complaint filed on December 13, 2018:

WHEREAS, on December 13, 2018, Plaintiff filed a Verified Shareholder Derivative Complaint against Link Motion, and Vincent Wenyong Shi, Jia Lian, and Xiao Yu ("Individual DefendantS") which asserted a cause of action against Link Motion for the appointment of a receiver, a cause of action against the Individual Defendants for breach of fiduciary duties, a cause of action against the Individual Defendants for unjust enrichment, and causes of action

against Link Motion and the Individual Defendants as to violations of Sections 10(b) and Section 20(a) of the Exchange Act and Rule 10b-5;

WHEREAS, on December 14, 2018, Plaintiff filed an Order to Show Cause with Temporary Restraining Order ("TRO"), Preliminary Injunction, and Temporary Receiver;

WHEREAS, on December 14, 2018, the Court granted a fourteen (14) day TRO temporarily restraining and enjoining Defendants from transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other in, any assets belonging to Link Motion, but not restraining Link Motion from processing normal day-to-day operational costs, including but not limited to payroll, attorneys' fees, and auditor fees, and further ordered the parties to confer on whether Link Motion consented to an order beyond the initial fourteen (14) day period and to set forth a briefing schedule with respect to Defendant's opposition and Plaintiff's reply in further support of Plaintiff's request for a preliminary injunction and appointment of a temporary receiver (the "Preliminary Injunction");

WHEREAS, on December 21, 2018, the Parties wrote the Court informing it that Link Motion consented to extending the TRO beyond the initial fourteen (14) day period pending this Court's ruling on Plaintiff's Preliminary Injunction, but the parties could not agree on a proposed briefing schedule;

WHEREAS, on December 28, 2018, the Honorable Vernon S. Broderick ordered Link Motion to file its opposition by January 21, 2018, and Plaintiff to file its reply by January 28, 2019;

WHEREAS, on December 20, 2018, Plaintiff filed an affidavit of service stating that Link Motion had been served on that date through service through Diana Arios-Hernandez, and it's time to answer, move or otherwise respond to the Complaint was January 10, 2019;

IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS, SUBJECT TO APPROVAL BY THE COURT:

1.      Defendant Link Motion does not oppose the Preliminary Injunction.

2.      Defendant Link Motion's time to move, answer, or otherwise respond to the Complaint shall be extended until February 20, 2019.

3.      By entering into this stipulation, Link Motion contends that it is making only a limited, and not general appearance, for the sole purpose of obtaining an extension of time to answer, move or otherwise respond to the Complaint.  Link Motion has preserved and is not waiving and have not waived any objections, defenses or responses to the Complaint.


DATED:  January ___, 2019                    Respectfully Submitted,


**THE SEIDEN GROUP**                            **DLA PIPER LLP (US)**


By: _*DRAFT*_____          By: _*DRAFT*_____
Michael D. Cilento                           Caryn G. Schechtman
469 Seventh Avenue, Suite 502                Marc A. Silverman
New York, New York 10018                     1251 Avenue of the Americas
Tel: (646) 766-1723                          New York, NY 10020
Email: mcilento@seidenlegal.com              Tel:  212-335-4500
                                             Fax:  212-335-4501
*Lead Counsel for Plaintiff*                 caryn.schechtman@dlapiper.com
                                             marc.silverman@dlapiper.com

                                             *Counsel for Defendant Link Motion Inc.*


**SO ORDERED**:

Dated:  January ____, 2019

                                    _____
                                    UNITED STATES DISTRICT JUDGE