**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHINA AI CAPITAL LIMITED, a British Virgin
Islands limited company, derivatively on behalf of
LINK MOTION INC., a Cayman Islands limited
company f/k/a NQ MOBILE INC.,

               Plaintiff,

          -against-

DLA PIPER LLP (US), a Maryland limited
liability partnership, and CARYN G.
SCHECHTMAN, a natural person,

               Defendants,

          -and-

LINK MOTION INC., a Cayman Islands limited
company f/k/a NQ MOBILE INC,

               Nominal Defendant.

Case No. 1:21-cv-10911-VM-VF

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION SEEKING SANCTIONS PURSUANT TO RULE 11

FELICELLO LAW P.C.
366 Madison Avenue, 3rd Floor
New York, New York 10017
Tel. (212) 584-7806
*Attorneys for Plaintiff*
*China AI Capital Limited*

Of counsel:

  Rosanne E. Felicello
  Michael James Maloney
  Kristie M. Blase

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... ii

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS .......................................................................................1

   *Defendants Represented the Company Incompetently* ......................................... 1

   *Defendants' Negligence Caused the Company to Lose a Valuable Asset*............... 3

   *The Company has Incurred the Receivership Costs* ............................................ 7

RULE 11 STANDARD...........................................................................................7

ARGUMENT .......................................................................................................8

I.         THE ALLEGATIONS IN THE COMPLAINT ARE WELL-SUPPORTED AND THE COMPLAINT DOES NOT VIOLATE RULE 11(b)(3). ............................8

   A.    DLA represented the Company in the *Baliga Action*. ............................... 9

   B.    The Note was outstanding when the *Baliga Action* was filed. .............................. 10

   C.    Defendants did not provide substantive advice, failed to assert any defenses, and acted without informed consent. ........................................................ 11

   D.    The Tongfang Arbitration was not a sham........................................................ 12

II.        PLAINTIFF'S CLAIM IS SUPPORTED BY EXISTING LAW AND DOES NOT VIOLATE RULE 11(b)(2). .......................................................................15

   A.    Defendants had an attorney-client relationship with the Company. ....................... 15

   B.    Defendants failed to provide competent legal representation.................................. 15

   C.    Defendants' malpractice was the proximate, but-for cause of the damages resulting from the TRO, preliminary injunction, and Receiver's appointment. ..................... 18

   D.    The Company has suffered actual damages....................................................... 21

III.     PLAINTIFF HAS STANDING TO BRING THE LEGAL MALPRACTICE CLAIM AND THIS ACTION DOES NOT VIOLATE RULE 11(b)(2). ..............22

IV.     PLAINTIFF'S COMPLAINT WAS BROUGHT FOR A PROPER PURPOSE AND DOES NOT VIOLATE RULE 11(b)(1).......................................................25

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*601 W. 26 Corp. v. Solitron Devices, Inc.*, 291 F. Supp. 882 (S.D.N.Y. 1968) ........................... 17

*Abner Realty, Inc. v. Administrator of General Services Administration*, 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042 (S.D.N.Y. July 17, 1998) ........................................ 25

*Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32 (2d Cir. 1992) ................. 8

*Barnett v. Schwartz*, 47 A.D.3d 197 (App. Div. 2d Dep't 2007) ................................................. 20

*Bayit Care Corp. v. Einbinder*, 41 Misc. 3d 1202(A), 1202A, 977 N.Y.S.2d 665 (Sup. Ct. N.Y. Cty. Sept. 24, 2013) ..................................................................................................... 9

*Billiard Balls Mgmt., LLC v. Mintzer Sarowitz Zeris Ledva & Meyers, LLP*, 54 Misc. 3d 936 (Sup. Ct. N.Y. Cty. 2016) .......................................................................................... 9

*Bishop v. Cty. of Suffolk*, CV 13-446 (JS) (AKT), 2019 U.S. Dist. LEXIS 149800 (E.D.N.Y. 2019) ........................................................................................................................ 8

*Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38 (1990) ............................................. 22

*Cooke v. Laidlaw Adams & Peck, Inc.*, 126 A.D.2d 453 (1st Dep't 1987) .................................... 9

*Demetro v. Dormitory Auth. of the State of N.Y.*, 170 A.D.3d 437 (N.Y. App. Div. 1st Dep't 2019) ................................................................................................................. 19, 20

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (S.D.N.Y. 2008) ................................................. 8

*Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317 (S.D.N.Y. 2008) ........................................................................................................................ 18

*Fielding v. Kupferman*, 65 A.D.3d 437 (App. Div. 1st Dep't 2009) ........................................... 16

*Frederick v. Meighan*, 75 A.D.3d 528 (App. Div. 2d Dep't 2010) ............................................. 10

*Garten v. Shearman & Sterling LLP*, 52 A.D.3d 207 (N.Y. App. Div. 1st Dep't 2008) ............. 20

*Genesis Merch. Partners, L.P. v. Gilbride, Tusa, Last & Spellane, LLC*, 157 A.D.3d 479 (App. Div. 1st Dep't 2018) ............................................................................................... 10

*Gillin v. Patterson, Belknap, Webb & Tyler*, 1994 N.Y. Misc. LEXIS 697 (1st Dep't 1994) ...... 18

*Gryphon Dev. LLC v. Town of Monroe*, 08 Civ. 3252 (WCC), 2009 WL 10696666 (S.D.N.Y. Feb. 18, 2009) ............................................................................................................. 8

*Hain v. Jamison*, 28 N.Y.3d 524 (2016) ............................................................................ 19, 20

*Holzman v. Guoqiang Xin*, No. 12-CV-8405 AJN, 2015 U.S. Dist. LEXIS 125518, 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ............................................................................. 17

*Houraney v. Burton & Assocs., P.C.*, 2010 U.S. Dist. LEXIS 105020 (E.D.N.Y. Sept. 7, 2010) 18

*In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94 (D.N.H. 2004) ............................................... 23

*Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012) ............ 7

*Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003) .................................................. 8

*Jonns v. Fischbarg*, Index No. 150729/2017, 2018 N.Y. Misc. LEXIS 4160, 2018 NY Slip Op. 32353(U) (N.Y. Sup. Ct. N.Y. Cty. Sept. 18, 2018) ............................................ 15

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61 F.3d 123 (2d Cir. 1995)  8

*Kirk v. Heppt*, 2009 U.S. Dist. LEXIS 80989 (S.D.N.Y. Sept. 3, 2009) ......................... 20

*Knipe v. Skinner*, 19 F.3d 72 (2d Cir. 1994) ................................................................... 8

*Lama Holding Co. v. Shearman & Sterling, Bankers Tr. Co.*, 758 F. Supp. 159 (S.D.N.Y. 1991) ............................................................................................................................... 16

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253 (2d Cir. 1996) ............... 22

*Malta v. Fox Horan & Camerini, LLP*, No. 17 Civ. 3228 (JFK), 2018 U.S. Dist. LEXIS 40150 (S.D.N.Y. Mar. 12, 2018) ...................................................................................... 18

*Matter of Renren Inc. Derivative Litig. v. XXX*, 2020 N.Y. Misc. LEXIS 2132, 67 Misc. 3d 1219(A), 127 N.Y.S.3d 702 (Sup. Ct. NY Cty. May 20, 2020) ............................... 23

*Mazella v. Beals*, 27 N.Y.3d 694 (2016) ..................................................................... 19, 20

*Microbot Med., Inc. v. All. Inv. Mgmt.*, 19 Civ. 03782 (GBD) (RWL), 2020 U.S. Dist. LEXIS 151410 (S.D.N.Y. Aug. 18, 2020) ....................................................................... 8

*Microbot Med., Inc. v. All. Inv. Mgmt.*, 19 Civ. 03782 (GBD) (RWL), 2020 U.S. Dist. LEXIS 170587, 2020 WL 5600852 (S.D.N.Y., Sept. 17, 2020) ............................................. 8

*Nat'l Pshp. Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289 (11th Cir. 1998) .................... 24

*Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) ................................................ 22

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996) .................................................... 9

