UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British
Virgin Islands limited company, derivatively
on behalf of LINK MOTION INC., a Cayman
Islands limited company f/k/a NQ MOBILE
INC.,

                    Plaintiff,

      -against-

DLA PIPER LLP (US), a Maryland limited
liability partnership, and CARYN G.
SCHECHTMAN, a natural person,

                    Defendants,

      -and-

LINK MOTION INC., a Cayman Islands
limited company f/k/a NQ MOBILE INC.

                    Nominal Defendant.

-----------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## THEIR MOTION SEEKING SANCTIONS PURSUANT TO RULE 11

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

DISCUSSION ......................................................................................................... 3

I.      Plaintiff's Opposition Confirms That Key Allegations In The Complaint Are
        False ......................................................................................................... 3

II.     Plaintiff's Opposition Confirms That It Did Not Have A Good Faith Basis To
        Blame DLA For The Tongfang Arbitration and Award ................................. 5

III.    Plaintiff's Own Cited Authority Confirms That It Lacks Standing To Sue ...................... 7

IV.     Contemporaneous Documents Confirm That Any Allegation That Defendants
        Breached A Duty To Link Motion Are Baseless ................................................ 8

V.      This Court Already Has Rejected Plaintiff's Central Causation Argument ...................... 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019),
  *aff'd*, 829 F. App'x 533 (2d Cir. 2020)..................................................................................5

*Bletas v. Deluca*,
  2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011).........................................................................7

*Gillin v. Patterson, Belknap, Webb & Tyler*,
  1994 N.Y. Misc. LEXIS 697 (1st Dep't 1994)......................................................................10

*Goldman v. Barrett*,
  825 F. App'x 35 (2d Cir. 2020) .............................................................................................3

*Houraney v. Burton & Assocs., P.C.*,
  2010 WL 3926907 (E.D.N.Y. Sept. 7, 2010) ........................................................................10

*Levine v. F.D.I.C.*,
  2 F.3d 476 (2d Cir. 1993) .......................................................................................................3

*Renren, Inc. v. XXX*,
  2020 WL 2564684 (N.Y. Sup. Ct. May 20, 2020),
  *aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021)............................7, 8

*Top Jet Enter. v. Sino Jet Holding Ltd.*,
  2018 (1) CILR 18 (Cayman Islands Grand Ct. Jan. 19, 2018) ................................................8

*In re Tyco Int'l, Ltd.*,
  340 F. Supp. 2d 94 (D.N.H. 2004)..........................................................................................7

*Winn v. Schafer*,
  499 F. Supp. 2d 390 (S.D.N.Y. 2007).......................................................................................7

**Rules**

Fed. R. Civ. P. 11(b) ...............................................................................................................3, 7, 9

## PRELIMINARY STATEMENT

Plaintiff's sprawling opposition ("Opposition")—a 25-page brief, 43 exhibits, two attorney declarations with over 30 pages of factual contentions and legal argument, and a declaration from nonparty Dr. Vincent Shi—is nothing but obfuscation.  Conflicting contentions and inconsistent theories cannot hide the fact that Plaintiff and its counsel filed a complaint against DLA that they knew was rife with false allegations and infected with fatal legal defects.

Plaintiff's key claim is that DLA "prevented [Link Motion] from fulfilling its obligations" to transfer interests in FL Mobile ("FL Mobile Shares") to Tongfang Investment Fund Series SPC ("Tongfang") because the Receiver instead "transferred" them "to one of his own affiliates," resulting in a $396 million arbitration award (the "Tongfang Award").  Compl. ¶¶ 8, 88–86 (ECF 1).[1]  DLA exposed that falsehood, using the transaction documents and the Company's public filings to show that the FL Mobile Shares were transferred to Tongfang for a RMB1,770 million senior note (the "Tongfang Note") *a year before* the Baliga Action was even filed.  Plaintiff and its counsel have now pivoted to their *third* conflicting story, claiming that DLA somehow caused Tongfang to fail to repay the Note when due.  That nonsense is *not even alleged in the Complaint*.

