**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC., | No.: 1:21-cv-10911-VM-VF |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| -against- | |
| DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC, | |
| Nominal Defendant. | |

**PLAINTIFF'S SPECIFIC OBJECTIONS TO THE**
**JULY 24, 2023 AND AMENDED JULY 28, 2023**
**REPORTS & RECOMMENDATIONS**

FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
*Attorneys for Plaintiff China AI Capital Ltd.*

On the brief:     Michael James Maloney
                  Rosanne E. Felicello

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... i

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 4

LEGAL STANDARD .............................................................................................. 13

SPECIFIC OBJECTIONS ....................................................................................... 14

I.          Plaintiff and its Counsel object to the Magistrate Judge's finding that
            Plaintiff made false allegations in its Complaint in violation of Rule
            11(b)(3). .................................................................................................. 14

     A.     Plaintiff and its Counsel object to the Magistrate Judge's conclusion that
            Link Motion had already transferred possession of the shares before
            December 2018. ...................................................................................... 16

        1.  The Magistrate Judge misread the Tongfang arbitration award. ............. 16

        2.  The transaction documents and public records also show that Link Motion
            retained a property interest in the FL Mobile shares. ............................... 18

     B.     Plaintiff and its Counsel object to the finding that the TRO and, later, the
            preliminary injunction, did not prevent Link Motion from transferring its
            interest in the shares to Tongfang. ........................................................ 22

II.         Plaintiff and its Counsel specifically object to the Magistrate Judge's
            recommendation that Plaintiff's legal malpractice claim be found to be
            frivolous in violation of Rule 11(b)(2). .................................................. 26

     A.     Plaintiff and its Counsel object to the Magistrate Judge's determinations
            regarding an attorney-client relationship. ............................................. 27

     B.     Plaintiff and its Counsel object to the Magistrate Judge's determination
            that Plaintiff will not be able to prove that Defendants breached their
            duty to Plaintiff. .................................................................................... 28

     C.     Plaintiff and its Counsel object to the Magistrate Judge's determination
            that Plaintiff could not show but-for causation. .................................... 34

        1.  Tongfang Arbitration. ............................................................................ 34

        2.  Failure of Defendants to Assert an Affirmative Defense of Lack of
            Standing. ............................................................................................... 36

     D.     Plaintiff and its Counsel specifically object to the Magistrate Judge's
            determination that Plaintiff's assertion of derivative standing was
            frivolous. ............................................................................................... 38

E.      Plaintiff and its Counsel specifically object to the Magistrate Judge's apparent recommendation that both Plaintiff and its Counsel be charged with sanctions for a violation of Rule 11(b)(2). ............................................ 40

III.     Plaintiff and its Counsel specifically object to the Magistrate Judge's implicit finding that Plaintiff filed the Complaint for an improper purpose in violation of Rule 11(b)(1). ...................................... 41

IV.     Plaintiff and its Counsel specifically object to the award of sanctions in the amount of the "reasonable costs and fees incurred by Defendants in defending this action." ............................................................. 44

V.      Plaintiff and its Counsel object the imposition of sanctions here because the Rule 11 motion was brought too late. ................................ 46

CONCLUSION ........................................................................................... 49

4872-0990-1614, v. 3

# TABLE OF AUTHORITIES

## Cases

*Allen v. McCurry,*
    449 U.S. 90 (1980) ..................................................................................... 45

*Appel v. Hayut,*
    20 Civ. 6265 (JPC), 2022 U.S. Dist. LEXIS 13310
    (S.D.N.Y. Jan. 25, 2022) ............................................................................. 46

*Balderramo v. Go N.Y. Tours Inc.,*
    15-cv-2326, 2023 U.S. Dist. LEXIS 57080 (S.D.N.Y. Mar. 31, 2023) ..................... 15

*Baliga v. Link Motion Inc.,*
    385 F. Supp. 3d 212 (S.D.N.Y. 2019) ............................................................ 38

*Barry v. Liddle, O'Connor, Finkelstein & Robinson,*
    93 Civ. 8707 (CSH), 1997 U.S. Dist. LEXIS 18820
    (S.D.N.Y. Nov. 24, 1997) ...................................................................... 26, 29

*Bennett v. Mukasey,*
    525 F.3d 222 (2d Cir. 2008) ........................................................................ 31

*Black v. Ganieva,*
    21 Civ. 8824 (PAE), 2022 U.S. Dist. LEXIS 116255
    (S.D.N.Y. June 30, 2022) ........................................................ 18, 24, 35, 41

*Booking v. Gen. Star Mgmt. Co.,*
    254 F.3d 414 (2d Cir. 2001) ........................................................................ 49

*Breuninger v. Williams,*
    20 Civ. 7033 (JPC), 2023 U.S. Dist. LEXIS 110194
    (S.D.N.Y. June 27, 2023) ........................................................ 25, 26, 27, 28

*Citigroup Global Mkts v. KLCC Invs., LLC,*
    06 Civ. 5466 (LAP), 2015 U.S. Dist. LEXIS 137767 (S.D.N.Y. Sept. 28, 2015) ..... 19

*Curley v. Brignoli Curley & Roberts,*
    128 F.R.D. 613 (S.D.N.Y. 1989) .................................................................. 37

*CV Collection LLC v. WeWoreWhat, LLC,*
    20 Civ. 8623 (PAE); 21 Civ. 1623 (PAE), 2021 U.S. Dist. LEXIS 205492
    (S.D.N.Y. Oct. 22, 2021) ...................................................... 29, 30, 46, 47

*De La Fuente v. DCI Telecomms., Inc.,*

259 F. Supp. 2d 250 (S.D.N.Y. 2003) ....................................................................42

*Deep v. Boies,*
  16 Misc. 3d 1121 (A), 847 N.Y.S.2d 901 (N.Y. Sup. Ct. Albany County 2007).......27

*Deep v. Boies,*
  53 A.D.3d 948 (3d Dep't 2008) ..............................................................................27

*Deutsch v. Polly N. Passonneau, P.C.,*
  297 A.D.2d 571 (N.Y. App. Div. 2002) ...................................................................28

<u>*E. Gluck Corp. v. Rothenhaus,*</u>
  <u>252 F.R.D. 175 (S.D.N.Y. 2008)</u> ........................................................................1, 43

*Ed Capital, LLC v. Bloomfield Inv. Res. Corp.,*
  316 F.R.D. 77 (S.D.N.Y. 2016) .........................................................................45, 47

*Englese v. Sladkus,*
  Index No. 101006/2015, 2023 N.Y. Misc. LEXIS 759
  (N.Y. Sup. Ct. N.Y. Cty. Feb. 23, 2023)................................................................33

*Fischl v. Armitage,*
  128 F.3d 50 (2d Cir. 1997)......................................................................................17

*Fisher v. Tice*, No. 15cv955 (LAK) (DF),
  2016 U.S. Dist. LEXIS 87792 (S.D.N.Y. July 5, 2016) ...............................17, 18, 35

*Fishoff v. Coty Inc.,*
  634 F.3d 647 (2d Cir. 2011)................................................................18, 26, 35, 41

*Frederick v. Meighan,*
  75 A.D.3d 528 (N.Y. App. Div. 2d Dep't 2010) ......................................................31

*Gibbs v. Acting Comm'r of Soc. Sec.,*
  No. 20 Civ. 6225 (NSR) (JCM), 2023 U.S. Dist. LEXIS 488
  (S.D.N.Y. Jan. 3, 2023).....................................................................................13, 14

*Goldstein v. Albert (In re Albert),*
  277 B.R. 38 (Bankr. S.D.N.Y. 2002) .................................................................27, 28

*Greene v. WCI Holdings Corp.,*
  956 F. Supp. 509 (S.D.N.Y. 1997).........................................................................13

*Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP,*
  133 A.D.3d 428 (N.Y. App. Div. 1st Dep't 2015) ...............................................30, 31

*In re Deak & Co.,*

4872-0990-1614, v. 3

63 B.R. 422 (Bankr. S.D.N.Y. 1986) ........................................................21

*In re Payne,*
    707 F.3d 195 (2d Cir. 2013).........................................................31, 32

*In re Pennie & Edmonds LLP,*
    323 F.3d 86 (2d Cir. 2003)..................................................................48

*In re Pfizer Inc.,*
    288 F.R.D. 297 (S.D.N.Y. 2013) .......................................................27

Int'l Controls Corp. v. Vesco,
    490 F.2d 1334 (2d Cir. 1974), cert. den'd, 417 U.S. 932 (1974)............20

*Ipcon Collections LLC v. Costco Wholesale Corp.,*
    698 F.3d 58 (2d Cir. 2012)..................................................................46

*JM Holdings 1 LLC v. Quarters Holding GmbH,*
    20-CV-3480 (JPO), 2021 U.S. Dist. LEXIS 42829
    (S.D.N.Y. Mar. 8, 2021)......................................................................28

*Katz v. 260 Park Ave. S. Condo. Assocs.,*
    168 A.D.3d 615 (N.Y. App. Div. 1st Dep't 2019) ...................................35

*Kiobel v. Millson,*
    592 F.3d 78 (2d Cir. 2010)........................................................15, 21, 25

*Lawrence v. Richman Grp. of CT LLC,*
    620 F.3d 153 (2d Cir. 2010)........................................................ passim

*Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.*
    *Holdings),*
    469 B.R. 415 (Bankr. S.D.N.Y. 2012) ...........................................18, 21

*Levy v. Young Adult Inst., Inc.,*
    103 F. Supp. 3d 426 (S.D.N.Y. 2015).................................................49

*Link Motion Inc. v. DLA Piper LLP (US),*
    1:22-cv-8313-VM, 2023 U.S. Dist. LEXIS 92820
    (S.D.N.Y. May 26, 2023).......................................................................12

*Link Motion Inc. v. DLA Piper LLP (US),*
    2023 U.S. Dist. LEXIS 92820 (S.D.N.Y. May 26, 2023) ...............43, 44, 48

*Little v. City of N. Y.,*
    487 F. Supp. 2d 426 (S.D.N.Y. 2007).................................................29

*Malkan v. Mutua,*
  No. 12-CV-0236A(Sr), 2015 U.S. Dist. LEXIS 161874
  (W.D.N.Y. Dec. 1, 2015) ........................................................................................37

*Margo v. Weiss,*
  213 F.3d 55 (2d Cir. 2000) .....................................................................................45

*Matter of Renren Inc. Derivative Litigation v. XXX,*
  Index No. 653594/2018, 2020 N.Y. Misc. LEXIS 2132,
  2020 WL 2564684 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2020) ....................................41

*Moss v. Colvin,*
  845 F.3d 516 (2d Cir. 2017) ...................................................................................13

*Netsphere, Inc. v. Baron,*
  703 F.3d 296 (5th Cir. 2012) ..................................................................................33

New V & J Produce Corp. v. NYCCaterers Inc.,
  13 Civ. 4861 (ER), 2014 U.S. Dist. LEXIS 137465
  (S.D.N.Y. Sep. 29, 2014) ................................................................................15, 46

*Oliveri v. Thompson,*
  803 F.2d 1265 (2d Cir. 1986) .................................................................................37

*Pannonia Farms, Inc. v. USA Cable,*
  426 F.3d 650 (2d Cir. 2005) ...................................................................................43

*Perez v. Posse Comitatus,*
  373 F.3d 321 (2d Cir. 2004) ...................................................................................46

*Richter v. Achs,*
  174 F.R.D. 316 (S.D.N.Y. 1997) ......................................................................passim

*Romanian Am. Interests, Inc. v. Scher,*
  94 A.D.2d 549 (N.Y. App. Div. 2d Dep't 1983) .................................................27, 30

*Rotter v. Leahy,*
  93 F. Supp. 2d 487 (2d Cir. 2000) ..........................................................................15

*Rubens v. Mason,*
  387 F.3d 183 (2d Cir. 2004) ...................................................................................25

*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,*
  8 N.Y.3d 438 (N.Y. 2007) .......................................................................................33

