UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British
Virgin Islands limited company, derivatively
on behalf of LINK MOTION INC., a Cayman
Islands limited company f/k/a NQ MOBILE
INC.,

                 Plaintiff,

    -against-

DLA PIPER LLP (US), a Maryland limited
liability partnership, and CARYN G.
SCHECHTMAN, a natural person,

                 Defendants,

    -and-

LINK MOTION INC., a Cayman Islands
limited company f/k/a NQ MOBILE INC.

                 Nominal Defendant.

--------------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

# DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE FIGUEREDO'S AMENDED REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR RULE 11 SANCTIONS BE GRANTED

**TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ............................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................3

    A.   Link Motion, Dr. Shi, And Other Directors Are Sued In The *Baliga* Action ........3

    B.   Link Motion Declines To Retain DLA To Defend The *Baliga* Action .................4

    C.   Plaintiff And Its Counsel Sue DLA Falsely Claiming That The Receiver Thwarted A Lucrative Transaction, Resulting In An Arbitration Award Worth Hundreds of Millions Of Dollars ..............................................................7

    D.   China AI And Its Counsel Knew That Link Motion Completed The FL Mobile Transaction Long Before The *Baliga* Action Was Filed .........................8

    E.   The Tongfang Award Was A Sham Orchestrated By Dr. Shi, And China AI And Its Counsel Knew It When They Filed The Complaint Here .................10

    F.   China AI And Its Counsel Refuse To Withdraw Their Frivolous Complaint Even After This Court Rejected China AI's Core Theory Against DLA ............12

    G.   China AI And Its Counsel Refuse To Withdraw Their Complaint Even After Defendants Explained That It Was Riddled With Lies And Legally Frivolous ..................................................................................................12

    H.   Plaintiff's Counsel Later Seeks To Dismiss The Complaint, But Only As A Forum-Shopping Ruse, And Refiles In Another Forum In Violation Of This Court's Orders .................................................................................13

    I.   After The Court Dismissed The *LKM* Action, Plaintiff Seeks To Prolong This Litigation Through A Frivolous Request To Rescind Its Voluntary Dismissal ...................................................................................................14

    J.   The Magistrate Judge Recommends Granting DLA's Motion For Sanctions And Ordering Plaintiff And Its Counsel To Pay DLA's Fees And Costs ...........14

III. STANDARD OF REVIEW.................................................................14

IV.  DISCUSSION ..............................................................................15

    A.   The Magistrate Judge Correctly Found That Plaintiff And Its Counsel Violated Rule 11(b)(3) By Filing A Complaint Premised On Demonstrably False Allegations........................................................16

        1.   Plaintiff's Objections Confirm That Its Allegations Concerning The FL Mobile Shares And The Tongfang Arbitration Are False............17

        2.   The Magistrate Judge Did Not "Misread" The Tongfang Award............19

TABLE OF CONTENTS
(con't)

Page

3.     Plaintiff's Assertion That Link Motion "Retained A Property Interest In The FL Mobile Shares" Is Irrelevant ....................................20

B.     The Magistrate Judge Correctly Found That Plaintiff's Counsel Violated Rule 11(b)(2) By Filing A Frivolous Complaint With No Chance Of Success ..........................................................................................22

1.     The Magistrate Judge Was Not Required To Wait For "Discovery" To Determine That Plaintiff's Claim Was Frivolous.............................23

2.     Plaintiff And Its Counsel Could Not Have Reasonably Believed That Plaintiff Had Standing To Assert A Malpractice Claim Against DLA ..................................................................................24

3.     Plaintiff And Its Counsel Could Not Have Reasonably Believed That DLA Breached A Duty To Link Motion.........................................26

4.     Plaintiff And Its Counsel Could Not Have Reasonably Believed That DLA Caused Link Motion's Alleged Damages. ............................30

5.     The Magistrate Judge Did Not Recommend That Plaintiff Be Sanctioned For Violating Rule 11(b)(2) ..................................................34

C.     The Magistrate Judge Correctly Found That Plaintiff And Its Counsel Continued Pursuing Their Frivolous Claim For the Improper Purpose Of Harassing DLA And Causing Reputational Harm ...............................................34

D.     An Award Reimbursing DLA For Its Fees And Costs To Respond To This Frivolous Lawsuit Is Justified ...........................................................37

E.     The Court Should Not Consider Plaintiff's New Argument Concerning The Timing Of DLA's Rule 11 Motion, Which Is Meritless In Any Event .........40

V.     CONCLUSION ........................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022) .......................................................... 16, 22

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
  1998 WL 410958 (S.D.N.Y. July 22, 1998) ................................................................. 35

*AJ Energy LLC v. Woori Bank*,
  2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019),
  *aff'd*, 829 F. App'x 533 (2d Cir. 2020) ................................................................. 17, 20

*An v. Despins*,
  2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023) ...................................15, 16, 22, 23, 27, 34, 35

*Art Media LLC v. Brant*,
  2021 WL 2193020 (S.D.N.Y. Mar. 5, 2021) ................................................................. 15

*Baliga v. Link Motion, Inc.*,
  2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) ............................................................... 15

*Bennett v. Mukasey*,
  525 F.3d 222 (2d Cir. 2008) ........................................................................... 28, 29

*Bletas v. Deluca*,
  2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) .......................................................... 23, 24, 33

*In re Consol. RNC Cases*,
  2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) ................................................................... 40

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ....................................................................................... 16

*CV Collection, LLC v. WeWoreWhat, LLC*,
  2021 WL 4942625 (S.D.N.Y. Oct. 22, 2021) .......................................................... 28, 39, 40

*Davis v. Scot. Re Grp. Ltd.*,
  160 A.D.3d 114 (1st Dep't 2018) ......................................................................... 24

*Diggs v. City of New York*,
  2019 WL 4361023 (S.D.N.Y. Sept. 12, 2019) .............................................................. 41

*Dimitri Enterprises, Inc. v Scottsdale Ins. Co.*,
  2021 WL 2650508 (S.D.N.Y. June 24, 2021),
  *aff'd sub nom. Dimitri Enters., Inc. v Spar Ins. Agency LLC*,
  2022 WL 5237811 (2d Cir. Oct. 6, 2022) ................................................................. 23

*Ed Capital, LLC v. Bloomfield Inv. Res. Corp.*,
  316 F.R.D. 77 (S.D.N.Y. 2016) ........................................................................... 39

*Edwards v. Barclays Servs. Corp.*,
  2020 WL 3446870 (S.D.N.Y. June 24, 2020) .............................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

*Englese v. Sladkus*,
  2023 WL 2186406 (N.Y. Sup. Ct. Feb. 21, 2023) ............................................................29

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018),
  *aff'd*, 968 F.3d 216 (2d Cir 2020) ................................................................... 40, 41

*Fisher v. Tice*,
  2016 WL 4626205 (S.D.N.Y. July 5, 2016) ........................................................31

*Fishman v. Phila. Fin. Life Ass. Co.*,
  2016 WL 2347921 (S.D.N.Y. May. 3, 2016) ......................................................37

*Fishoff v. Coty, Inc.*,
  634 F.3d 647 (2d Cir. 2011) ...............................................................................31

*Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assocs.*,
  166 F. Supp. 2d 805 (S.D.N.Y. 2001) ................................................................16

*George v. Prof'l Disposables Intl., Inc.*,
  221 F. Supp. 3d 428 (S.D.N.Y. 2016) ................................................................14

*George v. Shamrock Saloon II LLC*,
  2020 WL 133621 (S.D.N.Y. Jan. 13, 2020) .......................................................41

*Goldman v. Barrett*,
  825 F. App'x 35 (2d Cir. 2020) ..........................................................................17

*Gonzalez v. Kijakazi*,
  2022 WL 3348525 (S.D.N.Y. Aug. 12, 2022) .....................................................15

*Howard v. Klynveld Peat Marwick Goerdeler*,
  977 F. Supp. 654 (S.D.N.Y. 1997),
  *aff'd*, 173 F.3d 844 (2d Cir. 1999) .....................................................................23

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
  875 F.2d 388 (2d Cir. 1989) ...............................................................................15

*JM Hldgs. 1 LLC v. Quarters Holding GmbH*,
  2021 WL 860516 (S.D.N.Y. Mar. 8, 2021) .........................................................28

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  2017 WL 3671036 (S.D.N.Y. July 18, 2017),
  *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017) .......... 33, 38

*Katz v. 260 Park Ave. S. Condo. Assoc.*,
  168 A.D.3d 615 (1st Dep't 2019) ........................................................................31

*In re Koper*,
  2020 WL 5075549 (Bankr. E.D.N.Y. Aug. 25, 2020) .........................................42

*Lawrence v. Richman Grp. of CT LLC*,
  620 F.3d 153 (2d Cir. 2010) .........................................................................38, 42

## TABLE OF AUTHORITIES

**Page(s)**

*Levine v. F.D.I.C.,*
  2 F.3d 476 (2d Cir. 1993) ...............................................................................17

*Lipin v. Natl. Union Fire Ins. Co. of Pittsburgh,*
  202 F. Supp. 2d 126 (S.D.N.Y. 2002)..............................................................36

*Mason Agency Ltd. v Eastwind Hellas SA,*
  2009 WL 3787261 (S.D.N.Y. Nov. 11, 2009) ..................................................39

*Mealus v. Nirvana Spring Water N.Y. Inc.,*
  2015 WL 4546023 (N.D.N.Y. July 28, 2015) ...................................................42

*Morley v. Ciba-Geigy Corp.,*
  66 F.3d 21 (2d Cir. 1995) ...............................................................................22

*New V & J Produce Corp. v. NYCCaterers Inc.,*
  2014 WL 5026157 (S.D.N.Y. Sept. 29, 2014) ..................................................40

*O'Malley v. New York City Transit Auth.,*
  896 F.2d 704 (2d Cir. 1990) ......................................................................35, 40

*Ortiz v. Barkley,*
  558 F. Supp. 2d 444 (S.D.N.Y. 2008)..............................................................15

*Pannonia Farms, Inc. v. USA Cable,*
  2004 WL 1794504 (S.D.N.Y. Aug. 10, 2004)...................................................23

*Patrizzi v. Bourne in Time, Inc.,*
  2013 WL 316148 (S.D.N.Y. Jan. 28, 2013) .....................................................42

*In re Payne,*
  707 F.3d 195 (2d Cir. 2013)............................................................................29

*In re Pennie & Edmonds LLP,*
  323 F.3d 86 (2d Cir. 2003)..............................................................................42

*Prim v. Peatco Ltd. L.P.,*
  1994 WL 570754 (S.D.N.Y. Oct. 17, 1994),
  *on reconsideration,* 1995 WL 447648 (S.D.N.Y. July 27, 1995)............................36

*Renren, Inc. v. XXX,*
  2020 WL 2564684 (N.Y. Sup. Ct. May 20, 2020),
  *aff'd sub nom. Matter of Renren, Inc.,* 192 A.D.3d 539 (1st Dep't 2021) ....................24, 25, 26

*Revellino & Byczek, LLP v Port Auth. of New York & New Jersey (PANYNJ),*
  682 F. App'x 73 (2d Cir. 2017).......................................................................39

*Romanian Am. Interests v. Scher,*
  94 A.D.2d 549 (2d Dep't 1983) ......................................................................28

*Ross v. Patrusky, Mintz & Semel,*
  1997 WL 214957 (S.D.N.Y. Apr. 29, 1997).....................................................37

## TABLE OF AUTHORITIES

<u>Page(s)</u>

*Salvini v. ADVFN PLC*,
  2016 WL 1703414 (S.D.N.Y. Apr. 27, 2016) ..................................................42

*Schiff v Yayi Intl. Inc.*,
  2020 WL 3893345 (S.D.N.Y. July 9, 2020)..................................................41

*Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*,
  2013 WL 3357921 (S.D.N.Y. July 2, 2013)..................................................30

*Schweizer v. Mulvehill*,
  93 F. Supp. 2d 376 (S.D.N.Y. 2000) ..................................................27

*In re Sept. 11th Liab. Ins. Coverage Cases*,
  243 F.R.D. 114 (S.D.N.Y. 2007)..................................................17

*Shenwick v. HM Ruby Fund, L.P.*,
  106 A.D.3d 638 (1st Dep't 2013)..................................................24

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*,
  2023 WL 243615 (S.D.N.Y. Jan. 17, 2023)..................................................15

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
  682 F.3d 170 (2d Cir. 2012)..................................................16

*Tantaros v. Fox News Network LLC*,
  2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018)..................................................39

*Top Jet Enters. Ltd. v. Sino Jet Holding Ltd.*,
  2018 (1) CILR 18 (Caymans Island Grand Court Jan. 19, 2018)..........................26

*United States v. New Silver Palace Restaurant, Inc.*,
  810 F. Supp. 440 (E.D.N.Y. 1992) ..................................................37

*Villalta v. J.S. Barkats, PLLC*,
  2020 WL 3970098 (S.D.N.Y. July 14, 2020)..................................................41

*Wahlhuetter v. CollegeHumor.com, LLC*,
  2022 WL 19701 (S.D.N.Y. Jan. 3, 2022)..................................................15

*Wechsler v. Hunt Health Sys., Ltd.*,
  216 F. Supp. 2d 347 (S.D.N.Y. 2002)..................................................38

*Winn v. Schafer*,
  499 F. Supp. 2d 390 (S.D.N.Y. 2007)..................................................24

*Wolfson v Bruno*,
  844 F. Supp. 2d 348 (S.D.N.Y. 2011)..................................................29

*Wolters Kluwer Fin. Servs, Inc. v. Scivantage*,
  564 F.3d 110 (2d Cir. 2009)..................................................38, 39

*Yale M. Fishman 1998 Ins. Tr. v. Gen. Am. Life Ins. Co.*,
  2013 WL 842642 (S.D.N.Y. Mar. 7, 2013)..................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**Rules**

Fed. R. Civ. P. 11.................................................................................*passim*

Fed. R. Civ. P. 72...........................................................................................15

Fed. R. Civ. Proc. 23.1....................................................................................37

**Other Authorities**

Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendments ..............................................36

DLA Piper LLP (US) and Caryn G. Schechtman (collectively "DLA" or "Defendants"), respectfully hereby respond to Plaintiff's ("Plaintiff" or "China AI") objections (ECF 63, the "Objections") to Magistrate Judge Figueredo's Amended Report and Recommendation that Defendants' motion for Rule 11 sanctions be granted and that Plaintiff and its counsel be ordered to pay Defendants' reasonable fees and costs for defending this action (ECF 58, the "R&R").[1]

## I.   PRELIMINARY STATEMENT

In a thorough analysis based on contemporaneous communications and public filings always available to Plaintiff and its counsel, documents filed and produced by Plaintiff and its counsel, this Court's prior orders, and well-settled law, Magistrate Judge Figueredo correctly determined that Plaintiff and its counsel committed *multiple* violations of Rule 11 for three independent reasons.

