**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/6/24
```

---

CHINA AI CAPITAL LTD., derivatively on
behalf of LINK MOTION INC.,

                    Plaintiff,

          - against -

DLA PIPER LLP (US) and
CARYN G. SCHECHTMAN,

                    Defendants, and

LINK MOTION INC.,

                    Nominal Defendant.

---

**21 Civ. 10911 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On July 28, 2023, Magistrate Judge Valerie Figueredo issued a Report and Recommendation with respect to a sanctions motion brought in this matter by defendants DLA Piper LLP (US) ("DLA Piper") and Caryn G. Schechtman ("Schechtman") against plaintiff China AI Capital Ltd. ("China AI") and its counsel. (See Dkt. No. 58 [hereinafter the "R&R"].)[1] Judge Figueredo recommends that the Court grant the motion and that China AI and its counsel be ordered to pay the reasonable costs and fees incurred by DLA Piper and Schechtman

---

[1] The R&R is reported at 2023 WL 5016492. Magistrate Judge Figueredo initially issued the R&R on July 24, 2023 (see Dkt. No. 53) and shortly thereafter issued an amended R&R on July 28 (see Dkt. No. 58) to correct a clerical error not relevant here. All references to the R&R in this Decision and Order are to the amended R&R at Docket No. 58.

(collectively "Defendants") in defending this action. (See R&R at 1.)

On August 21, 2023, China AI and its counsel filed objections to the R&R. (See Dkt. No. 63 [hereinafter the "Objections" or "Objs."].) Defendants responded to the Objections on September 18, 2023. (See Dkt. No. 64 [hereinafter "Resp."].) For the reasons below, the Court overrules the Objections, accepts the R&R, and adopts it in its entirety.

## I.   BACKGROUND

This matter entails a legal malpractice action arising out of DLA Piper's brief involvement in another case pending before this Court: Baliga v. Link Motion Inc., No. 18 Civ. 11642. Link Motion Inc. ("Link Motion") is a Chinese company organized under the laws of the Cayman Islands. (See Dkt. No. 1 [hereinafter the "Complaint" or "Compl."] ¶ 18.) Link Motion was founded by, among others, Vincent Wenyong Shi ("Shi"). (See id.)

## A.   LINK MOTION'S SALE OF FL MOBILE

In March 2017, Link Motion entered into a Share Purchase Agreement (the "SPA") with Tongfang Investment Fund Series SPC ("Tongfang"). (See Objs. at 5-6.) Under the SPA, Tongfang agreed to purchase Link Motion's 63 percent equity interest

2

in FL Mobile, a Chinese technology company. (See id.) The purchase price was RMB 2,520 million — an amount approximately equivalent to USD $400 million. (See id. at 6; R&R at 8.)

Tongfang completed its payment obligation pursuant to the SPA in December 2017. (See R&R at 17.) Tongfang paid with a combination of cash and a note (the "Tongfang Note") issued to Link Motion for RMB 1,770 million and due in December 2018. (See id. at 18.)

On the same day in December 2017 that the Tongfang Note was issued, Tongfang and Link Motion entered an "Equity Pledge Agreement" under which Tongfang granted to Link Motion a security interest in the FL Mobile equity. (See Objs. at 8.) The Equity Pledge Agreement allowed Link Motion to "retake ownership of the FL Mobile shares if Tongfang failed to pay the Tongfang Note." (R&R at 19.)

B.   THE *BALIGA* ACTION

On December 13, 2018, Wayne Baliga ("Baliga") filed the Baliga action, a derivative suit brought on behalf of Link Motion against, among other defendants, Shi. (See No. 18 Civ. 11642, Dkt. No. 1.) Baliga alleged that Shi and others were mismanaging Link Motion, engaging in self-dealing, stealing the company's assets, and stripping Link Motion of its value. (See id. ¶¶ 2–3.) The same day, Baliga (through counsel)

emailed DLA Piper and Schechtman, who is an attorney associated with DLA Piper, to notify them of the lawsuit and of Baliga's intent to seek a temporary restraining order the next day. (See R&R at 2.) Baliga contacted DLA Piper and Schechtman because Link Motion had retained DLA Piper in 2018 to represent it in connection with a corporate transaction. (See id. at 2 n.2.) Later on December 13, Schechtman forwarded Baliga's email to Shi and a Link Motion director, asking them to "instruct DLA if you would like us to respond" and asking for a retainer. (Id. at 2-3 (quoting Dkt. No 37-1 at 1).) Schechtman followed up again hours later. (See id. at 3; Dkt. No. 37-2 at 4.)

The next day, Schechtman asked Shi, "Do you want me to send an associate?"; Shi responded, "OK, thanks." (R&R at 3 (quoting Dkt. No. 37-2 at 3).) Schechtman told Shi that DLA Piper would send an associate to court to advise that DLA Piper "had received no instruction from [Link Motion] due to the time difference and language barriers." (Id. (quoting Dkt. No. 37-3 at 1).) Schechtman added, "How would you like us to handle?" (Id. (quoting Dkt. No. 37-3 at 1).)

On December 14, Baliga filed an order to show cause and sought a temporary restraining order, and Defendants appeared on behalf of Link Motion at a hearing before this Court. (See id.) The Court signed and entered the temporary restraining

order (the "TRO") the same day. (<u>Id.</u>) The TRO prohibited the <u>Baliga</u> defendants, including Link Motion and Shi, from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion." (No. 18 Civ. 11642, Dkt. No. 7 at 1.)

On December 21, 2018, the <u>Baliga</u> parties filed a joint letter, notifying the Court of Link Motion's agreement to extend the TRO and requesting a deadline of January 21, 2019 to respond to a motion, filed by Baliga, for a preliminary injunction and appointment of a temporary receiver. (<u>See</u> R&R at 4, 6.) Schechtman signed the joint letter as "Counsel for Defendant, Link Motion Inc." (<u>Id.</u> (quoting No. 18 Civ. 11642, Dkt. No. 20 at 2).)

Over the next month, Defendants repeatedly attempted, via text message and by emails written in both English and Mandarin, to contact Shi and Link Motion, seeking direction and seeking payment on outstanding invoices. (<u>See</u> R&R at 4-7.) In a January 18, 2019 email to Shi and Link Motion written in both English and Mandarin, DLA Piper advised that absent a response from the company within 24 hours, DLA Piper would assume that it had Link Motion's consent not to oppose the motion for a preliminary injunction and appointment of a temporary receiver and that it had consent to withdraw from

representing the company. (<u>See</u> <u>id.</u> at 6.) Shi finally responded on January 21, 2019, writing, "I fully respect and appreciate your excellent work. But at this moment, it's very hard to make any further payment arrangement . . . ." (Dkt. No. 37-2 at 1.)

On January 21, 2019, Baliga and DLA Piper (the latter purporting to be acting as counsel for Link Motion) filed a joint stipulation stating that Link Motion agreed not to oppose the entry of a preliminary injunction and that Link Motion would receive an extension of time to answer or otherwise respond to the complaint. (<u>See</u> R&R at 7; No. 18 Civ. 11642, Dkt. No. 22.) The stipulation further stated that Link Motion "has preserved and is not waiving and h[as] not waived any objections, defenses or responses to" Baliga's complaint. (No. 18 Civ. 11642, Dkt. No. 22 at 3.) The Court approved the joint stipulation on January 22, 2019. (<u>See</u> No. 18 Civ. 11642, Dkt. No. 23.)

