UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British
Virgin Islands limited company, derivatively
on behalf of LINK MOTION INC., a Cayman
Islands limited company f/k/a NQ MOBILE
INC.,

                Plaintiff,

    -against-

DLA PIPER LLP (US), a Maryland limited
liability partnership, and CARYN G.
SCHECHTMAN, a natural person,

                Defendants,

    -and-

LINK MOTION INC., a Cayman Islands
limited company f/k/a NQ MOBILE INC.

                Nominal Defendant.
--------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

 

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
<u>APPLICATION FOR FEES AND COSTS PURSUANT TO RULE 11</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................2

    I.    China AI Publicly Accuses DLA Of Malpractice And Claims Hundreds Of Millions Of Dollars In Damages That Are Ultimately Proven To Have Been Fabricated....................................................................................................2

    II.    DLA Engages Gibson Dunn, Which Informs China AI That Its Allegations Are False And That Its Claim Is Frivolous.......................................3

    III.    This Court In The *Baliga* Action Rejects The Central Premise Of Plaintiff's Claim Against DLA..............................................................................4

    IV.    After China AI Refuses To Withdraw Its Complaint, DLA Is Compelled To Pursue Parallel Motions To Dismiss And For Rule 11 Sanctions ...................5

    V.    At The Eleventh Hour, China AI Seeks To Dismiss The Action So Its Counsel Can Refile It In A Different Forum And Side-Step This Court ..............5

    VI.    Even After DLA Files Its Rule 11 Motion, Plaintiff Seeks To Rescind Its Prior Dismissal And Revive This Action With Frivolous Legal Arguments.........6

    VII.    The District Court Sanctions Plaintiff And Its Counsel And Awards DLA Its Reasonable Fees And Costs For Responding To This Meritless Action ..........7

    VIII.    Undeterred, Plaintiff And Its Counsel Seek Reconsideration Of The Sanctions Order While Its Counsel Moves To Restore The Direct Action ...........8

DISCUSSION.................................................................................................................8

    I.    Gibson Dunn's Hourly Rates Are Reasonable. ...................................................10

        A.    The Requested Rate Is Gibson Dunn's Customary Rate, Was Agreed To And Paid By DLA, And Is Comparable To Rates Charged By Other Firms In This District ................................................11

        B.    The Requested Rates Reflect The Complexity, Size, and Sensitivity Of The Matter, And The Caliber Of The Lawyering.............14

    II.    The Hours Required To Respond To Plaintiff's Reputationally Harmful Allegations And Substantial Alleged Damages Was Reasonable.......................16

    III.    Gibson Dunn's Costs Are Reasonable.............................................................20

CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*(RC) 2 Pharma Connect, LLC v Mission Pharmacal Co.*,
   2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022) ....................................................8

*Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*,
   2023 WL 7924626 (S.D.N.Y. Nov. 16, 2023) ...................................................17

*An v. Despins*,
   2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023) .......................................................9

*An v. Despins*,
   2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024).................................11, 13, 16, 20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008)......................................................................... 11, 12

*ATX Debt Fund 1, LLC v. Paul*,
   2024 WL 2093387 (S.D.N.Y. May 9, 2024) .....................................................13

*Carrington v. Graden*,
   2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020) ............................................. 20, 21

*City of Almaty, Kazakhstan v. Ablyazov*,
   2022 WL 1406248 (S.D.N.Y. May 4, 2022)......................................................15

*Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*,
   2022 WL 1546673 (S.D.N.Y. Apr. 5, 2022) ................................................. 9, 11

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998).............................................................................13

*Google LLC v. Starovikov*,
   2023 WL 2344935 (S.D.N.Y. Mar. 3, 2023).............................9, 12, 14, 19, 20

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .........................................................................................16

*Intl. Techonologies Mktg., Inc. v. Cognyte Tech. Israel Ltd.*,
   2022 WL 11280876 (S.D.N.Y. Oct. 19, 2022).................................11, 13, 16, 20

*Laba v. JBO Worldwide Supply Pty Ltd.*,
   2023 WL 4985290 (S.D.N.Y. July 19, 2023), *report and recommendation*
   *adopted sub nom. Laba v. JBO Worldwide Supply Pty Ltd.*, 2024 WL 550252
   (S.D.N.Y. Feb. 12, 2024)........................................................................ 10, 11, 14

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998).............................................................................21

*Lilly v. City of New York*,
   934 F.3d 222 (2d Cir. 2019).............................................................................11

*Link Motion Inc. v. DLA Piper LLP (US)*,
   2022 WL 17884167 (S.D.N.Y. Dec. 23, 2022)...................................................6

# TABLE OF AUTHORITIES
(con't)

**Page(s)**

*McKenzie-Morris v. VP Records Retail Outlet Inc.*,
   2023 WL 4422495 (S.D.N.Y. July 10, 2023)......................................16

*Millea v. Metro-N. R.R. Co.*,
   658 F.3d 154 (2d Cir. 2011).........................................................9

*Offor v. Mercy Med. Ctr.*,
   327 F.R.D. 32 (E.D.N.Y. 2018) ...................................................9

*P.J. by & through W.J. v. Conn. State Bd. of Educ.*,
   931 F.3d 156 (2d Cir. 2019).........................................................9

*Peerless Network, Inc. v. AT&T Corp.*,
   2024 WL 20840 (S.D.N.Y. Jan. 2, 2024)......................................16

*Pentagen Tech. Intern. Ltd. v. United States*,
   172 F. Supp. 2d 464 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir 2003) ......................10

*PNC Bank, N.A. v Dana Transp., Inc.*,
   2023 WL 5702165 (S.D.N.Y. Sept. 5, 2023) ................................17

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017).......................................................13

*Roma Landmark Theaters LLC v. Cohen Exhibition Co. LLC*,
   2021 WL 5174088 (Del. Ch. Nov. 8, 2021)..................................13

*Ross v. Patrusky, Mintz & Semel*,
   1997 WL 214957 (S.D.N.Y. Apr. 29, 1997)...................................7

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*,
   2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024)................................13

*Themis Cap. v. Democratic Rep. of Congo*,
   2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) .............................12, 13