*O'Malley v. N.Y.C. Transit Authority*, 896 F.2d 704 (2d Cir. 1990) ............................ 25

*Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993) ............................................ 8

*Romanian Am. Interests, Inc. v. Scher*, 94 A.D.2d 549 (App. Div. 2d Dep't 1983).................... 10

*Romano v. Ficchi*, 889 N.Y.S.2d 507 (Sup. Ct. Kings Cty. 2009) ................................. 12

*Rondin v. Goldblatt*, No. 15-cv-4235 (PKC), 2016 U.S. Dist. LEXIS 87987 (S.D.N.Y. July 7, 2016) ...................................................................................... 16

*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438 (2007) ................................ 22

*Schauer v. Joyce*, 54 N.Y.2d 1 (1981) .......................................................... 21

*Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 12 Civ. 9459 (PAE), 2013 U.S. Dist. LEXIS 93762 (S.D.N.Y. July 2, 2013) .................................................... 21

*Sehgal v. DiRaimondo*, 165 A.D.3d 435 (N.Y. App. Div. 1st Dep't 2018) ................................. 20

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290 (S.D.N.Y. 2017) ....... 18

*Smartix Int'l Corp. v. Garrubbo, Romankow & Capese, P.C.*, 2009 U.S. Dist. LEXIS 29114 (S.D.N.Y. Mar. 30, 2009) ............................................................. 20

*Spector v. Mermelstein*, 361 F. Supp. 30 (S.D.N.Y. 1972) ....................................... 12

*Spector v. Mermelstein*, 485 F.2d 474 (2d Cir. 1973) ........................................... 12

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003) ............................... 8, 9

*Tiffany Gen. Holding Corp. v. Speno, Goldberg, Steingart & Penn, P.C.*, 278 A.D.2d 306 (N.Y. App. Div. 2d Dep't 2000) ............................................................ 22

*Villar v. City of N.Y.*, 540 F. Supp. 3d 437 (S.D.N.Y. 2021) .................................... 10

*Winn v. Schafer*, 499 F. Supp. 2d 390 (S.D.N.Y. 2007) ........................................ 23

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ................................................ 17, 19

**Rules**

Fed. R. Civ. P. 11(b)(1)......................................................................... ii, 1, 25

Fed. R. Civ. P. 11(b)(2)......................................................................... ii, 1, 15, 23

Fed. R. Civ. P. 11(b)(3)......................................................................... ii, 1, 9

N.Y. R. Prof. Conduct 1.0(j) ..................................................................... 16

N.Y. R. Prof. Conduct 1.1 ........................................................................ 16

N.Y. R. Prof. Conduct 1.2(c) ........................................................................................... 10

**Other Authorities**

N.Y. R. Prof. Conduct 1.1, Comment [5] ......................................................................... 16

N.Y. R. Prof. Conduct 1.3, comment [4] .......................................................................... 16

Restatement 1st of Security, § 22(b) ................................................................................. 11

*Top Jet Enterprises Ltd. v. Sino Jet Holding Ltd.*, 2018 (1) CILR 18 (Caymans Island Grand
    Court Jan. 19, 2018) ................................................................................................... 23

Plaintiff China AI Capital Limited ("Plaintiff" or "China AI") respectfully submits the accompanying Declarations of Michael James Maloney, Vincent Wenyong Shi, and Rosanne E. Felicello, dated October 24, 2022, and this memorandum in opposition to the motion by Defendants DLA Piper LLP (US) and Caryn G. Schectman ("Defendants" or "DLA") for sanctions against Plaintiff and its counsel pursuant to Federal Rule of Civil Procedure 11(b)(1), (b)(2), and (b)(3) (the "Rule 11 Motion").

## PRELIMINARY STATEMENT

Sanctions are inappropriate here. Plaintiff's allegations are well-supported by evidence and existing law, and its claim was not brought for an improper purpose. Defendants represented the Company in a purported shareholder derivative action and undertook to protect it against an application for a temporary restraining order, preliminary injunction, and appointment of a receiver. Defendants failed to identify available defenses, failed to brief any issues, and failed to provide any substantive advice. Defendants never determined if there was any truth to the underlying allegations and never opposed the provisional equitable relief requested by the purported shareholder plaintiff. Instead, Defendants negligently assumed the Company's consent to entry of a TRO, preliminary injunction, and the appointment of a receiver.

As a direct result of Defendants' legal malpractice, the Company suffered ascertainable damages in the form of litigation costs and expenses of the receivership and in the loss of a valuable promissory note. Plaintiff and its counsel should not be sanctioned for bringing a meritorious claim seeking recovery of damages to the Company caused by Defendants' negligence.

## STATEMENT OF FACTS

### *Defendants Represented the Company Incompetently*

Defendants represented the Company in connection with a share offering and other matters

throughout 2018. Decl.[1] ¶¶130, 133; Exs. 28, 29, 30, 38. In December 2018, Wayne Baliga ("Baliga") falsely asserted that he was a shareholder of the Company and, on that basis, commenced a derivative action in the Southern District of New York against the Company and certain of its directors (the "*Baliga Action*"), alleging breach of fiduciary duty, unjust enrichment, and securities fraud. Decl. ¶4; Ex. 1. DLA appeared on behalf of the Company at the hearing for a TRO the day after the *Baliga Action* was filed. Decl. ¶19; Ex. 3; Hart Decl.[2] Ex. C. Prior to the hearing, DLA did not review the register of shareholders to confirm that Baliga was a registered shareholder who had standing to bring a derivative claim and, at the hearing, DLA did not raise Baliga's lack of share ownership or any other defenses against the TRO. The Court entered the TRO because the Company, through its counsel DLA, offered no defense. Decl. ¶19; Ex. 4; Hart Decl. Ex. C. DLA consented to the extension of the TRO without informed consent from the Company. Decl. ¶19; Ex. 3. In January 2019, DLA, in its own words, "assume[d]" consent by the Company to stipulate to the relief Baliga sought: a preliminary injunction and appointment of his counsel as Receiver for the Company. Compl. ¶74; Decl. ¶19; Ex. 4; Hart Decl. Ex. D.

Defendants appeared for the Company in the *Baliga Action* generally. Decl. ¶¶10-18; Ex. 3 (joint letter signed by Ms. Schectman for the Company); Ex. 4 (stipulation signed by Defendant on behalf of the Company); Ex. 7 at 5 ¶1 (declaration by Ms. Schechtman that she was "a partner at DLA Piper LLP (US) ('DLA'), which has represented and appeared in this matter on behalf of Link Motion Inc. (f/k/a NQ Mobile Inc.)"). This was no limited representation. *See* Point I.A *infra.* The Company reasonably believed that it was receiving competent legal advice from DLA.

Defendants failed to provide even the most basic legal representation: They did not advise

---

[1] The Declaration of Michael James Maloney, dated October 24, 2022 is referred to as the "Decl." "Ex. __" refers to Exhibits to the Decl. Pin cites are provided to ECF pages for filed documents.
[2] "Hart Decl." and Hart Decl. Ex." refer to Dkt. 37 and the exhibits thereto, filed by Defendants in this action.

their client that Baliga lacked standing to seek or obtain the injunctive relief he sought. Decl. ¶19. Defendants knew or should have known that Baliga was not a registered shareholder because Defendants had the Company's register of shareholders. Compl.[3] ¶¶ 2, 5; *see* Decl. ¶133; Ex. 26. Nor did Defendants advise their client of any other defenses to Baliga's request for a preliminary injunction and appointment of a receiver. Decl. ¶19. (Indeed, Baliga's securities law claims were dismissed without prejudice several months later, on the motion of an individual defendant. Decl. ¶5, 19; Ex. 39.) Defendants did not advise the Company that the TRO and preliminary injunction could cause a violation of its obligations to Tongfang Investment Series SPC ("Tongfang"), the Company's counter party in an on-going divestment of which the Defendants were aware. Decl. ¶19.