Plaintiff's current effort to disavow the bogus Tongfang Award that it had previously touted in (but conspicuously did not attach to) the Complaint is understandable.  The Award—which the Receiver didn't know existed until this litigation—confirms it was fraudulent and procured in violation of this Court's order.  Plaintiff's counsel's other client, Dr. Vincent Shi, falsely represented to the arbitrator that **he** had the authority to act on behalf of the Company, contrary to this Court's orders in the Baliga Action.  Dkt. 269-1 at ¶ 9 ("Mr. Shi confirmed to HKIAC that he was acting on behalf of the Respondents."); *see id.* at ¶¶ 11–12.  Plaintiff's

---

[1] "ECF" cites are to the docket in this action; "Dkt" refers to the docket in *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (the "Baliga Action").

counsel's ridiculous suggestion that someone may have *posed* as their client in making those false representations in violation of this Court's order is beside the point; they plainly should have known that the Award and the Arbitration were bogus.  Yet they still tried to pin both on DLA.

Plaintiff's remaining arguments and excuses are equally specious.  The assertion that DLA breached a duty to Link Motion is refuted by contemporaneous communications confirming that *the Company refused to respond for weeks, despite DLA's strenuous efforts*.  DLA undisputedly and repeatedly asked if the Company wanted to retain DLA and what steps it wanted to take— sending at least *15 separate communications* with increasing urgency before Dr. Shi finally consented to the appointment of the Receiver.  Ignoring this, Plaintiff asserts that merely by asking the Court to give the Company more time, DLA, which had not been retained for anything more, was obligated to undertake an exhaustive defense without any direction from the Company.

Beyond all of that, Plaintiff's own cited authority confirms that its argument that it has derivative standing to maintain this action is frivolous, and that its invocation of the so-called "fraud on the minority" exception is unwarranted.  It is unwarranted because Baliga wasn't the majority shareholder and committed no "fraud," and because DLA never participated in or abetted any "fraud."  Moreover, this Court has now rejected any notion that the standing "defense" DLA supposedly should have raised in 2019 would have precluded this Court's jurisdiction in the Baliga Action—because this Court has ruled it had jurisdiction to award equitable relief based on Baliga's federal securities claims.  Dkt 275 at 20, 22–30, 41–42; Dkt 331 at 12, 23.

The Opposition thus does nothing to explain or excuse Plaintiff and its counsel's blatant violation of Rule 11.  Despite being on notice of these deficiencies for at least six months, Plaintiff wasted this Court's resources, falsely cast a public cloud over DLA (including Ms. Schechtman), and forced DLA to spend time and money to defend itself, before suddenly asking to dismiss the

action and *refiling* virtually the same complaint in state court.  DLA respectfully requests that Rule 11 sanctions be imposed jointly and severally against Plaintiff and its counsel.

## DISCUSSION

### I.    Plaintiff's Opposition Confirms That Key Allegations In The Complaint Are False

The Opposition offers yet another new factual theory and confirms that Plaintiff's counsel utterly disregarded their duty to ensure that the "factual contentions [in the Complaint] have evidentiary support," Fed. R. Civ. P. 11(b)(3), or to "file only papers that have a basis in fact," *Goldman v. Barrett*, 825 F. App'x 35, 37 (2d Cir. 2020); *see Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) ("[B]latant disregard of the facts amply warrant[s] the imposition of sanctions.").

The Complaint alleges that "[t]he Receiver … refused to perform or seek court approval for the Company to perform its obligations under the [Tongfang] SPA" and instead "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group," resulting in a $396 million arbitration award against Link Motion.  Compl. ¶¶ 86–88.  After DLA exposed that story as false, ECF 16, Plaintiff pivoted to claiming instead that "LKM had placed shares of FL Mobile into escrow," and that the appointment of a Receiver triggered a technical breach of its "obligations to hold the shares for Tongfang."  ECF 17 at 3.

Plaintiff now posits a third story, claiming that the Receiver's appointment was irrelevant, because DLA supposedly caused the "loss" of the Tongfang Note in December 2018[2]—prior to the appointment of the Receiver—when the Court issued a TRO in the Baliga Action and Tongfang then failed to pay the Note, ECF 41 at 11, 16–17, 25—even though Plaintiff's counsel simultaneously claims that Dr. Shi held the FL Mobile Shares the entire time.  ECF 42 ¶ 38.

---

[2] In fact, interest in arrears on the Tongfang Note was due on December 12, 2018, the day before the Baliga Action was filed, and principal was due on December 14, 2018, the day the Court issued the TRO.  ECF 42-13 at 11.