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.,*
  186 F.3d 157 (2d Cir. 1999) ...................................................................................44

iv

*Starr Int'l Co. v. United States,*
106 Fed. Cl. 50 (2012) ............................................................................... 20, 21, 23

*Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle,*
770 F. Supp. 803 (W.D.N.Y. 1991) ........................................................................ 30

*Tantaros v. Fox News Network,*
17 Civ. 2958 (GBD), 2018 U.S. Dist. LEXIS 48511
(S.D.N.Y. Mar. 16, 2018) ..................................................................... 26, 47, 48

<u>*Top Jet Enterprises Ltd. v. Sino Jet Holding Ltd.,*</u>
2018 (1) CILR 18 (Caymans Island Grand Court Jan. 19, 2018) .................... 39, 40

*United States v. Snow,*
462 F.3d 5 (2d Cir. 2006) ........................................................................................ 14

*Vazquez v. City of N.Y.,*
No. 10-CV-6277 (JMF), 2014 U.S. Dist. LEXIS 124483
(S.D.N.Y. Sep. 5, 2014) ..................................................................................... 18, 35

*Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.,*
149 F. Supp. 3d 376 (E.D.N.Y. 2016) ............................................................... 38, 39

*Watson v. Geithner,*
11 Civ. 9527 (AJN), 2013 U.S. Dist. LEXIS 141009
(S.D.N.Y. Sept. 27, 2013) ........................................................................................ 13

*Webb v. City of N.Y.,*
No. 08-CV-5145(CBA)(JO), 2010 U.S. Dist. LEXIS 86234
(E.D.N.Y. Aug. 20, 2010) ........................................................................................ 32

Wolters Kluwer Fin. Servs. v. Scivantage,
564 F.3d 110 (2d Cir. 2009) ................................................................................ 46, 47

*Wyler v. U.S.,*
752 F.2d 156 (2d Cir. 1983) .................................................................................... 29

*Young v. Suffolk Cty.,*
922 F. Supp. 2d 368 (E.D.N.Y. 2013) ............................................................... 18, 35

**Statutes**

28 U.S.C. § 636(b)(1) .............................................................................................. 13

28 U.S.C. § 636(b)(1)(C) ......................................................................................... 14

U.C.C. § 9-202 ......................................................................................................... 21

U.C.C. § 9-309 cmt. 6 ..................................................................................21

U.C.C. § 9-314 ............................................................................................21

**Rules**

Fed. R. Civ. P. 11(b)(3) ...............................................................................15

Fed. R. Civ. P. 11(c) .............................................................................43, 47

Fed. R. Civ. P. 72(b)(2) ...............................................................................15

Fed. R. Civ. P. 72(b)(3) ...............................................................................13

R.P.C. 1.16 ..........................................................................................34, 35

## Other Authorities

12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 3070.2 (2d ed. 2016) .............................................................................13

28 Modern Securities Transfers Sec. 6A:12 (4th ed) (Dec. 2022) ...............................19

7 Pt. 2 James Wm. Moore, Moore's Federal Practice, P 72.04[10.-2] (1995) .............13

Boris Kozochyk, The Chinese of Secured Transactions in Personal Property at a
Crossroads: An Analysis and Suggestions,
26 U. Miami Int'l & Comp. L. Rev. 245, 325 (2019) .........................................19, 21

Cayman Islands Companies Law § 216(1) .................................................................16

Cayman Islands Companies Law § 218(1) .................................................................16

Juliet M. Moringiello, ARTICLE: FALSE CATEGORIES IN COMMERCIAL LAW:
THE (IR)RELEVANCE OF (IN)TANGIBILITY, 35 Fla. St. U.L. Rev. 119 (Fall
2007) ..................................................................................................19, 21

Todd R. Benson, Taking Security in China: Approaching U.S. Practices, 21 Yale J.
Int'l L. 183 (1996) ........................................................................................21

Plaintiff China AI Capital Ltd. ("Plaintiff" or "China AI"), by and through their undersigned counsel, hereby submit the following specific objections to the Report & Recommendation of Magistrate Judge Valerie Figueredo, dated July 24, 2023 (Dkt.[1] 53) and Amended Report & Recommendation, dated July 28, 2023 (Dkt. 58) (the "R&R") concerning the motion by Defendants DLA Piper LLP (US) ("DLA") and Caryn Schechtman (together, the "Defendants") for Rule 11 sanctions (Dkt. 35, the "Sanctions Motion").

## PRELIMINARY STATEMENT

There is "a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (Marrero, J.). Rule 11 sanctions may only be awarded in "extraordinary circumstances." *E. Gluck Corp.*, 252 F.R.D. at 178 (citations omitted). Such circumstances do not exist here.

Plaintiff asserted a single, derivative legal malpractice claim against Defendants based on their failure to properly advise Link Motion, Inc. ("LKM" or "Link Motion" or the "Company") and to obtain informed consent prior to agreeing to a stipulation imposing a Receiver on the Company. Plaintiff alleges that Defendants' legal malpractice caused significant damages including the costs of the Receiver, Dkt. 1 ¶¶92-93, and damages related to Link Motion's inability to complete its sale of FL Mobile shares to Investment Fund Series SPC ("Tongfang") by preventing the transfer of control of the shares to Tongfang, Dkt. 1 ¶94.

---

[1] Unless stated otherwise, all citations to "Dkt. _" refer to documents filed at the ECF docket number in this action.

Relying substantially on select "evidence" submitted by counsel for Defendants, the Magistrate Judge recommends sanctions here on three bases (1) that Link Motion's statements in press releases and S.E.C. filings that it had "completed" the transaction with Tongfang made it unreasonable for Plaintiff or its counsel to believe that Link Motion still needed to transfer the shares to Tongfang and it was a violation of Rule 11(b)(3) for Plaintiff's Complaint to allege otherwise; (2) that the legal malpractice claim "suffers from multiple deficiencies that viewed collectively should have led counsel to conclude that the claim had no chance of success" and is frivolous in violation of Rule 11(b)(2); and (3) that Plaintiff's request that the matter be stayed or, in the alternative, that Plaintiff be permitted to withdraw its voluntary dismissal and amend the Complaint following the dismissal of Link Motion's direct legal malpractice claim on statute of limitations grounds is "objectively unreasonable and can only be viewed as an attempt to harass Defendants and cause reputational harm." Dkt. 58 at 16.

The Magistrate Judge's analysis is flawed and should be rejected. <u>First</u>, there is nothing "false" about Plaintiff's allegations that Link Motion still needed to transfer the FL Mobile shares to Tongfang or that the transfer was not completed at the time the TRO was entered in the underlying case. Documentary evidence shows that the shares had been "pledged" to Link Motion as security for a debt obligation owed by Tongfang. A pledge is a transfer of an interest in property and, therefore Link Motion held a property interest in the shares. Plaintiff submitted other evidence that supports this fact, including public records from China showing that the shares continue to be held in Dr. Shi's name as the nominee for the benefit of the owner of the shares, Link

Motion. An arbitrator award determined that as of March 19, 2020 that Link Motion had not delivered the shares to Tongfang and Tongfang had not made any cash payments under the Note. The transaction documents also show that Link Motion retained—and continues to retain—dominion and control over the shares. Accordingly, Plaintiff had evidence to support its contention that the shares remained the property of Link Motion when the TRO and preliminary injunction were entered in the underlying action. And there is no dispute that the TRO restrained Link Motion from transferring any property. It was improper for the Magistrate Judge to recommend Rule 11(b)(3) sanctions here where Plaintiff has identified evidence that supports its allegations.

Second, the Magistrate Judge's determination, pre-discovery, that Plaintiff's legal malpractice claim was frivolous was based on accepting selected "facts" presented by Defendants while ignoring and discrediting the evidence to the contrary presented by Plaintiff. Especially where, as in a legal malpractice claim, facts are to be determined by a jury, it was improper for the Magistrate Judge to weigh the evidence and choose Defendants' view of the facts over Plaintiff's. The Magistrate Judge also faulted Plaintiff's counsel for alleging standing to assert the legal malpractice claim here. That conclusion was wrong: Plaintiff's counsel asserted a nonfrivolous legal argument, backed by legal authority, that Plaintiff had standing to assert this malpractice claim. Even if that legal argument is not later accepted, it is not sanctionable because Plaintiff, through counsel, cited to legal authority in the United States and the Cayman Islands supporting standing under the circumstances of this

case. In labeling the standing argument as frivolous, the Magistrate Judge improperly ignored the legal authority cited by Plaintiff.

<u>Third</u>, the Magistrate Judge apparently determined that Plaintiff's claim was brought for an improper purpose on the basis of Plaintiff's June 19, 2023 request, months after the Sanctions Motion was filed and fully briefed, to stay this matter or to allow Plaintiff to withdraw its voluntary dismissal and submit an amended complaint. Not only was no notice provided to Plaintiff that the June 19, 2023 request would be considered the basis of Rule 11 sanctions, but there is also no reasonable basis to find an improper purpose from Plaintiff's request. It was reasonable for Plaintiff to seek to maintain this action where the facts and circumstances had changed because of the District Court's ruling on the later-filed direct action. The District Court had dismissed the direct claim solely on statute of limitations grounds while noting that Plaintiff's claim in this earlier-filed action had been timely. Moreover, there is no basis to find bad faith or an improper purpose in requesting a stay because Defendants themselves had previously objected to Plaintiff's earlier request to voluntarily dismiss the action. Draft dismissal orders were under review by the Court at the time that Defendants filed their Sanctions Motion. Plaintiff's conduct in seeking to stay the action does not evidence an improper purpose.

As such, the recommendation of awarding Rule 11 sanctions here does not comport with Second Circuit precedent and should be rejected.

## STATEMENT OF FACTS

### The Allegations of the Complaint

Plaintiff commenced its claim on behalf of Link Motion on December 20, 2021.

Dkt. 1. The Complaint asserts one claim for legal malpractice based on Defendants'

representation of Link Motion in the action *Baliga v. Link Motion Inc., et al.*, Case No.

1:18-cv-11642 (S.D.N.Y.) (the "Baliga Action"). Dkt. 1. Among other things, Plaintiff

alleged that:

> 62. The Company was party to a Share Purchase Agreement ("SPA")
> with Tongfang Investment Fund Series SPC ("Tongfang SPC") that
> involved the Company's divesture of its legacy businesses. Among other
> things, the SPA required the Company to cause shares of FL Mobile to
> be transferred to Tongfang SPC.
>
> 63. At the time the TRO was entered, the SPA was executory: Tongfang
> SPC had already conveyed to the Company consideration for the
> transaction, in the form of cash payments equivalent in value to
> RMB¥1,350,000,0009and USD$30,000,000 and a note payable in the
> amount of RMB¥1,770,000,000 (approximately USD$277,000,000) (the
> "Tongfang Note"). The Company had already caused the transfer of
> Showself to Tongfang SPC in exchange for consideration paid.
>
> 64. What remained to be performed under the SPA was the Company's
> obligation to cause the transfer of FL Mobile shares in accordance with
> the SPA.
>
> 85. The entry of the TRO and the preliminary injunction prevented the
> Company from satisfying its obligation to non-party Tongfang SPC
> (causing the transfer of the Company's legacy business, FL Mobile)
> after Tongfang SPC had already paid the Company consideration as
> required by the SPA.

Dkt. 1 at ¶¶62,63,64,85.

**Plaintiff's Bases for the Allegations about the Tongfang Transaction**

At the time that Plaintiff asserted its Complaint against Defendants in

December 2021, Plaintiff was aware of the following pieces of evidence that supported

its allegations in the Complaint:

1. On or about March 30, 2017, Link Motion entered into a Share Purchase
   Agreement (the "SPA") with Tongfang Investment Fund Series SPC ("Tongfang")

for the purchase and sale of Link Motion's 63% equity interest in FL Mobile, a Chinese technology company held by Link Motion's affiliate, Xinjiang Yinghe. Dkt. 42-9.