First, Plaintiff and its counsel violated Rule 11(b)(3) by filing a Complaint premised on demonstrably false allegations concerning the FL Mobile transaction and purported $400 million arbitration award that are central to their causation and damages theories.  R&R at 16–17 ("[N]either Plaintiff nor its counsel could have reasonably believed that those allegations had or were likely to have evidentiary support.").  Second, Plaintiff's counsel violated Rule 11(b)(2) by filing an utterly frivolous claim that "had no chance of success," not only because Plaintiff clearly couldn't establish multiple essential elements of that claim—including breach of duty and causation—but also because Plaintiff plainly lacked standing to bring it in the first place under well-settled law.  R&R at 16, 22–30.  Third, "the only plausible conclusion to be drawn" from Plaintiff's decision to "continu[e] to pursue this claim" despite ample notice of its myriad legal and factual deficiencies—and to try and prolong it even after Link Motion itself had tried (and failed) to pursue an identical claim directly—"is

---

[1] References to "ECF" are to the docket in this action; *Baliga* Dkt" refers to filings in *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 ("*Baliga* Action"); "*LKM* Dkt" refers to filings in *Link Motion Inc. v. DLA Piper LLP (US) et al.*, 1:22-cv-08313 ("*LKM* Action").  Pin cites are to the page numbers applied by the Court.

that it was done to harass Defendants."  R&R at 31–32 ("Even if one could conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim.").

Plaintiff's and its counsel's Objections again follow their ignoble playbook:  obfuscation, misdirection and unfounded assertions, as well as blatant misstatement of the law, the facts, and their own judicial filings.  As mere examples, the Objections rely on a convoluted (and false) "explanation" of the FL Mobile transaction that misstates the relevant documents and ignores public filings by Link Motion and Dr. Shi confirming the Complaint's false allegations.  They ignore the Magistrate Judge's finding that "an adequate investigation" would have revealed facts that cast serious doubt on the legitimacy of the sham Tongfang Arbitration Award and "the viability of a legal-malpractice claim" against DLA.  R&R at 25.  They don't meaningfully address this Court's repeatedly holding that the defense Plaintiff asserts DLA should have raised wouldn't have changed the outcome in the *Baliga* Action.  R&R at 26–28; *see LKM* Dkt 24 at 16–20.  And they rehash the frivolous argument—that Plaintiff had derivative standing to sue DLA under a narrow "fraud on the minority" exception to the prohibition against such actions under Cayman Islands law—that is both inconsistent with the allegations in the Complaint and unsupported even by the authority Plaintiff cites.

Plaintiff also raises a new (and untimely) legal argument:  Defendants' Rule 11 Motion supposedly was untimely because it was filed after Plaintiff's claim was "effectively dismissed."  Objs. at 55–58.  Aside from the fact that there was no "dismissal," whether "effective" or otherwise, Plaintiff's argument is procedurally defective because Plaintiff offers no reason, let alone the requisite "compelling reason," for failing to present it to the Magistrate Judge.  In any event, neither Rule 11 nor the cases cited by Plaintiff mandate filing a Rule 11 motion before "dismissal."  In fact, it is well-settled that a Rule 11 motion can be filed after dismissal so long as a party is served with notice and

provided an opportunity to withdraw or correct the filing pursuant to the 21-day "safe harbor" provisions. Defendants undisputedly complied with those provisions in March 2022, yet Plaintiff declined to take any corrective action for more than six months.

Plaintiff's contention that it eventually "filed a voluntar[y] dismissal" likewise is disingenuous. Plaintiff only tried to discontinue this action after its counsel had forum-shopped an identical and equally frivolous claim by Link Motion in state court, in violation of this Court's orders (the *LKM* Action). When that attempt failed, Plaintiff sought to withdraw its prior "dismissal" and amend the Complaint, despite clear law prohibiting a derivative claim where the claim has been asserted directly by Link Motion. R&R at 31–32. Indeed, in June 2023—15 months after DLA served Plaintiff's counsel with the Rule 11 Letter and Motion—Defendants were still being forced to respond to Plaintiff's utterly frivolous filings and meritless legal arguments. *See* ECF 50.

Simply put, Plaintiff's specious Objections fail to challenge the Magistrate Judge's determination that Plaintiff and its counsel violated Rule 11 in multiple ways and recommendation that both should pay Defendants' fees and costs to defend against this baseless action.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Link Motion, Dr. Shi, And Other Directors Are Sued In The *Baliga* Action

Plaintiff China AI is a registered shareholder of Link Motion, a technology business founded in China by Dr. Henry Yu Lin, Mr. Xu Zhou, and Dr. Vincent Wenyong Shi. Compl. ¶¶ 1, 18. Link Motion was incorporated as a limited company in the Cayman Islands in 2007; in 2011, it completed a public offering of American depositary shares ("ADS") on the New York Stock Exchange. *Id.* ¶ 18. In 2014, Dr. Shi became chairman of the Link Motion Board of Directors. *Id.* ¶¶ 19–20.

On December 13, 2018, Wayne Baliga, a Link Motion ADS-holder, filed a shareholder suit in this Court against Link Motion and several of its officers and directors. *Baliga* Dkt 1. One of those defendants was Dr. Shi, whom Baliga alleges had orchestrated "a massive, multi-year fraud" and was

"looting [Link Motion's] most valuable assets [to] lin[e] [his] pockets." *Baliga* Dkt 166 ¶ 4; *see Baliga* Dkt 1 at ¶ 3. Baliga requested the appointment of a receiver. *Baliga* Dkt 1 at ¶¶ 36–37. Plaintiff's counsel here also represents Dr. Shi in the *Baliga* Action and Link Motion in the *LKM* Action.

**B.    Link Motion Declines To Retain DLA To Defend The *Baliga* Action**

When the *Baliga* Action was filed, Baliga requested a TRO, the appointment of a receiver, and a preliminary injunction to prevent transfer or dissipation of Link Motion's assets. *Baliga* Dkt 7; Compl. ¶ 3; ECF 37-1 at 2. Because DLA had previously represented Link Motion in a corporate matter, Baliga's counsel emailed DLA, alerting them of Baliga's request, which would be heard the next day. ECF 37-1 at 2. Ms. Schechtman promptly forwarded the email to Dr. Shi and another Link Motion director, stating "[p]lease instruct DLA if you would like us to respond. We should have a call immediately to discuss — as action will be taking place tomorrow. In addition DLA has still not received a retainer so we would need to receive that as well." *Id.*

Ms. Schechtman followed up that same day, asking "[d]id you see the lawsuit that was filed. They are going into court in 12 hours to get a restraining order against the company." ECF 37-2 at 5. In light of the imminent filing, and although DLA had not been retained, she offered to "send an associate" to inform the Court "that we have received no instruction from the Company due to the time difference and language barriers." ECF 37-3 at 2; *see also* ECF 37-2 at 4. Dr. Shi replied simply, "OK, thanks." ECF 37-2 at 4.

On December 14, 2018, the Court granted the TRO. *Baliga* Dkt 7. Meanwhile, Defendants continued to seek direction from Link Motion. On December 17, Ms. Schechtman asked Dr. Shi, "Vincent we need to discuss how the company wants us to handle the derivative action." ECF 37-2 at 5. On December 18, Ms. Schechtman again urged Dr. Shi, "[w]e have to discuss the derivative action. We need to enter a scheduling order on Friday US." *Id.* She also pressed Dr. Shi to "please bring us current on invoices" outstanding from DLA's prior work for Link Motion. *Id.* at 4. Dr. Shi asked

DLA to obtain additional time for Link Motion to respond to the motion for preliminary injunction. On December 21, 2018, the parties filed a joint letter, which was later approved by this Court, in which Link Motion agreed to extend the TRO and requested a deadline of January 21, 2019 to respond to Baliga's motion. *Baliga* Dkt 20, 21.

For more than a month thereafter, DLA repeatedly (and with consistent urgency) followed up with Dr. Shi (chairman of the Link Motion Board) and the Link Motion Board itself by email and text messages, in both English and Mandarin, asking whether the Company wanted to retain DLA, whether the Company could or would pay DLA for prior legal work before doing so, and how, if at all, the Company wanted to respond to the *Baliga* Action (all emphases added unless indicated):

- On December 28, Ms. Schechtman said DLA couldn't take on the new matter without "payment on outstanding invoices" for prior corporate work. ECF 37-2 at 3. Link Motion didn't respond.

- On January 6, 2019, Ms. Schechtman warned, "[W]e won't be able to draft the briefs that are due on [t]he 21st. Because we can't open the matter as we have not received the retainer and we are not up to date on payment." *Id.* Link Motion didn't respond.

- On January 7, Ms. Schechtman again pressed: "Let me know when we can speak. The insurance policy has a 2.5 million dollar retention which means it won't kick in until the company has paid 2.5 million toward legal fees." *Id.* Hours later she added, "Can we speak?" *Id.* Link Motion didn't respond.

- On January 14, Ms. Schechtman yet again asked for direction: "When can we speak. I need to let the other side and the court know what we are doing. We have to start drafting today. It's one week out. …" *Id.* Link Motion didn't respond.

- On January 14, DLA wrote to the Link Motion Board in both English and Mandarin, warning "Defendants opposition to Plaintiff's motion is due next Monday, January 21. . . . *If we do nothing, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets*." ECF 37-4 at 3. DLA also noted: "***We have repeatedly asked for instruction on how to proceed but have not received any guidance from the Company*** or the individual defendants and advised that *if we do not receive payment for legal services, we cannot take on this litigation matter*." *Id.* at 4. Nobody responded.

- Ms. Schechtman then pleaded with Dr. Shi, "[p]lease advise," adding "[i]f I do not hear from you in 24 hours *I will need to alert the Court that we have not been engaged to proceed further on the Company's behalf*." ECF 37-2 at 3. Dr. Shi didn't respond.

- On January 17, Ms. Schechtman again wrote to Dr. Shi: "I have not heard from you. We have not prepared briefs and *will not be in a position to represent the company in the derivative action*. . . . I want to avoid withdrawing as Counsel on the derivative action because it will look bad for the company. Instead I would prefer for the company to agree that it isn't submitting papers on Jan 21. . . . But we need to discuss." *Id.* at 2–3. Hours later, she added "We must speak. When can you talk?" and "*I need you to confirm that we can tell the court you aren't responding*." *Id.* at 2. Dr. Shi didn't respond.

- On January 18, DLA again wrote to the Link Motion Board in both English and Mandarin: "*We have not heard back from you* on [DLA's January 14 email]. As a result, *if we do not hear back from you within 24 hours, DLA will assume that we have Link Motion's consent not to oppose the motion*. . . . [I]f Link Motion does not respond, the motion may be granted, which may include such relief as appointing a receiver over the company and a preliminary injunction restricting the Company from transferring assets, attorneys' fees and costs, and other such relief that the Court may deem appropriate." ECF 37-4 at 2. Further, she said that if Link Motion continued to ignore the matter, DLA would "assume that we have Link Motion's consent to withdraw from representation" and inform the Court that Link Motion "will not submit an opposition" to Baliga's motion. *Id.* Nobody responded.

- Ms. Schechtman also contacted Dr. Shi: "Vincent please call me. we need to speak." ECF 37-2 at 2. She also wrote to both Dr. Shi and Crystal Zhanglu, a Link Motion Senior Legal Manager, stating: "Crystal it is important that I speak with you and Vincent as soon as possible. When can we speak." *Id.* at 5. Neither Dr. Shi nor Ms. Zhanglu responded.