On February 1, 2019, the Court granted the motion for a preliminary injunction and appointed a receiver. (<u>See</u> No. 18 Civ. 11642, Dkt. No. 26.) The preliminary injunction restrained the <u>Baliga</u> defendants, including Shi and Link Motion, from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or

other interest in, any assets belonging to Link Motion." (<u>Id.</u> at 2.)

The Court appointed as temporary receiver Baliga's counsel, Robert Seiden (the "Receiver"), and directed that the Receiver "shall assume full control" of Link Motion. (<u>Id.</u> at 3.) The Court also directed that the Receiver "shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of [Link Motion] or otherwise, . . . wherever such proceeding is located." (<u>Id.</u> at 4.) The Court further directed the <u>Baliga</u> defendants, including Link Motion and Shi, to "ensure that litigation or arbitration matters are directed and controlled by [Link Motion's] lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver." (<u>Id.</u> at 3.)

On March 1, 2019, Defendants formally withdrew as counsel for Link Motion. (<u>See</u> R&R at 7–8.) Later that month, attorneys Rosanne E. Felicello ("Felicello") and Michael James Maloney ("Maloney") appeared in the <u>Baliga</u> action on behalf of Shi. (<u>See</u> No. 18 Civ. 11642, Dkt. Nos. 35, 38, 125, 176.) On March 27, 2019, Maloney filed a motion to dismiss the underlying action and to discharge the Receiver. (<u>See</u> No. 18 Civ. 11642, Dkt. No. 36.)

On March 29, 2019, the Court held a conference at which Maloney was present and during which counsel for Baliga indicated that Baliga was not a registered shareholder of Link Motion because he merely held American depository shares — a fact relevant to whether Baliga had standing to bring certain claims on behalf of Link Motion. (See R&R at 8.) Yet Maloney made no mention of this fact in the reply brief he filed in May 2019 on behalf of Shi on the motion to dismiss. (See No. 18 Civ. 11642, Dkt. No. 62.) Maloney did raise the issue in a memorandum of law on a subsequent motion (the "June 2021 Motion") to dissolve the preliminary injunction and discharge the Receiver, filed in June 2021. (See No. 18 Civ. 11642, Dkt. Nos. 227, 230.)

C.   THE TONGFANG ARBITRATION

On April 23, 2019, Tongfang[2] commenced arbitration proceedings against Link Motion. (See Dkt. No. 42-17 ¶ 3.) Despite the preliminary injunction's direction that Link Motion and Shi ensure that litigation or arbitration matters be directed by the Receiver, the Receiver was not notified about the Tongfang arbitration. (See No. 18 Civ. 11642, Dkt. No. 269 at 1.) Link Motion was not represented by counsel in

---

[2] In the Baliga action, the Receiver alleged in a May 3, 2021 letter that Shi owned Tongfang. (See No. 18 Civ. 11642, Dkt. No. 220 at 4.) In the instant action, China AI contended, "Even Baliga has conceded that Tongfang . . . was not Dr. Shi's alter ego." (Dkt. No. 17 at 3.)

the arbitration. (See Dkt. No. 42-17 ¶ 9.) The arbitrator's understanding was that Shi was acting on behalf of Link Motion in the arbitration. (See id.)

Link Motion did not submit any evidence in the arbitration and mounted no defense. (See id. ¶¶ 9-18.) The arbitrator ruled in a March 19, 2020 decision (the "Tongfang Award") that Link Motion owed Tongfang in the amount of RMB 2,520 million due to Link Motion's alleged failure to deliver FL Mobile shares to Tongfang. (See id. ¶ 21.) The Receiver later said in a court filing that he had no knowledge of these arbitration proceedings or of the Tongfang Award until February 2022. (See No. 18 Civ. 11642, Dkt. No. 269 at 1.)[3]

D.   THE INSTANT LITIGATION

On December 20, 2021, China AI commenced this shareholder lawsuit derivatively on behalf of Link Motion. (See Compl. at 1.) China AI is represented by Felicello and Maloney. (See id. at 25.) The Complaint alleges that DLA Piper and Schechtman committed legal malpractice by failing to argue in the Baliga action that Baliga lacked standing to bring a derivative suit and by failing to obtain Link Motion's informed consent to the appointment of the Receiver,

---

[3] In one of the headings in their brief, DLA Piper and Schechtman characterize the Tongfang Award as follows: "The Tongfang Award Was A Sham Orchestrated By Dr. Shi, And China AI And Its Counsel Knew It When They Filed The Complaint Here." (See Resp. at 10.)

resulting in entry of the TRO and preliminary injunction and the appointment of the Receiver. (See id. ¶¶ 108–114.) The Complaint also alleges that because of the TRO and preliminary injunction, Link Motion could not transfer the FL Mobile shares to Tongfang, which in turn resulted in the Tongfang Award. (See id. ¶¶ 85–88.)

DLA Piper and Schechtman initiated sanctions proceedings under Federal Rule of Civil Procedure 11 ("Rule 11") in March 2022. Rule 11(c)(2) provides that a sanctions motion "must not . . . be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service" of the motion on the party or attorney against whom sanctions are sought. Accordingly, DLA Piper and Schechtman served papers complying with this safe harbor requirement on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) In those papers, Defendants warned China AI that its claim was frivolous in part because the causation element of the claim was premised on a supposed failure to raise a "novel" standing argument in Baliga that had "never previously been tested in a New York court." (Dkt. No. 37-14 at 13.) China AI did not respond (see R&R at 14) and instead decided in a letter filed March 14, 2022 (see Dkt. No. 17) to oppose a motion to dismiss proposed by Defendants.

Meanwhile, in Baliga, Magistrate Judge Debra Freeman on March 9, 2022 issued an opinion on the June 2021 Motion, concluding that although Baliga lacked standing to assert his derivative state law claims for breach of fiduciary duty and unjust enrichment, he had standing to assert his derivative federal securities law claims. (See R&R at 26; No. 18 Civ. 11642, Dkt. No. 275.) Judge Freeman thus concluded that the Court had subject matter jurisdiction over the Baliga case and the power to issue the preliminary injunction and receivership order. (See R&R at 27.) The Court adopted Judge Freeman's conclusions on August 25, 2022. (See 18 Civ. 11642, Dkt. No. 331.)

Back in the instant litigation, China AI filed a proposed notice of voluntary dismissal on September 6, 2022. (See Dkt. No. 22.) Federal Rule of Civil Procedure 23.1(c) provides that voluntary dismissals in derivative actions may occur "only with the court's approval" and that a court may direct that notice of a proposed voluntary dismissal "be given to shareholders or members in the manner that the court orders." Accordingly, the Court on September 13, 2022 ordered China AI to file a proposed notice to Link Motion shareholders. (See Dkt. No. 28.) China AI did so (see Dkt. No. 30), and Defendants objected to the proposed notice (see Dkt. No. 34).

11

Also on September 13, 2022, DLA Piper and Schechtman advised the Court that Felicello and Maloney on the previous day had filed a direct legal malpractice action on behalf of Link Motion against DLA Piper and Schechtman in New York state court. (See Dkt. No. 27 at 1.) DLA Piper and Schechtman removed the state court action — whose allegations against Defendants were similar to the allegations in the instant case — to this Court on September 29, 2022. (See No. 22 Civ. 8313, Dkt. No. 1.)