*In re TransPerfect Glob., Inc.*,
   2021 WL 1711797 (Del. Ch. Apr. 30, 2021), *affd sub nom. TransPerfect
   Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022) ..........................13

*United States Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
   2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016).....................11, 12, 13, 16

*United States v. New Silver Palace Restaurant, Inc.*,
   810 F. Supp. 440 (E.D.N.Y. 1992).................................................7

*Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*,
   2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023), *report and recommendation
   adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023)......................13

*Yurman Designs, Inc. v. PAJ, Inc.*,
   125 F. Supp. 2d 54 (S.D.N.Y. 2020) ...........................................12

## TABLE OF AUTHORITIES
(con't)

**Page(s)**

### Rules

Fed. R. Civ. Proc. 11(c)(4) ...........................................................................1, 8, 20, 21

Fed. R. Civ. Proc. 23.1(a)...........................................................................................7

## PRELIMINARY STATEMENT

On March 6, 2024, the District Court dismissed Plaintiff's Complaint with prejudice against Defendants DLA Piper LLP (US) and Caryn G. Schechtman (collectively "DLA" or "Defendants") and adopted in its entirety this Court's recommendation that DLA's motion for Rule 11 sanctions be granted, and that Plaintiff and its counsel, Michael Maloney, Rosanne Felicello, and Felicello Law P.C. be ordered to pay the reasonable costs and fees incurred by DLA in defending this vexatious litigation.  *See* ECF 65 (the "Sanctions Order").[1]  The District Court held that the Complaint was premised on demonstrably false allegations and meritless legal arguments and filed for improper purposes, *see* Sanctions Order at 17–21, 23–36, 43–44, and that "sanctions in the amount of the costs and attorneys' fees incurred by Defendants in defending this action constitute **the minimum amount** 'suffic[ing] to deter repetition of the conduct,'" *id.* at 42 (quoting Fed. R. Civ. P. 11(c)(4)) (emphasis added).

Plaintiff's refusal to withdraw its Complaint for over two years despite being on notice of these myriad defects necessitated Defendants' expenditure of substantial attorney resources for factual development, legal research, drafting motions, opposition briefs, and other filings, as well as many other tasks.  Eventually, in a blatant attempt at forum-shopping, Plaintiff's counsel sought (unsuccessfully) to withdraw this action, only to refile it immediately as a direct action in state court.  Defendants then had to work to remove the matter back to this Court, where it was dismissed, only to have Plaintiff and its counsel futilely seek to revive and amend this action.  And even after the District Court granted Defendants' motion for Rule 11 sanctions, Plaintiff and its counsel continued, undeterred, to pursue this action while Plaintiff's counsel *also* pursued (and

---

[1]  References to "ECF" are to the docket in this action; "*Baliga* Dkt" refers to filings in *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (the "*Baliga* Action").  Pin cites are to the page numbers applied by the Court.

continues to pursue) a duplicative direct action in state court. Given the size of the fabricated damages alleged, both actions have made headlines, and Plaintiff's counsel has actively stoked that coverage with quotes to the press in utter disregard of the damage to Defendants' hard-earned professional reputations.

Defendants now request $1,174,716.50 in attorney's fees and $2,531.50 in costs, which constitutes only a portion of the costs and fees that DLA reasonably and actually incurred to defend this action. Those totals represent "the minimum amount" necessary to finally put an end to this unrelenting harassment campaign and to deter further malfeasance. After all, Plaintiff and its counsel have shown time and again that they will stop at nothing—including court rules, ethics rules, and common decency—to maintain this wholly frivolous litigation.

The fees requested here are based on the customary hourly rates that Gibson, Dunn & Crutcher LLP ("Gibson Dunn")—which specializes in and is nationally recognized for the defense of lawyers and law firms—charges clients in the Southern District of New York and are in-line with those charged by peer firms here. The fees reflect the complexity of the action, the threat it posed to Defendants' professional reputations, and the exposure to over *$580 million* in alleged damages that, after considerable effort by Gibson Dunn, were determined to be wholly fabricated by Plaintiff and its counsel. Notably, the requested fees represent only a portion of all fees actually incurred and *do not* include more than 140 hours billed for Defendants' lead counsel, Kevin Rosen.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    China AI Publicly Accuses DLA Of Malpractice And Claims Hundreds Of Millions Of Dollars In Damages That Are Ultimately Proven To Have Been Fabricated

On December 20, 2021, Plaintiff China AI filed this derivative action against DLA, asserting a legal malpractice claim arising out of an earlier derivative action brought by Wayne Baliga. *See* ECF 1 ("Complaint" or "Compl."). DLA had briefly appeared in the *Baliga* Action

2

as a courtesy in December 2018 and January 2019, but the firm was compelled to withdraw due to Link Motion's "fail[ure] to cooperate in the representation" and professed inability to pay DLA's fees. ECF 42-7; *see* ECF 58 at 7–8; Sanctions Order at 4–7.

Notwithstanding Link Motion's refusal to retain or even communicate with DLA concerning the *Baliga* Action, China AI sought to pin *hundreds of millions of dollars* in alleged damages on DLA, including the supposed loss of a $180 million "deferred net gain" from a failed corporate transaction and a bogus $400 million adverse arbitration award. Compl. ¶¶ 87–94. To do so, Plaintiff and its counsel maliciously sought to attack the reputation of a renowned firm and a lawyer that at the time had over 20 years of practice in good standing.

## II.    DLA Engages Gibson Dunn, Which Informs China AI That Its Allegations Are False And That Its Claim Is Frivolous

DLA retained Gibson Dunn given the magnitude and complexity of Plaintiff's allegations. Gibson Dunn immediately undertook a thorough investigation into the factual and legal aspects of China AI's claim, which included collecting and reviewing communications between DLA and Link Motion cited in the Complaint (as well as other communications between DLA and Link Motion or Link Motion's Chairman, Dr. Shi); collecting and reviewing Link Motion's SEC filings and other documents concerning the corporate transaction underlying China AI's damages; reviewing relevant filings and decisions in the *Baliga* Action; consulting and coordinating with an expert on Cayman Islands law;[2] and conducting legal research and analysis of China AI's allegations and DLA's potential defenses. *See* Declaration of Nancy Hart in Support of Defendants' Application for Fees and Costs ("Hart Decl.") at ¶ 5. Based on that investigation, Gibson Dunn determined that China AI's claim suffered from numerous independently fatal legal and factual deficiencies, and it was premised on allegations that were *demonstrably false. See*

---

[2]  Defendants have elected not to seek reimbursement of the expert's fees in this application.