### *Defendants' Negligence Caused the Company to Lose a Valuable Asset*

Long before the *Baliga* Action was filed, the Company planned to divest two business units, Showself and FL Mobile. Decl. ¶20; Ex. 8 at 11-12. Tongfang agreed to purchase both business units for payments of RMB800 million for Showself and RMB2,520 million for FL Mobile. Decl. ¶21; Ex. 8 at 11-12; Ex. 9. The shares of FL Mobile were placed in Dr. Shi's name to be held in trust so that the Company could retain control over the shares until Tongfang completed payment. Decl. ¶¶30-36; Ex. 10. Closing was initially set for early 2017 or "the date when the Purchaser [Tongfang] completes all its payment obligations as provided in the [purchase agreement]," but this date was later extended by agreement. Decl. ¶¶34, 29; Ex. 10 at 3 §1.2(g).

Throughout 2017, Tongfang made cash payments towards the purchase price for FL Mobile. Decl. ¶¶ 37, 40, 41; Ex. 11 at 7, 17, 18, 19. On December 14, 2017, the Company agreed to accept from Tongfang a final payment of cash and a promissory note for RMB¥1,770,000,000

---

[3] All references to "Compl. ¶_" refer to paragraphs of the Complaint, Dkt. 1.

(approximately USD$270.8 million) (the "Note"), to be paid by December 31, 2018. Compl. ¶63; Decl. ¶41; Ex. 11 at 19. The Note was secured by a pledge of the FL Mobile shares in favor of the Company (the "Pledge"), which remained in trust under Dr. Shi's name. Decl. ¶¶44-46; Hart Decl. Ex. K (Dkt. 37-11). Including a grace period, the Note became due on December 29, 2018. Decl. ¶42; Ex. 13 at 9 §1.3 and 10 §4.1(a).

The acceptance of the Note and Pledge required the "deconsolidation" of FL Mobile's financial results (and assets and liabilities) from the books of the Company. Decl. ¶¶49-53; Ex. 14 at 3. Because of the deconsolidation, which excluded the subsidiary's financial statements from those of the parent company, press releases issued by the Company in December 2017 described the divestment of FL Mobile as "completed," while also noting that the Note was not yet fully paid.  Decl. ¶¶49-53; Ex. 14 at 1, 3, 6.

Link Motion also booked a reduction in "assets held for sale," an increase in "Notes Receivable" to $270.8 million, and a "deferred gain" of $180.4 million "from the disposal of discontinued operations to be recognized when the receivables from purchasers are collected in future periods." Decl. ¶¶49-53; Ex. 14 at 1, 3, 6. These entries represented the balance due on the Note and the net gain Link Motion expected to realize upon payment of the Note in full on or before December 29, 2018. *Id*. This expected gain was properly classified as "deferred" because the Note, by its own terms did not come finally due until December 29, 2018, and the transaction would not finally "close" until this Note was paid. *See* Decl. ¶52; Ex. 14 at 6; Ex. 13.

As Company counsel, Defendants knew all of this in 2018 because they participated in Board meetings and related investigations concerning the FL Mobile transaction. Decl. ¶130; Exs. 28, 29, 30. The Board and independent counsel concluded that the Tongfang transaction was properly approved and that the Company had the right to reclaim the FL Mobile shares if Tongfang

did not pay the Note when it became due. Decl. ¶130; Ex. 28 at 2. These findings were disclosed publicly in September 2018. Decl. ¶130; Ex. 28 at 2. The information disclosed to DLA during this investigation constituted the grounds for defenses against Baliga's motion for a TRO, preliminary injunction, and receiver.

Thus, at the time that the *Baliga Action* was filed, the Tongfang transaction was not fully completed, the shares had not been transferred, and the Note remained outstanding. Decl. ¶¶64-68. On December 14, 2018, before the final due date for Tongfang's payment, the Court entered the TRO without opposition by Defendants, restricting the Company from transferring the FL Mobile shares. Decl. ¶¶5, 19; Ex. 2. Then, on December 21, 2018, Defendants consented to the continuation of the TRO without informed consent from Link Motion, which continued the restriction on transferring the FL Mobile shares beyond the Note's due date of December 29, 2021. Decl. ¶¶5, 19; Ex. 3. Tongfang, like any reasonable purchaser facing such circumstances, declined to pay the balance of the Note while the TRO was in place because it understood that the Company could not transfer the shares.[4] *See* Decl. ¶¶57-60, 69; *see* Ex. 17 at ¶2.

On January 21, 2019, after giving the Company 24 hours over a weekend to object, but without advising of any available defenses, Defendants "assume[d]" consent to stipulate to entry of the preliminary injunction and appointment of a receiver. Compl. ¶74; Decl. ¶¶5, 19; Hart Decl. Ex. D (Dkt. 37-4) at 2. The preliminary injunction was entered on February 1, 2019, foreclosing the possibility of completing the transfer of the FL Mobile shares to Tongfang. Decl. ¶69; Ex. 5. This destroyed the value of the Note and the $180,400,000 in deferred gains that the Company reasonably expected to realize. Decl. ¶110; Ex. 14 at 6.

---

[4] Entry of the TRO was widely publicized by the LKMForward group that had originally retained The Seiden Law Group to obtain the TRO. Decl. ¶83; Ex. 20. Evidence we have reviewed shows that The Seiden Law Group was retained for the specific purpose of preventing transfer of FL Mobile shares. Decl. ¶83; Ex. 20 at 1, 2, 5; Ex. 15 ¶34.

In their March 1, 2019 motion papers seeking leave to withdraw, Defendants acknowledged that they had "represented and appeared in this matter on behalf of Link Motion Inc" and they "appeared in this action . . . in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter." Decl. ¶17; Ex. 7 at ¶¶1-3. Emails from Defendants to the Board show that their representation fell below the requisite standard: Defendants failed to provide any substantive advice to the Company regarding the emergency application; failed to assert defenses to the emergency application; and failed to obtain informed consent. *See* Decl. ¶19; Hart Decl. Ex. A (Dkt. 37-1), Ex. C (Dkt. 37-3), Ex. D (Dkt. 37-4), and Ex. E (Dkt. 37-5).

### Entry of the TRO and Preliminary Injunction Had Natural and Foreseeable Consequences that Caused Damages to Link Motion

In addition to destroying the value of the Note, the entry of the TRO and preliminary injunction triggered several arbitration proceedings in Hong Kong. Decl. ¶¶ 70, 76, 79; Exs. 17, 18, 19. Plaintiff is aware of three arbitrations commenced before the Hong Kong International Arbitration Centre ("HKIAC") concerning Link Motion.[5] *Id.*

By April 2019, the Receiver, through his agents, had obtained control over Link Motion's Hong Kong subsidiaries and former offices in Beijing. *See* Decl. ¶97; Shi Decl. ¶7. The Receiver notified the HKIAC that he was responsible for all arbitration proceedings concerning the Company and should have received notice of the Tongfang arbitration before the HKIAC. Decl. ¶¶ 86, 93; Ex. 16 at 2 ¶5. The Receiver reported to the Court that he was managing "arbitration proceedings" before the HKIAC. Decl. ¶¶93, 94; Ex. 43 at ¶34. The Receiver also reported that an arbitration proceeding before the HKIAC involving Zhongzhi Hi-Tech Overseas Investment Ltd.

---

[5] Plaintiff believes that other arbitrations were also commenced against Link Motion before the China International Economic and Trade Arbitration Commission.

("Zhongzhi") was related to the Note and the Receiver actively participated in that proceeding ("*Zhongshi v. Link Motion*"). Decl. ¶85; Ex. 15 ¶33.[6]

In April 2019, the Receiver issued a demand to Tongfang to pay the Note, triggering Tongfang to institute arbitration against the Company before the HKIAC (the "Tongfang arbitration"). Decl. ¶92; Ex. 16 at 2 ¶4. The Tongfang arbitration resulted in an award of $396,000,000 (approximate USD value) against the Company (the "Tongfang Award") and rescission of the Note, rendering that asset worthless. Compl. ¶88; Ex. 17.