Plaintiff's newest story contradicts the Complaint *and* the exhibits cited in the Opposition. It turns on a "Supplemental Agreement" executed eight months *before* there ever was a Tongfang Note, which supposedly shifted the FL Mobile Shares to Dr. Shi.  ECF 41 at 17, 20; ECF 42 ¶¶ 30–31.  But that Agreement provided only that the Shares would be held by Dr. Shi until "Closing," ECF 42-10 § 2, which, according to public filings signed by Dr. Shi, occurred in December 2017 when Tongfang completed its payment obligations by issuing the Tongfang Note.[3]  ECF 42-11 at 19.  At that point the parties replaced the Supplemental Agreement with the "Pledge Agreement," agreeing that "[b]oth the Target [FL Mobile] Assets and Pledged [FL Mobile] Equity" were now "held by [Tongfang]," and, significantly, that Link Motion would retain a security interest until the Note was paid.  ECF 37-11 at 2; ECF 42 ¶¶ 42–45; *see* ECF 37-12 at 6 (noting that the Company had "the ability to recover the shares it has sold to Tongfang if Tongfang fails to pay [the Note]").

But as evidenced by the very documents Plaintiff cites, Tongfang *did not owe Link Motion any payment under the Note* as of December 2018.  According to the Tongfang Award, Tongfang believed (and the arbitrator found) that it didn't owe Link Motion anything because the Note "ha[d] been repackaged and turned into other investments for [Link Motion]."[4]  ECF 42-17 at 9.  Specifically, in September 2018, *three months before the Baliga Action was filed*, Dr. Shi pledged

---

[3] Plaintiff's claim that the word "completed" in those filings really meant only "deconsolidated," ECF 41 at 17, is not credible.  The Company unambiguously announced in December 2017 that it had "received … 100% of the agreed upon price" and "completed the FL Mobile Divestment."  ECF 42-11 at 19.  A Link Motion executive informed shareholders that "[w]ith the Divestments closed, we can now move ahead."  ECF 37-8 at 5.  And Dr. Shi reported in a letter to shareholders that "[t]he transaction completed on December 14, 2017," and that "the total consideration received by us as of December 14, 2017 amounted to approximately RMB3.32 billion in cash and senior note from Tongfang."  ECF 37-9 at 5.  The Tongfang Award, which Plaintiff's counsel had in their possession when they filed the Complaint, also notes the arbitrator's finding that Tongfang completed its payment obligations, and Link Motion became obligated to transfer the Link Motion shares, in December 2017 (**not** December 2018).  ECF 42-17 at 8–9.

[4] The Tongfang Award thus directly contradicts Plaintiff's claim that the Arbitrator found that Link Motion's failure to "transfer the shares of FL Mobile to Tongfang … excused Tongfang from making the final payment on the Note."  ECF 41 at 19–20.  Plaintiff's suggestion that Link Motion was obligated to "transfer" the shares by releasing its security interest *before* receiving the payment that was supposed to be secured is nonsense in any event.  *See id.* at 26 ("the final Note payment was conditioned upon transfer of the FL Mobile shares to Tongfang….").

the Tongfang Note on behalf of the Company to Zhongzhi, an unrelated third-party, to satisfy his own personal liability to Zhongzhi.[5]  ECF 42-19 at 6–7, 19–24, 27.

In any event, Plaintiff's narrative defies common sense.  Plaintiff's counsel cannot credibly explain why the Baliga Action TRO—which merely prohibited the transfer or dissipation of Company assets, Dkt 7—prevented the Company from *receiving* payment on the Tongfang Note (which would have extinguished any pledged security interest), *enforcing* the Tongfang Note, or *foreclosing* on its security interest in the FL Mobile Shares.  Link Motion did none of those things.  The fact that Plaintiff's counsel tried to pin the mess orchestrated by Dr. Shi on DLA through intentionally vague, misleading, and demonstrably false allegations warrants sanctions.

## II.    Plaintiff's Opposition Confirms That It Did Not Have A Good Faith Basis To Blame DLA For The Tongfang Arbitration and Award

Beyond prohibiting the filing of false allegations, Rule 11 mandates that Plaintiff's counsel "may not simply take her client's word" where "reasonable investigation" or "red flags should have (and would have) alerted counsel to problems."  *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *11 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).  Yet that is precisely what Plaintiff's counsel did with respect to the Tongfang Arbitration.