2. The SPA between Tongfang and Link motion provided for the payment by Tongfang of a total purchase price of RMB2,520,000,000 (the "Purchase Price"). Dkt. 42-9 § 2.1. The Purchase Price was payable by an earnest money payment of RMB645,000,000 on signing and a cash payment of RMB1,875,000,000 on or before May 31, 2017. Dkt. 42-9 §2.3(a)(ii). The SPA also provided that ***upon payment in full***, Link Motion "shall (i) transfer or cause its nominee shareholders (including Xinjiang Yinghe and Dr. Shi) to transfer the Sale Shares to the Purchaser [Tongfang]. . . ." Dkt. 42-9 §2.3(b)(i) (emphasis added).

3. In connection with the SPA, the parties executed a Supplemental Agreement (the "Supplemental Agreement") dated as of March 31, 2017. Dkt. 42-10. The Supplemental Agreement provided that Link Motion would retain complete control over its 63% equity interest in FL Mobile until the full Purchase Price was ***paid in cash***. Dkt. 42-10 §§2.3, 4.1, 4.2 (emphasis added). The Supplemental Agreement provided that title to Link Motion's 63% equity interest FL Mobile would be transferred to Dr. Shi to hold in trust pending completion of the purchase and sale set forth in the SPA. Dkt. 42-10 §§2.1, 2.2, 2.3.; Dkt. 42-12 (public records showing that Link Motion's 63% equity interest was transferred to Dr. Shi effective March 30, 2017).

4. In a press release issued on March 30, 2017, Link Motion disclosed the SPA and

stated that Tongfang "will pay RMB150 million in cash as the non-refundable earnest money which will be counted towards the payment of the purchase price. The Investor will pay the remaining amount of the total consideration on or before May 31, 2017 after the Company delivers all of its equity interests in FL Mobile and Beijing Showself." Dkt. 37-6.

5. In public disclosures filed with the S.E.C., Link Motion disclosed that Tongfang had paid the earnest money payment portion of the Purchase Price in or around April 2017. Dkt. 42-11 at ECF 7 of 20. On May 31, 2017, Link Motion disclosed that it had agreed to extend the time for Tongfang to pay the balance of the Purchase Price. Dkt. 42-11 at ECF 16 of 20. On November 9, 2017, Link Motion disclosed that it had received a cash payment of RMB800,000,000 from Tongfang. Dkt. 42-11 at ECF 17 of 20. On November 20, 2017, Link Motion disclosed that it had received an additional RMB400,000,000 payment from Tongfang. Dkt. 42-11 at ECF 18 of 20.

6. On December 14, 2017, Link Motion disclosed that it had received from Tongfang another cash payment of RMB200,000,000 along with a "RMB1,770,000,000 senior note" (the "Note") Dkt. 42-11 at ECF 19 of 20. The Note was dated as of December 14, 2017 and provided for payment by Tongfang of RMB1,770,000,000 with interest and other charges on or before December 14, 2018, subject to certain extensions and cure periods. Dkt. 42-13. Tongfang's obligation to pay the Note, however, was contingent upon Link Motion's transfer of the FL Mobile shares. Dkt. 42-13. The Note also provided to Link Motion a secured interest in the FL

Mobile shares until payment was made in full by Tongfang. Dkt. 42-13.

7. In an Equity Pledge Agreement executed on or about December 14, 2017, Tongfang pledged the FL Mobile shares to Link Motion as security for the Note. Dtk. 37-11. The Equity Pledge Agreement also confirmed Link Motion's rights of control under the Supplemental Agreement and granted Link Motion further rights of control over the shares until the Note was paid in full. Dkt. 37-11. Thus, Link Motion's security interest in the FL Mobile shares was perfected by control. Dkt. 37-11; Dkt. 42-10.

Plaintiff's reliance on this evidence to support its allegation that Link Motion had not yet transferred the FL Mobile shares to Tongfang was reasonable.

*First*, public share ownership from China showed that the FL Mobile shares were never transferred from Link Motion's nominee, Dr. Shi, to Tongfang. Dkt. 42-12. Thus, the condition for payment provided for in the Note was never satisfied. *See* Dkt. 42-13. And Link Motion retained, pursuant to the Supplemental Agreement and Equity Pledge Agreement, a security interest in the FL Mobile shares, perfected by control, until Tongfang paid the full Purchase Price in cash. Dkt. 42-10.

*Second*, an arbitrator in a proceeding brought by Tongfang in April 2019, found that Link Motion had failed to transfer its interest in FL Mobile to Tongfang. Dkt. 42-17 ¶21. Tongfang had brought the arbitration after receiving a demand from the Receiver for payment in full under the Note. Dkt. 42-16 ¶4; 42-17 ¶3. In reaching his finding, the arbitrator reviewed the SPA, the Supplemental Agreement, the Equity Pledge, the source of cash payments made by Tongfang, and the Note. Dkt. 42-17 ¶¶1,

n.1, 5, 19, 20. The arbitrator did not simply accept Tongfang's claim at face value but requested supplemental submissions from Tongfang before reaching his findings. Among other things, the arbitrator concluded that (i) the cash portion of consideration paid by Tongfang had come from four investor companies that were separate and independent from Link Motion (Dkt. 42-17 ¶19(1), ¶20-21), (ii) there was a record of cash payments showing that Tongfang had not made any payments under the Note (Dkt. 42-17 ¶19(1)-(2))[2], and (iii) that Link Motion had failed to transfer the FL Mobile shares to Tongfang (Dkt. 42-17 ¶21).

**_Third,_** Plaintiff was aware that in a September 10, 2018 press release, Link Motion disclosed that Loeb & Loeb LLP had concluded that "under the agreements signed with Tongfang, the Company has the ability to recover the shares it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares." Dkt. 37-12. Link Motion's "ability to recover" is the result of its retained rights to transfer and control the shares under its security interest perfected by control. The right to transfer is a property right, meaning that Link Motion continued to hold property rights in the stock.  The Loeb & Loeb findings also strongly suggested that as of September 2018, the Note had not yet been paid in full.

**_Fourth_**, Plaintiff was aware that, effective December 14, 2018, this Court temporarily restrained Link Motion and Dr. Shi from transferring any assets of Link Motion. Dkt. 42-2. At that time, Link Motion continued to hold interests in the FL Mobile stock under the Supplemental Agreement and Equity Pledge Agreement. Link

---

[2] The sum of the cash payments plus the face amount of the note equal the Purchase Price agreed to in the SPA. Accordingly, Tongfang had made no payments towards the amount due under the Note.

Motion's interests in the stock was an asset that was restrained under the TRO.

**The Rule 11 Letter and Sanctions Motion**

On March 7, 2022, Defendants served Plaintiff's counsel with a Rule 11 letter and notice of motion. Dkt. 37-4. On March 7, 2022, Defendants also served Plaintiff's counsel with a pre-motion to dismiss letter in accordance with Judge Marrero's Individual Practices, setting out essentially the same arguments raised in their Rule 11 letter. Dkt. 16. Judge Marrero's Individual Practice II.B, in effect at the time, stated that its dual purpose was to address objections to the pleadings and sanctions. Accordingly, Plaintiff responded to both the Rule 11 letter and individual practice II.B letter by letter dated March 14, 2022, served in accordance with Judge Marrero's Individual Practices, II.B. Dkt. 18-2.

Under Judge Marrero's individual practices, where the parties fail to resolve any objections to the complaint, the next step is for Defendants to "so notify the Court in writing, indicating why a motion to dismiss remains warranted even after plaintiff has agreed to any amendments to cure specified deficiencies, and transmit copies of the correspondence exchanged by the parties in this regard. Promptly thereafter the Court will schedule a conference, by telephone or in person, to provide any appropriate preliminary guidance or rulings." Judge Marrero, Individual Practices, II(B)(2). Defendants provided notification of their intention to move to dismiss to the Court on March 21, 2022. Dkt. 18. Judge Marrero's Individual Practices indicate that he will issue written preliminary guidance after the pre-motion conference. Judge Marrero, Individual Practices, II(B)(3) & (4).

On July 1, 2022, Judge Marrero referred the request for a conference and the preliminary determination of the motion to dismiss to the Magistrate Judge. Dkt. 19. The Magistrate Judge held a pre-motion conference by telephone on August 24, 2022. Dkt. 20 (Order of conference); Dkt. 61 (Transcript). The Magistrate Judge did not issue any written guidance following this conference. At the conference, the parties were directed to meet and confer on a briefing schedule for the anticipated motion to dismiss. Before the parties reached an agreement on scheduling, on September 6, 2022, Plaintiff filed a Notice of Voluntary Dismissal. Dkt. 22. The basis for voluntary dismissal was the commencement by Link Motion of a direct action against the same defendants for the same malpractice claim. *See Link Motion Inc. v. DLA Piper LLP (US), et al.*, 1:22-cv-8313-VM. The Court declined to accept a voluntary dismissal of the derivative claim and, instead, on September 12, 2022, directed Plaintiff to submit a proposed order to provide notice of the dismissal to other shareholders. Dkts. 26 & 26-1. Plaintiff filed its proposed notice on September 19, 2022. Dkt. 30, 30-1. On September 26, 2022, Defendants objected to Plaintiff's proposed notice of dismissal (Dkt. 34) and filed their Sanctions Motion (Dkt. 35).

On October 3, 2022, Judge Marrero referred Plaintiff's voluntary dismissal and the Sanctions Motion to the Magistrate Judge. Dkt. 38. By November 14, 2022, briefing on the Sanctions Motion was complete. Almost 6 months later, on May 10, 2023, the Magistrate Judge scheduled a teleconference for June 1, 2023 to address Plaintiff's request for voluntary dismissal of the action. Dkt. 46.

Days prior to the scheduled date for this conference in this action, on May 26th,

Judge Marrero issued a ruling dismissing Link Motion's direct claim for legal malpractice solely on statute of limitations grounds. *Link Motion Inc. v. DLA Piper LLP (US)*, 1:22-cv-8313-VM, 2023 U.S. Dist. LEXIS 92820, at *17 (S.D.N.Y. May 26, 2023). Because of this development, on May 30, 2023, Plaintiff submitted a letter requesting that the Court adjourn the conference scheduled for June 1st to address the pending motion for approval of Plaintiff's notice to shareholders—which has been pending since September 26, 2022. Dkt. 26, 47. Plaintiff's counsel sought the adjournment so that it could discuss with Plaintiff its options going forward given Judge Marrero's dismissal of the Company's direct legal malpractice claim on statute of limitations grounds. Dkt. 47; ECF No. 30, No. 22-CV-8313 (Marrero Dismissal Order). The Magistrate Judge declined to adjourn the conference and it went forward by phone on June 1, 2023. Dkts. 48 & 52.

During the conference, the Magistrate Judge mentioned that she was "working on the Rule 11 motion" but did not give the parties an opportunity to argue the merits of that motion. Dkt. 52.

Following the June 1st conference, Defendants submitted another letter brief arguing that this action must be dismissed. Dkt. 58 at 11. Plaintiff also submitted a letter, setting forth that the appropriate action would be a stay pending the request for Judge Marrero to reconsider the Marrero Dismissal Order and any appeal of that Order. Dkt. 49. Alternatively, Plaintiff sought the ability to withdraw its voluntary dismissal and amend its Complaint in light of Judge Marrero's ruling on the direct legal malpractice claim and, in particular, his footnote acknowledging that Plaintiff's

legal malpractice claim here had been timely. *Id.* The Magistrate Judge did not rule on any of these requests and did not rule on the pending, proposed dismissal orders. Instead, the Magistrate Judge—without holding oral argument—issued the instant R&R on July 24, 2023, Dkt. 53, which was amended on July 28, 2023, Dkt. 58.