- On January 20, Ms. Schechtman again pressed Dr. Shi: "Vincent - you owe me the courtesy of a call. Please call me." *Id.* at 2. Dr. Shi finally responded, stating only that he would call her soon. *Id.*

- Later that day, Ms. Schechtman asked Dr. Shi: "Do you want us to do the answer. We will need some payment. Otherwise I'm not sure what to recommend." *Id.* She added "*I would like your consent for us to withdraw as your counsel from the litigation if you determine not to pay us to go forward* . . . I am trying to do what is best for the company but we cannot work for no payment." *Id.* Dr. Shi didn't respond.

- Ms. Schechtman also sent to Dr. Shi a draft email to Baliga's counsel, offering to agree not to oppose the preliminary injunction in exchange for more time to answer the Complaint and attaching a draft stipulation. ECF 37-5 at 2. Dr. Shi didn't respond.

- On January 21, Ms. Schechtman wrote, "Vincent pls respond. The other option is we also withdraw as Counsel now." ECF 37-2 at 2. Dr. Shi responded: "Thanks Caryn, I fully respect and appreciate your excellent work. But at this moment, it's very hard to make any further payment arrangement, even employees' payrolls were impacted. I'm very sorry about this situation and also bear huge pressure from many parties. I still try my best to solve issues or at least to maintain the company. But it is very hard to predict the timeframe and the results." *Id.*

*See also* R&R at 2–7; ECF 36 at 9–12.

Link Motion then "determin[ed] not to oppose the OSC" in the *Baliga* Action, *Baliga* Dkt 28 at 6, and agreed not to oppose Baliga's motion, in exchange for additional time to answer the complaint, *Baliga* Dkt 22 at 3. On February 1, the Court granted a preliminary injunction and appointed a Receiver. *Baliga* Dkt 26 ("*Baliga* PI Order"). On March 1, as a prophylactic step, DLA sought (and received) leave to withdraw because Link Motion "has indicated that it does not have sufficient assets and cannot pay DLA's legal fees . . . [and] has failed to cooperate in the representation by failing to respond to inquiries." *Baliga* Dkt 28 at 3; *see* Compl. ¶ 82.

Dr. Shi thereafter retained Plaintiff's counsel here to defend the *Baliga* Action. *Baliga* Dkt 35–38. They appeared at a hearing on March 29, 2019 where Baliga's counsel first disclosed that Baliga held Link Motion ADS, and thus was not a registered shareholder. *See Baliga* Dkt 41 at 19:15–19. Baliga filed proof of that fact on April 26, 2019. *Baliga* Dkt 49, 49–8. Plaintiff alleges against DLA that Baliga's status as an ADS-holder rather than a "registered shareholder" defeated Baliga's derivative standing, and that DLA's purported failure to raise this "meritorious defense" constitutes "malpractice." Compl. ¶¶ 65, 67, 81. Yet Plaintiff's counsel never raised that argument at the hearing or in connection with a pending motion to dismiss and discharge the Receiver. *Baliga* Dkt 62. In fact, Plaintiff's counsel didn't raise that argument for two years. *See Baliga* Dkt 230 at 8, 21–22.

## C. Plaintiff And Its Counsel Sue DLA Falsely Claiming That The Receiver Thwarted A Lucrative Transaction, Resulting In An Arbitration Award Worth Hundreds of Millions Of Dollars

On December 20, 2021, China AI, represented by the same counsel that also represents Dr. Shi in the *Baliga* Action,[2] filed this derivative action alleging that Defendants "acted as counsel for [Link

---

[2] There are significant ties between China AI and Dr. Shi beyond their joint counsel. Dr. Shi is "directly connected to" and "control[s]" China AI, and he engineered China AI's acquisition of Link Motion shares. *Baliga* Dkt 220-2 at 3; *Baliga* Dkt 220-3 at 2; *see also Baliga* Dkt 141 at 8–10; *LKM* Dkt 30 at 19 ("Shi's crusade to vindicate his interests through counsel has been consistent. And the overlapping nature of legal representation as between LKM, Shi, and China AI raises the specter that Shi has been the one pulling the strings all along.").

Motion] in connection with the Baliga Action," and negligently failed to alert Link Motion to a potential and unsettled legal argument: that Baliga, as an ADS-holder, lacked standing to assert derivative claims under Cayman Islands law. Compl. ¶¶ 4, 7, 57, 83.

China AI claims here that such an argument would have caused this Court not to appoint the Receiver, who thereafter refused to perform Link Motion's contractual obligations and instead "transferred" Link Motion assets—including its interests in FL Mobile Jiutian Technology Co., Ltd. (the "FL Mobile Shares")—"to one of his own affiliates." Compl. ¶¶ 8–9, 81, 86. This supposedly caused Link Motion to breach a prior agreement (the "Tongfang SPA") to sell those assets to Tongfang Investment Fund Series SPC ("Tongfang"). *Id*. ¶¶ 62, 85–86. Tongfang purportedly then obtained in Hong Kong "an arbitration award of more than USD$390,000,000 against the Company" (the "Tongfang Award"), and Link Motion supposedly lost a $180 million "deferred net gain" from the transaction. *Id*. ¶¶ 8, 85–90. As the Magistrate Judge correctly found, however, these allegations are false, and Plaintiff and its counsel knew it (or should have known it) when they filed the Complaint.

**D.     China AI And Its Counsel Knew That Link Motion Completed The FL Mobile Transaction Long <u>Before</u> The *Baliga* Action Was Filed**

Plaintiff's allegations concerning the FL Mobile Shares are contradicted by publicly-filed documents and agreements, including Link Motion's SEC filings. *See* R&R at 17–22; ECF 36 at 14–15. Those documents confirm that Link Motion fulfilled its obligations regarding the FL Mobile Shares in December 2017—more than a year *before* the *Baliga* Action was filed.

In March 2017, Link Motion announced that it had agreed to sell to Tongfang its interests in FL Mobile and another business. ECF 37-6 at 5. The Tongfang SPA provided that the FL Mobile Shares would be transferred to Tongfang upon its completion of certain payment obligations. *Baliga* Dkt 228-4 at 7. Simultaneously with that agreement, the parties entered into a "Supplemental Agreement," entrusting the FL Mobile Shares to Dr. Shi but only until "the Closing of the Share

Purchase Transactions," or "the date when [Tongfang] completes all its payment obligations as provided in the [Tongfang] SPA." ECF 42-10 at 2; *see* ECF 37-7 at 4 ("[Link Motion] ha[s] transferred [its] equity interests in FL Mobile . . . while the purchasers still have certain period to complete their payment obligations").

Tongfang completed those payment obligations in December 2017. ECF 37-8 at 6. Rather than paying all cash, however, Link Motion permitted Tongfang to complete payment by issuing a senior note to Link Motion (the "Tongfang Note"). *Id.* ¶ 63. The Tongfang Note was due to be paid by December 14, 2018. ECF 37-8 at 6.

On December 14, 2017, Link Motion announced that, with the issuance of the Note, it had received "100% of the agreed upon price pursuant to the definitive agreements" for the FL Mobile Shares, and thus "ha[d] ***completed*** the FL Mobile Divestment." ECF 37-8 at 5–7 (emphasis added). In a publicly-filed February 7, 2018 letter to Link Motion shareholders, Dr. Shi also represented that "[t]he transaction ***completed*** on December 14, 2017" with the receipt of the Tongfang Note. ECF 37-9 at 5 (emphasis added). Link Motion again reported on April 11, 2018 that it had "***[c]ompleted*** the divestment of FL Mobile" and recorded a $180.4 million "deferred gain" that included anticipated proceeds from the Tongfang Note.[3] ECF 37-10 at 6 (emphasis added); *see* Compl. ¶ 90.

In connection with the closing of the Tongfang Note and the FL Mobile transaction, the parties replaced the Supplemental Agreement with an "Equity Pledge Agreement." ECF 37–11. That agreement stated that the Tongfang Note was issued "in order to close the transaction" for the FL Mobile Shares, and that the FL Mobile Shares were now "held by [Tongfang]," although Link Motion had *the right to retake ownership* of the Shares if Tongfang failed to pay the Tongfang Note by the

---

[3] The $180.4 million actually is the "deferred gain" from both the sale of FL Mobile and another business called Showself. ECF 37-10 at 5. Plaintiff concedes that the Showself transaction was fully performed. Compl, ¶ 63.

maturity date a year later. *Id.* at 1–2; *see also* ECF 37-12 at 6. Of course, the Equity Pledge Agreement would have served no purpose if Link Motion had retained ownership and possession of the FL Mobile Shares. In any event, Tongfang failed to pay the Tongfang Note upon maturity on December 14, 2018, and it remains outstanding.[4] Compl. ¶ 90.

**E.     The Tongfang Award Was A Sham Orchestrated By Dr. Shi, And China AI And Its Counsel Knew It When They Filed The Complaint Here**

On February 8, 2022, after Defendants challenged the existence of the Tongfang Award, Plaintiff's counsel provided Defendants with the purported Tongfang Award cited in the Complaint. *Baliga* Dkt 269 at 1 n.1; *Baliga* Dkt 269-1. That document says Tongfang commenced an arbitration concerning the FL Mobile Shares on April 23, 2019 (the "Tongfang Arbitration"), several months ***after*** the Receiver had been appointed. *Baliga* Dkt 269-1 at 2; Compl. ¶¶ 8, 87–88. At that time, the *Baliga* PI Order directed all defendants, including Plaintiff's counsel's client Dr. Shi, to "ensure that litigation or arbitration matters [be] directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." *Baliga* Dkt 26 at 2–3.

Despite the Court's clear directive, the Receiver was *never* notified of the Tongfang Arbitration and didn't learn of the Tongfang Award until almost two years after it supposedly issued. *Baliga* Dkt 269 at 1 ("Defendant Shi secretly arrogated to himself the authority to speak for the Company in the Tongfang Arbitration."). Instead, according to the Tongfang Award *produced by Plaintiff's counsel,* Dr. Shi, acting without the Receiver's knowledge and in violation of this Court's Order, purported to represent Link Motion in the arbitration yet *failed to assert any defense or provide any substantive*

---

[4] As with China AI, Dr. Shi has significant ties to Tongfang. *See Baliga* Dkt 220 at 4. In response to Defendants' March 7, 2022 letter concerning their motion to dismiss, ECF 16, Plaintiff's Counsel didn't meaningfully dispute this fact, asserting only that "Baliga has conceded that Tongfang SPC was not Dr. Shi's alter ego." ECF 17 at 3.

*response* on behalf of Link Motion. *Baliga* Dkt 269-1 at 5, 7; *see* ECF 36 at 15–17; R&R at 25; *see also* Objs. at 43–44. According to that Tongfang Award provided by Plaintiff's counsel:

> [Link Motion] ha[s] not been legally represented in this arbitration. Instead, by email dated 5 May 2019 Mr. Shi confirmed to HKIAC that he was acting on behalf of [Link Motion]. [Link Motion] (through Mr. Shi) have therefore been aware of these proceedings. But [Link Motion] ha[s] opted not to submit any document in this reference.

Dkt 269-1 at 4. In other words, Plaintiff's counsel's own client, Dr. Shi, orchestrated a nine-figure, bogus arbitration award that they now allege constitutes damages against DLA.[5]

None of this is an innocent mistake by Plaintiff or its counsel. In a June 2021 declaration Plaintiff's counsel filed in the *Baliga* Action, Dr. Shi (Plaintiff's counsel's other client) described a "Tongfang Arbitration," claiming that "[i]n April 2019, Tongfang commenced an arbitration against the Company and me to rescind the purchases of FL Mobile and Showself." *Baliga* Dkt 228 at ¶ 33. Dr. Shi (aided and abetted by Plaintiff's counsel) falsely claimed (just as China AI does here) that "[a]s a result of Baliga's and the Temporary Receiver's improper and baseless interference with the Company's ability to transfer the shares to Tongfang, the arbitrator issued an award against the Company . . . in the amount of RMB 2,520,000." *Id.* at ¶ 34; *see* Compl. ¶¶ 87–88. But the award Plaintiff's counsel cited and attached to that June 2021 declaration on Dr. Shi's behalf was *not* an award in favor of Tongfang *or* against Link Motion. It was from a *different* arbitration that was filed in December 2018 against Dr. Shi personally. *See Baliga* Dkt 228 at ¶ 34, and 228-14.

When pressed about this by the Receiver, Plaintiff's counsel dissembled, because disclosure of the Tongfang Award would reveal Dr. Shi's fraud and violation of the Court's Orders. Plaintiff's

---

[5] Notably, Tongfang has never tried to enforce the sham Tongfang Award. Nor has it ever paid amounts remaining on the Tongfang Note. Tongfang's representatives in the Tongfang Arbitration told the arbitrator that Tongfang has been dissolved. ECF 37-13 at 2.

counsel didn't disclose the Tongfang Award to the Receiver or this Court until they were called out by the Receiver for their misrepresentations. *See Baliga* Dkt 269.