On September 26, 2022, DLA Piper and Schechtman filed their sanctions motion in the instant litigation. (See Dkt. No. 35.) During October and November 2022, the parties fully briefed the sanctions motion and submitted evidence in support of their positions. (See Dkt. Nos. 36-37, 41-45.)

On May 26, 2023, the Court held in the direct malpractice action — i.e., the action removed from state court — that Link Motion's claim was time-barred. (See R&R at 11.) The Court granted Defendants' motion to dismiss the direct malpractice suit with prejudice. (See id.) Then, on May 30, 2023, China AI in the instant derivative litigation submitted a letter arguing that this action should be stayed pending reconsideration of the Court's decision in the direct malpractice action and, alternatively, that China AI should

12

be allowed to withdraw its proposed voluntary dismissal and seek leave to amend the Complaint. (See id.)

Judge Figueredo issued the R&R on the Rule 11 sanctions motion in July 2023. Judge Figueredo recommended that the sanctions motion be granted and that China AI and its counsel be ordered to pay the reasonable costs and fees incurred by Defendants in defending this action. (See R&R at 1.)

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, the Court may designate a magistrate judge to submit recommendations for the disposition of certain motions. A party may object in writing to the magistrate judge's recommendations, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). "However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." Brown v. Colvin, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). "[A]n error is clear when the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" Levinson v.

U.S. Fed. Bureau of Prisons, 594 F. Supp. 3d 559, 563 (S.D.N.Y. 2022).

China AI raises voluminous objections to the R&R — ten specific objections in total. (See Objs. at 14–49.) Unless otherwise specified below, the Court has reviewed the R&R de novo with respect to each of China AI's specific objections.

### III. LEGAL STANDARD ON A RULE 11 MOTION

The R&R's recommendations pertain to a sanctions motion brought under Rule 11. As relevant here, Rule 11(b) provides that when filing papers in court, an attorney certifies that to the best of his or her knowledge, formed after a reasonable inquiry,

> (1) [the papers are] not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Rule 11(b)(1) has been called the "improper purpose clause." Yeremis v. Amerit Fleet Sols., No. 20 Civ. 4723, 2021 WL 1565693, at *10 (S.D.N.Y. Apr. 21, 2021) (quoting Bruno v. City of New York, No. 89 Civ. 6661, 1992 WL 84471, at *3 (S.D.N.Y. 1992)). Paragraphs (b)(2) and (b)(3) of the rule,

on the other hand, have been collectively labeled the
"frivolous clause." Id. (quoting Bruno, 1992 WL 84471, at
*3).

The "frivolous clause" requires parties and attorneys to
make "a reasonable inquiry into the facts" and requires
attorneys to make "a reasonable inquiry into the law." Id.
(quoting Bruno, 1992 WL 84471, at *3). Thus, under Rule
11(b)(2) and (b)(3), the "standard for triggering the award
of fees . . . is objective unreasonableness." Storey v. Cello
Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003) (Sotomayor,
J.) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)).
In other words, the standard "is not based on the subjective
beliefs" of the attorney or party against whom sanctions are
sought. Id.

With respect to the imposition of monetary sanctions,
there is a distinction between Rule 11(b)(3) (which pertains
to factual contentions) and Rule 11(b)(2) (which pertains to
legal contentions). "Sanctions that involve monetary awards
. . . may not be imposed on a represented party for causing
a violation of subdivision (b)(2), involving frivolous
contentions of law. Monetary responsibility for such
violations is more properly placed solely on the party's
attorneys." Manchester Mgmt. Co. v. Echo Therapeutics, Inc.,
297 F. Supp. 3d 451, 463 (S.D.N.Y. 2018) (quoting Fed. R.

Civ. P. 11(b) advisory committee's note to 1993 amendment); see Fed. R. Civ. P. 11(c)(5). Moreover, as Judge Figueredo noted (see R&R at 13), any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## IV.  DISCUSSION

The R&R rests on two express conclusions and one conclusion that was somewhat more implicit. First, Judge Figueredo expressly found that China AI and its counsel made false allegations in the Complaint in violation of Rule 11(b)(3). (See R&R at 16–22.) Second, Judge Figueredo expressly concluded that China AI's counsel brought a frivolous legal malpractice claim in violation of Rule 11(b)(2). (See id. at 22–30.) Third, the R&R appears to have concluded that this litigation has been carried on for an improper purpose in violation of Rule 11(b)(1). (See id. at 31–32.) Judge Figueredo recommends that the Court remedy these violations by ordering that China AI and its counsel pay the reasonable costs and fees incurred by DLA Piper and Schechtman in defending this action. (See id. at 1, 32.)

A.   <u>OBJECTIONS TO THE RULE 11(b)(3) CONCLUSION</u>

Judge Figueredo concluded that China AI and its counsel violated Rule 11(b)(3) by making two false allegations in the Complaint. First, Judge Figueredo found that the Complaint falsely alleged that "prior to the entry of the TRO, '[w]hat remained to be performed under the SPA was [Link Motion's] obligation to cause the transfer of FL Mobile shares in accordance with the SPA.'" (R&R at 16 (alterations in original) (quoting Compl. ¶¶ 64).) Second, Judge Figueredo found that the Complaint falsely alleged that the TRO and preliminary injunction prevented Link Motion from satisfying its obligation to Tongfang (i.e., causing the transfer of FL Mobile) after Tongfang "had already paid [Link Motion] consideration as required by the SPA." (<u>Id.</u> (alteration in original) (quoting Compl. ¶ 85).) China AI and its counsel object to both findings.

   1.   <u>Whether Link Motion Transferred FL Mobile Shares to Tongfang Prior to the Entry of the TRO</u>

Judge Figueredo made the following findings on the basis of publicly available Securities and Exchange Commission ("SEC") filings: (1) that Link Motion transferred the FL Mobile shares to Tongfang before Baliga filed suit in December 2018, and (2) that China AI's allegation that the shares had not been transferred pursuant to the SPA prior to entry of

17

the TRO was therefore false. (See R&R at 17.) Judge Figueredo
further found that the public filings "would have been
available to [China AI] and its counsel before it commenced
this action, after a reasonable inquiry into the evidentiary
support for the factual allegations in the Complaint." (Id.)

China AI objects, arguing that Judge Figueredo misread
the Tongfang Award. (See Objs. at 16-18.) China AI contends
that in issuing the Tongfang Award, the arbitrator found (1)
that delivery of the FL Mobile shares to Tongfang "was
contingent upon payment of the [Tongfang] Note in full" and
(2) that Tongfang had not satisfied its obligations under the
Tongfang Note and thus "had paid only part of the total
consideration owed under the SPA." (Objs. at 17.)

Judge Figueredo did not misread the Tongfang Award. The
arbitrator clearly found that Tongfang had, in part by issuing
the Tongfang Note, completed its payment obligations under
the SPA as of December 14, 2017 and that the FL Mobile shares
were due at that time. (See Dkt. No. 42-17 ¶¶ 19-22.)[4] This
is exactly how Judge Figueredo read the Tongfang Award. (See

---

[4] China AI argues that under a "Supplemental Agreement" entered into by
Link Motion and Tongfang in connection with the SPA, Tongfang could not
satisfy its obligation under the SPA to pay for the FL Mobile shares until
it did so in cash (as opposed to partly in cash and partly in the form of
the Tongfang Note). (See Dkt. No. 42-10; Objs. at 6.) The text of the
cited portions of the Supplemental Agreement simply does not support China
AI's argument. (See Dkt. No. 42-10 §§ 2.3, 4.1, 4.2 (stating only that
"part or the whole of the purchase price may be paid in US dollars or
RMB, within or outside PRC as the parties may deem fit").)