Sanctions Order at 17–21 (explaining that "[Plaintiff] and its counsel violated Rule 11(b)(3) by making false allegations in the Complaint"); ECF 58 at 16–22.

Accordingly, DLA informed Plaintiff of its intention to move to dismiss the action, as required by the District Court's Individual Practices, on March 7, 2022. ECF 18-1 (the "MTD Letter"). On March 8, Gibson Dunn served on Plaintiff and its counsel a comprehensive, 16-page submission and notice of motion seeking Rule 11 sanctions, explaining in detail the myriad reasons the claim by China AI was legally and factually frivolous. ECF 37-14 (the "Rule 11 Submission").

## III.    This Court In The *Baliga* Action Rejects The Central Premise Of Plaintiff's Claim Against DLA

On March 9, 2023, the day after DLA served its Rule 11 Submission on Plaintiff's counsel, Magistrate Judge Freeman in the *Baliga* Action confirmed that Plaintiff's claim was frivolous by expressly rejecting the argument that Baliga's purported lack of derivative standing divested the Court of jurisdiction or the authority to appoint the Receiver. Specifically, Judge Freeman found, and the District Court later affirmed, that Baliga "had standing to bring the securities-law claims" that he had pled derivatively in the initial complaint, which "afforded the [District] Court subject-matter jurisdiction to issue the challenged [Preliminary Injunction] Order." *Baliga* Dkt 275 at 18, 22–30. Thus, whether there was standing for Baliga's derivative state-law claims—the crux of Plaintiff's claim against DLA—didn't matter there (for the same reason doesn't matter here). *Id.* at 22 n.9 ("[E]ven assuming the correctness of [Plaintiff's] proposition, it would ultimately be immaterial to the outcome."); *see Baliga* Dkt 331 (adopting Magistrate Judge Freeman's R&R); Sanctions Order at 34 ("the [District] Court considered [the standing argument] on its merits and nevertheless concluded . . . that it had jurisdiction ….").

4

IV.     **After China AI Refuses To Withdraw Its Complaint, DLA Is Compelled To Pursue Parallel Motions To Dismiss And For Rule 11 Sanctions**

Plaintiff ignored Magistrate Judge Freeman's report in the *Baliga* Action *and* DLA's Rule 11 Submission, and instead responded to DLA's MTD Letter by trumpeting its intent to "litigate this action on the merits," ECF 18-2 at 5. As part of that response, Plaintiff proffered a *different* causation and damages theory than it had alleged in the Complaint, as well as a new standing argument contradicted by its own cited authority and the allegations in the Complaint. *See* ECF 18-2 at 3–4. Gibson Dunn was again compelled to thoroughly review, analyze, and respond to Plaintiff's ever-shifting allegations and arguments. Hart Decl. at ¶ 8.

Gibson Dunn thereafter had to prepare a further submission to the District Court to address Plaintiff's newly concocted allegations, explain in detail for Plaintiff and the District Court its anticipated bases for a motion to dismiss, and request a pre-motion conference with the District Court. ECF 18. While that request was pending, Gibson Dunn began drafting papers, including two memoranda of law, in support of its anticipated motions to dismiss and for Rule 11 sanctions, and monitored ongoing developments in the *Baliga* Action, so that it could act quickly once approved by the District Court. *Id.*

V.      **At The Eleventh Hour, China AI Seeks To Dismiss The Action So Its Counsel Can Refile It In A Different Forum And Side-Step This Court**

DLA's request to file a motion to dismiss was granted by this Court following a pre-motion conference on August 24, 2022, and Defendants promptly proposed a briefing schedule for the motion. Plaintiff's counsel equivocated for more than ten days despite repeated follow-up from Gibson Dunn, claiming they needed more time to confer with their client. Then, on September 6, just as DLA was finalizing its motion, *id.*, and nearly six months after receiving DLA's Rule 11 Submission and MTD Letter, Plaintiff suddenly requested leave to voluntarily dismiss the action without the shareholder notice required by Federal Rule 23.1, claiming that unspecified Link

Motion directors had secretly met and voted to "assume control over the claims asserted by China AI," ECF 23 at 1. Then, without waiting for a ruling from the District Court, and notwithstanding the fact that the Receiver retained exclusive authority to initiate litigation on behalf of Link Motion, *Baliga* Dkt 365 at 10–11, Plaintiff's counsel "r[an] across the square to refile it in the State Court" as a nearly identical direct action against DLA on behalf of Link Motion in the Supreme Court of the State of New York. *Link Motion Inc. v. DLA Piper LLP (US)*, 2022 WL 17884167, at *7 (S.D.N.Y. Dec. 23, 2022); *see Link Motion Inc., v. DLA Piper LLP (US) and Caryn G. Schechtman*, Case No. 653322/2022 (N.Y. Sup. Ct.) (the "*LKM* Action").

Plaintiff's counsel's blatant forum-shopping forced Gibson Dunn to respond to Plaintiff's improper request to voluntarily dismiss its derivative action without the requisite notice to Link Motion's shareholders, and to research and draft yet another submission addressing why the filing of the *LKM* Action by Plaintiff's counsel violated the District Court's prior orders. *See* ECF 24–25, 27, 29, 32, 34; *see also* Sanctions Order at 41 ("This matter therefore is altogether different from a case where a party's voluntary dismissal of a case is actually effective and puts a true end to frivolous litigation."); Hart Decl. at ¶ 8. At the same time, Gibson Dunn had to litigate the newly filed state action in parallel, including by removing it back to this Court, opposing Plaintiff's counsel's motion for remand, and successfully obtaining dismissal.[3] Hart Decl. at ¶ 8 n.5.