### The Company has Incurred the Receivership Costs

The February 1, 2019 order, to which Defendants stipulated, authorized the Receiver and his professionals to be paid for their work from the Company's accounts. Decl. ¶¶112-16; Ex. 5 at 6 §6. The Receiver has been paid with Company funds, has exhausted the Company's bank accounts, and has incurred unpaid debts for which he asserts the Company is responsible. Decl. ¶116; Compl. ¶93.

### RULE 11 STANDARD

Rule 11 sanctions are only appropriate "when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting and citing Fed. R. Civ. P. 11(b)-(c)). Rule 11 targets cases "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify[,] or reverse the law as it stands." *Microbot Med., Inc. v. All. Inv. Mgmt.*, 19 Civ. 03782 (GBD) (RWL), 2020 U.S. Dist. LEXIS 151410, at *26 (S.D.N.Y. Aug. 18, 2020), *adopted by Microbot Med., Inc. v. All. Inv. Mgmt.*, 19

---

[6] In a second arbitration before the HKIAC, Zhongzhi asserted a claim against Dr. Shi in his individual capacity (the "*Zhongzhi v. Shi* Arbitration"). Decl. ¶76; Ex. 18.

Civ. 03782 (GBD) (RWL), 2020 U.S. Dist. LEXIS 170587, 2020 WL 5600852 (S.D.N.Y. Sept.

17, 2020), *citing Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) and *Associated

Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2d Cir. 1992). "[S]anctions may

not be imposed [for factual contentions] unless a particular allegation is utterly lacking in support."

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003). Rule 11 sanctions motions are

not meant to "test the legal sufficiency or efficacy" of the pleadings and they are not a "discovery

device." Fed. R. Civ. P. 11, Advisory Committee Note.[7]

Whether an attorney's litigation conduct is reasonable is determined based on "what was

objectively reasonable to believe at the time" of submission. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463,

479-80 (S.D.N.Y. 2003). In making these determinations, "all doubts should be resolved in favor

of the signing attorney." *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61

F.3d 123, 131 (2d Cir. 1995). "Courts maintain a high bar for establishing a Rule 11 violation given

judicial concern for encouraging zealous advocacy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D.

175, 179 (S.D.N.Y. 2008). Rule 11 sanctions should only "be imposed with caution." *Gryphon

Dev. LLC v. Town of Monroe*, 08 Civ. 3252 (WCC), 2009 WL 10696666, at *6 (S.D.N.Y. Feb. 18,

2009), *quoting Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994).

**ARGUMENT**

**I.     THE ALLEGATIONS IN THE COMPLAINT ARE WELL-SUPPORTED AND
THE COMPLAINT DOES NOT VIOLATE RULE 11(b)(3).**

Sanctions under Rule 11(b)(3) are only appropriate where a party has set forth "a particular

allegation [that] is utterly lacking in support." *Storey*, 347 F.3d at 388, *quoting O'Brien v.

Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). There is no basis for such sanctions here. As

---

[7] *Bishop v. Cty. of Suffolk*, CV 13-446 (JS) (AKT), 2019 U.S. Dist. LEXIS 149800 (E.D.N.Y. 2019) (A "Rule 11 motion is an improper mechanism for arguing the merits of a party's position.").

demonstrated below, Plaintiff and its counsel have good faith bases and evidentiary support for each allegation in the Complaint.

### A. DLA represented the Company in the *Baliga Action*.

New York courts have consistently found the existence of an attorney-client relationship where an attorney appears in court on behalf of the client and signs stipulations filed with the court on behalf of the client. *See, e.g., Bayit Care Corp. v. Einbinder*, 977 N.Y.S.2d 665, 665 (Sup. Ct. N.Y. Cty. Sept. 24, 2013), quoting *Cooke v. Laidlaw Adams & Peck, Inc.*, 126 A.D.2d 453, 455 (1st Dep't 1987) ("[a]n attorney's appearance in a judicial or quasi-judicial proceeding creates a presumption that the attorney-client relationship exists") (citation omitted), and *Billiard Balls Mgmt., LLC v. Mintzer Sarowitz Zeris Ledva & Meyers, LLP*, 54 Misc. 3d 936, 942 (Sup. Ct. N.Y. Cty. 2016) (finding that a complaint sufficiently alleges an attorney-client relationship for a legal malpractice claim where it alleges that the firm was engaged to defend the client and a stipulation filed by the firm identifies the firm, and its attorneys, as attorneys for the client).

Here Defendants appeared in Court on behalf of the Company. Decl. ¶12; Ex. 3 at 2.[8] And Defendants filed documents on behalf of the Company, including the stipulation consenting to the preliminary injunction and appointment of a Receiver. Decl. ¶¶13, 14; Ex. 4 (stipulation); Ex. 7 (declaration by Ms. Schechtman that she was had "appeared in this matter on behalf of Link Motion"). These actions preclude Defendants from now denying that they were engaged to represent the Company in the underlying matter. *E.g.*, *Bayit Care Corp.*, 977 N.Y.S.2d at 665; *Cooke*, 126 A.D.2d at 455; *Billiard Balls Mgmt., LLC*, 54 Misc. 3d at 942.

Defendants attempt to make a distinction between a retention to provide a "substantive[] defen[se]" and their appearance on behalf of Link Motion. Dkt. 36 at 23-25. Even though New

---

[8] *See also* Hart Decl. Ex. C (Dkt. 37-3) at 2 ("We will send an associate to Court in 12 hours").

York allows for limited representation of clients in certain instances, Defendants here did not abide by the rules that would allow them to limit their duty as attorneys to provide fulsome, competent legal advice. *See Villar v. City of N.Y.*, 540 F. Supp. 3d 437, 440 (S.D.N.Y. 2021); *Genesis Merch. Partners, L.P. v. Gilbride, Tusa, Last & Spellane, LLC*, 157 A.D.3d 479, 482-84 (N.Y. App. Div. 1st Dep't 2018); N.Y. R. Prof. Conduct 1.2(c) (requiring "informed consent" and "necessary notice" to "the tribunal and opposing counsel"). Defendants never told the Court that their representation of the Company was limited in any way; in fact, their representations to the Court were the opposite. Decl. ¶¶15-17; Ex. 7 ¶¶1-3 (Defendant Schechtman admitting under oath that Defendants have "appeared as counsel for Link Motion during this litigation"). And Defendants confirmed to opposing counsel that they represented Link Motion but not the individual defendants. Dkt. 37-5 at 5-6. Even if there were a basis for Defendants' assertion of limited representation, it would be at most a disputed issue of fact, not a basis for sanctions.

Defendants contend that the Company's failure to provide instruction as to strategy in January 2019 (quoting an email sent by Defendants, Dkt. 36 at 19), absolves them of the malpractice they committed in December 2018 and further compounded later. Defendants provide no legal support—nor have we been able to locate any—that suggests that a client's failure to provide advice to the attorney is a defense to a legal malpractice claim. In contrast, it is the duty of the attorney to recognize and assert defenses, not the client. *Romanian Am. Interests, Inc. v. Scher*, 94 A.D.2d 549, 554 (N.Y. App. Div. 2d Dep't 1983), and failure to assert a defense is malpractice, *Frederick v. Meighan*, 75 A.D.3d 528, 532 (N.Y. App. Div. 2d Dep't 2010).

## B.  The Note was outstanding when the *Baliga Action* was filed.

Defendants assert that there is no claim for legal malpractice because "public filings unambiguously confirm that the *transfer* of FL Mobile Shares to Tongfang was 'completed' by December 14, 2017." Dkt. 36 at 16 (emphasis added). That is not true. The transfer of FL Mobile

shares could not occur until the Note was paid, which was not set to occur until the end of December 2018. Decl. ¶¶64-69; Ex. 13. Because Defendants consented to the TRO and its extension, which effectively prevented the Company from being able to carry out its obligation to transfer of the FL Mobile shares to Tongfang, the shares were never transferred and Tongfang never made the final payment due under the Note. Decl. ¶¶57-63.