Faced with substantial evidence in their possession that the Tongfang Arbitration was a fraud perpetrated by Dr. Shi, Plaintiff's counsel understandably now seeks to side-step that evidence and disavow their allegations based on it.  But the assertion that "the damages awarded to Tongfang [in the Arbitration] are not sought" in the Complaint, or that, "[e]ven if Dr. Shi had represented Link Motion in the Tongfang Arbitration, this would not be a material fact," is belied by the Complaint itself.  ECF 41 at 18, 20.  The Tongfang Arbitration and Award are called out *in the Complaint's introduction*, and both are central to Plaintiff's allegation that DLA was the "but-

---

[5] An arbitral panel later found this to be a breach of Dr. Shi's fiduciary duties to the Company.  ECF 42-19 at 43–47.

for cause of the Company's actual and ascertainable damages."  Compl. ¶¶ 8, 85–88.  Indeed, Plaintiff still claims that the Tongfang Arbitration caused "rescission of the Note" (which, per the Tongfang Award, is false, ECF 42-17 at 8–11), rendering "worthless" the "asset" at the center of their damages claim against DLA.  ECF 41 at 13.

In an equally sanctionable attempt to excuse Dr. Shi's misconduct, Plaintiff's counsel now speculates that an employee with "administrative access" to his email may have been posing as Dr. Shi in the Arbitration.  ECF 41 at 19; ECF 42 ¶ 71.  The sole basis for this is that Dr. Shi supposedly "lost access to his corporate email accounts" after April 2019.  ECF 41 at 19. Nonsense.  The Tongfang Award doesn't say what email Dr. Shi was using.  ECF 42-17.  He may have been using the *personal* email address that he used to communicate with the arbitrator in another arbitration (*Zhongzhi v. Shi*) during the same period.[6]  *See* ECF 41 at 19.

In any event, the point is that Plaintiff and its counsel should have known before filing the Complaint that (i) Dr. Shi was purporting to act on behalf of the Company (in violation of the Court's orders); or (ii) someone posing as Dr. Shi was doing so.  Either way, they should also have known that the Company was not represented by counsel, someone acting without authority had declined to mount *any* substantive defense, and the Receiver was unaware of the Arbitration.  Yet they asserted the false allegations anyway in order to blame DLA for the bogus Tongfang Award.

Similarly, Plaintiff's claim that one can "infer" that the Receiver knew about the Tongfang Award is beyond speculative and contradicted by the record.  In 2021 in the Baliga Action,

---

[6] Dr. Shi's behavior in Zhongzhi's arbitration against him personally matches that in the Tongfang Arbitration. The petition there alleges (and the underlying award confirms) that, as here, Dr. Shi had notice of the proceedings but declined to mount any defense.  *See Zhongzhi v. Shi*, 22-cv-06977 (S.D.N.Y.), Dkt Nos. 1 ¶ 26, 5-1.  According to allegations in the Baliga Action, the Zhongzhi transaction—and specifically Dr. Shi's personal guaranty in connection with that transaction—motivated Dr. Shi to engineer a conflicted FL Mobile transaction with Tongfang.  *See* Dkt 328 at 4–5 ("Shi 'was also personally liable for millions of dollars' in connection with [debt] owed to Zhongzhi.... Plaintiff alleges that to 'generate the cash to pay off the [debt], Shi used Tongfang SPC' and 'engineer[ed]' the sale of LKM's most valuable assets, FL Mobile and Showself, to himself in a 'secretly self-dealing transaction.'").

Plaintiff's counsel referenced a 2019 "Tongfang Arbitration" that sought to "rescind the purchase[] of FL Mobile."  Dkt 228 ¶ 33.  But after the Receiver made clear that he was unaware of any such arbitration, Dkt 239 at 6–7, Plaintiff's counsel pretended the reference was to Zhongzhi's arbitration against Dr. Shi personally.  Dkt 246 at 20.  Tellingly, Plaintiff's counsel did not produce the Tongfang Award at that time.  But once it was finally produced in this action, the Receiver confirmed that he had been unaware of the Tongfang Arbitration.  Dkt 269.  Had the Receiver been informed of that Arbitration, he surely would have appeared for the Company, as he did in the one arbitration of which he was aware (*Zhongzhi v. Link Motion*).  *See* ECF 42-19 at 8.