## LEGAL STANDARD

"A judge of the court *shall* make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). *See also* Fed. R. Civ. P. 72(b)(3); *Gibbs v. Acting Comm'r of Soc. Sec.*, No. 20 Civ. 6225 (NSR) (JCM), 2023 U.S. Dist. LEXIS 488, *4 (S.D.N.Y. Jan. 3, 2023). "*De novo* review 'means reconsideration afresh by the district judge in this sense: no presumption of validity applies to the magistrate's findings or recommendations.'" *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509 (S.D.N.Y. 1997), quoting 7 Pt. 2 James Wm. Moore, Moore's Federal Practice, P 72.04[10.-2], at 72-96 (1995); 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2 (2d ed. 2016) ("*De novo* review means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered."). "[T]here are instances where the Court should still consider a plaintiff's objections under a de novo review rather than for clear error even though a plaintiff previously raised the same arguments before the Magistrate Judge . . ." *Gibbs*, 2023 U.S. Dist. LEXIS 488, at *5-6 (citations omitted.) *See Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) (expressing skepticism that clear error review, as opposed to *de novo* review, is appropriate where arguments are reiterated, noting that "where arguably 'the only way for [Moss] to raise . . . arguments

[on that point] [was] to reiterate them.'"); *Watson v. Geithner*, 11 Civ. 9527 (AJN), 2013 U.S. Dist. LEXIS 141009, *5-6 (S.D.N.Y. Sept. 27, 2013) (noting that although "[c]ourts in this district often state that clear error review is also appropriate if a party's objection 'simply reiterates [the party's] original arguments[,] . . . support for that doctrine is arguably lacking in the language of both 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2)").

The reviewing judge should only apply the clear error standard to those parts of the report and recommendation "to which no timely objection has been made" or "makes only general and conclusory objections." *Gibbs*, 2023 U.S. Dist. LEXIS 488, at *4-5. A Magistrate Judge has committed "clear error" where, "upon view of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006).

This Court should apply *de novo* review to each of the findings specifically objected to below. But even under the clearly erroneous standard, the Magistrate Judge committed clear error in recommending that the Court find that Plaintiff and its counsel violated Rule 11 and that sanctions should be awarded to Defendants here.

## SPECIFIC OBJECTIONS

## I.  Plaintiff and its Counsel object to the Magistrate Judge's finding that Plaintiff made false allegations in its Complaint in violation of Rule 11(b)(3).

Rule 11(b)(3) provides that, by signing a pleading, the attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Sanctions may not be imposed unless a particular allegation is "utterly lacking in support." _Kiobel v. Millson, 592 F.3d 78, 81-82 (2d Cir. 2010)_. "[T]he standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." _Balderramo v. Go N.Y. Tours Inc., 15-cv-2326, 2023 U.S. Dist. LEXIS 57080, at *21 (S.D.N.Y. Mar. 31, 2023) (quotations omitted)_. "A 'reasonable belief that a colorable claim' existed at the time of the complaint (or before discovery) allows parties and counsel to avoid sanctions regardless of the claim's success." _New V & J Produce Corp. v. NYCCaterers Inc., 13 Civ. 4861 (ER), 2014 U.S. Dist. LEXIS 137465, at *18 (S.D.N.Y. Sep. 29, 2014)_, _quoting Rotter v. Leahy, 93 F. Supp. 2d 487, 503 (2d Cir. 2000)_.

In the R&R, the Magistrate Judge concludes that "[a]t the time Plaintiff filed its Complaint, neither Plaintiff nor its counsel could have reasonably believed that" the allegations in ¶¶62-64 and ¶85 of the Complaint "had or were likely to have evidentiary support." Dkt. 58 at 16. The Magistrate Judge claims that these paragraphs are false statements because Link Motion was obligated to transfer the shares in December 2017, not December 2018, and the Company could have "enforc[ed] the Tongfang Note, receiv[ed] payment under the Note, or foreclose[ed] on its security interest" in the stock notwithstanding the issuance of the TRO. Dkt. 58 at 20-21. She also found that "Link Motion transferred its shares in FL Mobile to Tongfang _before_ Baliga filed his suit in December 2018." Dkt. 58 at 17. These findings of fact are contradicted by the

evidentiary support submitted by Plaintiff and the law governing pledges of stock in a secured transaction.

### A. Plaintiff and its Counsel object to the Magistrate Judge's conclusion that Link Motion had already transferred possession of the shares before December 2018.

The Magistrate Judge concluded, based on certain statements made by Link Motion in press releases and S.E.C. filings, that the transfer of FL Mobile shares to Tongfang[3] was "complet[ed]" on December 17, 2017 and that "Plaintiff and its counsel could not have reasonably concluded that the factual allegations in the Complaint would have evidentiary support." Dkt. 58 at 21-22.

This conclusion is erroneous because Plaintiff has identified and submitted evidentiary support for the allegations that the Tongfang transaction was not fully completed as of December 14, 2018, when the TRO was entered. The evidence shows that Tongfang had not completed its payment obligations for the FL Mobile shares and Link Motion had not transferred the shares.

### 1. The Magistrate Judge misread the Tongfang arbitration award.

The Magistrate Judge's conclusion that "Tongfang *had completed* its payment obligations in December 2017" is not supported by the arbitration award. The amounts of cash payments paid to Link Motion (RMB1,350,000,000) (Dkt. 42-17 ¶19(1), (3)), <u>less</u>

---

[3] The records in this case show that with respect to FL Mobile, Tongfang was acting on behalf of a segregated portfolio named Tongfang M&A Fund SP ("Tongfang M&A Fund") and its independent investors. Dkt. 42-13; Dkt. 42-17 ¶¶19(1), 20(1). *See also* Cayman Islands Companies Law §§ 216(1), 218(1), available at https://www.cima.ky/upimages/lawsregulations/1673888959CompaniesAct2023Revision_1673888959.PDF.

the cash paid for Showself (RMB800,000,000) (Dkt. 42-17 at 2 n.3),[4] plus the **face value of the Note** (RMB1,770,000,000) (Dkt. 42-17 ¶19(2)), equals the Purchase Price (RMB2,520,000,000) (Dkt. 42-19 ¶19). Thus, as of December 17, 2017, Tongfang had paid only part of the total consideration owed under the SPA. The arbitrator's recitation of payments made also shows that Tongfang made no further cash payments after December 2017. *See* Dkt. 42-19 ¶19(1), (2), (3). In the arbitration, Tongfang never claimed to have made any other cash payments due under the Note. *See* Dkt. 42-17, ¶20(3).[5]

Also, contrary to the Magistrate Judge's finding, Dkt. 58 at 20, the arbitration award did not find that "Link Motion was obligated to transfer the Link Motion shares in December 2017." The arbitration award found that "Tongfang's obligation to redeem the Senior Note (valued at RMB 1,770 million as at 14 December 2017) was thereafter to be set off against the delivery by NQ International of shares in FL Mobile." Dkt. 42-17 ¶21, substantially adopting ¶19(2). In other words, the arbitration award found that delivery of the shares was contingent upon payment of the Note in full and that delivery had not occurred. Dkt. 42-17 at ¶22.

In the R&R, the Magistrate Judge weighs and discounts the credibility of the arbitration award. But credibility determinations and the weighing of evidence are the province of the jury—not a judge ruling on a motion under Rule 11(b)(3). *See Fisher v.*

---

[4] Tongfang treated the purchase of FL Mobile and Showself as one integrated transaction with total consideration of RMB3,320,000,000. Dkt. 42-17 ¶19.

[5] Although Tongfang claimed in the arbitration that its debt obligations under the note had been "repackaged," Dkt. 42-17 ¶20(3), it failed to specify the date when this allegedly occurred and the award makes no mention of any documentary evidence of such an amendment to the Note.

*Tice*, No. 15cv955 (LAK) (DF), 2016 U.S. Dist. LEXIS 87792, at \*32-33 (S.D.N.Y. July 5, 2016), citing *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). Even if the Magistrate Judge might grant summary judgment on this record, the evidence submitted by Plaintiff requires denial of the Rule 11 motion. *See Black v. Ganieva*, 21 Civ. 8824 (PAE), 2022 U.S. Dist. LEXIS 116255, at \*71 (S.D.N.Y. June 30, 2022) (finding no false allegation pre-discovery even where party could not "point[] to solid evidence" and "their supposition to this effect is based on relatively tenuous circumstantial inferences"); *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 397 (E.D.N.Y. 2013) (granting summary judgment but denying Rule 11 sanctions); *Fisher*, 2016 U.S. Dist. LEXIS 87792, at \*71-72 (granting summary judgment and denying sanctions) (collecting cases); *see also Vazquez v. City of N.Y.*, No. 10-CV-6277 (JMF), 2014 U.S. Dist. LEXIS 124483, at \*30-31 (S.D.N.Y. Sep. 5, 2014); *Richter v. Achs*, 174 F.R.D. 316, 318 (S.D.N.Y. 1997) (finding that even "unconvincing" arguments are not frivolous); *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a longshot does not necessarily mean it is sanctionable.").

### 2. The transaction documents and public records also show that Link Motion retained a property interest in the FL Mobile shares.

Plaintiff and its counsel specifically object to the Magistrate Judge's conclusion that "[w]hether Tongfang subsequently repaid the Tongfang Note is distinct from whether the transaction was completed." Dkt. 58 at 21. The terms of the Equity Pledge Agreement, SPA, and Supplemental Agreement show that delivery of the shares was not required or expected until the Note was paid in full. Until then, Link Motion retained complete control over the shares. *See Lehman Bros. Holdings v. JPMorgan*

*Chase Bank, N.A. (In re Lehman Bros. Holdings)*, 469 B.R. 415, 440 (Bankr. S.D.N.Y. 2012) ("[C]ourts uniformly have treated a pledge or the attachment and perfection of a security interest as a 'transfer' of an interest in property"). There is no substantive dispute that Link Motion's acceptance of the Note as payment for the FL Mobile shares was secured by Tongfang's pledge of those same shares as security for payment. The terms of the Equity Pledge Agreement and Supplemental Agreement show that Link Motion perfected its secured interest by "control." *See*, *e.g.*, *Citigroup Global Mkts v. KLCC Invs., LLC*, 06 Civ. 5466 (LAP), 2015 U.S. Dist. LEXIS 137767, *33-34 (S.D.N.Y. Sept. 28, 2015)* ("An attached security interest in investment property, such as the securities at issue here, may be perfected either by filing or by control."); U.C.C. § 9-314.[6]  When perfected by "control," the "control" rights remain with the transferor regardless of the identity of the party holding title ownership of the shares. U.C.C. § 9-202 ("the provisions of this Article with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor"). The party with "control" has possession and dominion over the shares. *See* Juliet M. Moringiello, 35 Fla. St. U.L. Rev. 119, 155 (Fall 2007) ("In Article 8 [of the U.C.C.] 'control' is an umbrella term that applies to certificated, or tangible, and uncertificated, or intangible, securities, replacing but encompassing 'possession'").[7]

The Magistrate Judge misread the Equity Pledge Agreement. The power

---

[6] *See also* U.C.C. § 9-309 cmt. 6 ("Hard pledge arrangements are covered by the concept of control. See Sections 9-314, 9-106, 8-106"); 28 Modern Securities Transfers Sec. 6A:12 (4th ed) (Dec. 2022) ("[P]erfection of a security interest in an uncertified security is only available by filing a financing statement *or by the secured party obtaining control*.") (emphasis added).

[7] Boris Kozolchyk, The Chinese of Secured Transactions in Personal Property at a Crossroads: An Analysis and Suggestions, 26 U. Miami Int'l & Comp. L. Rev. 245, 325 (2019).

granted to Link Motion, under the Equity Pledge Agreement, "to **retake** ownership of the FL Mobile shares if Tongfang failed to pay the Tongfang Note," Dkt. 58 at 19 (emphasis added), did not mean that the stock could be recovered from the possession of Tongfang. The right "to retake ownership" meant that Link Motion could simply transfer to itself title to the FL Mobile stock already in its possession and control.[8] *See* [Starr Int'l Co. v. United States, 106 Fed. Cl. 50, 72 (2012)](#) ("The right to transfer is a traditional hallmark of property");

This conclusion is also supported by public stock ownership records submitted by Plaintiff showing that title to the shares was never transferred to Tongfang and remained in the name of Dr. Shi, Link Motion's nominee under the transaction documents. Dkt. 42-12. Thus, Link Motion's property interest in the FL Mobile shares had **not** been transferred to Tongfang as of April 28, 2019, when Tongfang commenced the arbitration.