**F.      China AI And Its Counsel Refuse To Withdraw Their Frivolous Complaint Even After This Court Rejected China AI's Core Theory Against DLA**

In the *Baliga* Action, Dr. Shi, represented by Plaintiff's counsel, moved for dismissal and to discharge the Receiver.  They argued that the Court lacked authority to appoint the Receiver because Baliga, as an ADS-holder, had no standing to assert common-law derivative claims under Cayman Islands Law—the *same argument* Plaintiff and its counsel now say DLA failed to raise.  *Baliga* Dkt 230 at 8, 21–22; *Baliga* Dkt 275 at 10–11.  Magistrate Judge Freeman rejected that argument on March 9, 2022—just one day after DLA served its Rule 11 Letter in this action—holding that Baliga "had standing to bring the securities-law claims," and "this afforded the Court subject-matter jurisdiction to issue the challenged [*Baliga* PI] Order" and appoint the Receiver.  *Baliga* Dkt 275 at 18, 22–30.  In other words, even "assuming the correctness of [Shi's (and Plaintiff's)] proposition" that Baliga lacked derivative standing to bring state law claims, "it would ultimately be immaterial to the outcome" because his federal securities claims provided that standing.  *Id.* at 22 n.9.  In August 2022, this Court adopted the Magistrate Judge's findings "in their entirety."  *Baliga* Dkt 331 at 2.

**G.      China AI And Its Counsel Refuse To Withdraw Their Complaint Even After Defendants Explained That It Was Riddled With Lies And Legally Frivolous**

On March 7, 2022, DLA warned Plaintiff by letter of numerous fatal legal and factual deficiencies in the Complaint and that DLA intended to file a motion to dismiss if it was not withdrawn. ECF 16 (the "MTD Letter").  On March 8, 2022, DLA served another letter (the "Rule 11 Letter") "describ[ing] the specific conduct" by Plaintiff and its counsel that "violate[d] Rule 11(b)."  Fed. R.

Civ. P. 11(c)(2); *see* ECF 37-14.[6]  The Rule 11 Letter noted three independent grounds for sanctions, including that the Complaint was premised on demonstrably false allegations.  ECF 37-14 at 2–13.  Plaintiff never responded.   In their response to Defendants' MTD Letter, Plaintiff and Plaintiff's counsel refused to withdraw or amend the Complaint.  ECF 17 at 4.

**H.      Plaintiff's Counsel Later Seeks To Dismiss The Complaint, But Only As A Forum-Shopping Ruse, And Refiles In Another Forum In Violation Of This Court's Orders**

On September 6, 2022, days before Defendants were set to file their motion to dismiss, Plaintiff's counsel abruptly filed a "Notice of Voluntary Dismissal Without Prejudice," which required approval by the Court, along with a letter requesting that China AI be excused from providing the shareholder notice required under Rule 23.1.  ECF 22, 23.

Without waiting for the Court to rule on the notice required by Rule 23.1 or its request to dismiss this derivative action, Plaintiff's counsel filed a nearly identical action against DLA, this time directly on behalf of Link Motion, in the Supreme Court of the State of New York.  *See Link Motion Inc. v. DLA Piper LLP (US) and Caryn G. Schechtman*, Case No. 653322/2022 (N.Y. Sup. Ct.), NYSCEF No. 1 (Complaint, dated Sept. 12, 2022).  As this Court later confirmed, the filing of that action violated the *Baliga* PI Order.  *LKM* Dkt 9 at 1.

On September 26, 2022, Defendants filed the motion for Rule 11 sanctions that they had served on Plaintiff's counsel in March 2022.  ECF 36 (the "Rule 11 Motion").  On October 24, 2022, Plaintiff and its counsel filed a sprawling opposition comprised of a 25-page brief, 43 exhibits, two attorney declarations with over 30 pages of additional factual contentions and legal argument, and a declaration from Dr. Shi.  *See* ECF 41–44.

---

[6] Plaintiff doesn't challenge or object to the Magistrate Judge's finding that "[b]efore filing the instant motion [for sanctions], Defendant complied with the safe harbor requirement in Rule 11(c)(2)."  R&R at 14.

I.   **After The Court Dismissed The *LKM* Action, Plaintiff Seeks To Prolong This Litigation Through A Frivolous Request To Rescind Its Voluntary Dismissal**

After learning that Plaintiff's counsel had filed the copycat *LKM* Action in state court, DLA removed that action to this Court and, on May 26, 2023, the Court dismissed the *LKM* Action with prejudice. *LKM* Dkt 30. Plaintiff's counsel next tried to prolong this frivolous action further, insisting that it should be permitted to withdraw its request to voluntarily dismiss this action and instead amend its Complaint. *See* ECF No. 49. As Defendants explained, however, Plaintiff could not continue to pursue a legal-malpractice claim *derivatively* on behalf of Link Motion because Link Motion's *direct* claim had been dismissed with prejudice. *See* ECF No. 50 at 1–2; R&R at 31–32.

J.   **The Magistrate Judge Recommends Granting DLA's Motion For Sanctions And Ordering Plaintiff And Its Counsel To Pay DLA's Fees And Costs**

On July 27, 2023, Magistrate Judge Figueredo recommended that Defendant's Rule 11 Motion be granted. ECF 58.[7] The Magistrate Judge found, among other things, that "neither Plaintiff nor its counsel could have reasonably believed that the allegations in the Complaint . . . had evidentiary support"; that Plaintiff's legal-malpractice claim was "frivolous" and that Plaintiff's counsel should have known at the time it was filed that it "had no chance of success"; and that Plaintiff and its counsel's decision to continue to pursue that claim "c[ould] only be viewed as an attempt to harass Defendants and cause reputational harm." R&R at 16, 22. Given their egregious misconduct, the Magistrate Judge recommended "that Plaintiff and its counsel be ordered to pay the reasonable costs and fees incurred by Defendants in defending this action." *Id.* at 1.

### III.   STANDARD OF REVIEW

A party objecting to a report and recommendation may not "attempt to relitigate the entire content of the [matter] before the Magistrate Judge." *George v. Prof'l Disposables Intl., Inc.*, 221 F.

---

[7] The R&R was amended on July 28, 2023; that is the R&R referred to throughout this brief.

Supp. 3d 428, 433 (S.D.N.Y. 2016). Thus, although the Court reviews *de novo* those portions of a report and recommendation to which a party makes a "specific written objection," *Baliga v. Link Motion, Inc.*, 2022 WL 3699339, at *4 (S.D.N.Y. Aug. 25, 2022) (quoting Fed. R. Civ. P. 72(b)); *Wahlhuetter v. CollegeHumor.com, LLC*, 2022 WL 19701, at *1 (S.D.N.Y. Jan. 3, 2022), the standard of review is only "clear error" where a party's objections merely "rehash[] the same arguments set forth in the original petition," *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). To do otherwise would "reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 2023 WL 243615, at *2 (S.D.N.Y. Jan. 17, 2023).

Nearly all of Plaintiff's objections "simply reiterate[] original arguments" from its extensive briefing before the Magistrate Judge, and thus "the Court [should] review the Report strictly for clear error." *Baliga*, 2022 WL 3699339, at *4; *Sirius XM*, 2023 WL 243615 at *2 ("The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge."). A decision is clearly erroneous only if "upon review of the entire record, the Court is left with 'the definite and firm conviction that a mistake has been committed,'" *Art Media LLC v. Brant*, 2021 WL 2193020, at *1 (S.D.N.Y. Mar. 5, 2021), "and not merely if [the Court] would have decided the case differently," *Gonzalez v. Kijakazi*, 2022 WL 3348525, at *1 (S.D.N.Y. Aug. 12, 2022) (internal quotations omitted).

Under any standard, the Magistrate Judge's findings and recommendations are absolutely correct, and the R&R should be adopted in its entirety.

## IV.   DISCUSSION

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *An v. Despins*, 2023 WL 4931832, at *4 (S.D.N.Y. Aug. 2, 2023) (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989)). Following such inquiry, the attorney filing a pleading certifies that

the "the filing is not presented for an improper purpose, and the legal contentions are nonfrivolous and supported by the facts and law." *Id.* (citing Fed. R. Civ. P. 11(b)). "'[T]he central purpose of Rule 11 is to deter baseless filings in district court' and thus 'streamline the administration and procedure of the federal courts.'" *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *3 (S.D.N.Y. Sept. 14, 2022) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

Where Rule 11 has been violated, "[a] district court has broad discretion to tailor appropriate and reasonable sanctions," *Edwards v. Barclays Servs. Corp.*, 2020 WL 3446870, at *5 (S.D.N.Y. June 24, 2020), including without limitation "an order directing payment . . . [of] attorney's fees and other expenses directly resulting from the violation," Fed. R. Civ. P. 11(c)(4); *see also* Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person[s]" responsible for the filings at issue. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012).

Here, the Magistrate Judge correctly held that Plaintiff and its counsel violated Rule 11 by filing a Complaint premised on knowingly false allegations; asserting a facially frivolous claim that "had no chance of success," and for which Plaintiff plainly lacked standing; and continuing to pursue that frivolous claim in "an attempt to harass Defendants and cause reputational harm." R&R at 16, 31. Each of those decisions independently merits sanctions and an order requiring Plaintiff and its counsel "to pay the reasonable costs and fees incurred by Defendants in defending this action." *Id.* at 32.

A.   **The Magistrate Judge Correctly Found That Plaintiff And Its Counsel Violated Rule 11(b)(3) By Filing A Complaint Premised On Demonstrably False Allegations**

"[A]t a minimum," Rule 11 requires "that there is reason to believe that, when all the facts are known, the Court will find that they support the relief requested." *Four Star Fin. Servs., LLC v.*

*Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 809 (S.D.N.Y. 2001); *see* Fed. R. Civ. P. 11(b)(3).  In other words, "an attorney has an obligation to file only papers that have a basis in fact," *Goldman v. Barrett*, 825 F. App'x 35, 37 (2d Cir. 2020), and cannot "simply take her client's word on faith where that word would be easily proved (or disproved) through a reasonable investigation or where red flags should have (and would have) alerted counsel to problems." *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *11 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).

Magistrate Judge Figueredo correctly found that Plaintiff and its counsel violated these settled principles when they filed a Complaint premised on allegations concerning the FL Mobile transaction that they knew or should have known at *best* lacked "evidentiary support," R&R at 17, and at worst were false and misleading.  *See id.* at 16–20, 24; *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124, 126–28 (S.D.N.Y. 2007) (noting that "[a] baseless factual contention poses a greater threat to justice than a baseless legal contention," and granting sanctions where party made "factual contentions . . . utterly lacking in support").  Plaintiff's objections to those findings are meritless.

1. **Plaintiff's Objections Confirm That Its Allegations Concerning The FL Mobile Shares And The Tongfang Arbitration Are False**

The Objections offer yet another version of Plaintiff's ever-shifting narrative concerning the FL Mobile transaction.  This latest installment relies on utterly illogical inferences, would require the Court to ignore the plain language of the relevant documents, and confirms that Plaintiff's counsel utterly disregarded their duty to ensure that the "factual contentions [in the Complaint] have evidentiary support," Fed. R. Civ. P. 11(b)(3), and to "file only papers that have a basis in fact," *Goldman*, 825 F. App'x at 37; *see Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) ("[B]latant disregard of the facts amply warrant[s] the imposition of sanctions.").

The Complaint alleges that "[a]t the time the TRO was entered, . . . Tongfang SPC had *already conveyed to the Company* consideration for the transaction," and that all that "remained to be

17

performed under the [Tongfang] SPA was the Company's obligation to cause the transfer of FL Mobile [S]hares."  Compl. ¶¶ 63–64; *see id.* ¶ 85 (alleging that Tongfang "had already paid the Company consideration as required by the SPA").  It further alleges that Link Motion was damaged because "[t]he Receiver . . . refused to perform or seek court approval for the Company to perform its obligations under the [Tongfang] SPA" and instead "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group," resulting in a $396 million arbitration award against the Company.  Compl. ¶¶ 86–88.

After DLA exposed that story as false, ECF 16, Plaintiff pivoted to claiming that "LKM had placed shares of FL Mobile into escrow," and that the appointment of a Receiver triggered a technical breach of its "obligations to hold the shares for Tongfang."  ECF 17 at 3.

In response to the Rule 11 Motion (and in the Objections), Plaintiff offer a third tale that is fundamentally *different* from what is alleged in the Complaint.  Specifically, Plaintiff and its counsel now claim that as of December 14, 2018, Tongfang had *not* conveyed the full consideration for the FL Mobile transaction to the Company, and that DLA supposedly caused the "loss" of the Tongfang Note in December 2018 (prior to the appointment of the Receiver) when the Court issued a TRO in the *Baliga* Action, which prevented transfer of the FL Mobile Shares by Link Motion.  Objs. at 16–19, 25, 44.  Plaintiff further claims, contrary to its prior allegations that the Receiver transferred the FL Mobile Shares to an affiliate, that the FL Mobile Shares have been held by Dr. Shi the entire time.  *Id.* at 11 ("[T]he shares continue to be held in Dr. Shi's name . . . ."), 17–18.