R&R at 20–21.) And in fact, the arbitrator found that Tongfang did not owe Link Motion *anything* under the Tongfang Note because Link Motion had pledged the Tongfang Note elsewhere. (See Dkt. No. 42-17 ¶ 20 (stating that Tongfang would not be unjustly enriched by repayment of the value of the Tongfang Note).)

China AI further argues that since Link Motion retained control (if not legal title) over the FL Mobile shares pursuant to the Equity Pledge Agreement, it had not yet satisfied its legal obligation to Tongfang by transferring control over the shares to Tongfang. (See Objs. at 18–22.) Thus, according to China AI, the R&R was wrong to conclude that Link Motion had already transferred the FL Mobile shares to Tongfang, the SEC filings notwithstanding.

China AI's argument is unavailing. The Complaint alleges that Link Motion had, as of the date of the TRO, yet to transfer the FL Mobile shares to Tongfang *under the SPA*. (See Compl. ¶¶ 63–64.) Judge Figueredo concluded that this allegation was false because, as SEC filings clearly show, Link Motion transferred the FL Mobile shares to Tongfang as of December 2017 — a year before the Complaint was filed — and therefore satisfied its obligations under the SPA as of that date. (See R&R at 17–19; see also id. at 19–20 (stating that there "would have been no reason for the Equity Pledge

agreement — allowing Link Motion to *recover* ownership in FL Mobile shares from Tongfang — if Link Motion had not already transferred those shares to Tongfang").) The question of who controlled the shares under the subsequent Equity Pledge Agreement is irrelevant.

Moreover, China AI's characterization of the Equity Pledge Agreement as part of an arrangement under which Link Motion "had failed to transfer the FL Mobile shares to Tongfang" (Objs. at 9) is backward. Link Motion was not obligated to transfer the FL Mobile shares to Tongfang under the Equity Pledge Agreement. Rather, the Equity Pledge Agreement provided Link Motion security for Tongfang's obligation to honor the Tongfang Note, upon whose satisfaction Link Motion's security interest in the shares would be extinguished. (See R&R at 21 (stating that China AI "conflates completion of the bargained-for exchange under the SPA with payment by Tongfang of the Tongfang Note").) This objection is thus overruled.

   2.   Whether the TRO or the Preliminary Injunction
        Prevented Link Motion from Transferring FL Mobile

Judge Figueredo's second conclusion followed from her first: Since Link Motion transferred the FL Mobile shares to Tongfang before Baliga filed suit, neither the TRO nor the preliminary injunction could have prevented Link Motion from

doing so. (See R&R at 17.) China AI's objection to this conclusion depends, in turn, on the viability of its previous objection. (See Objs. at 22-26.)

Accordingly, the Court overrules the objection. Indeed, this objection makes even clearer that China AI's characterization of the Equity Pledge Agreement is backward. The TRO and preliminary injunction prevented the Baliga defendants from *dissipating* Link Motion's assets, not from *receiving* assets on behalf of the company. And as the R&R concluded, "[n]othing in the language of the TRO [or preliminary injunction] prevented Link Motion from enforcing the Tongfang Note, receiving payment under the Note, or foreclosing on its security interest in the FL Mobile shares if Tongfang failed to repay the Note." (R&R at 20.)

In short, the Court upholds Judge Figueredo's conclusion that China AI and its counsel violated Rule 11(b)(3) by making false allegations in the Complaint.

B.   OBJECTIONS TO THE RULE 11(b)(2) CONCLUSION

Judge Figueredo concluded that China AI's counsel violated Rule 11(b)(2) by bringing a frivolous claim for legal malpractice. (See R&R at 22.) "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear

. . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (ellipsis in original) (quoting Caisse Nationale de Crédit Agricole v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)); see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) (per curiam) (stating that standard under Rule 11 "is objective unreasonableness and is not based on the subjective beliefs of the person making the statement" (quoting Storey, 347 F.3d at 387)).

Judge Figueredo's Rule 11(b)(2) recommendation rests on several independent grounds. First, the R&R concluded that "a reasonable inquiry into the legal basis for the claim should have uncovered that [China AI] lacked standing to assert its . . . claim derivatively on behalf of Link Motion." (Id. at 28–29.) Second, Judge Figueredo found that counsel could not have reasonably believed that DLA Piper and Schechtman breached a duty to Link Motion. (See id. at 24.) And third, the R&R concluded that counsel could not have reasonably believed that DLA Piper's and Schechtman's actions caused Link Motion's alleged damages. (See id.) China AI and its counsel raise five objections to Judge Figueredo's Rule 11(b)(2) conclusions. (See Objs. at 26–40.)

1.   Whether Counsel Could Have Reasonably Believed
China AI Has Standing

Judge Figueredo concluded that, because of China AI's clear lack of standing to sue derivatively on behalf of Link Motion, a reasonable lawyer in the position of China AI's counsel would not have brought this lawsuit. (See R&R at 28–29.) She noted that the law of the Cayman Islands governs the standing issue and that when Cayman Islands law is silent, Cayman Islands courts primarily look to the English common law for guidance. (See id. at 29.)

The standing issue here turns on whether China AI can establish an exception to the general English common law rule that shareholders are not permitted to bring derivative actions on behalf of a company — specifically the "fraud on the minority" exception. (See id. at 29.) A shareholder derivative plaintiff invoking that exception must plead and prove fraud — defined under the doctrine as self-dealing — by a wrongdoer with control over a majority of the company's voting shares. See Winn v. Schafer, 499 F. Supp. 2d 390, 396–97 (S.D.N.Y. 2007) (applying the English common law as incorporated by Cayman Islands law). "[F]raud is not present unless the alleged wrongdoer has benefitted at the company's expense as a result of his misconduct." Id. at 397 (alteration

in original) (quoting <u>In re Tyco Int'l, Ltd. Multidistrict</u>
<u>Litig.</u>, 340 F. Supp. 2d 94, 99 (D.N.H. 2004)).

Where the lawsuit is brought against a third party other
than the wrongdoer, the plaintiff must also "establish that
the third party directly participated in or was an accessory
to the conduct of" the wrongdoer. <u>In re Renren, Inc.</u>
<u>Derivative Litig.</u>, No. 653594/2018, 2020 WL 2564684, at *27
(N.Y. Sup. Ct. N.Y. Cnty. May 20, 2020), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>In re</u>
<u>Renren, Inc.</u>, 192 A.D.3d 539 (N.Y. App. Div. 1st Dep't 2021).
To satisfy that burden at the pleading stage, the plaintiff
— as China AI acknowledges (<u>see</u> Objs. at 40) — must allege
with particularity "how the third party acted dishonestly" in
assisting the wrongdoer. <u>Id.</u>

The alleged wrongdoers under China AI's fraud-on-the-
minority theory are Baliga and his counsel, the Receiver.
(<u>See</u> R&R at 29; Objs. at 39.) The R&R concluded that China
AI's counsel "could not have reasonably believed" that the
theory would be viable in this case. (R&R at 29.) China AI
and its counsel object to this conclusion. (<u>See</u> Objs. at 38–
40.)