## VI.    Even After DLA Files Its Rule 11 Motion, Plaintiff Seeks To Rescind Its Prior Dismissal And Revive This Action With Frivolous Legal Arguments

On September 26, 2022, DLA filed its motion seeking Rule 11 sanctions ("Rule 11 Motion"). ECF 35–37. DLA thereafter was compelled to incur significant expenses responding

---

[3]    Given the close relationship between the sanctionable conduct here and Plaintiff's counsel's bad faith attempts to prolong this litigation by withdrawing it and filing it elsewhere, DLA could have included the significant additional expense of that chicanery in this fee application. To be clear, however, DLA does not seek reimbursement of any of the fees or costs incurred in litigating the *LKM* Action at this time, although DLA reserves all rights in this regard.

to Plaintiff's sprawling opposition—including three declarations and 43 exhibits—rife with contradictory assertions and misrepresentation of both the facts and the law. *See* ECF 41–44, 45.

In May 2023, this Court set a conference for June 1, 2023 concerning Plaintiff's outstanding request to dismiss the action. ECF 46. When the District Court dismissed the *LKM* Action just days before that conference, however, Plaintiff sought an adjournment, suggesting that it was considering rescinding its dismissal and amending the Complaint. ECF 47. This Court denied the request, expressing a desire "to speak to the parties about that request given the pending sanctions motion." ECF 48. At the conference, this Court requested briefing on Plaintiff's contention that it could—and intended to—rescind its dismissal and amend the Complaint.

Plaintiff thereafter filed a brief making yet another entirely frivolous legal argument, claiming that dismissal of a direct claim should not prevent Plaintiff from pursuing its derivative claim here. *See* ECF 49. Of course, Plaintiff ignored that the mere fact that a direct claim had been *filed* necessarily barred any derivative claim, regardless of its subsequent dismissal. *See* Fed. R. Civ. Proc. 23.1(a) (permitting derivative actions *only* "to enforce a right that the corporation . . . has failed to enforce").[4] Thus, more than nine months after Plaintiff had purportedly voluntarily "dismissed" this action, DLA continued to incur substantial costs analyzing and responding to Plaintiff's obdurate campaign of harassment. *See* ECF 50.

## VII.    The District Court Sanctions Plaintiff And Its Counsel And Awards DLA Its Reasonable Fees And Costs For Responding To This Meritless Action

On July 28, 2023, approximately one month after DLA filed its submission explaining why Plaintiff's attempt to revive this action was plainly frivolous under settled law, this Court

---

[4]    *See also Ross v. Patrusky, Mintz & Semel*, 1997 WL 214957, at *10 (S.D.N.Y. Apr. 29, 1997) ("When a corporation subsequently sues to assert claims on its own behalf, however, derivative claims become unnecessary and duplicative, and should be dismissed."); *United States v. New Silver Palace Restaurant, Inc.*, 810 F. Supp. 440, 443 (E.D.N.Y. 1992) ("Where the corporation brings a direct action, then the shareholder is precluded from bringing a derivative action").

recommended that DLA's motion for Rule 11 sanctions be granted and that Plaintiff and its counsel be ordered to pay Defendants' reasonable fees and costs. ECF 58 at 32. On March 6, 2024, in a 47-page Decision and Order, the District Court adopted that recommendation in its entirety, rejecting Plaintiff's 49-pages of objections and ordering sanctions "in the amount of the reasonable costs and attorneys' fees incurred by Defendants in defending this action," which is "the minimum amount 'suffic[ing] to deter repetition of [Plaintiff and its counsel's] conduct.'" Sanctions Order at 42, 47. The District Court then dismissed Plaintiff's Complaint with prejudice. *Id.*

## VIII. Undeterred, Plaintiff And Its Counsel Seek Reconsideration Of The Sanctions Order While Its Counsel Moves To Restore The Direct Action

On July 18, 2024, Plaintiff sought leave to file a frivolous motion for reconsideration of the Sanctions Order, ECF 75, which the District Court denied, ECF 76. Despite the unambiguous findings of the District Court that Plaintiff's claim violates all three subsections of Rule 11, Sanctions Order at 17–21, 23–36, 43–44, Plaintiff and its counsel's most recent actions show that they have no intention of ending this campaign of harassment against DLA. The only way possibly to "deter repetition of th[eir] conduct," Fed. R. Civ. P. 11(c)(4), is to order Plaintiff and its counsel pay the full cost of their actions: the reasonable attorneys' fees and costs incurred by Defendants.[5]

## DISCUSSION

When attorneys' fees and costs are awarded as sanctions under Rule 11, "the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct *and the amount needed to serve the deterrent purposes of Rule 11*." *(RC) 2 Pharma Connect, LLC v Mission Pharmacal Co.*, 2022 WL 4234552, *6 (S.D.N.Y. Sept.

---

[5] Pursuant to the District Court's Order, DLA conferred with Plaintiff to propose a briefing schedule with respect to attorneys' fees and costs incurred by Defendants. ECF 66. The District Court then ordered the parties to endeavor to resolve the issue through mediation with this Court. ECF 67. The parties were not able to reach a resolution.

14, 2022) (quoting *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018)) (emphasis added).    Courts in the Second Circuit have held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation or portion of the litigation in issue multiplied by a reasonable hourly rate." *Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) (internal quotation marks and citation omitted).    There is a "strong presumption" that this "lodestar calculation" produces a "presumptively reasonable fee."    *Google LLC v. Starovikov*, 2023 WL 2344935, at *2 (S.D.N.Y. Mar. 3, 2023) (quoting *P.J. by & through W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 169 (2d Cir. 2019) and *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

As the District Court determined here, the fees and costs attributable to Plaintiff's and its counsels' decision to file and pursue a frivolous legal malpractice claim—and "the minimum amount 'suffic[ing] to deter repetition of the conduct or comparable conduct by others similarly situated'"—are the fees and costs DLA has incurred in defending this action.    Sanctions Order at 42, 47.    As set forth in the materials accompanying this application, including information derived from Gibson Dunn's contemporaneous billing records, those costs and fees total $1,177,248.00. Hart Decl. at ¶ 2.    As set forth further below, that figure is a product of Gibson Dunn's reasonable hourly rates and the reasonable number of hours required to respond to Plaintiff's vexatious claim—a claim that Plaintiff's counsel obstinately and maliciously is continuing to pursue in New York State court, *see Link Motion Inc. v. DLA Piper LLP (US) et al.*, Case No. 653322/2022 (N.Y. Sup. Ct.), despite this Court's and the District Court's Orders.    *See An v. Despins*, 2023 WL 4931832, *7 (S.D.N.Y. Aug. 2, 2023) (finding "an award of the full amount of reasonable attorneys fees" appropriate where, among other things, "Plaintiffs' counsel has a pattern of bringing

meritless [] claims."); *Pentagen Tech. Intern. Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir 2003) (finding sanctions appropriate where "defendants have been forced to defend yet another in a long series of complaints that, beyond simply being unsuccessful, have had absolutely no chance of success under existing precedents" (internal quotation marks and citation omitted)).  Accordingly, it represents the "presumptively reasonable" amount for which Plaintiff and its counsel should be held jointly and severally liable.