The term "completion" in the December 2017 press releases cited by Defendants refers to deconsolidation of financial results, not legal completion of Tongfang's obligations to Link Motion under the Note. *See* Decl. ¶¶48-49; Hart Decl. Dkt. 37-8. Those same filings reflected that the Note remained outstanding. *Id.*; Ex. 14 at 6, 12. And Link Motion would have been required to release its security interest in the shares when it received payment in full.

Defendants' suggestion that it was a "falsehood" to claim that the Receiver transferred FL Mobile to one of his own affiliates is incorrect. As set forth above, Dr. Shi does not (and has never claimed to) personally own the 63% equity interest in FL Mobile held in trust pursuant to the Supplemental Agreement. He holds those shares only as a nominee for Link Motion and Xinjiang NQ. Decl. ¶104; Ex. 10 at 3, Art. 2. But after the Receiver was appointed, control over all of Link Motion's Chinese subsidiaries and VIE companies was granted to Lilin "Francis" Guo ("Guo"). Decl. ¶104; Ex. 16 at 3 ¶10. Guo promptly used this control to transfer to himself majority interests in many of Link Motion's former VIE companies, including Xinjiang NQ. Public shareholder records show that Guo now owns 59.675% of the equity of Xinjiang NQ. Decl. ¶104; Ex. 22 at 2. With a controlling interest in Xinjiang NQ, Guo now beneficially owns and controls all rights to the 63% of FL Mobile shares that are subject to the Supplemental Agreement. *See* Decl. ¶104; Ex. 10 at 3, Art. 2.

**C. Defendants did not provide substantive advice, failed to assert any defenses, and acted without informed consent.**

Defendants knew of the existence and terms of the Note because they were involved as Company counsel in an independent investigation of that transaction that ultimately concluded that Link Motion had not acted improperly in its dealings with Tongfang. *See* Decl. ¶130, Exs. 28-30. The record from the *Baliga* Action shows that Defendants failed to assert any defenses in opposition to the motion for provisional equitable relief. Decl. ¶¶13-19; Dkt. 37-1, 37-3, 37-5. The emails between Defendants and the Company show a lack of any substantive advice. Decl. ¶¶13-19; Dkt. 37-1, 37-3, 37-5. Finally, on January 21, 2019, after giving the Company 24 hours over a weekend to object, Dkt. 37-4, Defendants consented to entry of the preliminary injunction and appointment of a Receiver, Compl. ¶74; Ex. 4. Without advice, there is no informed consent.[9] *See Spector v. Mermelstein*, 361 F. Supp. 30, 39-40 (S.D.N.Y. 1972) ("If an attorney negligently or willfully withholds from his client information material to the client's decision to pursue a given course of action, or to abstain therefrom, then the attorney is liable for the client's losses suffered as a result of action taken without benefit of the undisclosed material facts."), *aff'd in relevant part* 485 F.2d 474 (2d Cir. 1973); *Romano v. Ficchi*, 889 N.Y.S.2d 507, 507 (Sup. Ct. Kings Cty. 2009).

**D.  The Tongfang Arbitration was not a sham.**

Contrary to the suggestion made by Defendants, the damages awarded to Tongfang are not sought as damages in Plaintiff's legal malpractice claim. The damages claimed here are the cost of the Receiver and the loss of the value of the Note. *See* Dkt. ¶¶85, 89-94. Nonetheless, Plaintiff addresses Defendants' contentions regarding the Tongfang Award because Defendants incorrectly contend that the Tongfang Award was a "sham," arguing that (i) that Dr. Shi improperly represented Link Motion in that arbitration without notifying the Receiver, and (ii) that Dr. Shi "withheld" notice of that proceeding. Dkt. 35 at 4-5.

---

[9] Defendants' submission of text messages between Schechtman and Dr. Shi show that the Company was looking to the Defendants for advice up to the moment Defendants filed the stipulation of non-opposition.

Defendants' arguments that Dr. Shi wrongfully controlled the Tongfang Arbitration are based entirely on references in the Tongfang Award to emails between the arbitrator and a person who the arbitrator believed to be Dr. Shi. Dkt. 35 at 4-5. But these emails exchanges occurred after April 2019, when Dr. Shi lost access to his corporate email accounts. Decl. ¶74; Shi Decl. ¶5.[10] Dr. Shi did *not* receive or send emails with the arbitrator in the Tongfang arbitration. Shi Decl. ¶7; Decl. ¶75. At least one other person at Link Motion had administrative access to Dr. Shi's corporate email accounts and continued to receive and send emails from those accounts after Dr. Shi lost access. Shi Decl. ¶8; Decl. ¶75, 80. These facts are corroborated by the award In the *Zhongzhi v. Shi* arbitration, in which the arbitrator described the request by the parties in late April 2019 to communicate with Dr. Shi only through his personal email address because other persons at Link Motion had control over Dr. Shi's former corporate accounts and were using that control to gain an advantage in other legal proceedings. Decl. ¶¶76-79.

Also, there is ample basis to infer that the Receiver (or his agents in China) received notice of the Tongfang Arbitration. Decl. ¶89. The Receiver admits communications with Tongfang in early April 2019. Decl. ¶92. The initial papers in the Tongfang Arbitration were mailed to Link Motion's offices in China, which were under the Receiver's control. Decl. ¶97; Decl. ¶7. And the Receiver admits to communicating with the HKIAC to take control over arbitration pending before that arbitral authority relating to Link Motion. Decl. ¶86.

Nothing about the Award supports Defendants' contention that it was a sham. Decl. ¶81. The arbitrator reports that Tongfang was represented by counsel, Ex. 17 at p.2 ¶3 and p.4 ¶11, and submitted various witness statements, Ex. 17 at p.5 ¶14(1) and p.7 ¶18. Decl. ¶82. The arbitrator issued a reasoned award finding that Tongfang had paid consideration pursuant to written

---

[10] References to "Shi Decl. _" refer to the Declaration of Vincent Wenyong Shi dated October 24, 2022.

agreements but that Link Motion had breached its obligation to transfer the shares of FL Mobile to Tongfang, which excused Tongfang from making the final payment on the Note. Decl. ¶82; Ex. 17 at p.9 ¶21. This finding is consistent with public records from China, which shows that 63% of the shares of FL Mobile continue to be held in the name of Dr. Shi subject to the trust arrangement set forth in the Supplemental Agreement.[11] Decl. ¶82; Ex. 12.

Even if Dr. Shi had represented Link Motion in the Tongfang Arbitration, this would not be a material fact. Decl. ¶83. The crux of Tongfang's claim was that it had paid cash and given a promissory note to Link Motion in exchange for 63% of the shares of FL Mobile. Decl. ¶83; Ex. 17. There is no dispute that Link Motion was enjoined from transferring the shares of FL Mobile to Tongfang as promised. Ex. 5 at 2 ¶ 1; Ex. 41. Thus, there was no complete defense to Tongfang's claims.[12]

Defendants contend that Dr. Shi misleadingly portrayed the arbitration concerning Zhongzhi as relating to the Tongfang Note. Dkt. 35 at 5. Any confusion in Dr. Shi's June 11, 2021 declaration (which mirrors his declaration dated November 4, 2020) arose from earlier sworn statements of the Receiver suggesting that the *Zhongzhi v. Link Motion* Arbitration related to the Tongfang Note. Decl. ¶84.

Defendants also claim that Dr. Shi controlled Tongfang. This is not true. Decl. ¶¶99-103. Tongfang is a segregated portfolio company organized under the laws of the Cayman Islands. Decl. ¶100. The Tongfang M&A Fund SP—and not Dr. Shi—is the "segregated portfolio" that undertook the obligations under the Note and contracted for the rights provided in the Supplemental

---

[11] However, because of the appointment of the Receiver and his retention of Guo as agent, Guo now exercises all of Link Motion's rights under the Supplemental Agreement.

[12] Defendants' assessment of the arbitration demonstrates that they lack a basic understanding about the mechanics of the Tongfang Transaction. As the arbitrator found, it was the Company's failure to transfer the FL Mobile shares (triggered by the preliminary injunction and appointment of the Receiver) that was the first breach, excusing Tongfang from fulfilling its performance under the Note. Ex. 17.