## III.   Plaintiff's Own Cited Authority Confirms That It Lacks Standing To Sue

"[P]laintiff[] failed to undertake a reasonable inquiry into the law that governs and clearly precludes [its] claims."  *Bletas v. Deluca*, 2011 WL 13130879, at *11 (S.D.N.Y. Nov. 15, 2011); *see* Fed. R. Civ. P. 11(b)(2) (attorney must certify "the claims . . . are warranted by existing law").  Plaintiff and its counsel don't dispute that Cayman Islands Law generally prohibits derivative actions, relying entirely on a so-called "fraud on the minority" exception to justify this action.  ECF 41 at 28–31.  But Plaintiff's own cited authority (discussed below) confirms that its argument is not "warranted by existing law" and is entirely frivolous.  *Id*. at 28.

To establish a "fraud on the minority," Plaintiff must establish that the alleged wrongdoers currently "hold a controlling number of the company's shares or that they exercise *de facto* control over those shares."  *Winn v. Schafer*, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007); *see In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 98 (D.N.H. 2004).  Those wrongdoers must also have committed "fraud" in the sense of improper self-dealing at the expense of the minority.  *Winn*, 499 F. Supp. 2d at 396–98; *In re Tyco*, 340 F. Supp. 2d at 99–101; *Renren, Inc. v. XXX*, 2020 WL 2564684, at *24 (N.Y. Sup. Ct. May 20, 2020), *aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021).  Here, however, Baliga was not in control of the Company when he filed the Baliga

Action; nor is he in control of it now.  And the Complaint doesn't even allege that he engaged in self-dealing, breached a duty to the Company, engaged in "fraud," or obtained a benefit as a result.

Further, Plaintiff must *also* show that third parties such as DLA "directly participated in or w[ere] an accessory to the conduct of the controlling stockholders constituting the alleged breach of duty." *Renren,* 2020 WL 2564684 at *29.  That includes pleading *with particularity* "how the third party acted dishonestly in assisting the primary perpetrator of the fraud." *Id.*  Where there is "no, or an insufficiently close, relationship between" the third party and the wrongdoers, there can be no claim.  ECF 42-27 (*Top Jet Enter. v. Sino Jet Holding Ltd*., 2018 (1) CILR 18, 47 ¶ 39 (Cayman Islands Grand Ct. Jan. 19, 2018)) at ¶ 39.[7]  Again, Plaintiff utterly fails on all counts. There is *no* relationship alleged between DLA and Baliga, *no* allegation that DLA "acted dishonestly in assisting" any fraud by Baliga, and *no* evidence that DLA benefitted.  Indeed, there is no evidence or allegation that DLA and Baliga ever even communicated before the Baliga Action was filed.  And DLA's alleged liability stems not from Baliga's statements to the Court, ECF 41 at 29, but from entirely separate conduct.  *See* ECF 42-27 ¶ 39 ("The fraud whose existence justifies the derivative action … must give rise to the third party's liability.").

## IV.    Contemporaneous Documents Confirm That Any Allegation That Defendants Breached A Duty To Link Motion Are Baseless

Plaintiff's arguments about whether DLA represented Link Motion or "abide[d] by the rules that would allow them to limit their duty" are a straw man.  ECF 41 at 15–16.  More than a months' worth of communications (which were all available to Plaintiff's counsel when they filed the Complaint) foreclose any good faith allegation that DLA breached any duty here.  No wonder the Opposition largely ignores those communications.

---

[7] Plaintiff claims that "Defendants failed to address *Top Jet*," ECF 41 at 29 n.20, ignoring that DLA explained in correspondence concerning an intended motion to dismiss why *Top Jet*—where the "wrongdoers" controlled *both* the company *and* the third party sued, *see* ECF 42-27 ¶ 39—was entirely inapposite.  ECF 18 at 2 n.3.