The principle that the transfer of dominion and control is essential for there to be a complete transfer all rights in shares is also found in the federal securities laws. *See* [Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1343 (2d Cir. 1974)](#), [cert. den'd, 417 U.S. 932 (1974)](#). In *Int'l Controls Corp.*, a parent company transferred stock held by one wholly owned subsidiary to a newly formed wholly owned subsidiary. Because the parent retained "complete control" over the stock, the Second Circuit held that there was no "purchase and sale" of the stock under the securities laws. *[Int'l Controls, 490](#)*

---

[8] The terms of the Supplemental Agreement by which Link Motion transferred the stock to Dr. Shi as nominee make clear that Link Motion retained all control rights in connection with the May 30, 2017 transfer.

F.2d at 1343.

Even if the Magistrate Judge were correct, that "ownership" of the FL Mobile shares had been transferred to Tongfang on December 17, 2017, Dkt. 58 at 19, the Sanctions Motion must still be denied because the undisputed evidence shows that the shares were pledged to Link Motion. *In re Lehman Bros. Holdings*, 469 B.R. at 440 ("[C]ourts uniformly have treated a pledge or the attachment and perfection of a security interest as a 'transfer' of an interest in property"). The control rights granted to Link Motion in the Equity Pledge Agreement and Supplemental Agreement[9] evidence a property interest in the shares retained by Link Motion. *See*, *e.g.*, *Starr Int'l Co.*, 106 Fed. Cl. at 72 ("The right to transfer is a traditional hallmark of property"); *In re Deak & Co., 63 B.R. 422, 427 (Bankr. S.D.N.Y. 1986)* ("[S]hares controlled by [debtor] constituted legal or equitable interests of the debtor as of the commencement of the case and are property of the debtor's estate").[10] It was error to ignore the legal impact of Link Motion's retention of control over the shares because such rights constitute a proprietary interest in the shares.[11]

The arbitration award, the transaction documents, and stock ownership records

---

[9] *See* Dkt. 41 at 3 ("the Company retained control over the shares until Tongfang completed payment"); Dkt. 42 ¶¶64-69; Dkt. 37-11; Dkt 42-10; Dkt. 42-10 §§ 2.1, 2.2, 2.3, 4.1, 4.2; Dkt. 37-11 ¶¶1.2, 1.3, 2.1, 2.2, 2.3.

[10] Applying Chinese law governing secured transactions would lead to the same conclusion. Boris Kozochyk, The Chinese of Secured Transactions in Personal Property at a Crossroads: An Analysis and Suggestions, 26 U. Miami Int'l & Comp. L. Rev. 245, 325 (2019) ("[P]erfection is increasingly achieved by means of the concept of 'control'"); Todd R. Benson, Taking Security in China: Approaching U.S. Practices, 21 Yale J. Int'l L. 183, 187 (1996) ("China's legal system has developed and is beginning, both in practice and on paper, to resemble more closely that of the United States").

[11] *See also* Juliet M. Moringiello, ARTICLE: FALSE CATEGORIES IN COMMERCIAL LAW: THE (IR)RELEVANCE OF (IN)TANGIBILITY, 35 Fla. St. U.L. Rev. 119, 155 (Fall 2007) ("In Article 8 [of the U.C.C.] 'control' is an umbrella term that applies to certificated, or tangible, and uncertificated, or intangible, securities, replacing but encompassing 'possession'").

are competent evidence demonstrating that Plaintiff's allegations are not "utterly lacking in support." *Kiobel*, 592 F.3d at 81-82.

**B. Plaintiff and its Counsel object to the finding that the TRO and, later, the preliminary injunction, did not prevent Link Motion from transferring its interest in the shares to Tongfang.[12]**

As the Magistrate Judge correctly observed, the TRO "prohibited Link Motion from 'transferring, liquidating, dissipating, [or] assigning . . . any assets." Dkt. 58 at 20. The Magistrate Judge jumped from this observation to the unsupported and incorrect conclusion that the stock had already been transferred to Tongfang. Dkt. 58 at 20. This legal analysis is wrong because it ignores the property rights retained by Link Motion in its security interest over the shares. Thus, the transaction could not be complete until Link Motion transferred its interests to Tongfang in exchange for payment of the Note. The TRO precluded Link Motion from transferring those property interests.

The Magistrate Judge misread the Equity Pledge Agreement. Specifically, the R&R notes that "the Equity Pledge Agreement itself states that the 'Target Assets'— defined as '65% equity of FL Mobile'—'are held by Party B,' and Party B is defined in the agreement as 'Tongfang Investment Fund Series SPC.'" Dkt. 58 at 19. The R&R then infers that this means that "at the time of the Equity Pledge Agreement, the FL Mobile shares were 'held by' Tongfang, not Link Motion." Dkt. 58 at 19. But that is wrong: the full sentence contained in the Equity Pledge Agreement makes clear that the shares were held "through contractual arrangements." Dkt. 37-11 at 2. Reading the

---

[12] The Receiver's decision not to transfer the FL Mobile shares to Tongfang and his reasons for failing to do so are fact issues not relevant to the determination of these Objections.

Equity Pledge Agreement as one part of a larger, integrated transaction that includes the SPA, Supplemental Agreement, and Note, the term "contractual arrangements" includes and refers to the Supplemental Agreement. Dkt. 42-10; Dkt. 42-12 (showing that the shares are held under Dr. Shi's name, not Tongfang). The Supplemental Agreement and Equity Pledge Agreement provide that Party A (Link Motion) is the "creditor and pledgee" who maintains a "Pledge right" ***and control*** over the FL Mobile shares until Party B has fulfilled its debt obligation. Dkt. 37-11; Dkt. 42-10. In other words, Link Motion retained dominion and control over the shares. *See Starr Int'l Co.*, 106 Fed. Cl. at 72.

None of the documents cited by the Magistrate Judge—most of which are press releases and S.E.C. filings containing expressions of future intent—dispute the fact that Link Motion held an enforceable security interest in the FL Mobile shares that was perfected by control and ranked higher than Tongfang's interest in the shares. The evidence relied on in the R&R included:

(1) a Form 6-K filing by Link Motion in March 2017 indicating that it had entered into a "definitive agreement[]" to sell the FL Mobile shares to Tongfang (Dkt. 58 at 17, citing 37-6);

(2) the March 30, 2017 SPA, which "provided that the shares in FL Mobile would be transferred to Tongfang upon Tongfang completing its payment obligations." (Dkt. 58 at 17, citing to a copy filed in the Baliga Action) (*see* Dkt. 42-9);

(3) a Form 20-F filed with the SEC for the 2016 fiscal year, which described the divestment and noted that the payment obligations were not yet complete (Dkt. 58 at

17, citing 37-7);

(4) a Supplemental Agreement executed on March 31, 2017, that provided that the FL Mobile shares were "to be held in trust by Shi until the 'closing' of the SPA" (Dkt. 58 at 17, citing Dkt. 42-10);

(5) a Form 6-K filed in December 2017, in which the Company announced that it had completed the FL Mobile Divestment and received the Note due in December 2018 (Dkt. 58 at 17-18, citing Dkt. 37-8);

(6) a letter filed by Dr. Shi February 9, 2018 in which he said that the transaction was completed on December 14, 2017 and Link Motion received the Note that was due in December 2018 (Dkt. 58 at 18, citing 37-9); and

(7) a Form 6-K filed with the SEC on April 11, 2018 that reported that the FL Mobile divestment had been completed subject to a "deferred gain" "to be recognized when the receivables from purchasers are collected in future periods." (Dkt. 58 at 18, citing Dkt. 37-10)

None of these pieces of evidence contradict Plaintiff's allegation that Link Motion had not fully completed the transfer of ownership to Tongfang. As discussed above, the retention of control rights over the FL Mobile shares prevented Tongfang from exercising all the rights and privileges of ownership of the stock. Transfer of these control rights was necessary for the legal transfer of ownership to be completed. It was, thus, clear error for the Court to "at this stage—find [Plaintiff's] factual allegation to be devoid of any basis." *Black*, 2022 U.S. Dist. LEXIS 116255, at *71 (finding that "factual allegation" was not "devoid of any basis" even where party could not "point[]

to solid evidence" and "their supposition to this effect is based on relatively tenuous circumstantial inferences").

To defeat a Rule 11b(3) motion, Plaintiff need only show that its allegations are "not 'utterly lacking in support.'" *Kiobel*, 592 F.3d at 82. Plaintiff's allegations were well-grounded in fact and law. Here, Plaintiff submitted the Tongfang Arbitration Award, where an independent arbitrator found that Link Motion had not performed its obligation to transfer the FL Mobile shares to Tongfang. Dkt. 42-13 ¶22 and n.8-9. Plaintiffs also submitted the Supplemental Agreement, by which Link Motion (1) transferred the shares to Dr. Shi to hold in trust pending LKM's receipt of cash equal to the entire purchase price (Dkt. 42-10 §§ 4.1, 4.2), and (2) retained control over the shares pursuant to a security interest granted in favor of LKM. Dkt. 42-10 §§2.1-2.3. The law of security interests and the specific terms of the Equity Pledge Agreement and Supplemental Agreement here support a finding that Link Motion retained control over the FL Mobile shares until and unless the Note was paid in full. And the arbitration award and public filings evidencing control of the FL Mobile shares by Link Motion's nominee support Plaintiff's allegations that Link Motion had not yet transferred control of the shares to Tongfang.

The factual dispute about whether ownership of the FL Mobile shares had been transferred and whether the entry of the TRO and preliminary injunction prevented the transfer is not the proper basis for a Rule 11 sanction. *Breuninger v. Williams*, 20 Civ. 7033 (JPC), 2023 U.S. Dist. LEXIS 110194, at *23 (S.D.N.Y. June 27, 2023) ("[T]he Court declines to award sanctions on the basis of a factual dispute that need not be

resolved at this early stage."); *cf. Rubens v. Mason*, 387 F.3d 183, 191-92 (2d Cir. 2004) (vacating a summary judgment award because the affidavit in support "had the potential to usurp the fact-finder's responsibilities in the trial within the malpractice trial").

## II.    Plaintiff and its Counsel specifically object to the Magistrate Judge's recommendation that Plaintiff's legal malpractice claim be found to be frivolous in violation of Rule 11(b)(2).

To be frivolous in this Circuit, "under an objective standard of reasonableness, it [must be] clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Richter*, 174 F.R.D. at 318 (rejecting Rule 11 sanctions even where "plaintiff's arguments were unconvincing, they were not entirely frivolous"). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff*, 634 F.3d at 654, cited in *Tantaros v. Fox News Network*, 17 Civ. 2958 (GBD), 2018 U.S. Dist. LEXIS 48511, at *11 (S.D.N.Y. Mar. 16, 2018) (cited by Magistrate Judge in support of her R&R).

The Magistrate Judge's analysis of frivolousness is flawed because it relies on the limited pieces of evidence selected by Defendants—before discovery—as conclusively establishing facts that are contrary to evidence and legal authorities submitted by Plaintiff. *See* Dkt. 58 at 23 ("the communications between Defendants and Shi . . . demonstrate that it would have been exceedingly difficult (if not impossible) for Plaintiff to prove that Defendants breached a duty"). This was improper. The proper factfinder for this legal malpractice claim is the jury. *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 93 Civ. 8707 (CSH), 1997 U.S. Dist. LEXIS 18820, at *6 (S.D.N.Y. Nov. 24, 1997); *Breuninger*, 2023 U.S. Dist. LEXIS 110194, at *23 ("Resolving

those factual disputes would be equivalent to resolving the factual disputes that make up this case. As such the Court declines to award sanctions on the basis of a factual dispute that need not be resolved at this early stage.") (cleaned up). Accepting Defendants' version of the facts at this stage of the proceedings, pre-discovery and pre-trial, "would be tantamount to discrediting the truth of [Plaintiff's] allegations. Such a finding, if warranted, is and should remain in the discretion of the fact finder. A motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes." *In re Pfizer Inc.*, 288 F.R.D. 297, 331 (S.D.N.Y. 2013); *see also Breuninger*, 2023 U.S. Dist. LEXIS 110194, at *23.

### A. Plaintiff and its Counsel object to the Magistrate Judge's determinations regarding an attorney-client relationship.