Plaintiff's newest narrative contradicts the Complaint and the contemporaneous documents filed in connection with the Rule 11 Motion.  Those documents—including publicly filed documents signed by Dr. Shi—unequivocally confirm (as the Magistrate Judge correctly found) that the FL Mobile transaction "closed" and was "complete" in December 2017 when Tongfang completed its

payment obligations by issuing the Tongfang Note.  R&R at 15–19; *supra* Section II.D.  At that point, the FL Mobile Shares were transferred to Tongfang, and the parties replaced the "Supplemental Agreement" cited in the Objections with the "Equity Pledge Agreement."  The Equity Pledge Agreement provided that the transaction had closed, that "[b]oth the Target [FL Mobile] Assets and Pledged [FL Mobile] Equity" were now "held by [Tongfang]," and that Link Motion would retain a security interest in, and could "retake possession of," the FL Mobile Shares if the Note was not timely paid.  ECF 37-11 at 2; ECF 42 ¶¶ 42–45; *see* ECF 37-12 at 6.

As the Magistrate Judge correctly observed, "there would have been no reason for the Equity Pledge Agreement . . . if Link Motion had not transferred those shares to Tongfang."  R&R at 19–20. Although Plaintiff now inexplicably claims, contrary to the plain language of the Equity Pledge Agreement, that the Agreement "did not mean that the stock could be recovered from the possession of Tongfang"—only that "Link Motion could simply transfer to itself title to the FL Mobile stock already in its possession and control," Objs. at 29—nothing in the text of the Equity Pledge Agreement supports that illogical and unfounded interpretation.

### 2. The Magistrate Judge Did Not "Misread" The Tongfang Award

The Magistrate Judge didn't "misread" the Tongfang Award.  Objs. at 25–27.  The Award is consistent with Link Motion's public filings and other documents filed with the Rule 11 Motion because it confirms that Tongfang had completed its payment obligations, and that Link Motion thus became obligated to transfer the FL Mobile Shares, with the issuance of the Tongfang Note in December 2017.  ECF 42-17 at 7–9, 11.  The Tongfang Award thus *also* doesn't support Plaintiff's claim that "Tongfang's obligation to pay the Note . . . was contingent upon Link Motion's transfer of the FL Mobile Shares."  Objs. at 16.  In any event, the suggestion that Link Motion was obligated to "transfer" the shares by releasing its security interest *before* receiving the payment that was supposed to be secured by those shares is backwards and nonsensical.

The Tongfang Award reveals *even more* of Dr. Shi's perfidy and the falsity of the Complaint. According to the Tongfang Award, Tongfang *didn't owe Link Motion any payment under the Note* as of December 2018 (when the TRO was entered in the *Baliga* Action), because the Note "ha[d] been repackaged and turned into other investments for [Link Motion]." ECF 42-17 at 9. Specifically, in September 2018, three months before the *Baliga* Action was filed, Dr. Shi apparently pledged the Tongfang Note on behalf of Link Motion to a third-party to satisfy his own outstanding personal liability to that third-party. ECF 42-19 at 6–7, 19–24, 27; *see id.* at 43–47 (finding that Dr. Shi breached his fiduciary duties to Link Motion by pledging the Note).

Finally, Plaintiff's purported reliance on the Tongfang Award for the assertion that "delivery of the shares . . . had not occurred," Objs. at 26, is baseless. The Tongfang Award exposes Dr. Shi's malfeasance in purporting to act on behalf on Link Motion (in violation of the *Baliga* PI Order) without alerting the Receiver and failing to raise any defense. *See supra* Section II.E. Although Plaintiff briefly faults the Magistrate Judge for discounting its preposterous theory that some unknown person must have been *impersonating* Dr. Shi in the Arbitration, Objs. at 44, Plaintiff doesn't dispute the Magistrate Judge's finding that Plaintiff's counsel, at a minimum, was on notice that neither Dr. Shi *nor anyone else* (i) alerted the Receiver about the Tongfang Arbitration (as required by this Court's orders); or (ii) raised *any* defense on behalf of the Company. R&R at 24. Plaintiff and its counsel's attempt to pin the Tongfang Arbitration on DLA, notwithstanding that knowledge, is plainly sanctionable. *See* Compl. ¶¶ 8, 85–88; *AJ Energy*, 2019 WL 4688629 at *11.

### 3.   Plaintiff's Assertion That Link Motion "Retained A Property Interest In The FL Mobile Shares" Is Irrelevant

Plaintiff's Objections concerning the FL Mobile transaction rely heavily on the assertion that the conditional security interest granted by the Equity Pledge Agreement represented a "property interest" in the FL Mobile Shares. *See* Objs. at 27–31, 43. Plaintiff argues that "[t]he TRO" (which

was issued on December 14, 2018, the day the Tongfang Note was due) "precluded Link Motion from transferring those property interests," and thus from "fully complet[ing] the transfer of ownership to Tongfang." *Id.* at 31, 33.[8]

This is both demonstrably false and a red herring.  As noted above, the allegation *in the Complaint* is that the appointment of the Receiver in February 2019 prevented Link Motion from completing the transaction because the Receiver was "conflicted," "refused to perform . . . its obligations under the [Tongfang] SPA," and instead "transferred FL Mobile to one of his own affiliates and/or a member of the LKMForward group."  Compl. ¶ 86.  Those actions allegedly "impaired the value of the Tongfang Note" and resulted in an adverse arbitration award for hundreds of millions of dollars.  Compl. ¶¶ 85–91.  That is nothing like Plaintiff's current story—that Plaintiff's counsel's other client, Dr. Shi, actually held the Shares in his name the whole time, and the TRO that was issued *before* the Receiver was appointed somehow caused Tongfang not to pay the Note when due.

Moreover, Plaintiff's fiction ignores the undisputed fact—known to Plaintiff's counsel when they filed the Complaint—that the Tongfang Award, central to Plaintiff's damages allegations, was the product of misconduct, if not outright fraud, by Dr. Shi.  In other words, this has nothing to do with resolving a "factual dispute" about whether and when shares were transferred, Objs. at 34, but rather, as the Magistrate Judge correctly found, the fact that the allegations and causation theories at the heart of Plaintiff's Complaint are demonstrably false.

---

[8] Plaintiff cites federal securities cases, bankruptcy cases addressing avoidance of certain liens, various provisions of the Uniform Commercial Code, and cases discussing the UCC.  Objs. at 27–30.  Nowhere does Plaintiff explain why any of them are relevant to a pledge agreement made under, and expressly governed by, Chinese law, ECF 37-11 at 4, or cite any support for its claims that it "perfected its secured interest by 'control,'" or retained "complete control" over the FL Mobile Shares.  Id. at 27–30.  Besides, Plaintiff's conclusory assertions are irrelevant, because the Complaint is premised on allegations that are demonstrably false as discussed herein.

Plaintiff's current narrative not only contradicts the Complaint, it also defies common sense. As noted above, payment of the Tongfang Note was not "condition[ed]" on the release of Link Motion's security interest in the FL Mobile Shares.  Objs. at 17.  Rather, the release of Link Motion's security interest in the FL Mobile Shares was contingent on Tongfang's payment of the Tongfang Note.  Tongfang's failure to make that payment by December 14, 2018 occurred *before* the Receiver was appointed.  Plaintiff's counsel doesn't (and can't) credibly explain how the *Baliga* Action TRO—which prohibited the transfer or dissipation of Company assets, *Baliga* Dkt 7—prevented the Company from *receiving* payment on the Tongfang Note (which would have extinguished any pledged security interest), enforcing the Tongfang Note, or foreclosing on its security interest in the FL Mobile Shares. Link Motion did none of those things.  The fact that Plaintiff's counsel tried to blame DLA for the mess orchestrated by Dr. Shi through intentionally vague, misleading, and demonstrably false allegations warrants sanctions.

**B.** **The Magistrate Judge Correctly Found That Plaintiff's Counsel Violated Rule 11(b)(2) By Filing A Frivolous Complaint With No Chance Of Success**

"A legal argument is frivolous pursuant to Rule 11(b)(2) if it is 'clear' that there is 'no chance of success and no reasonable argument to extend, modify or reverse the law as it stands' according to an 'objective standard of reasonableness.'" *An*, 2023 WL 4931832, at *5 (quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)); *see* Fed. R. Civ. P. 11(b)(2).  Where there is "no basis for Plaintiff's claim," sanctions are warranted.  *(RC) 2 Pharma Connect,* 2022 WL 4234552, at *4.

The Magistrate Judge correctly found that Plaintiff's malpractice claim against DLA was "frivolous" and had multiple "obvious deficiencies," and thus "it was objectively unreasonable for Plaintiff to have commenced this action."  R&R at 22.  Plaintiff's counsel thus violated Rule 11 by filing a claim for which it knew it could not establish multiple essential elements, including breach of a duty owed to Link Motion, causation, and damages.  Further, as the authority Plaintiff cites in the

Complaint confirms, Plaintiff lacked standing to sue derivatively under governing law.  *See* Compl. ¶ 42.  Sanctions are therefore warranted.  *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 666 (S.D.N.Y. 1997) (awarding sanctions where plaintiff's "causes of action are incurably defective on their face."), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Bletas v. Deluca*, 2011 WL 13130879, at *11 (S.D.N.Y. Nov. 15, 2011) ("[P]laintiffs failed to undertake a reasonable inquiry into the law that governs and clearly precludes the[ir] claims.").

### 1.    The Magistrate Judge Was Not Required To Wait For "Discovery" To Determine That Plaintiff's Claim Was Frivolous

Plaintiff says the Magistrate Judge's shouldn't have relied on "limited pieces of evidence selected by Defendants" and ruled "before discovery."  Objs. at 35.  But the documents in Defendants' Rule 11 Motion were available to Plaintiff's counsel when it filed the Complaint.  In any event, Plaintiff submitted its own "evidence" and argument—a 25-page brief, 43 exhibits, and two attorney declarations totaling over 30 pages—focused on what it and its counsel knew when they filed the Complaint.  Far from "resolv[ing] factual disputes," Objs. at 36, the Magistrate Judge undertook an analysis to determine whether, based on the facts and law available, Plaintiff's counsel should have known that its legal malpractice claim "had no chance of success."  R&R at 16.  That is the sort of straight-forward question of law that courts resolve without discovery.  *See, e.g.*, *An*, 2023 WL 4931832, at *4–8 (awarding sanctions at the pleading stage where plaintiff's claim was frivolous and filed for an improper purpose); *Dimitri Enterprises, Inc. v Scottsdale Ins. Co.*, 2021 WL 2650508, at *2 (S.D.N.Y. June 24, 2021), *aff'd sub nom. Dimitri Enters., Inc. v Spar Ins. Agency LLC*, 2022 WL 5237811 (2d Cir. Oct. 6, 2022).

Plaintiff doesn't identify any supporting evidence, and besides, it would be improper to permit Plaintiff to embark on an expensive "fishing expedition" solely for that purpose.  *Pannonia Farms, Inc. v. USA Cable*, 2004 WL 1794504, at *4 (S.D.N.Y. Aug. 10, 2004) ("[Plaintiff] now argues that it

needs discovery . . . a further admission that [Plaintiff] has no legal or factual foundation for its [claim] as framed in its complaint.  This admission . . . clearly runs afoul of Fed. R. Civ. P. 11 and its prohibition on filing a baseless suit with the hope that discovery will then uncover a viable cause of action."); *see also Bletas*, 2011 WL 13130879, at *10  ("While Rule 11(b)(3) permits parties to specifically identify 'factual contentions [that] will likely have evidentiary support' . . . this allowance cannot be understood to give parties free reign to fire shots into the proverbial dark because a reasonable inquiry must still support the likelihood of the inference drawn.").

### 2.   Plaintiff And Its Counsel Could Not Have Reasonably Believed That Plaintiff Had Standing To Assert A Malpractice Claim Against DLA

Plaintiff doesn't dispute that governing Cayman Islands law "prohibits derivative common-law claims except in narrow circumstances."  R&R at 29 (citing *Winn v. Schafer*, 499 F. Supp. 2d 390 (S.D.N.Y. 2007)); *see also Shenwick v. HM Ruby Fund, L.P.*, 106 A.D.3d 638, 639 (1st Dep't 2013).  Instead, it faults the Magistrate Judge only for finding that one of those "narrow circumstances"—the so-called "fraud on the minority doctrine"—is inapplicable "to the facts of this case."  Objs. at 47.

To establish this exception, a derivative plaintiff must show that (i) "the 'alleged wrongdoers [have] "control" over a majority of the stock with voting rights'"; and (ii) "those wrongdoers . . . committed 'fraud.'"  *Winn v. Schafer*, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007); *see Davis v. Scot. Re Grp. Ltd.*, 160 A.D.3d 114, 116 (1st Dep't 2018).  "Fraud" in this context requires that "the wrongdoers committed a deliberate and dishonest breach of duty, or … derived a personal benefit at the expense of the company's shareholders."  *Renren, Inc. v. XXX*, 2020 WL 2564684, at *21 (N.Y. Sup. Ct. May 20, 2020), *aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (1st Dep't 2021).  Further, "in a derivative action against a third-party other than the wrongdoer . . . the plaintiff must establish that the third party directly participated in or was an accessory to the conduct of the controlling stockholders constituting the alleged breach of duty."  *Id.* at *27.