China AI's objection lacks merit. For one thing, China
AI and its counsel make no effort to refute Judge Figueredo's
finding that the Complaint lacks an allegation that Baliga or
his counsel engaged in self-dealing conduct or otherwise

improperly benefitted at the expense of Link Motion. (See R&R at 30.) This concession alone is enough to doom the objection. Moreover, China AI provides no support for its contention that it "adequately alleged" in the Complaint that DLA Piper and Schechtman, the third parties under its fraud-on-the-minority theory, "acted dishonestly." (Objs. at 40.) In fact, China AI's legal malpractice claim is predicated merely on negligence. (See Compl. ¶ 112.)

The Court thus agrees that the standing argument advanced by China AI and its counsel was frivolous. Their objection on this issue is therefore overruled.[5]

### 2. Whether the R&R Reached a Conclusion with Respect to an Attorney-Client Relationship

China AI argues that the R&R erred in "conclud[ing] that [China AI's] claim that an attorney-client relationship arose when Defendants appeared in the [Baliga] action on behalf of Link Motion had no chance of success." (Objs. at 28.) Judge Figueredo reached no such conclusion. Indeed, she wrote that

---

[5] The Court notes that it is at this point unnecessary to reach the additional objections raised by China AI and its counsel to Judge Figueredo's conclusion that counsel violated Rule 11(b)(2), as absent standing to bring its malpractice claim, China AI "had no chance of success." Morley, 66 F.3d at 25 (quoting Caisse Nationale, 28 F.3d at 264); see Nelson v. Smith, 618 F. Supp. 1186, 1199 (S.D.N.Y. 1985) (stating that it was "unnecessary for the Court to reach the Magistrate's alternative recommendation" in light of dispositive holding); In re Lifetrade Litig., No. 17 Civ. 2987, 2022 WL 1448431, at *4 & nn.3-5 (S.D.N.Y. May 9, 2022) (overruling objections as moot in light of dispositive holdings). The Court nevertheless proceeds to the additional objections.

she "need not decide whether [China AI's] allegations that Defendants were formally retained by Link Motion have evidentiary support." (R&R at 23.) She rested her holding instead on the frivolousness of other independent elements of China AI's malpractice claim. (See R&R at 24.)[6] Thus, this objection is overruled.

### 3.   Whether China AI's Counsel Could Have Reasonably Believed China AI Could Prove Malpractice

China AI's next objection pertains to Judge Figueredo's conclusion that its counsel could not have reasonably believed that China AI could prove malpractice, i.e., that DLA Piper and Schechtman breached the duty attorneys in New York owe to their clients. (See Objs. at 28-34.) Judge Figueredo based this conclusion on Link Motion's and Shi's "refus[al] to engage with Defendants in a discussion about how to respond to the TRO and preliminary injunction motions" despite Schechtman's "diligent[] attempt[s], on numerous occasions, to discuss . . . Baliga's complaint." (R&R at 23-

---

[6] Legal malpractice is a species of negligence; accordingly, a plaintiff alleging legal malpractice must prove (1) duty, i.e., an attorney-client relationship; (2) breach; (3) proximate causation; and (4) damages. See Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000). All four elements must be proven, so if China AI's theory with respect to any element is frivolous, the entire claim has "no chance of success," Morley, 66 F.3d at 25 (quoting Caisse Nationale, 28 F.3d at 264), and the entire claim is therefore frivolous. Cf. Thompson v. Ouellette, 986 N.W.2d 338, 350 (Wis. Ct. App. 2023) (stating that "one situation in which an appeal is frivolous" in its entirety "is when an element, issue, or argument" necessary to succeed on appeal "is supported solely by frivolous arguments").

24.) China AI argues that the R&R's conclusion must be reversed because the question of whether Defendants breached a duty to China AI is a jury question that cannot be resolved on a pre-discovery motion and without expert testimony. (See Objs. at 29-30.) China AI further argues that it should be entitled to discovery in light of China AI's lack of "opportunity to review communications in the files of Shi or Link Motion, or to cross-examine Schechtman about other communications that occurred between the parties." (Id. at 30.)

The Court is not persuaded. China AI's counsel represented Shi and, in the direct malpractice action, purported to represent Link Motion, as well, during the relevant period (see generally Nos. 18 Civ. 11642 and 22 Civ. 8313),[7] so the Court doubts that there was no opportunity to examine Shi's and Link Motion's files.[8] In any case, China AI

---

[7] Maloney also currently claims in the Baliga action that his and Felicello's law firm, Felicello Law P.C., represents Link Motion in that action "for motion to dismiss purposes." (No. 18 Civ. 11642, Dkt. No. 507 at 1.) The Receiver's position is that Shi "has conflicts of interest" with Link Motion and that "the Receiver should have the authority to control [Link Motion's] positions in this litigation," and the Receiver has accordingly asked Judge Figueredo for "instructions as to whether [the Receiver] should engage counsel for [Link Motion] in defending Baliga's Third Amended Complaint." (No. 18 Civ. 11642, Dkt. No. 506.)

[8] In the Baliga action, the Receiver wrote in a letter to the Court that Shi "is directly connected to China AI" and "engineered the sale of [Link Motion] shares to his close associates through China AI in order to illegally secure greater power over [Link Motion's] board." (No. 18 Civ. 11642, Dkt. No. 220-2 at 2.) In this action, China AI contends that it is "owned and controlled by Mr. Hua Jingyuan" and that Shi "has never owned an interest in" China AI. (Dkt. No. 41 at 25.)

had the chance to — and did — submit evidence on the Rule 11 motion before Judge Figueredo, and that evidence included nothing indicating that the communications on which Judge Figueredo relied told less than the full story. (See generally Dkt. No. 42.) Further, courts routinely resolve Rule 11 motions before discovery. See, e.g., An v. Despins, No. 22 Civ. 10062, 2023 WL 4931832, at *1 (S.D.N.Y. Aug. 2, 2023); Bletas v. Deluca, No. 11 Civ. 1777, 2011 WL 13130879, at *10 (S.D.N.Y. Nov. 15, 2011) (stating that while Rule 11 permits parties to identify contentions that will likely have evidentiary support after discovery, "this allowance cannot be understood to give parties free reign to fire shots into the proverbial dark because a reasonable inquiry must still support the likelihood of the inference drawn"); see also Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (stating that expert testimony is not always required to establish standard of care in legal profession "[w]here it is apparent that the attorney exercised reasonable judgment as to how to proceed").

China AI's next argument is also unpersuasive. It contends that Judge Figueredo was wrong on the merits — i.e., that the R&R was incorrect to conclude that counsel could not have reasonably believed that China AI could prove malpractice. But China AI's theory of malpractice — that

Defendants failed to defeat the TRO and preliminary injunction by raising a standing defense against Baliga and failed to obtain Link Motion's informed consent to the appointment of the Receiver — was presented to (see Dkt. No. 41 at 15–18) and rejected by Judge Figueredo. And the Court cannot say the R&R's conclusion constitutes clear error considering the "unanswered communications and nearly complete radio silence from Shi" on which Judge Figueredo relied. (R&R at 24.) This objection is accordingly overruled.