## I.    Gibson Dunn's Hourly Rates Are Reasonable.

In calculating its total fees and costs, Gibson Dunn used the hourly rates for its attorneys that were actually billed to, and were paid or will be paid by, DLA.[6]  Those rates ranged from $1,245–$1,675 per hour for partners, and $1,020–$1,435 per hour for associates and Of Counsel. Hart Decl. at ¶ 11–14.  In assessing the reasonableness of these rates, courts can consider many case-specific factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Laba v. JBO Worldwide Supply Pty Ltd.*, 2023 WL 4985290, at *14 (S.D.N.Y. July 19, 2023), *report and recommendation adopted sub nom. Laba v. JBO Worldwide Supply Pty Ltd.*, 2024 WL

---

[6] Fees incurred before August 2024 have been invoiced to DLA.  Gibson Dunn anticipates invoicing DLA on September 4, 2024 for fees incurred during August 2024.  As used in this declaration, the phrase "or will be" refers only to these August 2024 fees that will soon be invoiced to DLA.  The amount requested in this fee application does not include fees incurred during September 2024 or fees for anticipated time to analyze Plaintiff's opposition to this fee application, draft a reply to Plaintiff's opposition, or prepare for and attend a hearing on this fee application. DLA will submit a supplemental declaration setting forth those fees at the hearing on this fee application.

550252 (S.D.N.Y. Feb. 12, 2024). Although these factors should be taken into consideration when assessing an hourly rate, courts do not need to make a finding on each factor. *Id.* Ultimately, courts have "broad discretion to determine … the reasonable hourly rate," *United States Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016), relying on evidence provided by the parties as well as "its own knowledge of comparable rates charged by lawyers in the district," *Eisenberg*, 2022 WL 1546673, at *2. *See also An v. Despins,* 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (finding hourly rates reasonable given the partner's experience, the prevailing rates charged by similar law firms in the SDNY, and the Sanctions Order's finding that "Plaintiffs filed this lawsuit in bad faith" and engaged in a "harassment campaign against Defendants").

Here, numerous factors—including the rates charged by peer firms in the Southern District of New York; what DLA, a sophisticated client, agreed to pay and has paid Gibson Dunn; the experience and skill of Gibson Dunn's attorneys; and the nature and complexity of the case and magnitude of the damages alleged—all weigh strongly in favor of finding that Gibson Dunn's rates are reasonable.

### A. The Requested Rate Is Gibson Dunn's Customary Rate, Was Agreed To And Paid By DLA, And Is Comparable To Rates Charged By Other Firms In This District

The "touchstone inquiry" when determining a reasonable hourly rate is "what a reasonable, paying client would be willing to pay." *Intl. Techonologies Mktg., Inc. v. Cognyte Tech. Israel Ltd.*, 2022 WL 11280876, at *5 (S.D.N.Y. Oct. 19, 2022) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008)). "[A]sking what a reasonable, paying client would do . . . best approximates the workings of today's market for legal services," *Arbor Hill*, 522 F.3d at 184, because "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of New York,* 934 F.3d 222, 231

11

(2d Cir. 2019) (quoting *Arbor Hill*, 522 F.3d at 190).  Accordingly, the "payment of fees by sophisticated clients [is] solid evidence of their reasonableness in the market."  *Google LLC*, 2023 WL 2344935 at *2 (finding rates "represent[ing] the amount actually paid by a sophisticated client" reasonable); *see also Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2020) (finding "acceptance of the [hourly] rates" by "sophisticated" client was "in itself substantial evidence of their reasonableness"); *United States Bank Nat'l Ass'n.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (finding rates reasonable where agreed to and paid by "a sophisticated consumer of legal services … in an 'arms-length' transaction").

Here, Gibson Dunn's hourly rates are reasonable because they are the customary rates it charges clients in the Southern District of New York and across the country.  Hart Decl. at ¶ 15.  Moreover, they are the rates DLA—an indisputably sophisticated client—agreed to pay before (and after) the Sanctions Order had been issued and when DLA fully expected to pay (and has been paying) those rates.  *Id.* at ¶ 18.  As a premier international law firm with an office in midtown Manhattan and a significant presence and practice in this district, DLA plainly is familiar with the rates charged by top law firms in the Southern District of New York.  And it has been paying those rates throughout the pendency of this litigation, *id.* at ¶ 18, which constitutes "solid evidence of their reasonableness in the market," *Google LLC*, 2023 WL 2344935 at *2; *see Themis Cap. v. Democratic Rep. of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("[T]he fact that [the client] has paid Dechert's bills in full at these rates supplies a form of market confirmation as to their reasonableness.").

Moreover, the customary rates charged by Gibson Dunn in this matter are in line with the rates charged by other firms to litigate high-stakes commercial matters in the Southern District of New York.  Courts assess hourly rates relative to "the hourly rates employed in the district in

which the reviewing court sits." *Intl. Techonologies Mktg.*, 2022 WL 11280876, at *5 (quoting *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017)). These rates represent "the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

A decade ago, courts in this district recognized that "partner billing rates in excess of $1,000 an hour[] are [] not uncommon in the context of complex commercial litigation." *Themis Cap.*, 2014 WL 4379100, at *7; *see United States Bank Nat'l Ass'n*, 2016 WL 6996176, at *8. Those rates have only increased over time, during which the SDNY courts have approved rates in the same range as those charged by Gibson Dunn here.[7] *E.g., ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (finding $1,777.50 per hour for Gibson Dunn partner and $1,138.50 per hour for Gibson Dunn associate reasonable); *An*, 2024 WL 1157281, at *4–5 (finding reasonable hourly rates of $1,990 for partner and $1,440 for counsel); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc*., 2024 WL 1116090, at *6 (S.D.N.Y. Mar. 13, 2024) (finding hourly rate of $1,765 for lead attorneys reasonable "given the rates typically charged for similar services by lawyers of comparable skill, expertise and reputation in this market"); *Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, 2023 WL 8591953, at *6 (S.D.N.Y.