Agreement. Decl. ¶100. Dr. Shi never had any control over Tongfang M&A Fund SP. Shi Decl. ¶10.

## II.   PLAINTIFF'S CLAIM IS SUPPORTED BY EXISTING LAW AND DOES NOT VIOLATE RULE 11(b)(2).

Plaintiff has shown the existence of an attorney-client relationship and stated each element of a legal malpractice claim under New York law: (1) the attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession," and (2) that "the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Billiard Balls Mgmt.*, 54 Misc. 3d at 942. *See also Jonns v. Fischbarg*, Index No. 150729/2017, 2018 N.Y. Misc. LEXIS 4160, *18, 2018 NY Slip Op. 32353(U) (N.Y. Sup. Ct. N.Y. Cty. Sept. 18, 2018).

### A.  Defendants had an attorney-client relationship with the Company.

"An attorney's appearance in a judicial or quasi-judicial proceeding creates a presumption that the attorney-client relationship exists." *Cooke*, 126 A.D.2d at 455. *See* Point I.A *supra*.

### B.  Defendants failed to provide competent legal representation.

Once Defendants appeared for the Company in the Baliga Action, they were required to do so competently, which requires "inquiry into and analysis of the factual and legal elements of the problem." N.Y. R. Prof. Conduct 1.1, Comment [5];[13] *Fielding v. Kupferman*, 65 A.D.3d 437, 440 (N.Y. App. Div. 1st Dep't 2009) ("An attorney is obligated to know the law relating to the matter for which he/she is representing a client and . . . by undertaking the work, he represents that he is capable of performing it in a skillful manner") (cleaned up).[14] This obligation continued until the

---

[13] Liability for a violation of a rule of professional conduct exists where "proximate cause and actual damages can be shown to have flowed from a rule violation." *Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*, No. 21cv382 (DF), 2022 U.S. Dist. LEXIS 58737, at *31 (S.D.N.Y. Mar. 30, 2022).

[14] "Whether an attorney's alleged failures were negligent or 'reasonably tactical' presents a question of fact." *Nimkoff Rosenfeld & Schechter, LLP v. Rko Props.*, 07 Civ. 7983, 2019 U.S. Dist. LEXIS 242562 (S.D.N.Y. 2019).

attorney client relationship was terminated on March 1, 2019. N.Y. R. Prof. Conduct 1.3, comment [4]; N.Y. R. Prof. Conduct 1.1. And this duty included the obligation to inform the Company of "the material risks of the proposed course of conduct and reasonably available alternatives." N.Y. R. Prof. Conduct 1.0(j); *see, e.g.*, *Lama Holding Co. v. Shearman & Sterling, Bankers Tr. Co.*, 758 F. Supp. 159, 163 (S.D.N.Y. 1991) (rejecting attorneys' motion to dismiss malpractice claim for "alleged failure to inform"). The Company did not waive Defendants' duty to provide competent legal advice by not paying bills. *E.g., Rondin v. Goldblatt*, No. 15-cv-4235 (PKC), 2016 U.S. Dist. LEXIS 87987, at *5-6 (S.D.N.Y. July 7, 2016) (holding that a client's inability or unwillingness to pay counsel does not relieve counsel's obligation to render competent legal advice).

Defendants did not provide competent legal representation. They did not exercise "ordinary reasonable skill" when they failed to look at the shareholder registry in their possession to confirm whether Baliga was a registered shareholder, Decl. ¶19, 133; Ex. 28; Compl. ¶¶ 2, 5, or when they failed to recognize that the complaint in the *Baliga Action* failed to state a valid claim for securities fraud on its face because it did not even allege a purchase and sale of securities. *See* Decl. ¶5, 19; Ex. 39 at 19; Ex. 40 at 18:17-18:18. Competent counsel would have also researched the claims brought by Baliga to determine if they were legally sufficient. Defendants did not. Decl. ¶19.

Competent counsel would have explained to the client the potential risks and benefits to opposing the TRO, preliminary injunction, and imposition of the receivership. *See supra.* Competent counsel would have advised their client of the available defenses to the provisional equitable relief. *See Holzman v. Guoqiang Xin*, No. 12-CV-8405 AJN, 2015 U.S. Dist. LEXIS 125518, 2015 WL 5544357, *2 (S.D.N.Y. Sept. 18, 2015); *Leiner*, 120 A.D.3d at 1311; *Frederick*, 75 A.D.3d at 532. Defendants did not give the Company this advice, which precluded the Company from giving informed consent to the TRO, the preliminary injunction, or the

receivership. *Spector*, 361 F. Supp. at 39-40.

Instead of competently advising the Company, Defendants appear to have actively facilitated entry of the TRO and preliminary injunction and appointment of the Receiver to their client's detriment. Decl. ¶¶5, 19; Ex. 3; Ex. 4; Dkt. 36 at 10-12. None of the more than 21 (by Defendants' count) attorney-client communications filed by Defendants (Dkt. 35 at 7-8) show them providing substantive advice to the Company concerning any defenses, including Baliga's non-shareholder status or his failure to state claims under the federal securities laws. *See* Dkt. 37-01, 37-02, 37-03, 37-04, 37-05 (Hart Decl. Exs. B-E). And Defendants admit that they did not undertake to prepare any briefs to submit in defense of Baliga's claims. Dkt. 36 at 11 ("We have not prepared briefs") and 37-2 (same).

Knowing that the record shows that they provided no legal advice at all, Defendants contend that the outcome of the *Baliga Action* would not have changed even if they had given the requisite level of advice. Dkt. 36 at 27. This argument fails because the Court relied on Defendants' consent in entering the TRO and preliminary injunction. *See* Decl. ¶¶5, 19; Ex. 39 at 21 (noting Link Motion's failure to oppose the preliminary injunction). And because a "preliminary injunction, being an extraordinary remedy, should be issued only reluctantly," it should not be issued "[w]here the Court's jurisdiction is a substantial issue in controversy." *601 W. 26 Corp. v. Solitron Devices, Inc.*, 291 F. Supp. 882, 885 (S.D.N.Y. 1968). *See also Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy").

The Court's August 25, 2022 holding "that Baliga had standing to bring the securities-law claims" does not preclude Plaintiff's legal malpractice claim. The issue presented to the Court

leading to that order was whether to vacate a prior order. Decl. ¶19; Exs. 24, 25 at 1-2.[15] That issue is legally distinct from the issue of negligence on a claim for legal malpractice and, therefore, the Court's rulings in the August 25, 2022 order are not determinative. *See Houraney v. Burton & Assocs., P.C.*, 2010 U.S. Dist. LEXIS 105020, at *23-24 (E.D.N.Y. Sept. 7, 2010) (collateral estoppel does not bar malpractice claims based on "materially deficient" representation); *Gillin v. Patterson, Belknap, Webb & Tyler*, 1994 N.Y. Misc. LEXIS 697, at *8-9 (1st Dep't 1994).

### C. Defendants' malpractice was the proximate, but-for cause of the damages resulting from the TRO, preliminary injunction, and Receiver's appointment.

At the pleading stage, Plaintiff "need only allege, not prove, the proximate cause of the legal malpractice claim." *Malta v. Fox Horan & Camerini, LLP*, No. 17 Civ. 3228 (JFK), 2018 U.S. Dist. LEXIS 40150, at *12 (S.D.N.Y. Mar. 12, 2018), *citing Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008). Under New York law, allegations that "but for" Defendants' legal malpractice and negligence in failing to advise the plaintiff of the consequences of a course of action, plaintiff suffered injury are sufficient to allege proximate causation. *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 322-23 (S.D.N.Y. 2017) (plaintiff adequately pled proximate cause where he alleged that but for his attorney's negligence in failing to file correct tax forms with the IRS, plaintiff would not have been exposed to a tax liability and legal fees).