Instead, Plaintiff and its counsel now fault DLA for failing to prevent the *ex parte* TRO issued on December 14, 2018.  But with less than 24 hours' notice and not being retained by the Company, DLA could only inform the Court "that we have received no instruction from the Company due to the time difference and language barriers."  ECF 37-3 at 2; *see* ECF 37-2 at 4.  DLA thereafter pleaded with Link Motion *for weeks* to discuss next steps, including whether it wanted to retain DLA and, if so, how to respond to Baliga's filings.[8]  ECF 36 at 9–12.  Other than Dr. Shi's request that DLA get more time to respond (and Link Motion's ultimate decision not to oppose Baliga's motion, which Plaintiff does not deny), the Company utterly refused to engage with DLA, forcing DLA to withdraw.  *Id.*

In other words, this is not a case where DLA failed to "identify available defenses" in the course of discussions with its client about potential responses or strategy.  ECF 41 at 7.  DLA *could not get the Company to discuss the case at all or even confirm that it wanted to retain DLA.* Not one case Plaintiff cites holds that a client can refuse to speak to its attorneys and utterly fail to engage in a matter, and then blame the attorneys for not undertaking a scorched-earth defense without authorization.  Under these undeniable circumstances—all confirmed by documents available to Plaintiff's counsel when filing the Complaint—Plaintiff and its counsel plainly failed to conduct "an inquiry reasonable under the circumstances," to conclude that "the factual contentions" about a breach of duty by DLA "have evidentiary support."  Fed. R. Civ. P. 11(b).

## V.   This Court Already Has Rejected Plaintiff's Central Causation Argument

Plaintiff misleadingly claims "the Court relied on ***Defendants' consent*** in entering the TRO and preliminary injunction."  ECF 41 at 23 (emphasis added).  The TRO was based on

---

[8] In the course of these communications and contrary to yet another false assertion by Plaintiff—that DLA "did not advise the Company" of the consequences of Baliga's requests for equitable relief, ECF 41 at 9—DLA warned the entire Board "[i]f we do nothing, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets."  ECF 37-4 at 3.

Baliga's submission, and Link Motion subsequently declined to oppose his request for a preliminary injunction.  ECF 36 at 12 (citing Dkt Nos. 22 and 26).  Even then, the Court had to find sufficient cause for the injunction.  Plaintiff also suggests that raising Baliga's purported lack of standing would have prevented the injunctive relief by making "jurisdiction [a] substantial issue in controversy."  ECF 41 at 23.  But this Court has confirmed that even *if* Baliga lacked derivative standing, "jurisdiction to issue the challenged Order" existed based on his federal securities claims.  Dkt 275 at 18; Dkt 331 at 12.  As a result, there was no "controversy" because the proposed defense "would ultimately [have been] immaterial to the outcome.…"  Dkt 275 at 22 n.9.

Plaintiff's characterization of this Court's order as involving "legally distinct" issues, and its citation to cases involving collateral estoppel (not at issue here), ECF 41 at 24, is another smokescreen.  This Court addressed the critical question underlying Plaintiff's malpractice claim—would raising Baliga's supposed lack of derivative standing have divested the Court of authority to issue equitable relief?—and answered it in the negative.  Accordingly, unlike Plaintiff's cases, the outcome would not have changed *even if* DLA had done what Plaintiff now claims, thereby definitively negating the required element of causation.  *See Houraney v. Burton & Assocs., P.C.*, 2010 WL 3926907, at *5, *9, *11 (E.D.N.Y. Sept. 7, 2010); *Gillin v. Patterson, Belknap, Webb & Tyler*, 1994 N.Y. Misc. LEXIS 697, at *3–4 (1st Dep't 1994).  Plaintiff's decision to continue pursuing this case despite knowledge of that fatal flaw violates Rule 11.

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' opening brief, the Court should sanction China AI and its counsel jointly and severally, including by making appropriate findings of fact and conclusions of law consistent with the foregoing, by directing Plaintiff *and* its counsel to pay Defendants' reasonable costs and fees incurred in defending this action, and by dismissing the case with prejudice as to China AI.

Dated:   November 14, 2022
            New York, New York

GIBSON, DUNN & CRUTCHER LLP

/s/  Kevin S. Rosen

Kevin S. Rosen (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213-229-7635
Email:  krosen@gibsondunn.com

Nancy E. Hart
Peter M. Wade
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-4000
NHart@gibsondunn.com
PWade@gibsondunn.com

*Attorneys for Defendants DLA Piper LLP
(US) and Caryn G. Schechtman*