The Magistrate Judge acknowledged that there exists a factual dispute about "whether Link Motion retained Defendants to represent the company in the <u>Baliga</u> action, thereby creating the existence of an attorney-client relationship." Dkt. 58 at 23. The Magistrate Judge correctly notes, however, that "Defendants appeared in the <u>Baliga</u> action on behalf of Link Motion, in December 2018 after the TRO was filed, and subsequently sought leave to withdraw as counsel on March 1, 2019." Dkt. 58 at 23. Under New York law, this appearance on behalf of Plaintiff was sufficient to establish an attorney-client relationship with all the duties of care and prudence required by such a relationship. *See, e.g., Romanian Am. Interests, Inc. v. Scher*, 94 A.D.2d 549, 554 (N.Y. App. Div. 2d Dep't 1983) ("We think it sufficient that, in accepting a client's case, an attorney undertakes the responsibility of ascertaining the pertinent facts and preparing for trial."); *see also Goldstein v. Albert (In re Albert)*, 277 B.R. 38, 50 (Bankr.

S.D.N.Y. 2002); *Deep v. Boies*, 16 Misc. 3d 1121 (A), 847 N.Y.S.2d 901 (N.Y. Sup. Ct. Albany County 2007), *aff'd*, *Deep v. Boies*, 53 A.D.3d 948 (N.Y. App. Div. 3d Dep't 2008) and citing *Deutsch v. Polly N. Passonneau, P.C.*, 297 A.D.2d 571 (N.Y. App. Div. 1st Dep't 2002).

Even if the Magistrate Judge disagrees with Plaintiff's application of New York law to the facts of this case, Plaintiff identified specific facts—Defendants' appearance and filing of papers on behalf of Link Motion—and relevant legal authorities supporting its contentions. Whatever the Magistrate Judge's views as to the weight and credibility of these facts, it was error to conclude that Plaintiff's claim that an attorney-client relationship arose when Defendants appeared in the Baliga action on behalf of Link Motion had no chance of success. *See*, *e.g.*, *Goldstein*, 277 B.R. at 50 (appearing counsel "knew or should have known of the risk that, once he was counsel of record for Plaintiffs, he could be required to continue in that representation whether or not his fees were being paid").

**B.      Plaintiff and its Counsel object to the Magistrate Judge's determination that Plaintiff will not be able to prove that Defendants breached their duty to Plaintiff.**

The Magistrate Judge determined—without discovery—based only on "communications between Defendants and Shi" that were submitted by Defendants (Dkt. 58 at 23), that Plaintiff would not be able to prove that Defendants breached their duty. This was error. *See Breuninger*, 2023 U.S. Dist. LEXIS 110194 ("declin[ing] to award sanctions on the basis of a factual dispute that need not be resolved at this early stage"); *JM Holdings 1 LLC v. Quarters Holding GmbH*, 20-CV-3480 (JPO), 2021 U.S. Dist. LEXIS 42829, at *24 (S.D.N.Y. Mar. 8, 2021) (same).

First, a "determination as to whether malpractice has been committed is generally a factual determination to be made by the jury." *Barry*, 1997 U.S. Dist. LEXIS 18820, *6-7. And generally, expert testimony is necessary to assist in the determination of whether the attorney breached the standard of professional care. *Barry*, 1997 U.S. Dist. LEXIS 18820, at *6-7. This is not a determination that should be made as a matter of law on a Rule 11 motion.

Second, as Judge Engelmayer found in *CV Collection*, the "Defendants' claims as to what the evidence will show are as yet untested by document and deposition discovery. Defendants' records and their witnesses, under oath in depositions, may yield information supportive of [Plaintiff's] claims." *CV Collection LLC v. WeWoreWhat, LLC*, 20 Civ. 8623 (PAE); 21 Civ. 1623 (PAE), 2021 U.S. Dist. LEXIS 205492, *17 (S.D.N.Y. Oct. 22, 2021). Here, the "communications" relied on in the R&R were submitted by Defendants' counsel in this action, who was not party to those communications and had no personal knowledge about them. As on a summary judgment motion, where "an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight," defense counsel's declaration should similarly be "accorded no weight" on a motion for Rule 11 sanctions. *Little v. City of N. Y.*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007), citing *Wyler v. U.S.*, 752 F.2d 156, 160 (2d Cir. 1983).

The Magistrate Judge improperly adopted the moving party's set of alleged, and limited "facts" to find that "it is apparent from the many communications by Schechtman to either Link Motion, Shi, or both that Link Motion and Shi refused to

engage with Defendants in a discussion about how to respond to the TRO and preliminary injunction motions." Dkt. 58 at 23. The Magistrate Judge's conclusion that Schechtman's "communications went unanswered, the company refused to discuss the case" was based on select emails attached to Defendants' counsel's declaration, Dkt. 58 at 24, and assumes the truth of Defendants' assertions without the benefit of discovery, which could show that Schechtman's communications were answered or that there were other communications between the parties. It was improper for the Magistrate Judge to accept as fact the moving party's untested submissions on a pre-discovery, pre-trial Rule 11 motion. As in *CV Collection*, Plaintiff has not had the opportunity to review communications in the files of Dr. Shi or Link Motion, or to cross-examine Schechtman about other potential communications that occurred between the parties. *CV Collection*, 2021 U.S. Dist. LEXIS 205492, *17-18.

The Magistrate Judge also improperly adopted Defendants' faulty argument that a lack of instruction from the Company client relieved them from any duty to assert a standing defense. Dkt. 58 at 23-24. Neither the Magistrate Judge nor Defendants[13] provide any legal support for this argument.

Under New York law, attorneys who appear on behalf of a defendant are required to assert viable affirmative defenses. *Romanian Am. Interests, Inc.*, 94 A.D.2d at 554. The duty to assert affirmative defenses arises when counsel appears in the case on behalf of the defendant and the time to assert the defenses occurs. *See Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F. Supp. 803, 815 (W.D.N.Y.

---

[13] *Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP*, 133 A.D.3d 428 (N.Y. App. Div. 1st Dep't 2015), cited by Defendants in support, Dkt. 36 at 27, does not address an attorney's duties to her clients.

1991) (defendant attorneys' failure to preserve potentially viable defenses states a claim for legal malpractice); *Frederick v. Meighan*, 75 A.D.3d 528, 532 (N.Y. App. Div. 2d Dep't 2010). Failure to assert a defense is malpractice, *Frederick*, 75 A.D.3d at 532 . Stated in the alternative, counsel who appears for defendant in federal court has a duty to take reasonable care to preserve and not waive a meritorious defense. *See Bennett v. Mukasey*, 525 F.3d 222, 223-24 (2d Cir. 2008); *In re Payne*, 707 F.3d 195, 217 (2d Cir. 2013) (disciplining attorney who failed to make arguments and waived arguments for clients); R.P.C. 1.16.[14] This duty continues even when an attorney has grounds to withdraw. *Bennett*, 525 F.3d at 223-24; *In re Payne*, 707 F.3d at 217.

Neither the R&R nor Defendants' motion papers substantively dispute that counsel appearing on behalf of a defendant has a duty to assert or preserve a defendant's affirmative defenses. *See* Dkt. 58 at 23; Dkt. 36 at 21-22.[15] And the contention that failure of a client to communicate with counsel absolves counsel of the duty to assert and/or preserve affirmative defenses, Dkt. 58 at 23-24, is unsupported and contradictory to New York law. *Bennett*, 525 F.3d at 223-24; *In re Payne*, 707 F.3d at 217; R.P.C. 1.16.

At most, the failure of a client to communicate or cooperate with counsel gives rise to grounds for counsel to withdraw. *See* R.P.C. 1.16(c)(7). But when grounds for withdrawal arise, counsel still has a duty to preserve any meritorious defenses and to

---

[14] "Even when withdrawal is otherwise permitted or required, upon termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to avoid foreseeable prejudice to the rights of the client, including giving reasonable notice to the client, [and] allowing time for employment of other counsel."

[15] The *Heritage Partners, LLC*, 133 A.D.3d 428, case cited by Defendants, Dkt. 36 at 22, has no relation to counsel's duty to assert affirmative defenses.

otherwise effectuate withdrawal without prejudice to the client. *See* R.P.C. 1.16(e); *In re Payne*, 707 F.3d at 217; *Bennett*, 535 F.3d at 223-224.

Here, Plaintiff submitted and identified evidence supporting Plaintiff's allegation that Defendants caused prejudice to Link Motion by waiving Link Motion's affirmative defenses *before* seeking to withdraw. *See* Dkt. 42-4. If communication problems set in before January 21, 2019, as Defendants now claim (Dkt. 36 at 19), then Defendants had a duty to withdraw from representation in a way that would preserve and not waive LKM's defenses.[16] *See* R.P.C. 1.16(e); *In re Payne*, 707 F.3d at 217; *Bennett*, 535 F.3d at 223-224.

The Magistrate Judge's analysis also fails to acknowledge that "failing to raise a standing defense" is not the only malpractice alleged by Plaintiff in the Complaint. Plaintiff also alleged that Defendants failed to provide competent legal advice to Link Motion so that it could make an informed decision and provide informed consent to the imposition of the Receiver. Failure to provide competent legal advice sufficient for a client to make an informed decision is also a breach of the duty of care owed by counsel. *See*, *e.g.*, *Webb v. City of N.Y.*, No. 08-CV-5145(CBA)(JO), 2010 U.S. Dist. LEXIS 86234, at *9 (E.D.N.Y. Aug. 20, 2010) ("This admission that counsel lacked any authority to either bring this case or to enter into a stipulation dismissing her client's claims with prejudice might well provide a basis for relief from that stipulation"). Plaintiff has identified legal authority supporting its contention that additional litigation costs

---

[16] If Defendants' contention is true, it begs the question why Defendants would consent to the entry of a receivership and preliminary injunction on behalf of a client with which it was having difficulty communicating.

incurred as a result of legal malpractice are recoverable damages on a legal malpractice claim under New York law. *See*, *e.g.*, *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 443 (N.Y. 2007) (damages in a malpractice claim may include "litigation expenses incurred"); *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012) ("the general rule is that receivership fees and expenses are a charge upon the property administered"). Thus, even if the Tongfang transaction were not at issue, the additional costs to the Company arising from the receivership are recoverable damages on a legal malpractice claim.

It was also clearly erroneous for the Magistrate Judge to make this determination based on a pre-discovery motion. To defeat a legal malpractice claim, defendants are required to put forward "evidence establishing, prima facie, that [they] did not breach the duty to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, or that the plaintiff did not sustain actual and ascertainable damages as a result of such deviation." *Englese v. Sladkus*, Index No. 101006/2015, 2023 N.Y. Misc. LEXIS 759, at *20 (N.Y. Sup. Ct. N.Y. Cty. Feb. 23, 2023), (citation omitted). Except for very limited scenarios, defendants must present expert testimony in support of their position that they did not breach the duty of care. *Englese*, 2023 N.Y. Misc. LEXIS 759, at *20-22 (finding that clients "are correct that here, where [attorneys] are seeking summary judgment, they must submit expert testimony in support of their motion"). The limited documentary evidence submitted by Defendants does not even come close to foreclosing the possibility of proving a breach of Defendants' duty to effectuate their withdrawal in a

way that would not prejudice their client, the Company, by resulting in the waiver of its rights and defenses.

### C. Plaintiff and its Counsel object to the Magistrate Judge's determination that Plaintiff could not show but-for causation.

#### 1. Tongfang Arbitration.

The Magistrate Judge improperly determined that Plaintiff could not show causation because Link Motion had already transferred the FL Mobile shares to Tongfang prior to Baliga's complaint in December 2018. Dkt. 58 at 24. As discussed *supra* at I, this is clear error. At the time the TRO and Receivership Orders were entered, Link Motion retained a property interest in the FL Mobile shares and the order restrained Link Motion from transferring any property to Tongfang.