The Complaint fails to establish *any* of these elements.  First, it doesn't say that Baliga or his counsel had "control" of Link Motion's voting stock; instead, it alleges that Baliga was associated with a group of "former stakeholders" that had "lost the contest for control" of the Company and its Board. Compl. ¶¶ 20, 30, 37.  Second, Plaintiff doesn't challenge the Magistrate Judge's finding that "there are no allegations in the Complaint that Baliga breached a duty to Link Motion or engaged in fraudulent or self-dealing conduct at the expense of the minority."  R&R at 30.  Nor could it, since Baliga's only alleged conduct was filing a lawsuit *on behalf of and for the benefit of* Link Motion.  That obliterates any claim that there was a "fraud on the minority."  Finally, the Complaint—which alleges only negligence by DLA, ¶ 112—is devoid of any factual allegation that DLA "acted dishonestly in assisting the primary perpetrator of the fraud."  *Renren*, 2020 WL 2564684, at *27.

Plaintiff next argues that the Magistrate Judge overlooked its allegations that "Baliga *and his counsel*" are the wrongdoers, and that Baliga's counsel obtained "*de facto* control over [Link Motion]" when he was appointed as Receiver for the Company in February 2019. Objs. at 48.  That is irrelevant. Even assuming the appointment of the Receiver constitutes "control" for purposes of the fraud on the minority exception, it would not refute the finding that "Baliga was not in control of the Company *when he filed his suit*," R&R at 29 (emphasis added), which is when the purported misconduct occurred, *see* Objs. at 48 (arguing that Baliga and his counsel "acted in concert when falsely alleging Baliga's status as a 'shareholder' of LKM" in "the original complaint filed in the Baliga action").  And Plaintiff still fails to explain how Baliga or his counsel "committed a deliberate and dishonest breach of duty" *to the Company*, or "derived a personal benefit at the expense of the company's shareholders." *Renren*, 2020 WL 2564684, at *21; *see* R&R at 30.

Plaintiff also mischaracterizes the Magistrate Judge's finding that DLA didn't "directly participate[] in," and was not "'an accessory to[,]' any fraudulent conduct by Baliga," R&R at 30,

suggesting that it turned solely on a finding that "Defendants did not have communications with Baliga and his counsel." Objs. at 48. What the Magistrate Judge actually (and correctly) found was that "there is no indication whatsoever in the Complaint that DLA Piper and Baliga had any communications, *let alone a relationship such that it could plausibly be inferred that DLA Piper directly participated or assisted in Baliga's fraudulent conduct.*" R&R at 30 (emphasis added). None of that is contradicted by the fact that DLA had limited communication with Baliga's counsel after the *Baliga* Action was filed (and *before* anyone was appointed as Receiver), Objs. at 48, because those communications (i) are not described *anywhere* in the Complaint; and (ii) do not suggest that DLA directly participated or assisted in any fraudulent conduct.

Plaintiff's assertion that merely signing or discussing a stipulation with opposing counsel constitutes direct participation in a breach of duty that had allegedly already occurred is frivolous. It finds no support in Plaintiff's cited cases, all of which confirm the inapplicability here of the fraud on the minority exception. *See Top Jet Enters. Ltd. v. Sino Jet Holding Ltd.*, 2018 (1) CILR 18, 42–48 (Caymans Island Grand Court Jan. 19, 2018) (permitting third party claim where the alleged wrongdoers controlled both the company *and* the third party); *Renren*, 2020 WL 2564684, at *28 (same where financial advisors retained by controlling wrongdoers participated in the controllers' breach by "knowingly presenting" an "improper valuation" to justify a "sham" transaction).

### 3.   Plaintiff And Its Counsel Could Not Have Reasonably Believed That DLA Breached A Duty To Link Motion.

Plaintiff contends that, merely by appearing in court on behalf of Link Motion in December 2018, DLA assumed an attorney-client relationship. Objs. at 36. Leaving aside that none of the cases Plaintiff cites support such a broad proposition, the Magistrate Judge didn't make a determination regarding the existence of an attorney-client relationship. Rather, the Court held that *regardless* of whether an attorney-client relationship was created with respect to the *Baliga* Action, the

contemporaneous communications between DLA, Dr. Shi and the Company confirmed that "it would have been exceedingly difficult (if not impossible)" to prove a separate element of Plaintiff's claim: "that Defendants breached a duty to Link Motion." R&R at 23 (citing *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000)).

That conclusion is correct. Contemporaneous communications between DLA and Link Motion (including Dr. Shi on behalf of Link Motion) confirm that, for *more than a month* after Defendants initially appeared in the *Baliga* Action to obtain an extension of time for Link Motion to respond, Link Motion and Dr. Shi consistently *refused* to engage with DLA concerning whether Link Motion could or would retain them, whether DLA should substantively defend the action, or even whether and how the Company wanted to respond.[9] *See supra* II.B; R&R at 23–24. "Against that backdrop of unanswered communications and nearly complete radio silence from [Link Motion], Plaintiff's counsel could not have in good faith believed that it would be able to show that Defendants breached a duty to Link Motion by failing to raise a standing defense." R&R at 24; *An*, 2023 WL 4931832, at *5 ("A legal argument is frivolous pursuant to Rule 11(b)(2) if it is 'clear' that there is 'no chance of success and no reasonable argument to extend, modify or reverse the law as it stands' according to an 'objective standard of reasonableness.'").

Plaintiff says this was error because it was based on "communications between Defendants and Shi that were submitted by Defendants" "without discovery." Objs. at 37. But Plaintiff's counsel represents Dr. Shi *and* Link Motion, along with China AI.[10] Yet in all of the evidence and argument

---

[9] As Plaintiff acknowledges, DLA was compelled to withdraw, Objs. at 41, due to Link Motion's "fail[ure] to cooperate in the representation by failing to respond" to requests for guidance; "fail[ure] to pay outstanding and overdue legal fees owed to DLA despite repeated requests to pay"; and confirmation that "it d[id] not have sufficient assets and cannot pay DLA's legal fees at this time." *Baliga* Dkt 28 at 3, 6.

[10] Plaintiff's counsel's bare assertion that it hasn't yet "had the opportunity to review communications in the files of Dr. Shi or Link Motion," Objs. at 39, is belied by the fact that it has

submitted in opposition to DLA's Rule 11 Motion, Plaintiff doesn't identify a single "communication" between DLA and Link Motion that was not presented to the Magistrate Judge, or that might "show that Schechtman's communications were answered." Objs. at 38–39. This case is thus fundamentally different from those Plaintiff relies upon. *See CV Collection, LLC v. WeWoreWhat, LLC*, 2021 WL 4942625, at *6 (S.D.N.Y. Oct. 22, 2021) (denying sanctions where party could "point to evidence" consistent with its position); *JM Hldgs. 1 LLC v. Quarters Holding GmbH*, 2021 WL 860516, at *8 (S.D.N.Y. Mar. 8, 2021) (denying sanctions where defendant "provide[d] no compelling evidence" that allegations were false).

Plaintiff's citation to cases that stand for the general proposition that a failure to assert or preserve a "meritorious defense" *can* support a malpractice claim do nothing to help Plaintiff's case. Objs. at 39–40. None of those cases suggest that an attorney whose purported client refuses to speak to her, or even to confirm that it wishes to retain the attorney to provide legal services, nevertheless has an affirmative obligation to provide such services and litigate a matter without any guidance, direction, or promise of payment. And the case Plaintiff cites purportedly for the extreme, blanket assertion that "attorneys who appear on behalf of a defendant are required to assert viable affirmative defenses," Objs. at 39, doesn't involve an attorney's purported obligation to assert an affirmative defense at all. *See Romanian Am. Interests v. Scher*, 94 A.D.2d 549, 554 (2d Dep't 1983) (noting only that "it is fair to presume" that an attorney "will assess the viability of affirmative defenses raised ***against his client*** and devise strategies for rebutting them.") (emphasis added).[11]

_____

represented Dr. Shi since at least March 2019 and Link Motion since at least September 2022, and cited in the Complaint several of the critical emails later relied upon by the Magistrate Judge. *See* R&R at 23–24; ECF 37-4 at 2, 4 (cited at Compl. ¶¶ 72, 74).

[11] Plaintiff cites *Bennett v. Mukasey*, 525 F.3d 222 (2d Cir. 2008), for the proposition that "counsel who appears for defendant in federal court has a duty to take reasonable care to preserve and not waive a meritorious defense." Objs. at 40. But Bennett concerned an attorney who entered into a retainer agreement and accepted an initial payment to pursue an appeal, yet failed to file the

Plaintiff's repeated mischaracterization of DLA as having "waive[d]" or failed to preserve a "meritorious" defense is baseless in any event. Objs. at 40–41. Two years after DLA withdrew from the *Baliga* Action, Plaintiff's counsel asserted the same standing defense at issue here,[12] confirming that it was not "waived." *See Baliga* Dkt 275 at 18, 20. And the Court rejected it, confirming that it was not "meritorious." *Id.*; *see Baliga* Dkt 331; R&R at 26–27.

Plaintiff's appeal to a decision concerning a malpractice defendant's prima facie burden on summary judgment is similarly unavailing. Objs. at 42 (citing *Englese v. Sladkus*, 2023 WL 2186406 (N.Y. Sup. Ct. Feb. 21, 2023)). DLA *has* "put forward 'evidence establishing . . . that [they] did not breach [a] duty" to Link Motion. *Id.*; *see supra* II.B; R&R at 2–8. Further, notwithstanding Plaintiff's obfuscation efforts, the simple and straightforward issue here—namely, what should reasonably be expected of counsel when a client refuses to engage—is one the Magistrate Judge is well equipped to handle without unspecified "expert testimony" (Objs. at 42–43). *See Wolfson v Bruno*, 844 F. Supp.

---

requisite forms (despite being specifically notified of the need to do so), which "permitted his client's appeal to be defaulted and dismissed," and then waited another year to seek to reinstate the petition. 525 F.3d at 223–24. *Bennett* has no relevance here. Equally unavailing is Plaintiff's citation to *In re Payne*, 707 F.3d 195, 217 (2d Cir. 2013), which actually appears to be a cite to the "Report of the Committee on Admissions and Grievances" attached as an appendix to that decision, which recommended disciplining an attorney who, over the course of many years, permitted 14 cases to be dismissed by defaulting on scheduling orders and/or failing to timely file briefs, filed defective briefs in others, and chose not to pursue certain claims due to a belief that they were "not dispositive" of his client's cases or "worth the Court's time." 707 F.3d at 210–18.

[12] Plaintiff claims that "'failing to raise a standing defense' is not the only malpractice alleged." Objs. at 41. But Plaintiff doesn't identify any other alleged malpractice, or where in the Complaint those allegations can be found. Further, Plaintiff's claim that "the additional costs to the Company arising from the receivership" could be recoverable from DLA, *id.* at 42, ignores that the Court has determined that the Receiver was properly appointed, that the costs of the Receiver are properly charged to the Company, and that any attempt to shift those costs to DLA is improper. *See LKM* Dkt 24 at 21 (denying remand in part because the legal malpractice claim impermissibly seeks to shift to DLA costs that are properly charged to Link Motion); R&R at 27 n.7 ("[B]ecause the Court found that it had jurisdiction to appoint the Receiver, Plaintiff's counsel could not have had an objectively reasonable basis for claiming that Defendants' actions caused Plaintiff's damages, to the extent those damages are the cost of the Receiver").

2d 348, 356 (S.D.N.Y. 2011) ("[E]xpert testimony may be unnecessary where the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." (internal quotations omitted)).

### 4.     Plaintiff And Its Counsel Could Not Have Reasonably Believed That DLA Caused Link Motion's Alleged Damages.

Further supporting the finding that Plaintiff's legal malpractice claim was frivolous, the Magistrate Judge found that "Plaintiff and its counsel could not have reasonably believed that Defendants' actions were the but-for cause of Link Motion's alleged damages."  R&R at 24. (citing *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *4 (S.D.N.Y. July 2, 2013)).  Plaintiff raises three objections to that conclusion, all of which fail.

#### a.     The FL Mobile Transaction

Plaintiff takes issue with the Magistrate Judge's finding that DLA's alleged acts and omissions didn't prevent the transfer of the FL Mobile Shares, and thus couldn't have caused Link Motion's alleged damages.  Objs. at 43.  As explained above, Link Motion's own public filings (as well as the documentary evidence submitted by Plaintiff) confirm that Plaintiff's allegations to the contrary are false*. See supra* at IV.A.1.  Whatever the reason Tongfang didn't pay (and Link Motion didn't seek to enforce) the Tongfang Note on December 14, 2018 (even assuming it had an obligation to do so after Dr. Shi's pledge of the Tongfang Note to a third party), it was not caused by the *Baliga* Action TRO or Receiver, as Plaintiff's counsel knew (or should have known).

#### b.     The Tongfang Arbitration

The Magistrate Judge didn't hold that Defendants had not caused Link Motion's harm merely because Link Motion didn't raise a defense in the Tongfang Arbitration; nor did the Court "improperly weigh[] the credibility of the evidence regarding Dr. Shi's loss of access to his corporate email account."  Objs. at 43–44; *see also id.*at 26.  What the Magistrate Judge *actually* held was that "an

adequate investigation by counsel of the factual basis for Plaintiff's legal-malpractice claim should have uncovered that Link Motion was not represented by counsel in the arbitration, that it mounted no defense to Tongfang's claims, and that someone acting without authority was claiming to be Shi and representing the company in the arbitration, without the Receiver's knowledge." R&R at 25.