    4.   <u>Whether the R&R Erred with Respect to Causation</u>

    Judge Figueredo also concluded that China AI's counsel could not have reasonably believed that China AI could prove causation — i.e., that any malpractice by DLA Piper or Schechtman caused China AI's alleged damages. (See R&R at 24–28.) The element of causation is, of course, intertwined with the separate element of damages. On the latter element, the R&R concluded that the only damages alleged by China AI in connection with its malpractice claim are the Tongfang Award and the cost to Link Motion of the receivership (see R&R at 26 n.5.), and China AI has not specifically objected to this conclusion.

    China AI's theory of causation is that Defendants' malpractice caused the entry of the TRO and preliminary

injunction and the appointment of the Receiver, which in turn
prevented Link Motion from transferring FL Mobile shares to
Tongfang and accordingly resulted in the imposition of the
Tongfang Award. (See Compl. ¶¶ 83-91.) China AI and its
counsel object to the R&R's conclusions on the causation issue
for several reasons. (See Objs. at 34-38.) These reasons can
be grouped into two categories: (a) reasons relating to the
Tongfang Award and (b) reasons relating to the outcome of the
June 2021 Motion.

a. *Reasons relating to the Tongfang Award*

China AI's first reason for objecting to the R&R's
conclusion on the causation issue can be easily dismissed.
Judge Figueredo's finding that China AI's causation theory is
frivolous was grounded in part on her conclusion with respect
to the Rule 11(b)(3) violations: since Link Motion had already
transferred the FL Mobile shares to Tongfang before Baliga
commenced his lawsuit (the findings of the Tongfang Award
arbitrator notwithstanding), any malpractice arising from the
Baliga case could not have prohibited that transfer from
happening. (See R&R at 24.) To the extent China AI objects to
the R&R's causation analysis on the ground that the R&R's
Rule 11(b)(3) findings were wrong (see Objs. at 34), the Court
overrules the objection for the reasons discussed above.

Judge Figueredo's second reason for finding the causation theory frivolous — grounded on Shi's apparent decision not to submit evidence or mount a defense in the arbitration proceeding against Tongfang, and on Shi's failure to contemporaneously alert the Receiver to the pendency of the arbitration proceeding — was also sound. Judge Figueredo wrote, "Given the utter failure of Link Motion to defend itself against the claims in the arbitration, it is speculative, at best, for [China AI] to claim that [Defendants'] purported failure to 'competently advise' Link Motion about a standing defense proximately caused the company to lose the arbitration." (R&R at 25 (citation omitted).) China AI argues against this conclusion by raising contentions about the Tongfang Award already overruled above (see Objs. at 34–36); those arguments are accordingly rejected.

China AI fares no better by arguing (see id. at 35) that the R&R improperly weighed the credibility of Shi's explanation for Link Motion's lack of defense in the arbitration. Shi's explanation was that the "communications between the arbitrator and Shi (where Shi purported to act on behalf of Link Motion) were in fact with someone other than Shi who was posing as Shi and using Shi's corporate e-mail account without authorization." (R&R at 25.) In fact, Judge

Figueredo expressly did not base her conclusion on the
credibility (or lack thereof) of Shi's story. The R&R "[p]ut[]
aside the plausibility" of Shi's story and concluded that
even if it was true, "an adequate investigation by counsel
. . . should have uncovered that Link Motion was not
represented by counsel in the arbitration, [and] that it
mounted no defense to Tongfang's claims." (R&R at 25.) Judge
Figueredo concluded that those facts "should have led counsel
to deeply question the viability of a legal-malpractice claim
against Defendants." (Id.) The Court thus overrules this
objection to the extent it is premised on an argument that
the R&R's conclusion improperly depended on a credibility
determination.

    b. *Reasons relating to the June 2021 Motion*

    The R&R's third reason for finding the causation theory
frivolous was that even if DLA Piper and Schechtman had, in
the Baliga case, argued in response to the TRO and preliminary
injunction motions that Baliga lacked standing, the "outcome
would have remained the same, because, as the Court later
concluded, it had jurisdiction to appoint the Receiver." (R&R
at 26.) This conclusion was based on the Court's adoption in
August 2022 of Magistrate Judge Freeman's findings on the
June 2021 Motion. (See id. at 26-27.) Judge Figueredo

32

concluded that since, as Judge Freeman found, Baliga did have standing to bring his federal securities claims in December 2018, the Court's jurisdiction to enter the preliminary injunction and appoint the Receiver would not have been a substantial issue in controversy even if Defendants had raised the standing argument. (See id. at 27.)

China AI raises two arguments against the R&R's conclusion on this point. First, China AI contends that Judge Freeman's opinion, which was not issued until March 2022 and was not adopted by the Court until August 2022, cannot serve as the basis for a ruling that the Complaint — filed earlier, on December 20, 2021 — was frivolous in violation of Rule 11(b)(2). (See Objs. at 36–37.)

On the surface, this argument has some intuitive appeal, so the Court pauses here to more closely review the timeline. Papers complying with Rule 11's safe harbor requirement were served upon China AI on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) In those papers, Defendants put China AI on notice that its malpractice claim was potentially frivolous in part because the claim's causation element was premised on Defendants' alleged failure to raise a "novel" standing argument in Baliga that had "never previously been tested in a New York court." (See Dkt. No. 37-14 at 13.) The next day, Judge Freeman issued her opinion — which, despite

considering the standing argument, concluded that the Court
had jurisdiction to enter the preliminary injunction and
appoint the Receiver — and the Court adopted Judge Freeman's
opinion on August 25, 2022. (See No. 18 Civ. 11642, Dkt. Nos.
275, 331.)

The issuance and adoption of Judge Freeman's opinion
distinguishes this case from the typical malpractice action
in which, like DLA Piper and Schechtman here, the defendant
attorney stands accused of "failing to make a particular
argument." Gunn v. Minton, 568 U.S. 251, 259 (2013). Usually,
in such a lawsuit, "the causation element requires a 'case
within a case' analysis of whether, had the argument been
made, the outcome of the earlier litigation would have been
different." Id. And "[b]ecause of the backward-looking nature
of a legal malpractice claim," the "case within a case"
question "is posed in a merely hypothetical sense: If [the]
lawyers had raised a timely . . . argument, would the result
. . . have been different?" Id. at 261. Here, though, the
"case within a case" question is not hypothetical. Shi did
eventually make the standing argument that China AI accuses
Defendants of forfeiting, and the Court considered it on its
merits and nevertheless concluded (by adopting Judge
Freeman's opinion) that it had jurisdiction to enter the
preliminary injunction and appoint the Receiver.

China AI thus was — after having been warned pursuant to Rule 11(c)(2) in March 2022 that its causation theory was potentially untenable — on notice as of August 25, 2022 that the theory was definitely untenable. The "case within a case" question had an answer, and not merely a hypothetical one: If Defendants had raised the standing argument that, allegedly, they negligently forfeited, the result would not have been different, and therefore China AI cannot prove causation.

Further, Defendants had not yet filed their Rule 11 motion, so there was still time for China AI and its counsel to avoid sanctions. More than 21 days, see Fed. R. Civ. P. 11(c)(2), passed after the Court's adoption of Judge Freeman's opinion foreclosing China AI's causation theory. Yet instead of using that period to "withdraw[] or appropriately correct[]" the Complaint, id., China AI's counsel filed the direct legal malpractice action in state court on September 12, 2022, lodging against the same Defendants allegations similar to those in the instant case. (See Dkt. No. 27 at 1.) It was not until September 26, 2022 that Defendants filed their Rule 11 sanctions motion with the Court. (See Dkt. No. 35.)