---

[7] Gibson Dunn's requested rates are also consistent with those that recently have been deemed reasonable in jurisdictions outside New York. *See, e.g., Roma Landmark Theaters LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at *5–6 (Del. Ch. Nov. 8, 2021) (Gibson Dunn partner's hourly rates of $1,645 were "in line with those of other experienced litigators appearing in this court, which have been held to be reasonable."); *see also In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *23–25 & n.245 (Del. Ch. Apr. 30, 2021), *affd sub nom. TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022) (another large firm's hourly rates of $1,275 to $1,775 for partners, $1,200 for counsel, and $695 to $1,120 for associates were reasonable "because they are consistent with the rates [the firm] charges other clients" and "in line with the rates of firms that can fairly be considered [its] peers.").

Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (finding partner hourly rate of $1,400 reasonable); *Laba*, 2023 WL 4985290, at *14 (approving partner rate of $1,250 an hour); *Google LLC*, 2023 WL 2344935, at *2 (deeming rates of $1,173, which "represent the amount actually paid by a sophisticated client," to be "within the accepted range of rates within this district.").

Accordingly, because the hourly rates used to calculate the award requested here are and were Gibson Dunn's customary rates, were the rates actually agreed to and paid by sophisticated clients like DLA, and were in line with rates charged and approved in other similar matters, this Court should adopt them as reasonable in calculating a fee award.  Hart Decl. at ¶ 15, 18.

### B.    The Requested Rates Reflect The Complexity, Size, and Sensitivity Of The Matter, And The Caliber Of The Lawyering

Gibson Dunn's hourly rates—and the fact that a sophisticated client like DLA agreed to pay them—are also consistent with the complexity, exposure, and significance of this action, as well as the skill and experience of the Gibson Dunn team engaged to defend it.

Plaintiff's malpractice claim sought to saddle DLA with a *massive*, nine-figure liability, including the alleged loss of a $180 million transaction, a $400 million adverse arbitration award, and unspecified costs and expenses allegedly incurred or caused by the Receiver.  Compl. ¶¶ 4, 85–94, 109–114.  Moreover, Plaintiff and its counsel sought to damage (and have damaged) the reputation of one of DLA's highly regarded partners who has been a member in good standing of the SDNY since 1999 and affiliated with DLA since 2002 (partner since 2006).  Plaintiff's public allegations of professional negligence caused (and continue to cause) substantial reputational harm to both the firm and the individual attorney involved.  And they were premised on a complicated story involving the ongoing *Baliga* Action; discussed supposed misconduct by an allegedly conflicted Receiver; contained allegations concerning failed foreign corporate transactions and a

Hong Kong arbitration and arbitration award; and raised complex legal issues involving Cayman Islands law, New York law, and federal law.

DLA reasonably responded to all of Plaintiff's spurious allegations and factual assertions by engaging capable and experienced law firm defense specialists.  *See City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 1406248, at *4 (S.D.N.Y. May 4, 2022) ("Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to [defend] a case effectively.").

Notably, although Kevin Rosen, lead counsel and a senior Gibson Dunn partner, has devoted more than 140 hours to the defense of this matter, DLA has not included those hours in this fee application.  Hart Decl. at ¶ 6.[8]  Mr. Rosen has been the long-standing Chairman of Gibson Dunn's Law Firm Defense Practice Group, which has a Band One ranking from Chambers and Partners.  *Id.;* Exhibit C.  Over a 36-year career, Mr. Rosen has successfully defended scores of law firms against hundreds of legal malpractice and related claims; he has consistently been recognized as one of the leading attorneys in the legal malpractice and ethics field, and has a rare Star Individuals ranking from Chambers and Partners for his Law Firm Defense expertise.  Hart Decl. at ¶ 6.

Nancy Hart has been practicing law for 20 years.  She serves as Co-Chair of the firm's Law Firm Defense Practice Group.  *Id*. at ¶ 3; Exhibit A.  Ms. Hart has a Band Two ranking from Chambers and Partners for her Law Firm Defense expertise, and formerly served as a member of the Professional Responsibility Committee of the Bar of the City of New York.  Hart Decl. at ¶ 3; Exhibit B.  Ms. Hart regularly presents on issues relating to legal ethics and claims against

---

[8] Defendants have excluded—and do not seek reimbursement for—amounts paid for the work of certain other attorneys, paralegals and support staff.  Hart Decl. at ¶ 6 n.4.

attorneys.  Hart Decl. at ¶ 3.  DLA's defense has been buttressed by three other Gibson Dunn lawyers from top law schools with a collective 20 years of experience in law firm defense matters, securities matters, and other complex commercial litigations relevant to this case.  *Id.* at ¶¶ 12–14.

In sum, the reasonableness of Gibson Dunn's rates is supported by the nature of the action, which involved complex issues, and huge potential exposure and substantial reputational harm, all requiring "skillful work by able and experienced counsel."  *United States Bank Nat'l Ass'n*, 2016 WL 6996176, at *8.