Plaintiff's allegations here are that but for Defendants' failure to competently advise their client and assert defenses against Baliga's motion, the company would not have incurred "actual and ascertainable damages," all of which followed directly from the preliminary injunction and receivership to which Defendants stipulated. *Demetro v. Dormitory Auth. of the State of N.Y.*, 170

---

[15] The Court issued the August 25, 2022 Decision and Order based on the facts as they now exist, *i.e.*, the fact that Defendants did not oppose the motion for a preliminary injunction. Ex. 25 at 3 ("***absent opposition from Defendants***, the Court granted the proposed Preliminary Injunction and Receivership Order") (emphasis added).

A.D.3d 437, 439 (N.Y. App. Div. 1st Dep't 2019) (cleaned up), *citing and quoting Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016) and *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016). *See* Compl. ¶¶ 89-94.

The harm here was caused by Defendants' stipulation to the TRO, the preliminary injunction, and appointment of a receiver based on "assumed consent" of its client, the Company, without having offered the Company any substantive legal advice as to any potential legal or factual defenses. But for Defendants' malpractice and negligence in failing to advise the Company, the TRO and preliminary injunction would not have been entered and the Receiver would not have been appointed. Compl. ¶¶ 9, 92-93. *See also Winter*, 555 U.S. at 24. Entry of the TRO and preliminary injunction prevented the Company from releasing its security interest over and transferring the FL Mobile shares that was necessary to receive payment in full on the Note. The appointment of the Receiver also resulted in Company being charged for the Receiver's services.

Defendants argue that they cannot be liable for damages for loss of the Note because of the subsequent actions of the Receiver. This argument fails for two reasons. First, the damage from loss of the Note was caused by Defendants' failure to oppose entry of the TRO and preliminary injunction. But for those orders preventing the FL Mobile transaction from closing on or before December 29, 2018, the due date of the Note, the value of the Note would have been preserved.

Second, all the Receiver's actions were "normal or foreseeable consequences of the situation created by the defendant's negligence." *Demetro*, 170 A.D.3d at 439 (cleaned up), *citing and quoting Hain*, 28 N.Y.3d at 529 and *Mazella*, 27 N.Y.3d at 706. Defendants' conduct need not be the only cause of Plaintiff's damages to establish proximate cause for legal malpractice under New York law. *Smartix Int'l Corp. v. Garrubbo, Romankow & Capese, P.C.*, 2009 U.S. Dist. LEXIS 29114, at *12 (S.D.N.Y. Mar. 30, 2009), *citing Barnett v. Schwartz*, 47 A.D.3d 197,

203 (N.Y. App. Div. 2d Dep't 2007).

The Receiver did seek payment of the Note but refused to transfer the FL Mobile shares.[16] Under the deal documents, the final Note payment was conditioned upon transfer of the FL Mobile shares to Tongfang, which did not happen because of the TRO and preliminary injunction. But for Defendants' consent to the preliminary injunction, the Company would have been able to complete the transfer to Tongfang and realize the value of the Note. *Smartix*, 2009 U.S. Dist. LEXIS 29114, at *12, *citing Barnett*, 47 A.D.3d at 203; *see also Kirk v. Heppt*, 2009 U.S. Dist. LEXIS 80989, at *28 (S.D.N.Y. Sept. 3, 2009), citing *Garten v. Shearman & Sterling LLP*, 52 A.D.3d 207 (N.Y. App. Div. 1st Dep't 2008).

Whether an intervening cause severs proximate causation is a fact issue for summary judgment or trial, not grounds to impose Rule 11 sanctions. *Sehgal v. DiRaimondo*, 165 A.D.3d 435, 436-37 (N.Y. App. Div. 1st Dep't 2018) (finding that argument concerning intervening cause to sever proximate cause presents a fact issue). Nor would it be appropriate to sever causation here where the appointment of the Receiver was caused by Defendants' stipulation to his appointment and to the preliminary injunction restraining the Company and its directors. Compl. ¶¶ 71, 79, 81; Decl. ¶¶ 5, 19. And the actions of the Receiver in failing to transfer FL Mobile shares to Tongfang were "normal or foreseeable consequence[s] of the situation created by the defendant's negligence" because the Receiver was retained by Baliga for the specific purpose of preventing the transfer of those shares to Tongfang, Decl. ¶110; Ex. 15 ¶18; Ex. 20 at 1, 2, 5. *Demetro*, 170 A.D.3d at 439, *citing and quoting Hain*, 28 N.Y.3d at 529 and *Mazella*, 27 N.Y.3d at 706.

Defendants attempt to shift liability for their own malfeasance to "successor counsel." Dkt. 36 at 28. But the Receiver never "appoint[ed] counsel to represent Link Motion." Decl. ¶118.

---

[16] The evidence shows that the Receiver was retained by Baliga and LKMForward for the specific purpose of unwinding the FL Mobile transaction. Decl. ¶110; Ex. 15 at ¶18; Ex. 20 at 1, 2, 5.

After Defendants withdrew from representing the Company,[17] the Company had no representation in the *Baliga* Action in any capacity until October 2020, when the Court granted Dr. Shi's request to permit his counsel (Felicello Law P.C.) to represent the Company for the limited purpose of moving to dismiss the *Baliga* Action.[18] *See* Decl. 118; Ex. 23.

Defendants provide no support for the extraordinary proposition that a director's retention of counsel to defend himself personally against claims could constitute retention of counsel for a company. (Dr. Shi was never Defendants' client.) Nor do they provide support for the equally extraordinary proposition that what a co-defendant (or its counsel) did or did not argue can be an "intervening cause." *See* Dkt. 36 at 28 (no case citations). Even the idea that successor counsel could "sever" the causal chain requires that the client be the same;[19] Defendants' citation to *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 12 Civ. 9459 (PAE), 2013 U.S. Dist. LEXIS 93762, at *20-21 (S.D.N.Y. July 2, 2013) and 552 F. App'x 79, 80 (2d Cir. 2014) (Dkt. 36 at 28) is in apposite because Link Motion did not have successor counsel. And, in New York, the existence of successor counsel does not mean that the first attorney is released from his malpractice. *Schauer v. Joyce*, 54 N.Y.2d 1 (1981); *Skinner*, 724 F.2d at 266.

### D.  The Company has suffered actual damages.

Link Motion has suffered two categories of damages as a result of Defendants' failure to properly represent its client. One category of damages is the costs of the Receiver and associated

---

[17] Defendants did not file an answer or move to dismiss on the Company's behalf before withdrawing, despite their new claim (Dkt. 36 at 12) that the "non-opposition" to the receivership was to permit the Company to answer. The supposed *quid pro quo* granted the Company until February 20, 2019 to answer; DLA did not seek to withdraw until March 1, 2019.

[18] After the Court dissolved the preliminary injunction in the Baliga Action on August 25, 2022, the Company, through independent board members, engaged counsel to represent the Company in the *Baliga Action* and with respect to the legal malpractice claim at issue here. *See* Ex. 25 (*Baliga Action*, August 25, 2022 order); Ex. 23 (letter in *Baliga Action* informing court of Company's retention of counsel); Dkt. 23 (letter accompanying voluntary dismissal).

[19] In any event, contrary to Defendants' false statements in their motion papers, Dr. Shi and his counsel raised the issue of Baliga's non-shareholder status in a Rule 11 letter to The Seiden Law Group on March 10, 2020. Decl. ¶123.

litigation expenses, which are by default are charged to the company. *See*, *e.g.*, *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012). New York courts have permitted legal malpractice claims to proceed based on damages resulting from the improper consent by counsel to the appointment of receivers and other equitable relief. *See*, *e.g.*, *Tiffany Gen. Holding Corp. v. Speno, Goldberg, Steingart & Penn, P.C.*, 278 A.D.2d 306, 307-8 (N.Y. App. Div. 2d Dep't 2000).

A second category is the damages associated with the loss of the value of the Note. As described in detail above, the Note was reported on the Company's books as an asset worth $270.8 million, reflecting an ascertainable net gain of $180.4 million. The value of the Note represents what was lost and what is necessary "'to make the injured client whole.'" *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 443 (2007), *quoting Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38, 42 (1990). The quantum of damages from loss of the Note is easily ascertainable because the Company quantified its net value: $180.4 million.