The Magistrate Judge also improperly contends that Link Motion's failure to defend against Tongfang's claims in the arbitration, which was initiated in April 2019 (after the appointment of the Receiver), is a fact that "should have led counsel to deeply question the viability of a legal malpractice claim." Dkt. 58 at 25. The Magistrate Judge suggests that if Link Motion did not have a defense to Tongfang's claims, then Defendants' negligence could not have caused harm related to the Tongfang transaction. The Magistrate Judge's analysis is incorrect for three reasons:

***First***, the Magistrate Judge misapprehends the reason for Link Motion's lack of defense to Tongfang's claim. Link Motion had no defense to Tongfang's claim for breach of the Note and SPA, because once the Receivership Order was entered on February 1, 2019 (without opposition from and on consent by Defendants), the Company was restrained from transferring its control rights to Tongfang. Thus, no

matter what Link Motion may have argued in the Tongfang arbitration, there was no defense to Tongfang's claim, in April 2019, that Link Motion had not transferred, and would be unable to transfer, its rights to the shares to complete the transaction.

**Second**, the Magistrate Judge improperly weighed the credibility of the evidence regarding Dr. Shi's loss of access to his corporate email account,[17] and this weighing of the evidence constitutes credibility determinations that are not appropriate on a Rule 11 motion. *See Black*, 2022 U.S. Dist. LEXIS 116255, at *71 (S.D.N.Y. June 30, 2022); *Young*, 922 F. Supp. 2d at 397; *Fisher*, 2016 U.S. Dist. LEXIS 87792, at *71-72; *Vazquez*, 2014 U.S. Dist. LEXIS 124483, at *30-31; *Richter*, 174 F.R.D. at 318 (S.D.N.Y. 1997); *Fishoff*, 634 F.3d at 654; *Katz v. 260 Park Ave. S. Condo. Assocs.*, 168 A.D.3d 615, 616 (N.Y. App. Div. 1st Dep't 2019) ("[C]redibility issues [are] for determination by a factfinder.").

**Third**, the Magistrate Judge also incorrectly determined that "Tongfang fulfilled its payment obligations pursuant to the SPA prior to the appointment of the Receiver," citing to the Tongfang Arbitration Award. Dkt. 58 at 26 n.5. But that is not what the Tongfang Arbitration Award says. As detailed by the Tongfang arbitrator, the amounts of cash payments paid to Link Motion (RMB1,550,000,000) (Dkt. 42-17 ¶19(1), (3)), <u>less</u> the cash paid for Showself (RMB800,000,000) (Dkt. 42-17 at 2 n.3),[18] <u>plus</u> the face value of the Note (RMB1,770,000,000) (Dkt. 42-17 ¶19(2)), equals the Purchase Price (RMB2,520,000,000) (Dkt. 42-19 ¶19). Thus, as of December 17, 2017,

---

[17] Plaintiff contentions on this point were not utterly lacking in support. *See* Dkt. 42 ¶¶70-80; Dkt. 43.
[18] Tongfang treated the purchase of FL Mobile and Showself as one integrated transaction with total consideration of RMB3,320,000,000. Dkt. 42-17 ¶19.

Tongfang had paid only part of the consideration owed under the SPA. This conclusion by the arbitrator also means that Tongfang made no further cash payments after December 2017. *See* Dkt. 42-19 ¶19(1), (2), (3).

### 2. Failure of Defendants to Assert an Affirmative Defense of Lack of Standing.

The Magistrate Judge also claims that Plaintiff's legal malpractice claim is frivolous because even if Defendants had made the argument that "Baliga lacked standing to bring his claims, the outcome would have remained the same, because, *as the Court later concluded*, it had jurisdiction to appoint the Receiver." Dkt. 58 at 26 (emphasis added). This analysis is wrong for two reasons.

***First***, on December 20, 2021–when Plaintiff filed its Complaint—Magistrate Judge Freeman had not yet issued her Report and Recommendation concluding that the Court had sufficient authority under the securities laws to issue the preliminary injunction and receivership order. Magistrate Judge Freeman issued her Report and Recommendation on March 9, 2022, which was not adopted by the Court until August 25, 2022. ECF No. 275, 331, Case No. 1:18-cv-11642. These later decisions cannot serve as a basis for a finding that Plaintiff's legal argument was frivolous when filed on December 20, 2021. *Malkan v. Mutua*, No. 12-CV-0236A(Sr), 2015 U.S. Dist. LEXIS 161874, at *42-43 (W.D.N.Y. Dec. 1, 2015) ("There is thus no obligation to update a pleading, motion or other paper based on new information provided that the document met the requirements of Rule 11 at the time it is signed."), quoting and citing *Curley v. Brignoli Curley & Roberts*, 128 F.R.D. 613, 616 (S.D.N.Y. 1989) and *Oliveri v. Thompson*, 803 F.2d 1265, 1274-75 (2d Cir. 1986). Because the court is required to

"avoid hindsight and resolve all doubts in favor of the signer," _Malkan_, 2015 U.S. Dist. LEXIS 161874, at *43 (citations omitted), the Court's later issued standing decision cannot support a finding that Plaintiff's legal argument was frivolous at the time it was filed.

**_Second_**, the Magistrate Judge's conclusion that "whether Judge Freeman was assessing Baliga's standing for purposes of determining the Court's jurisdiction to appoint a receiver or for some other reason is of no consequence" is incorrect. Dkt. 58 at 27. Regardless of whether the Court has authority under the securities laws to appoint a receiver, Baliga still had to satisfy the high bar for granting of provisional equitable relief under Rule 65. _See_, _e.g._, _Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc._, 149 F. Supp. 3d 376, 383 (E.D.N.Y. 2016). The facts that Baliga made false allegations in his Complaint, and that his securities laws claims were facially defective,[19] would have influenced a federal court's decision to grant or deny Baliga's original request for a preliminary injunction and appointment of a receiver. _See Vis Vires Grp._, 149 F. Supp. 3d at 385-86 (denying plaintiff's application for a preliminary injunction on the grounds that plaintiff failed to state a cause of action under the securities laws). Regardless of the Court's authority to appoint a receiver under the securities laws, Link Motion was deprived the opportunity to contest the elements of Baliga's motion pursuant to Rule 65, on the grounds that he made false allegations in his Complaint and that his securities laws claims were facially defective.

On pages 27-28 of the R&R, the Magistrate Judge notes that Dr Shi's substitute

---

[19] _See Baliga v. Link Motion Inc._, 385 F. Supp. 3d 212, 221 (S.D.N.Y. 2019).

counsel did not raise the lack of derivative standing argument in opposition papers filed on March 27, 2019. Dkt. 58 at 27-28. But as of that date, Baliga had not yet disclosed that he was the owner of ADRs, which was first disclosed when Baliga filed his First Amended Complaint on June 21, 2019. ECF No. 68, Case No. 1:18-cv-11642. Defendants, on the other hand, had this knowledge from their prior representation of Plaintiff in 2018. Dkt. 1 at ¶¶4&5.

By the time Dr. Shi appeared to defend the case in March 2019, the harm had already been done because the Court had already entered the Receivership Order. Before entry of the Receivership Order, the burden was on Baliga to meet the high standard required for entry of a preliminary injunction and appointment of a receiver. *See*, *e.g.*, *Vis Vires Grp.*, 149 F. Supp. 3d at 383, 385-65. After entry of the Receivership Order, Dr. Shi's efforts to change or modify that order were governed by the much stricter standard of Rule 60.

## D. Plaintiff and its Counsel specifically object to the Magistrate Judge's determination that Plaintiff's assertion of derivative standing was frivolous.

Neither Defendants nor the Magistrate Judge have cited any authority standing for the proposition that a registered shareholder of a Cayman Islands company cannot assert a derivative claim against a third party who has acted as an accessory to a "fraud on the minority." Plaintiff, on the other hand, cited and provided the Court with such authority. *See* Dkt. 42-27 (*Top Jet Enterprises Ltd. v. Sino Jet Holding Ltd.*, 2018 (1) CILR 18, 42-43 (Caymans Island Grand Court Jan. 19, 2018) at ¶39. Defendants and the Magistrate Judge only dispute the application of this doctrine to the facts in this case.

The Magistrate Judge incorrectly states that "Plaintiff acknowledges that the alleged wrongdoer under its fraud-on-the-minority theory is Baliga." Dkt. 58 at 29. But Plaintiff alleges "Baliga *and his counsel*" are the wrongdoers. Dkt. 41 at 23 (emphasis added). Baliga's counsel in 2018 and 2019 was Robert W. Seiden, who Baliga sought to have appointed as, and who the Court appointed as, the Receiver who was granted *de facto* control over LKM. Plaintiff alleged that Baliga and Seiden acted in concert when falsely alleging Baliga's status as a "shareholder" of LKM. There is no dispute that Seiden's firm represented Baliga and signed the original complaint filed in the Baliga action. Thus, Baliga and Seiden were so "closely connected" that together they qualify as "wrongdoers" for purposes of derivative standing under the fraud on the minority doctrine. *See Top Jet* ¶39.

The conclusion in the R&R that Defendants could not qualify as "accessor[ies]" to the wrongdoers because Defendants did not have communications with Baliga and his counsel (Dkt. 58 at 29-30) is directly contradicted by the fact that Defendants signed a stipulation with Baliga's counsel. Dkt. 42-04 at 3. Defendants also submitted communications with Baliga's counsel regarding their appearance in court as well as communications with Baliga's counsel about negotiation of the terms and execution of the stipulation. Dkt. 37-05 at 1-2 (email from Michael Cilento, of The Seiden Group, to Defendants). And the stipulation itself put the "wrongdoers" in control of Link Motion.

The R&R incorrectly concludes that the Complaint fails to allege "a plausible inference that Defendants benefited from Baliga's fraudulent conduct." Dkt. 58 at 30. But derivative standing based on the doctrine of fraud on the minority does not require

a showing that the third party benefited from the fraudulent conduct. Rather, Plaintiff need only show "the nature of the third party's conduct in assisting the breach of fiduciary duty, how the assistance caused the plaintiff's loss, and how the third party acted dishonestly in assisting the primary perpetrator of the fraud." Dkt. 58 at 30, citing *Matter of Renren Inc. Derivative Litigation v. XXX*, Index No. 653594/2018, 2020 N.Y. Misc. LEXIS 2132, 2020 WL 2564684, at *29 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2020). Here, Plaintiff adequately alleged that (i) Defendants assisted Baliga and his counsel in achieving entry of the Receivership Order by signing the stipulation, (ii) Defendants acted dishonestly by failing to advise the Court that Defendants lacked the informed consent of Link Motion.

Accordingly, Plaintiff has demonstrated enough support for its derivative standing argument to preclude sanctions. *See Richter*, 174 F.R.D. at 318; *Fishoff*, 634 F.3d at 654.

### E. Plaintiff and its Counsel specifically object to the Magistrate Judge's apparent recommendation that both Plaintiff and its Counsel be charged with sanctions for a violation of Rule 11(b)(2).

Under Rule 11(c)(5), the Court may not award monetary sanctions against Plaintiff, a represented party, for violating Rule 11(b)(2). Fed. R. Civ. P. 11(c)(5); *Black*, 2022 U.S. Dist. LEXIS 116255, at *32 (finding that a "court must not impose a monetary sanction against a represented party for violating Rule 11(b)(2)"). In the R&R, the Magistrate Judge does not make any distinction between the sanctions that she recommends or who should be sanctioned, stating only that Defendants should be awarded the "reasonable costs and fees incurred by Defendants in defending this action." This was clear error.

**III.   Plaintiff and its Counsel specifically object to the Magistrate Judge's implicit finding that Plaintiff filed the Complaint for an improper purpose in violation of Rule 11(b)(1).**

The Magistrate Judge asserts that Plaintiff's decision to continue to "pursue this claim after Defendants pointed out the numerous deficiencies in the claim" shows an improper purpose. Dkt. 58 at 31. But the R&R cites no support for this contention and ignores that Plaintiff had filed a notice of voluntary dismissal before briefing on a motion to dismiss began. In any event, continuing to assert a claim does not support a finding of improper purpose. "[I]t is quite normal for litigants to decline to withdraw their claims despite their adversaries' strenuous argument of lack of merit." *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260-61 (S.D.N.Y. 2003).