Those findings aren't based on a determination as to "credibility," or a "weighing" of any evidence. Indeed, Plaintiff doesn't dispute those facts.[13] The truth of Dr. Shi's absurd story about an impostor gaining access to his "corporate email account" is thus *irrelevant*, because whether it was Dr. Shi or someone else purporting to represent the Company without authority, these undisputed facts should have "led counsel to deeply question the viability of a legal-malpractice claim against Defendants, where the issuance of the Tongfang Arbitration Award is one of the alleged harms purportedly suffered by Plaintiff as a result of Defendants' alleged malpractice." *Id.* at 25–26.[14]

Plaintiff's conclusory assertion that "Link Motion had no defense" to Tongfang's claims in the Arbitration due to the February 2019 *Baliga* PI Order, Objs. at 43–44, is also specious. According to Plaintiff, Link Motion retained "a secured interest in the FL Mobile shares until payment [on the

---

[13] For this and many other reasons, the cases Plaintiff cites involving actual disputed issues, or standing for the general proposition that "unconvincing" or "long-shot" arguments are not necessarily frivolous, Objs. at 35–36, 44, are inapposite. *See, e.g., Fisher v. Tice*, 2016 WL 4626205, at *10, *21 (S.D.N.Y. July 5, 2016) (noting that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment," and holding that "the arguments raised … regarding the factual and legal bases of their Complaint . . . were not frivolous and, indeed, [plaintiffs] had the better of some of those arguments"); *Katz v. 260 Park Ave. S. Condo. Assoc.*, 168 A.D.3d 615, 616 (1st Dep't 2019) ("inconsistencies in plaintiff's account of the accident" were for "determination by a factfinder" where "the record also presents issues of fact."); *Fishoff v. Coty, Inc.*, 634 F.3d 647, 655 (2d Cir. 2011) (affirming denial of sanctions where plaintiff's position had "some support" in the case law and was "non-frivolous").

[14] Although Plaintiff disavowed its reliance on the Tongfang Award in opposition to the Rule 11 Motion, it doesn't object to the Magistrate Judge's finding that that the Award is central to the damages alleged in the Complaint. R&R at 25–26, n.5. Nor could it. *See* Compl. ¶¶ 8, 85–88; ECF 41 at 13 ("The Tongfang arbitration resulted in an award of $396,000,000 . . . against the Company . . . and rescission of the Note, rendering that asset worthless.").

Tongfang Note] was made in full by Tongfang."  Objs. at 16–17; *see id.* at 27, 28–29, 31.  That Note

was due in December 2018 (months before the February 2019 *Baliga* PI Order).  *Id.* at 33; *see* ECF 41

at 10–11; 42-13 at 11.  If, as Plaintiff now claims, Tongfang failed to pay the Tongfang Note, Objs. at

18 n.2, 27, that would constitute a *complete* defense to Tongfang's purported claim that Link Motion

breached its obligation to transfer the FL Mobile Shares.  Dr. Shi (or his mysterious "impersonator")

didn't raise that defense, or challenge Tongfang's assertion that *no payment was even due* on the Note

as of December 2018.  This resulted in a sham Award against Link Motion that *included repayment* of

the full value of the allegedly unpaid Tongfang Note.  ECF 42-17 at 7–11; *see* Objs. at 26 n.5

(contending that Tongfang's position in the Arbitration that no payment was due on the Note—a

position not challenged by Link Motion in the Arbitration—lacked evidentiary support).[15]

### c.      *Baliga's Derivative Standing*

Plaintiff disputes the Magistrate Judge's finding that, "even if Defendants . . . had argued that

Baliga lacked [derivative] standing to bring his claims"—the entire basis for the claim against

Defendants here—"the outcome would have remained the same, because, as the Court later concluded

[in the *Baliga* Action], it had jurisdiction to appoint the Receiver."  R&R at 26–27; *see Baliga* Dkt

Nos. 275, 331.  Plaintiff argues initially that those rulings cannot support sanctions because they hadn't

been issued when the Complaint was filed.  Objs. at 45.  But Magistrate Judge Freeman's report and

recommendation on the matter was issued just *one day* after DLA served the Rule 11 Letter on

Plaintiff's counsel.  *Id.*; ECF 37-14.  That Letter expressly noted that the argument that Baliga lacked

---

[15] Plaintiff claims the Magistrate Judge incorrectly determined from the Tongfang Award that Tongfang fulfilled its payment obligations for the FL Mobile Shares because it hadn't paid the Note.  Objs. 44–45.  Plaintiff is making the same mistake it made in opposing the Rule 11 Motion—namely, "conflat[ing] completion of the bargained-for exchange under the [Tongfang] SPA with payment by Tongfang of the Tongfang Note."  R&R at 21.  As explained above, Link Motion's public filings and the documents submitted by Plaintiff all confirm that it was the issuance of the Note in 2017 that completed Tongfang's payment obligations under the Tongfang SPA, and which triggered Link Motion's obligation to transfer the shares.  *Supra* VI.A.1.

derivative standing to seek appointment of the Receiver was speculative and could not establish causation.  ECF 37-14 at 14.  Yet Plaintiff ignored that Letter (and the impact of the Court's rulings) and continued to litigate the case for *six months*.

Although Plaintiff then purported to voluntarily dismiss the case, it did so only so that its counsel could file *the same claim* in another court.  And when that gambit failed after DLA removed that action to this Court, Plaintiff sought to reopen *this* case and amend its patently frivolous Complaint. R&R at 16.  No matter when Plaintiff claims it learned its Complaint was frivolous, its decision to continue to pursue it, and to engage in costly, wasteful gamesmanship to prolong it, is sanctionable. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *29 (S.D.N.Y. July 18, 2017) ("[C]ounsel may still be sanctioned if he 'subsequently restate[s] the claim after learning that it was groundless.'"), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017); *Bletas,* 2011 WL 13130879, at *11 ("[A]fter receiving notice that the Subway defendants intended to seek sanctions unless plaintiffs withdrew these claims, plaintiffs chose to double down on their allegations by filing their Amended Complaint.").

Plaintiff can't dispute the Magistrate Judge's finding that the Court's rulings in the *Baliga* Action foreclose its ability to establish causation.  Instead, Plaintiff suggests for the first time that DLA should have contested his motion on the grounds that his federal securities law claims were somehow "defective."  Objs. at 46.  But Plaintiff's claim is premised entirely on DLA's purported "failure to assert the meritorious defense of lack of standing."   Compl. ¶¶ 70–81, 111.  There is no allegation in the Complaint that DLA negligently failed to argue that Baliga's federal securities claims were "defective"—indeed, Plaintiff doesn't identify what those defects were.  And the notion that doing so might have "influenced [the] court's decision," Objs. at 46, is frivolous speculation.

Finally, responding to the Magistrate Judge's observation that Plaintiff's counsel *also* didn't raise Baliga's lack of standing when it appeared in the *Baliga* Action in March 2019, Plaintiff falsely claims that Baliga's status as an "owner of ADRs . . . was first disclosed when Baliga filed his First Amended Complaint on June 21, 2019." Objs. at 47. Plaintiff's counsel attended and participated in a hearing before this Court on March 29, 2019 at which that fact was discussed. *See* R&R at 28 n.9; *Baliga* Dkt 41 at 19:15-16 ("The shareholders purchased shares through ADRs from Deutsche Bank in New York."). As the Magistrate Judge held, the fact that Plaintiff's counsel did not raise Baliga's purported lack of standing in connection with Dr. Shi's then-pending motion to dismiss confirms that defense was not so "obvious and meritorious" as Plaintiff now claims. R&R at 28.

### 5. The Magistrate Judge Did Not Recommend That Plaintiff Be Sanctioned For Violating Rule 11(b)(2)

The R&R accurately states at the outset that "a court may impose sanctions on an attorney, but not a party" for "violation of subsection (b)(2) of Rule 11." R&R at 13. It also notes that violation of any other subsection of Rule 11(b)—including Rule 11(b)(3)—justifies sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* (quoting Fed. R. Civ. P. 11(c)(1)). The Magistrate Judge found violations of *both* Rule 11(b)(2) and 11(b)(3), and thus correctly determined that sanctions are available and appropriate against *both* Plaintiff and its counsel. Plaintiff fails to explain why that constitutes "clear error," Objs. at 49, or how the R&R can be read as anything other than a determination that sanctions are independently appropriate under both Rule 11(b)(2) and Rule 11(b)(3).

### C. The Magistrate Judge Correctly Found That Plaintiff And Its Counsel Continued Pursuing Their Frivolous Claim For the Improper Purpose Of Harassing DLA And Causing Reputational Harm

Rule 11 forbids any filing "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *An*, 2023 WL 4931832, at *6 (quoting Fed. R. Civ.

P. 11(b)(1)).  "A court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit."  *Id.*; s*ee O'Malley v. New York City Transit Auth*., 896 F.2d 704, 709 (2d Cir. 1990); *Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin*., 1998 WL 410958, at *7 (S.D.N.Y. July 22, 1998) ("[T]he total lack of substance in the fraud claim, the unsubstantiated accusations . . . and the egregious and unjustified neglect to the 'reasonable inquiry' requirement of Rule 11 give rise to the inference that the action was filed for improper purposes.").

Here, the Magistrate Judge correctly held that "[e]ven if one could conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out [its] numerous deficiencies."  R&R at 31. "Yet, Plaintiff ignored [DLA's Rule 11 Letter] and instead persisted with this suit for six months before filing a voluntary notice of dismissal."  *Id.*  Then, after Link Motion's separate direct action was dismissed, Plaintiff "sought to unnecessarily prolong this case even more, raising the possibility that it could withdraw its prior notice of voluntary dismissal and amend the complaint here."  *Id.*  In light of myriad factual and legal deficiencies in the Complaint, "the only plausible conclusion to be drawn from" this course of conduct "is that it was done to harass Defendants."  *Id.*

Plaintiff says the R&R "ignores that Plaintiff had filed a notice of voluntary dismissal before briefing on a motion to dismiss began."  Objs. at 50.  That is misleading at best.  Plaintiff only tried to "dismiss" this action so that its counsel could file a nearly identical action in New York State Court. And it has since sought to rescind that dismissal.  As a result of Plaintiff's bad-faith gambit, Defendants and the Court have been forced to expend resources on *two* parallel, equally frivolous lawsuits.

Equally unavailing is Plaintiff's claim that it requested a stay of this action and tried to withdraw its dismissal notice and amend the Complaint *after* the Rule 11 Motion had been briefed,

and thus that it "had no 'opportunity to correct or withdraw the [request].'"  Objs. at 50.  That misses the point.  The Magistrate Judge didn't find that Plaintiff's request for a stay alone constituted grounds for sanctions.  Nor are sanctions based on Plaintiff's refusal to "withdraw" that request.  Rather, Plaintiff's attempt to reopen and prolong this fatally defective derivative litigation simply "reinforced" the conclusion that Plaintiff was acting in bad faith in order "to harass Defendants."  R&R at 31; *Prim v. Peatco Ltd. L.P.*, 1994 WL 570754, at *2 (S.D.N.Y. Oct. 17, 1994) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction."), *on reconsideration*, 1995 WL 447648 (S.D.N.Y. July 27, 1995).

Plaintiff's assertion that the Magistrate Judge's finding that Plaintiff violated Rule 11(b)(1) "simply referred back to the question of frivolousness," Objs. at 51–52, is erroneous for similar reasons. That finding was premised not just on the frivolousness of the Complaint, but on Plaintiff's decision to pursue and prolong the suit after it had been explicitly put on notice.  R&R at 31 ("Even if one could conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim."); *see* Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendments (Rule 11(b) and (c) incorporate "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable …."); *see also Lipin v. Natl. Union Fire Ins. Co. of Pittsburgh*, 202 F. Supp. 2d 126, 141 (S.D.N.Y. 2002) (awarding sanctions under Rule 11(b)(1) where "Plaintiff was unambiguously informed by the prior decisions that her claims are barred[, but] [d]espite these warnings . . . and despite the opportunity provided by the safe harbor provision of Rule 11 to re-evaluate her submissions, Plaintiff persisted with her meritless claims.").

Finally, Plaintiff asserts that it had a "nonfrivolous reason to request a stay," and that a "request for a stay under these novel circumstances is not grounds for sanctions."  Objs. at 52–53.   That is

36

irrelevant since, as noted above, the Magistrate Judge didn't find that Plaintiff's request for a stay was an independent ground for sanctions. It is also false. Federal Rule 23.1 permits derivative actions *only* "to enforce a right that the corporation . . . has failed to enforce." Fed. R. Civ. Proc. 23.1(a). "When a corporation subsequently sues to assert claims on its own behalf, however, derivative claims become unnecessary and duplicative, and should be dismissed . . . . There is no exception to this rule simply because the possibility exists that the direct claims may be dismissed on statute of limitations grounds or otherwise."[16] *Ross v. Patrusky, Mintz & Semel*, 1997 WL 214957, at \*10 (S.D.N.Y. Apr. 29, 1997); *see United States v. New Silver Palace Restaurant, Inc.*, 810 F. Supp. 440, 443 (E.D.N.Y. 1992) ("Where the corporation brings a direct action, then the shareholder is precluded from bringing a derivative action"); *see also* R&R at 31–32. Accordingly, because Link Motion, using Plaintiff's counsel, had asserted its claim against DLA directly, Plaintiff had no basis in fact or law to continue pursuing the same claim derivatively.