The Court thus rejects China AI's argument that Judge Freeman's opinion cannot serve as the basis for sanctions under these circumstances. See Bletas, 2011 WL 13130879, at

*11 (stating that it was not necessary to decide "whether plaintiffs' failure to ascertain that all of these claims are foreclosed . . . was objectively unreasonable at the time they first brought suit because after receiving notice that . . . defendants intended to seek sanctions unless plaintiffs withdrew these claims, plaintiffs chose to double down on their allegations").

China AI's final argument on the causation issue is similarly unavailing. China AI contends that even if the Court had *authority* (as Judge Freeman found) to enter the preliminary injunction and appoint the Receiver, the Court would not have necessarily done so if DLA Piper and Schechtman had argued that Baliga made "false allegations" in his complaint and that Baliga's securities law claims were "facially defective." (Objs. at 37.) The "false allegations" argument would have necessarily been raised as part of the standing argument discussed above because the allegedly "false" allegation was that Baliga was a registered Link Motion shareholder rather than merely a holder of American depository shares (i.e., rather than someone without standing). (See Compl. ¶¶ 38-41.) And with respect to the "facially defective" argument, China AI points to nothing in the Complaint that could be construed to allege that Defendants committed malpractice by failing to raise such an

argument, and it is the causation theory *alleged in the Complaint*, after all, that the R&R found frivolous. This objection is accordingly overruled.

###### 5. Whether the R&R Recommends Sanctioning Both China AI and Its Counsel for Violating Rule 11(b)(2)

China AI and its counsel next object to Judge Figueredo's "apparent recommendation" that both China AI and its counsel be monetarily sanctioned for violating Rule 11(b)(2). (Objs. at 40.) As the objectors point out, represented parties cannot be penalized with monetary sanctions for advancing frivolous legal contentions. See Fed. R. Civ. P. 11(c)(5).

But the R&R made no such recommendation. Judge Figueredo found a Rule 11(b)(2) violation *and* a Rule 11(b)(3) violation, and the rule against monetarily sanctioning represented parties applies only under Rule 11(b)(2). See Fed. R. Civ. P. 11(c)(5); see also Fed. R. Civ. P. 11(c)(1) (stating that sanctions can be imposed on any "attorney, law firm, *or party* that violated the rule or is responsible for the violation" (emphasis added)). To the extent the R&R is unclear on this front, the Court construes the R&R to recommend monetary sanctions against China AI for violating Rule 11(b)(3) and against its counsel for violating Rule 11(b)(2) and to impose the monetary amount jointly and severally so as to avoid double recovery by Defendants. See Est. of Calloway v. Marvel

Ent. Grp., 9 F.3d 237, 239 (2d Cir. 1993) ("[P]ersons liable
for Rule 11 sanctions may be jointly and severally liable.");
In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig., 712 F.
Supp. 2d 255, 271 (S.D.N.Y. 2010) ("Where multiple parties or
attorneys are responsible for Rule 11 violations, those
parties may be held jointly and severally liable in the
court's discretion."). This objection is accordingly
overruled.

C.   OTHER OBJECTIONS

China AI and its counsel raise three further objections.
First, they object to the R&R's recommendation that sanctions
be imposed in the amount of the reasonable fees and costs
incurred by Defendants in defending this action. (See Objs.
at 44-46.) Second, they argue (for the first time) that
Defendants' Rule 11 motion was untimely. (See Objs. at 46-
49.) Third, they object to Judge Figueredo's "implicit
finding" that China AI filed the Complaint for an improper
purpose in violation of Rule 11(b)(1). (Objs. at 41.)

1.   Whether Sanctions in the Amount of Defendants'
Reasonable Fees and Costs Are Appropriate

China AI and its counsel argue that Judge Figueredo
"overreach[ed]" in recommending that they be sanctioned in
the amount of the costs and fees incurred by Defendants in
defending this action. (Objs. at 44.) They urge the Court to

38

impose a lesser sanction, contending that monetary penalties can only be based on a finding of bad faith and that an award of costs and fees is inappropriate where China AI attempted to voluntarily dismiss the Complaint. (See id. at 44-46.)

This objection fails for several reasons. As an initial matter, courts have wide discretion in crafting appropriate Rule 11 sanctions. See Universitas Educ., LLC v. Nova Grp., Inc., 784 F.3d 99, 102-03 (2d Cir. 2015); see also Fed. R. Civ. P. 11(c)(4) (stating that sanctions "may include . . . , if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"). Further, liability for a Rule 11 violation "requires only a showing of objective unreasonableness," not bad faith, "on the part of the attorney or client signing the papers." ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009). There is an exception to this rule when, unlike here, a court on its own motion initiates Rule 11 sanctions — in such a case, sanctions are appropriate only after a finding of subjective bad faith. See id. But where, as here, "the sanctions process is initiated by a motion from an opposing party" and the challenged party or lawyer accordingly has a "21-day 'safe

harbor' to withdraw or amend" the challenged filing, bad faith need not be shown. Id.

Judge Figueredo was thus not required to make a finding of bad faith. The instant sanctions motion was initiated by Defendants, not the Court, and Defendants complied with the 21-day safe harbor rule set forth in Rule 11(c)(2). (See R&R at 14.) The appropriate standard was therefore objective unreasonableness.[9] And, as discussed above, China AI and its counsel failed to act "reasonabl[y] under the circumstances." Fed. R. Civ. P. 11(b); see also, e.g., Merriman v. Sec. Ins. Co. of Hartford, 100 F.3d 1187, 1194-95 (5th Cir. 1996) (upholding award of attorneys' fees under Rule 11 where sanctionable conduct was not necessarily indicative of bad faith).

---

[9] The Court is unpersuaded by China AI's citations to cases such as ED Capital, LLC v. Bloomfield Investment Resources Corp., 316 F.R.D. 77 (S.D.N.Y. 2016) and CV Collection, LLC v. Weworewhat, LLC, Nos. 20 Civ. 8623 and 21 Civ. 1623, 2021 WL 4942625 (S.D.N.Y. Oct. 22, 2021). In ED Capital, the moving party "did not comply with Rule 11's safe harbor provision," 316 F.R.D. at 82, and also moved for attorneys' fees pursuant to the Court's inherent authority to supervise and control its proceedings (i.e., in addition to the relief sought under Rule 11), see id. at 83 ("[T]he Court may only award attorneys' fees under its inherent authority . . . where there is clear evidence that a party commenced an action with the sole aim of harassment or delay or for another improper purpose."). And in CV Collection, the court relied on cases construing not Rule 11 but rather the courts' inherent authority and a third vehicle for sanctions motions, 28 U.S.C. § 1927. See 2021 WL 4942625, at *5; Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd., 991 F.3d 361, 368 (2d Cir. 2021) (setting forth standard under court's inherent power); Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (setting forth bad faith standard under 28 U.S.C. § 1927).