## II.    The Hours Required To Respond To Plaintiff's Reputationally Harmful Allegations And Substantial Alleged Damages Was Reasonable

The other half of the lodestar equation—the number of hours Gibson Dunn was required to spend responding to Plaintiff's frivolous lawsuit—is eminently reasonable.  In making that determination, "[t]he critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Intl. Techonologies Mktg.*, 2022 WL 11280876.  "'[A]ll hours reasonably expended on the litigation' may be awarded, particularly where counsel 'has obtained excellent results.'"  *An*, 2024 WL 1157281, at *2 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

To support its application for fees, Gibson Dunn has submitted materials derived from "contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done."  *McKenzie-Morris v. VP Records Retail Outlet Inc.*, 2023 WL 4422495, at *2 (S.D.N.Y. July 10, 2023); *see* Hart Decl. at ¶ 16; Exhibit D.[9]  Those materials—from which

---

[9] As set forth in the letter motion filed concurrently with this brief, Defendants respectfully request leave to file, and have provisionally filed, a version of Exhibit D in which the narrative descriptions of Gibson Dunn's legal work on this matter have been redacted to protect privileged information and work product, and to file under seal a version of Exhibit D with more limited redactions for Plaintiff and the Court.  If necessary and at the Court's request, Defendants will provide to the Court with a fully unredacted version of Exhibit D for *in camera* inspection.  *See, e.g., Peerless Network, Inc. v. AT&T Corp.*, 2024 WL 20840, *4 (S.D.N.Y. Jan. 2, 2024) ("The Court

Gibson Dunn has eliminated any time billed attributable to the *LKM* Action filed by Plaintiff's counsel (as well as fees for services rendered by Mr. Rosen and certain other attorneys and non-attorney staff)—reflect what was invoiced to (and was paid or will be paid by) DLA. And they establish that the time Gibson Dunn expended in defending DLA in this action was reasonable, particularly given the complexity of Plaintiff's allegations.

The defense of this action was complex, even at the pleading stage. It involved issues of New York substantive law, federal procedural law, and Caymans Island law. It centered (in part) on a massive purported foreign arbitration and award, which Gibson Dunn, after considerable effort, demonstrated was fraudulent. And it required Gibson Dunn to pivot constantly and adapt to Plaintiff's and its counsels' shifting (and false) allegations and legal theories, as well as their refusal to abandon the matter long after being put on notice that Defendants would seek dismissal and sanctions.

Even once they finally did seek to dismiss the action, Plaintiff and its counsel did so only after finally concluding that they could no longer prevail in federal court. So they simply filed an identical, parallel lawsuit in New York State court (the *LKM* Action) in what the District Court specifically held was a clear violation of the District Court's orders. *Baliga* Dkt 365 at 12. After

---

has reviewed in camera the unredacted billing records for AT&T … [which] include sufficient information to permit the Court to assess the reasonableness of the work performed."); *Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*, 2023 WL 7924626, at *1–2 (S.D.N.Y. Nov. 16, 2023) (granting motion to seal and file attorney billing records with redactions after the moving party provided unredacted records for *in camera* review); *PNC Bank, N.A. v Dana Transp., Inc.*, 2023 WL 5702165, at *8 (S.D.N.Y. Sept. 5, 2023) ("In an abundance of caution, and because some of the entries provided more limited information as redacted, the Court requested and reviewed the unredacted portions of the billing records to review *in camera*. This review confirms that the topics for the research and discussions were relevant to this dispute, and that most of the time expended was reasonable"). In doing so, and by making this filing, Defendants do not intend to waive any applicable privilege or protection with respect to the information in Exhibit D, all of which is expressly reserved.

Gibson Dunn removed the *LKM* Action to federal court and obtained its dismissal, Plaintiff switched course again, attempting to revive this matter by "baselessly argu[ing] that it should be permitted to withdraw its voluntary dismissal of this action and amend the Complaint," part of a course of conduct this Court held "can only be viewed as an attempt to harass Defendants and cause reputational harm." ECF 58 at 16.

Gibson Dunn was again compelled to investigate and rebut Plaintiff's "baseless[] argu[ments]." *See, e.g.*, ECF 50. Then, after this Court granted Defendant's motion for Rule 11 Sanctions, ECF 58, Gibson Dunn had to untangle and respond to Plaintiff's 49-page, kitchen-sink objections to this Court's order, objections that included arguments that had not previously been raised in the Rule 11 briefing. *See* ECF 63, 64. And even after the District Court adopted this Court's report and recommendation in full, Plaintiff and its counsel continued to pursue an identical, frivolous claim in state court.

At every stage Plaintiff and its counsel have needlessly but intentionally prolonged and expanded this vexatious action. The requested fee award thus reflects the substantial amount of work required to respond to their sanctionable conduct, including:

1) Conducting factual diligence, including review and analysis of contemporaneous communications between Link Motion and DLA, Link Motion's public filings relating to the allegedly thwarted FL Mobile transaction, and contracts and other documents relating to the FL Mobile transaction and the Hong Kong arbitration that purportedly resulted in a $400 million award, allegedly due to DLA's conduct;

2) Developing DLA's defenses and conducting research under New York and Cayman Islands law in support of an eventual motion to dismiss, as well as correspondence to Plaintiff and the District Court outlining the bases for that motion;

3) Researching and drafting a 16-page submission, and 12-page notice of motion, outlining why core allegations in Plaintiff's Complaint were demonstrably false and why Plaintiff's legal malpractice claim was legally and factually frivolous, and putting Plaintiff on notice that DLA intended to seek Rule 11 sanctions for the filing of the Complaint;

18

4) Drafting a motion to dismiss so that Gibson Dunn could move expeditiously once a pre-motion conference was scheduled by the District Court in light of the extremely damaging nature of the false claims;

5) Monitoring on-going developments in the *Baliga* Action, including in particular briefing and decisions concerning the District Court's authority to appoint the Receiver, which had a direct bearing on Plaintiff's allegations against DLA;

6) Researching and drafting a 25-page brief in support of a motion for Rule 11 sanctions, supported by 15 exhibits, and responding to an opposition filed by Plaintiff that sought to revise the core causation and damages theories in its Complaint;

7) Researching and responding to Plaintiff's improper attempt to dismiss the action with the notice required by Federal Rule 23.1;

8) Researching and drafting responses to Plaintiff's meritless attempts to rescind its dismissal, amend its Complaint, and continue to pursue this derivative action even after Link Motion had asserted the same claim directly;

9) Researching and drafting an opposition to Plaintiff's 49-page objections to Your Honor's report and recommendation that Plaintiff and its counsel be sanctioned, an opposition that, like many of Plaintiff's submissions, was rife with obfuscation and misrepresentation of the law and facts;

10) Drafting a settlement demand and letter to this Court explaining the costs and fees sought and prepared for and engaging in a settlement conference as ordered by the District Court; and

11) Researching and drafting this fee application and supporting declaration as ordered by this Court.