## III. PLAINTIFF HAS STANDING TO BRING THE LEGAL MALPRACTICE CLAIM AND THIS ACTION DOES NOT VIOLATE RULE 11(b)(2).

Plaintiff's standing to sue derivatively is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). None of Plaintiff's arguments, as laid out in its complaint (Dkt. 1), in response (Dkt. 17) to Defendants' Rule 12(b) pre-motion letter (Dkt. 16), and herein, are "patently contrary to existing law" or "so lacking in merit as to amount to a frivolous argument for the extension of existing law." *Storey*, 347 F.3d at 391 (rejecting sanctions motion on Rule 11(b)(2) grounds), *citing MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1260 (2d Cir. 1996).

China AI is a registered shareholder of LKM. Compl. ¶¶ 1, 98. Because the Company is a Cayman Islands limited company, the law of the Cayman Islands governs Plaintiff's standing to sue derivatively. Compl. ¶97; *e.g.*, *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 475

(S.D.N.Y. 2011). Cayman Islands law recognizes the standing of a registered shareholder to assert claims derivatively where conduct "qualifies as a fraud on the minority." *See Matter of Renren Inc. Derivative Litig. v. XXX*, 2020 N.Y. Misc. LEXIS 2132, *81-83, 67 Misc. 3d 1219(A), 127 N.Y.S.3d 702 (Sup. Ct. NY Cty. May 20, 2020); Ex. 27 (*Top Jet Enterprises Ltd. v. Sino Jet Holding Ltd.*, 2018 (1) CILR 18, 42-43 (Caymans Island Grand Court Jan. 19, 2018).[20] This requires the shareholder to establish conduct which constitutes "a fraud on the minority," Ex. 27[21] at 47 ¶39, and that "the wrongdoers are in control of the company," Ex. 27 at 48 ¶42. For control, the "essential question is whether the company is being prevented from pursuing a claim which the company legitimately has." Ex. 27 at 43 ¶33(c); *see also In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 99 (D.N.H. 2004); *Winn v. Schafer*, 499 F. Supp. 2d 390, 396-97 (S.D.N.Y. 2007) ("de facto control"). A third party can be sued derivatively where the third party is "a party or accessory to or closely associated with the conduct which gives rise to the fraud on the minority." Ex. 27 at 47 ¶39.

China AI alleged that the actions of Baliga and his counsel in the underlying *Baliga* Action constituted a fraud on the minority. Compl. ¶¶ 33-36, 37-47, 91-94. Seiden was retained by Baliga for the specific purpose of being appointed as the receiver of LKM, and, because Baliga and his counsel—the wrongdoers—falsely told the Court that Baliga was a shareholder of LKM, Plaintiff was entitled to sue derivatively. Compl. ¶¶ 33-47; *see also* Ex. 1 ¶¶ 1, 4; Ex. 20. Baliga could not have obtained the extraordinary remedy of a receiver without derivative standing to invoke the equitable powers of the Court. *See Nat'l Pshp. Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) ("the appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy"). The wrongdoers, *i.e.,* Baliga and his then-counsel, the Receiver, have had

---

[20] Defendants failed to address *Top Jet* in their motion.
[21] Citations to *Top Jet*, Ex. 27, are to internal "CILR" page and paragraph numbers.

*de facto* control over LKM since December 14, 2018 (Ex. 2) and actual control since February 1, 2019 (Ex. 5). The Receiver refused to bring this claim against Defendants.[22]

As detailed in the Complaint, Defendants were both "accessory to" and "closely associated" with the fraud. Ex. 27 at 47 ¶39; *Renren*, 2020 N.Y. Misc. LEXIS 2132, *100-01. Defendants' actions here are similar to the alleged "rubberstamping" of the underlying transaction in *Renren* by defendant Duff & Phelps, done without any "independent verification" of the underlying data. *Renren*, 2020 N.Y. Misc. LEXIS 2132, *103-04; *see* Compl. ¶¶ 50-84.

Defendants argue that the fraud on the minority exception does not apply because at most, Defendants acted negligently, not intentionally. Dkt. 36 at 29. But under *Top Jet,* the standard for third party liability is whether the third party knew or should have known that its actions assisted the primary wrongdoer, not whether the third party acted intentionally. *E.g.*, *Renren*, 67 Misc. 3d 1219(A), 127 N.Y.S.3d 702, *aff'd Matter of Renren*, 192 A.D.3d 539, 539 (N.Y. App. Div. 1st Dep't 2021). The Complaint alleges that Defendants knew or should have known that the Company had meritorious defenses to Baliga's claims, including that he was not a shareholder based on DLA's contemporaneous possession of the shareholder registry, and yet failed to properly advise the Company about those defenses or that consenting to a receivership would give control of the Company to Baliga's counsel. Compl. ¶¶ 2, 5, 28, 29, 50-84. The Complaint alleges that, but for Defendants' malpractice in failing to advise their client and in wrongfully consenting to the receivership, the Court would not have agreed to the receivership. Compl. ¶¶ 4-11, 81. That is enough to allege assistance. *See Matter of Renren*, 192 A.D.3d at 539.

Defendants' other argument is that Baliga could only be part of a "fraud" if he controlled

---

[22] China AI requested the Receiver bring the malpractice claim against DLA. Compl. ¶101. The Receiver declined. Compl. ¶102. At the time the Complaint was filed, the Company's directors could not take action on their own. Compl. ¶100. The Company was therefore "being prevented from pursuing a claim which the company legitimately has." Ex. 27, *Top Jet*, 2018 (1) CILR at 43.

the majority of the Company's voting rights. Dkt. 36 at 29. But Plaintiff's allegation is not that Baliga controlled the majority of voting rights, but rather that, by the appointment of his then-counsel as Receiver for the Company, he obtained *de facto* control of the Company. Compl. ¶¶ 86, 100.

## IV.   PLAINTIFF'S COMPLAINT WAS BROUGHT FOR A PROPER PURPOSE AND DOES NOT VIOLATE RULE 11(b)(1).

As discussed in detail, *supra* Points II and III, Plaintiff had standing and asserted a cognizable legal malpractice claim against Defendants. Defendants' contention that the lawsuit was brought for an "improper purpose" is without merit. Plaintiff's maintenance of this lawsuit, while the Company was controlled by the Receiver who benefited from Defendants' negligent advice and refused to bring the claim, cannot be considered "litigious."[23] Unlike the facts in O'Malley v. N.Y.C. Transit Authority, 896 F.2d 704, 705 (2d Cir. 1990), cited by Defendants, no judge has previously advised Plaintiff or counsel to withdraw the legal malpractice claim. The other authority relied on by Defendants, Abner Realty, Inc. v. Administrator of General Services Administration, 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042, at *15 (S.D.N.Y. July 17, 1998), is inapposite because it involved a claim of fraud brought without particularity or evidentiary support not a well-supported legal malpractice claim.

Defendants claim that Dr. Shi is "directly connected" to Plaintiff and is "improper[ly] us[ing] China AI to intimidate and extort Defendants." Plaintiff is owned and controlled by Mr. Hua Jingyuan and Dr. Shi has never owned an interest in Plaintiff. Decl. ¶¶131-132; Exs. 31-37.

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' motion for sanctions pursuant to Rule 11 and grant such other and further relief as the Court deems necessary.

---

[23] "[L]itigiousness" alone "do[es] not amount to improper purpose." Storey, 347 F.3d at 393.

Dated:  New York, New York
        October 24, 2022

Respectfully submitted,

FELICELLO LAW P.C.

By:   */s/ Michael James Maloney*
      Rosanne E. Felicello
      Michael James Maloney
      Kristie M. Blase
366 Madison Avenue, 3rd Floor
New York, New York 10017
Tel. (212) 584-7806
Rosanne@FelicelloLaw.com
MMaloney@FelicelloLaw.com
Kristie@FelicelloLaw.com
*Attorneys for Plaintiff*
*China AI Capital Limited*