The Magistrate Judge concluded that Plaintiff's request for a stay in this action while the decision concerning the dismissal of the Company's direct legal malpractice action is appealed also evidences an improper purpose. Dkt. 58 at 31 (concluding that the request for a stay "reinforce[s]" that "the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants"). But Plaintiff's request in a letter filed after Defendant's Sanctions Motion was filed and fully briefed cannot give rise to an independent ground for the imposition of Rule 11 sanctions. Plaintiff had no notice of any purported defect in the letter requesting a stay and had no "opportunity to correct or withdraw the defective pleading." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158-59 (2d Cir. 2010) ("Rule 11 does not, after all, authorize sanctions for merely frustrating conduct. . . . By thus encouraging correction or withdrawal of defective filings, Rule 11's safe harbor provision seeks to reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resources.").

The reasoning set forth in the R&R also fails to give a fair reading to Plaintiff's and its counsel's conduct. As Plaintiff noted in its letter to the Court requesting the stay, the procedural posture of this case and the direct claim brought by Link Motion against the same Defendants presents a novel issue where a timely derivative claim preceded the direct claim, but the later-filed direct claim was dismissed on statute of limitations grounds. Dkt. 1; *Link Motion Inc. v. DLA Piper LLP (US)*, 2023 U.S. Dist. LEXIS 92820, at *19 n.11 (S.D.N.Y. May 26, 2023). Plaintiff is not aware of any case that applies the doctrine of collateral estoppel to bar an *earlier* filed claim and no such authority was cited by Defendants or in the R&R. Plaintiff's assertion of a novel legal argument does not constitute "improper purpose" or bad faith.

There is no evidence suggesting that Plaintiff's derivative malpractice claim was brought for any purpose other than to preserve a claim of the Company. Defendants and the Court previously objected to the voluntary dismissal of this claim, Dkt. 25 & 28, and Plaintiff's request for a stay reflects a good faith effort to balance the need to conserve the Court's and the parties' resources with counsel's duty to provide representation of the client. Zealous advocacy is not sanctionable. *E. Gluck Corp.*, 252 F.R.D. at 179, quoting *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) ("Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.").

The Magistrate Judge's conclusion that "[v]iewing all of the deficiencies in Plaintiff's claim collectively, the only plausible conclusion to be drawn from pursuit of

this litigation is that it was done to harass Defendants," shows that the Magistrate Judge's determination of improper purpose "simply referred back to the question of frivolousness." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 176 (2d Cir. 1999). The Second Circuit has explicitly rejected this type of analysis. *Simon DeBartolo Grp.*, 186 F.3d at 177 ("Permitting a Rule 11(b)(1) determination to turn entirely on a Rule 11(b)(2) violation would, however, render a client responsible for the frivolous claims asserted by its attorneys, contrary to Rule 11(c)(2)(A)'s explicit prohibition. The district court's decision in that regard was an abuse of discretion and must therefore be reversed.").

Plaintiff had a nonfrivolous reason to request a stay because the facts and circumstances had changed. Judge Marrero's decision in the Company's direct malpractice action found that this action (the derivative malpractice action) was timely filed and that his decision was ***not*** on the merits of the malpractice claim. *Link Motion Inc.* 2023 U.S. Dist. LEXIS 92820, at *9, *19 n.11 ("The Court decides the Motion on those grounds [statute of limitations] alone and does not otherwise address the adequacy of LKM's pleadings") ("a suit seeking to vindicate LKM's rights was timely brought, albeit derivatively, by China AI").

Accordingly, there has been no ruling on the merits of the malpractice claim itself. And neither Defendants nor the Magistrate Judge have cited *any* authority to support the proposition that dismissal of a claim in a case solely on statute of limitations grounds can have a preclusive effect on an *earlier*-filed case. Plaintiff's arguments for a stay are nonfrivolous because the doctrine of collateral estoppel is

traditionally applied to preclude *re*-litigation of an issue decided before the action was filed. *See generally* <u>*Allen v. McCurry*, 449 U.S. 90, 95 (1980)</u> ("the Court has repeatedly recognized [] that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case"). That has not occurred here. The request for a stay under these novel circumstances is not grounds for sanctions under Rule 11(b). <u>*Lawrence*, 620 F.3d at 158</u> ("Rule 11 does not, after all, authorize sanctions for merely frustrating conduct.").

### IV.   Plaintiff and its Counsel specifically object to the award of sanctions in the amount of the "reasonable costs and fees incurred by Defendants in defending this action."

The R&R summarily finds that "Plaintiff and its counsel be liable for reasonable costs and fees incurred by Defendants in defending this action." Dkt. 58 at 32. The R&R does not provide any basis for this award for an action that was voluntarily dismissed before the Sanctions Motion was even brought. This is an overreach. "Once a court has determined that Rule 11(b) has been violated, it is within the court's discretion to impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'" <u>*Ed Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016)</u>, quoting Fed. R. Civ. P. 11(c)(2); <u>*Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000)</u>. Here, Plaintiff had submitted a voluntary dismissal before Defendants filed either a motion to dismiss or a motion for Rule 11 sanctions. There has been no "defense" of this action, so no sanction or award of costs and fees is appropriate. *See* <u>*Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009)</u> (reversing sanctions imposed by District Court where law firm voluntarily dismissed action below); <u>*Lawrence*, 620 F.3d at 158-</u>

59 (finding that sanctions could not be awarded after the complaint "was effectively dismissed") (collecting cases where Rule 11 sanctions were rejected when motion was filed after complaint's dismissal).

Sanctions are not mandatory even if a district court finds a violation of Rule 11. *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (finding "[t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion."), quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *Appel v. Hayut*, 20 Civ. 6265 (JPC), 2022 U.S. Dist. LEXIS 13310, at *15 (S.D.N.Y. Jan. 25, 2022) (declining to award sanctions even after finding that the complaint filed was objectively unreasonable); *New V & J Produce Corp.*, 2014 U.S. Dist. LEXIS 137465, at *18 (noting the "stringent standard for the imposition of sanctions in this Circuit" and finding that sanctions are not warranted where "counsel did not act in bad faith . . . did not rely on a direct falsehood, and the claim was not 'utterly lacking in support'"). "When it comes to monetary sanctions, a court should sanction only 'bad faith, vexatious, or wanton' acts or actions undertaken for 'oppressive reasons.'" *CV Collection*, 2021 U.S. Dist. LEXIS 205492, *14 (cleaned up).

Because it can be difficult to separate frivolous claims from zealous advocacy, "courts are required to make two findings before imposing [monetary] sanctions: first, that the challenged claim was without a colorable basis and second, that the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *CV Collection*, 2021 U.S. Dist. LEXIS 205492, *14 (cleaned up). These findings "'must be supported by a high degree of specificity in the factual findings.'" *CV*

*Collection*, 2021 U.S. Dist. LEXIS 205492, *14-15; *see also Wolters Kluwer*, 564 F.3d at 114 (reversing awards of sanctions).

The Magistrate Judge did not make either finding in her Report and Recommendation. She made no factual findings that Plaintiff's claim was brought in bad faith. Instead, the Magistrate Judge *inferred* that, because of the purported "deficiencies in Plaintiff's claim. . .  the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants." Dkt. 58 at 31. But the assertion of a non-viable claim on its own is not harassment and not frivolous. *Richter*, 174 F.R.D. at 319 (finding that even "unconvincing" arguments are not frivolous); *Lawrence*, 620 F.3d at 158 ("Rule 11 does not, after all, authorize sanctions for merely frustrating conduct.").

Where, as here, there are no "specific examples of bad faith or an improper course of conduct," there is no clear evidence that the claim was brought in bad faith in violation of Rule 11(b)(1). *Ed Capital*, 316 F.R.D. at 83; *Wolters Kluwer*, 564 F.3d at 114; *see also Tantaros*, 2018 U.S. Dist. LEXIS 48511, *13.

## V.    Plaintiff and its Counsel object the imposition of sanctions here because the Rule 11 motion was brought too late.

"Although Rule 11 contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (collecting cases); *Lawrence*, 620 F.3d at 158 (holding that sanctions could not be awarded under

Rule 11 where the sanctions motion was not served until after the complaint "was effectively dismissed") (collecting cases).

Here, Defendants brought their Rule 11 motion *after* Plaintiff filed a voluntarily dismissal. As noted by the Magistrate Judge in the R&R, on September 6, 2022, Plaintiff filed a notice of voluntary dismissal without prejudice. Dkt. 58 at 10. Plaintiff did so after learning that the Company intended to bring its legal malpractice claim directly. Dkt. 23. After the Plaintiff filed a proposed notice of voluntary dismissal of a derivative action to be given to other shareholders (as directed by the Court, Dkt. 58 at 10), Defendants objected to the notice to be given to other shareholders and filed their motion for Rule 11 sanctions. Dkt. 58 at 10.[20] But, at that point, it was too late to bring a Rule 11 motion because, according to the Court, the complaint had already been dismissed. *Link Motion Inc.*, 2023 U.S. Dist. LEXIS 92820, at *19 n.11 ("That suit was voluntarily dismissed by China AI."); s*ee Lawrence*, 620 F.3d at 158 (no sanctions when motion filed after complaint was "effectively dismissed").

It is proper for the Court to consider this argument even though it was not made before the Magistrate Judge. District courts in this Circuit have determined that a district court has discretion to consider new arguments when it reviews objections to a report and recommendation. *E.g.*, *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 433 (S.D.N.Y. 2015) ("[T]he Court concludes that it is at least within the discretion of

---

[20] Both motions were referred to the Magistrate Judge for issuance of a Report and Recommendation. Dkt. 58 at 10. Over ten months have now passed. On May 30, 2023, Plaintiff requested that the Magistrate Judge stay her decision concerning the voluntary withdrawal because Link Motion's direct case had been dismissed on statute of limitations grounds. The Magistrate Judge has not taken any action concerning Plaintiff's proposed shareholder notice and suggests that the request for a stay itself was driven by an improper purpose. But the Magistrate Judge does not point to any evidence that Plaintiff acted in bad faith in making the request. *Tantaros*, 2018 U.S. Dist. LEXIS 48511 *11.

the district court to consider arguments not presented (or not properly presented) to the magistrate judge in connection with a report and recommendation."); *see also Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (expressing skepticism that district courts lack discretion to consider an issue first raised in a reply brief: "trial judges can provide parties with an adequate opportunity to respond to particular arguments by ordering additional briefing or an extra round of oral argument").

This Court should follow the approach taken by the district court in *Levy v. Young Adult Institute* and find it to be within the Court's discretion to consider new arguments when analyzing objections. Under *Levy*—adopting the approach taken in other circuits—a District Court applies a six-factor test to determine if the new argument should be considered:

(1) the reason for the litigant's previous failure to raise the new legal argument;

(2) whether an intervening case or statute has changed the state of the law;

(3) whether the new issue is a pure issue of law for which no additional fact-finding is required;

(4) whether the resolution of the new legal issue is not open to serious question;

(5) whether efficiency and fairness militate in favor or against consideration of the new argument; and

(6) whether manifest injustice will result if the new argument is not considered.

*Levy*, 103 F. Supp. 3d at 433-34.

Here, four of the six factors lean towards considering this new argument. The new issue raised is a pure issue of law: Was the Rule 11 motion brought too late?; no additional fact-finding is required; the resolution of the new legal issue is not open to

serious question because there is clear law on point; efficiency and fairness militate in favor of considering the new argument given the allegations made against Plaintiff and its counsel; and manifest injustice will result if the new argument is not considered because it is clear under the law that the Magistrate Judge should never have even considered imposing sanctions here given the timing of Defendants' Sanctions Motion.

## CONCLUSION

For the foregoing reasons, the Court should reject in its entirety the Report & Recommendation and issue an Order denying the Sanctions Motion in all respects and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 21, 2023

Respectfully submitted,

FELICELLO LAW P.C.

*/s/ Michael James Maloney*
Michael James Maloney
Rosanne E. Felicello
FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
*Attorneys for Plaintiff China AI Capital Ltd.*

49