**D.     An Award Reimbursing DLA For Its Fees And Costs To Respond To This Frivolous Lawsuit Is Justified**

Plaintiff calls the Magistrate Judge's recommendation an "overreach" because Plaintiff had filed a motion for voluntarily dismissal. Objs. at 53. But the Complaint wasn't "effectively dismissed" before the Rule 11 Motion was filed. *id.* at 53–54. DLA served its Rule 11 Letter on March 8, 2022. ECF 37-15 at 2. Plaintiff ignored it. In fact, addressing Defendants' anticipated motion to dismiss, ECF 16, Plaintiff and its counsel refused to withdraw the Complaint and instead confirmed their intent

---

[16] Plaintiff doesn't challenge this point. Instead, Plaintiff focuses on arguments about whether the Court's dismissal of the *LKM* Action was "on the merits" such that it would have a "preclusive effect" on Plaintiff's derivative suit. Objs. at 52–53. That is a different issue than whether a derivative action is available under Federal Rule 23.1 after the Company asserted its claims directly. In any event, a dismissal on statute of limitations grounds is considered "on the merits" under New York law, R&R at 31–32, and thus precludes "related derivative litigation in which that party is named as the nominal defendant." *Yale M. Fishman 1998 Ins. Tr. v. Gen. Am. Life Ins. Co.*, 2013 WL 842642, at \*5 (S.D.N.Y. Mar. 7, 2013); *Fishman v. Phila. Fin. Life Ass. Co.*, 2016 WL 2347921, at \*5 (S.D.N.Y. May. 3, 2016).

to "litigate this action on the merits." ECF 17 at 4.  Plaintiff then did so for six months before seeking to voluntarily dismiss it, and even then only because its counsel had filed an identical suit against DLA in state court (in violation of this Court's prior orders).  ECF 26 at 2; *LKM* Dkt 1.  As recently as June of this year—more than nine months later—Plaintiff was demanding to withdraw its request for dismissal and amend its frivolous Complaint.  ECF 49, 50.  DLA thus has been forced to defend against the same legal malpractice claim in two different actions, *both* brought by Plaintiff's counsel.

Neither of the cases Plaintiff cites supports its position.  *Wolters Kluwer Fin. Servs, Inc. v. Scivantage* involved a sanctions award under the Court's inherent authority, not a Rule 11 motion.  564 F.3d 110, 114–19 (2d Cir. 2009).  And the court there merely held that a Rule 41 voluntary dismissal didn't itself justify sanctions.  *Id.* at 114–115.  *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153 (2d Cir. 2010), is similarly inapposite.  The court reversed a sanctions award because, unlike here, the plaintiff had not been provided notice and twenty-one days to correct or withdraw the defective pleading, as required by Rule 11's "safe harbor" provisions.  620 F.3d at 156–59.

Plaintiff also argues that monetary sanctions are only available upon a showing that "the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay."  Objs. at 54.  Plaintiff misstates the law.  "Because '[t]he general standard for finding a violation of Rule 11 is one of objective unreasonableness,' courts 'need not make a finding of subjective bad faith before imposing Rule 11 sanctions.'"  *Joint Stock Co.*, 2017 WL 3671036, at *28.  "Rule 11 thus forbids" the very "empty-head-but-pure-heart defense" that Plaintiff and its counsel offer here "as justification for [their] frivolous legal [and] factual claims."  *Id.*; *see Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002) ("A pleading, motion, or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.").  A heightened finding of "subjective bad faith" is only required where, unlike here, the party to be

sanctioned was not afforded the protections of Rule 11's 21-day safe harbor, such as where a court imposes sanctions *sua sponte*. *See Revellino & Byczek, LLP v Port Auth. of New York & New Jersey (PANYNJ),* 682 F. App'x 73, 75 (2d Cir. 2017); *Mason Agency Ltd. v Eastwind Hellas SA*, 2009 WL 3787261, at \*2 (S.D.N.Y. Nov. 11, 2009).

And once again, the cases cited by Plaintiff are inapposite. Several contemplate a "bad faith" requirement only in the context of sanctions under 29 U.S.C. § 1927, the court's inherent power, or where the party to be sanctioned otherwise did not otherwise get the protection of Rule 11's "safe harbor." *See, e.g., Ed Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 84 (S.D.N.Y. 2016); *Wolters*, 564 F.3d 110. Others rely almost exclusively on such cases. *See CV Collection, LLC v. Weworewhat, LLC*, 2021 WL 4942625, \*14–15 (S.D.N.Y. Oct. 22, 2021) (drawing from cases concerning awards of sanctions under 29 U.S.C. § 1927 or the court's inherent power); *Tantaros v. Fox News Network LLC*, 2018 WL 1662779, at \*4 (S.D.N.Y. Mar. 16, 2018) (quoting case concerning awards of sanctions under 29 U.S.C. § 1927 or the court's inherent power). In *Tantaros v. Fox News Network LLC*, moreover, the court merely held that sanctions were not warranted where plaintiff's claims were not "clearly frivolous . . . or alleged in bad faith and for an improper purpose . . . such as harassment or delay"; plaintiff had undertaken a "good faith" inquiry into her claims before filing suit; and plaintiff had abandoned certain allegations "after it became clear that those allegations lacked sufficient factual support." 2018 WL 1662779, at \*4–\*5.

But even assuming that an award of monetary sanctions must be predicated on a finding of "bad faith" (it absolutely doesn't), the Magistrate Judge clearly made that finding. For example, the Magistrate Judge determined that "Plaintiff made false allegations in its [C]omplaint;" that "Plaintiff and its counsel could not have reasonably concluded that the factual allegations in the Complaint would have evidentiary support"; that Plaintiff's counsel "could not have in good faith believed that it would

be able to" prove its claim; and that "Plaintiff's counsel would have uncovered the apparent legal and factual deficiencies in Plaintiff's legal-malpractice claim" had it only undertaken the "reasonable inquiry" required by Rule 11.  R&R at 16, 22, 24, 31.  Moreover, she found that "[e]ven if one could conclude that Plaintiff and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim."  R&R at 31 ("[T]he only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants."); *O'Malley*, 896 F.2d at 709 ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction.").  These easily qualify as findings of "bad faith," even under the cases cited by Plaintiff.  *See, e.g., CV Collection, LLC*, 2021 WL 4942625, *14–15 (explaining that "bad faith may be inferred" where a plaintiff's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay or harassment" (internal quotations omitted)); *New V & J Produce Corp. v. NYCCaterers Inc.*, 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014) (suggesting that sanctions would be appropriate if plaintiff "rel[ied] on a direct falsehood" or asserted a claim that was "utterly lacking in support").

### E. The Court Should Not Consider Plaintiff's New Argument Concerning The Timing Of DLA's Rule 11 Motion, Which Is Meritless In Any Event

The Court should ignore Plaintiff's meritless assertion that Defendants' "Rule 11 motion was brought too late."  Objs. at 55–56.  Plaintiff concedes that it failed to raise the argument before the Magistrate Judge, *id.* at 56, and "fail[s] to present a 'most compelling reason'—or, for that matter, *any* reason—explaining why [it] failed to [do so]."  *In re Consol. RNC Cases*, 2009 WL 130178, *10 (S.D.N.Y. Jan. 8, 2009).  It is well-settled that a court reviewing objections to a magistrate judge's report and recommendation should disregard new arguments "absent a 'most compelling reason' for the failure to present" those arguments to the magistrate judge.  *Id.* at *10; *see Fischer v. Forrest*, 286

F. Supp. 3d 590, 603 (S.D.N.Y. 2018) (similar), *aff'd*, 968 F.3d 216 (2d Cir 2020); *see also Diggs v. City of New York*, 2019 WL 4361023, at *3 (S.D.N.Y. Sept. 12, 2019) ("[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge."); *see also Schiff v Yayi Intl. Inc.*, 2020 WL 3893345, *3 (S.D.N.Y. July 9, 2020) (objections "are not opportunities to receive a 'second bite at the apple'").

Plaintiff advocates for a six-factor test that some courts (though far from all) have used in deciding whether to consider a new argument. Objs. at 57; *see Villalta v. J.S. Barkats, PLLC*, 2020 WL 3970098, at *2 (S.D.N.Y. July 14, 2020) (explaining that courts in the Second Circuit are divided over whether they should simply refuse to consider new arguments, or instead apply a six-factor balancing test to make that determination). Under that approach, however, the very first factor is "the reason for the litigant's previous failure to raise the new legal argument." Objs. at 57. Plaintiff hasn't provided *any* reason. *See George v. Shamrock Saloon II LLC*, 2020 WL 133621, at *3 (S.D.N.Y. Jan. 13, 2020) ("[E]ven applying the six-factor test used by some courts, Defendants' two new arguments . . . do not warrant review. Defendants could have raised each of these arguments in their underlying briefing. They have not explained why they did not so."). The remainder of the "test" is also not helpful to Plaintiff. There has been no intervening change in the law. And because Plaintiff asks the Court to disallow DLA's Rule 11 Motion on a (false) procedural technicality—and isn't raising a new argument concerning its substantive arguments or assertions—"fairness" or "justice" would *not* be served by considering its new argument. Objs. at 57.

In any event, Plaintiff is wrong on the law. "Contrary to Plaintiff['s] argument, there is no requirement that a moving party *file* a sanctions motion at a specific time, so long as the motion is *served* on the nonmoving party twenty-one days prior to filing the motion and the final judgment by

the court." *Salvini v. ADVFN PLC*, 2016 WL 1703414, at *2 (S.D.N.Y. Apr. 27, 2016) (emphasis in

original) (Rule 11 motion was timely where served on the party to be sanctioned seven months before

motion to dismiss was granted, although not filed with the court until more than a year after dismissal);

*see* Fed. R. Civ. Proc. 11(c)(2).  Plaintiff doesn't dispute that DLA did that here.  *See Patrizzi v. Bourne

in Time, Inc.*, 2013 WL 316148, at *3 (S.D.N.Y. Jan. 28, 2013) (rejecting assertion that Rule 11 motion

was untimely, although filed *after dismissal* of the offending claims, where "plaintiff's counsel had

been afforded over five months to correct or withdraw the offending pleading" prior to dismissal, and

"[t]he notice and opportunity to withdraw requirements of Rule 11(c)(2) were, therefore, clearly

satisfied"); *Mealus v. Nirvana Spring Water N.Y. Inc.*, 2015 WL 4546023, at *5 (N.D.N.Y. July 28,

2015) (Rule 11 motion filed *after* case dismissed was timely because it "was served in accordance with

Rule 11's safe harbor provision" and afforded the party to be sanctioned several months to withdraw

or correct the complaint before final judgment was entered).[17]

## V.      CONCLUSION

For the reasons set forth above, DLA respectfully requests that the Court overrule Plaintiff's

objections and adopt Magistrate Judge Figueredo's Amended Report and Recommendation in full.

---

[17] The two cases Plaintiff relies on are inapposite.  *See* Objs. at 55–56 (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) and *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153 (2d Cir. 2010)).  Unlike here, both involved situations, and cited to decisions in other cases, "in which the party to be sanctioned was not given proper safe-harbor notice and an opportunity to withdraw prior to the court's entry of judgment on the offending allegations."  *Patrizzi*, 2013 WL 316148, at *3–*4 (discussing *In re Pennie & Edmonds* and *Lawrence*, and finding that "when read in context, [those cases] merely reinforce that the party to be sanctioned must, while it has an opportunity to cure the problem, be afforded a safe harbor period in which to withdraw the offending claims."); *see In re Pennie & Edmonds*, 323 F.3d at 87, 90–92 (involving "a *sua sponte* Rule 11 sanction" after summary judgment had been granted); *see also In re Koper*, 2020 WL 5075549, at *10 (Bankr. E.D.N.Y. Aug. 25, 2020) ("While there are some cases within the Second Circuit that have held a Rule 11 motion untimely when filed after the court rendered its judgment, these cases all involved situations where the moving party did not provide the opposing party the proper safe harbor notice and opportunity to withdraw or appropriately correct the challenged pleading prior to the court's entry of judgment.") (citing cases).

Dated:    September 18, 2023                       GIBSON, DUNN & CRUTCHER LLP
          New York, New York

                                                  /s/  Kevin S. Rosen
                                                  
                                                  Kevin S. Rosen (*pro hac vice*)
                                                  333 South Grand Avenue
                                                  Los Angeles, CA 90071
                                                  Telephone:  213-229-7635
                                                  Email:  krosen@gibsondunn.com

                                                  Nancy E. Hart
                                                  Peter M. Wade
                                                  200 Park Avenue
                                                  New York, NY 10166-0193
                                                  Telephone: (212) 351-4000
                                                  nhart@gibsondunn.com
                                                  pwade@gibsondunn.com

                                                  *Attorney for Defendants DLA Piper LLP (US)*
                                                  *and Caryn G. Schechtman*