Further, China AI's argument about its attempt to voluntarily dismiss the Complaint is unpersuasive. Defendants served papers complying with the Rule 11 safe harbor requirement on March 8, 2022. (See R&R at 14; Dkt. No. 37-14; Dkt. No. 37-15.) China AI did not respond (see R&R at 14) and instead decided, in a letter filed March 14, 2022, to oppose Defendants' proposed motion to dismiss (see Dkt. No. 17). China AI did file a proposed notice of voluntary dismissal on September 6, 2022 (see Dkt. No. 22), but this filing was quickly followed by an attempt by China AI's counsel to bring a direct legal malpractice action in state court on behalf of Link Motion against DLA Piper and Schechtman (see Dkt. No. 27 at 1). And after that direct malpractice action was removed to federal court and dismissed with prejudice, China AI in the instant suit tried to withdraw its proposed voluntary dismissal. (See R&R at 11.) This matter therefore is altogether different from a case where a party's voluntary dismissal of a case is actually effective and puts a true end to frivolous litigation.

Finally, the cases cited by China AI on the voluntary dismissal issue do not support its objection in any event. See Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 115 (2d Cir. 2009) (involving case where finding of bad faith was required, where sanction was predicated on

voluntary dismissal itself, and where party was, unlike China AI here, "entitled by law to dismiss the case"); Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 159 (2d Cir. 2010) (vacating sanctions award where Rule 11 safe harbor requirement was not satisfied). The Court therefore overrules the objection and holds under the circumstances that sanctions in the amount of the costs and attorneys' fees incurred by Defendants in defending this action constitute the minimum amount "suffic[ing] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

2.   Whether the Rule 11 Motion Was Timely

China AI and its counsel argue for the first time in their Objections to the R&R that Defendants' Rule 11 motion "was brought too late." (Objs. at 46.) This argument is predicated on the Second Circuit's observation that although Rule 11 "contains no explicit time limit for serving the motion," sanctions motions "have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003). China AI appears to contend that it lacked such an opportunity because it could

not unilaterally dismiss this derivative action absent permission from the Court and because Defendants opposed China AI's proposed notice to Link Motion shareholders regarding the proposed voluntary dismissal. (See Objs. at 47.)

The Court overrules this objection, as China AI provides no reason for failing to raise this argument before Judge Figueredo. See Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 433-34 (S.D.N.Y. 2015) (stating that courts considering whether to entertain argument not raised before magistrate judge analyze factors including "the reason for the litigant's previous failure to raise the new legal argument"); Baliga v. Link Motion Inc., No. 18 Civ. 11642, 2022 WL 3699339, at *4 (S.D.N.Y. Aug. 25, 2022) (stating it would be "inappropriate" to consider arguments where party "fail[ed] to present any reason" for failing to raise arguments before magistrate judge).

### 3. Whether the R&R Erred with Respect to Rule 11(b)(1)

Finally, China AI and its counsel object to the R&R's "implicit finding" (Objs. at 41) that China AI filed the Complaint for an improper purpose in violation of Rule 11(b)(1). The Court agrees that the R&R made a finding that China AI and its counsel violated Rule 11(b)(1). Indeed, Judge

Figueredo wrote that upon viewing "all of the deficiencies in [China AI's] claim collectively, the only plausible conclusion to be drawn from pursuit of this litigation is that it was done to harass Defendants." (R&R at 31.) There is no way to read that statement as anything other than a finding that Rule 11(b)(1) was violated.

The Court upholds the R&R's conclusion. China AI objects on the ground that the R&R "ignores that [China AI] had filed a notice of voluntary dismissal." (Objs. at 41.) But, as discussed above, China AI's reliance on its attempt to voluntarily dismiss the Complaint is suspect in light of its counsel's subsequent filing of a direct malpractice action in state court and its later attempt to withdraw the proposed dismissal. China AI further objects (see id.) to Judge Figueredo's purported reliance on China AI's May 2023 request — made after the instant sanctions motion was fully briefed — for a stay of this action pending potential reconsideration of the Court's dismissal of the direct malpractice action, but it is clear that the facts surrounding the requested stay merely "reinforced" a conclusion that the R&R already reached: that China AI and its counsel violated Rule 11(b)(1). (R&R at 31.)

China AI further objects that the R&R's Rule 11(b)(1) analysis turned wholly — and thus improperly — on its previous

analysis of the Rule 11(b)(3) and 11(b)(2) violations. (See Objs. at 42–43.) In Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., the Second Circuit held that it was an abuse of discretion to sanction a client and its lawyers "for violating Rule 11(b)(1) on the ground that [the] lawyers had violated Rule 11(b)(2)." 186 F.3d 157, 176–77 (2d Cir. 1999). The court observed that permitting a Rule 11(b)(1) violation to turn "entirely" on a Rule 11(b)(2) violation would "render a client responsible for the frivolous [legal] claims asserted by its attorneys, contrary to [the] explicit prohibition" in Rule 11(c)(5)(A). Id. at 177.

The Court is not persuaded that Simon DeBartolo Group applies here. The Second Circuit's concern about holding clients who would otherwise not be sanctioned responsible for Rule 11(b)(2) violations is not implicated by cases such as this one, where the client has independently been found to have violated Rule 11(b)(3) by making false factual contentions. And in any case, Judge Figueredo conducted an independent Rule 11(b)(1) analysis. The R&R states,

> Defendants alerted [China AI] that they intended to seek sanctions if [China AI] did not voluntarily withdraw its claim, and Defendants raised all of these [legal and factual] deficiencies in their letter. Even if one could conclude that [China AI] and its counsel had a good-faith basis for initially filing suit, they certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim. Yet, [China AI] ignored

Defendants' letter and instead persisted with this suit
for six months before filing a voluntary notice of
dismissal.

(R&R at 31 (citation omitted).) This final objection is
therefore, like the others, overruled.[10]

### V.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the objections (<u>see</u> Dkt. No. 63) raised by
plaintiff China AI Capital Ltd. ("China AI") and its counsel
to the Report and Recommendation (the "R&R," <u>see</u> Dkt. No. 58)
issued by Magistrate Judge Valerie Figueredo in this action,
upon the Court's de novo review and substantially for the
reasons stated by Judge Figueredo, are hereby **OVERRULED**; and
it is further

**ORDERED** that the R&R (<u>see</u> Dkt. No. 58) is hereby **ACCEPTED**
and **ADOPTED** in its entirety; and it is further

**ORDERED** that the sanctions motion (<u>see</u> Dkt. No. 35)
brought by defendants DLA Piper LLP (US) and Caryn G.
Schechtman (collectively "Defendants") pursuant to Federal

---

[10] The Rule 11(b)(1) violation provides yet another reason to impose
monetary sanctions. <u>See</u> Fed. R. Civ. P. 11(b) advisory committee's note
to 1993 amendment (listing potential factors to be used in crafting
appropriate sanction, including "whether the improper conduct was
willful," "whether it was part of a pattern of activity," "whether it
infected the entire pleading," "whether it was intended to injure," and
"what effect it had on the litigation process in time or expense").

Rule of Civil Procedure 11 against China AI and its counsel is hereby **GRANTED**; and it is further

ORDERED that China AI and its counsel will be jointly and severally sanctioned in the amount of the reasonable costs and attorneys' fees incurred by Defendants in defending this action; and it is further

ORDERED that the parties shall confer and shall jointly submit to the Court a proposed briefing schedule with respect to the costs and attorneys' fees incurred by Defendants in defending this action, and the reasonableness thereof, within fourteen (14) days of the date of this Order; and it is further

ORDERED that the complaint filed in this action by plaintiff China AI and its counsel (see Dkt. No. 1) is hereby **DISMISSED** with prejudice.

**SO ORDERED.**

Dated:    6 March 2024
          New York, New York

                                                    _____
                                                        Victor Marrero
                                                          U.S.D.J.