*See* Hart Decl. ¶¶ 5, 7–9.

All these tasks were necessitated by, and reasonably undertaken in response to, Plaintiff's decision to file a meritless lawsuit that invoked foreign transactions, arbitrations, and awards; required analysis of the law of various jurisdictions; was premised on demonstrably false allegations; and required Gibson Dunn to respond and react to Plaintiff's ever-shifting legal theories, endless motions, procedural gamesmanship, and forum-shopping. *See Google LLC v. Starovikov*, 2023 WL 2344935, at *3 (S.D.N.Y. Mar. 3, 2023) ("[I]t was largely the actions of [Plaintiff and its counsel] that dictated the kinds of work and the amount of work undertaken by

19

[Gibson Dunn].”); *see also An,* 2024 WL 1157281, at *2 (“‘[T]he fee application is a necessary part of the award of attorney’s fees,’ and ‘a reasonable amount should be granted for time spent in applying for the award.’”).  Indeed, it was Plaintiff and its counsel that “opted to prolong this litigation—and, by extension, increase [DLA’s] legal bills,” *Google LLC,* 2023 WL 2344935, at *3, with specious legal arguments and shifting narratives well after its claim was exposed as utterly frivolous, *see, e.g.*, ECF 18-2; ECF 49; Sanctions Order at 45–46 (“[Plaintiff and its counsel] certainly had no good-faith basis for continuing to pursue this claim after Defendants pointed out the numerous deficiencies in the claim [in their March 7, 2022 submission].” (quoting ECF 58 at 31)); *see also Intl. Technologies Mktg.*, 2022 WL 11280876, at *10 (“[Defendants] would have accrued far fewer billing hours absent [Plaintiff’s] litigation misconduct.”).

Each of the 988.3 billed hours reflected in DLA’s application, *see* Hart Decl. ¶ 16; Exhibit D, were necessitated by Plaintiff’s misconduct and were reasonably required to respond to the time-intensive issues implicated by Plaintiff’s extensive and ever-shifting legal and factual theories and allegations, as well as their frequent procedural chicanery, in a reputation-damaging lawsuit that Plaintiff and its counsel should never have filed and should have withdrawn long ago.  In order to sufficiently “deter repetition of [Plaintiff and its counsel’s] conduct,” Sanctions Order at 42 (quoting Fed. R. Civ. P. 11(c)(4)), this Court should adopt those hours as reasonable in calculating a sanctions award.

## III.    Gibson Dunn’s Costs Are Reasonable.

DLA is also entitled to $2,531.50 for its reasonable costs incurred in defending this action.[10] “[A]ttorney’s fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.”  *E.g. Carrington v. Graden*, 2020 WL 5758916, at *16

---

[10] This total excludes any costs or expenses incurred by Defendants after the *LKM* Action was filed.

(S.D.N.Y. Sept. 28, 2020) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).  Reasonable costs include, "travel time[,] forensic discovery services …, legal research, electronic discovery software and data hosting fees, printing and scanning costs, and mailing fees." *Id.* at *17 (awarding $46,664.89 in costs).

Here, Gibson Dunn's costs were relatively small.  These costs, which are itemized in the materials submitted with DLA's application, *see* Hart Decl. ¶ 20, Exhibit E, include the following:

- Notary and filings fees.

- Charges for telephonic conferencing services.

- PACER fees and the cost of certain docket monitoring and document retrieval services incurred in monitoring and retrieving filings in the three related litigations—this action, the *LKM* Action, and the *Baliga* Action.

- Printing and duplication costs.

- The cost of certain specialized research services and databases, including Intelligize (SEC filings) and Bloomberg.  Notably, while the vast majority of Gibson Dunn's legal research used Westlaw, the cost of that database/service is **not** included in this application.

- Transportation costs.

- The cost of process servers to serve Plaintiff with Rule 11 papers.

*See* Hart Decl. ¶ 20, Exhibit E.  These costs were reasonably incurred in responding to this litigation and, as such, should be included as part of the award in this matter.

\*       \*       \*

Six months ago, the District Court adopted this Court's finding that Plaintiff and its counsel had violated all three subsections of Rule 11, and "under the[se] circumstances[,] that sanctions in the amount of the costs and attorneys' fees incurred by Defendants in defending this action constitute the minimum amount 'suffic[ing] to deter repetition of the conduct or comparable conduct by others similarly situated.'"  Sanctions Order at 42, 47 (quoting Fed. R. Civ. P. 11(c)(4)).

Since then, Plaintiff and its counsel have continued to pursue this matter and harass Defendants with ongoing harm and reputational injury. Ordering Plaintiff and its counsel (to avoid collection issues in China) to pay the attorneys' fees and costs incurred by Defendants in this action, as set forth herein, is the only way to finally end this lawsuit that was frivolous from its inception and to achieve the deterrence that Rule 11 demands.

## CONCLUSION

For the reasons set forth above, DLA respectfully requests that this Court order China AI and its counsel, jointly and severally, to pay Defendants $1,177,248.00, consisting of the reasonable attorneys' fees and costs DLA incurred in defending this matter.


Dated:    September 3, 2024                    GIBSON, DUNN & CRUTCHER LLP
          New York, New York

                                              /s/ Nancy E. Hart
                                              Nancy E. Hart
                                              Peter M. Wade
                                              Megan E. Meagher
                                              GIBSON, DUNN & CRUTCHER LLP
                                              200 Park Avenue
                                              New York, NY 10166-0193
                                              Telephone: (212) 351-4000
                                              NHart@gibsondunn.com
                                              PWade@gibsondunn.com
                                              mmeagher@gibsondunn.com

                                              Kevin S. Rosen
                                              GIBSON, DUNN & CRUTCHER LLP
                                              333 South Grand Avenue
                                              Los Angeles, CA 90071
                                              Telephone: 213-229-7635
                                              Email: krosen@gibsondunn.com

                                              *Attorneys for Defendants DLA Piper LLP (US) and Caryn G. Schechtman*