UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CHINA AI CAPITAL LIMITED, a British Virgin Islands limited company, derivatively on behalf of LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC.,

                Plaintiff,

  -against-

DLA PIPER LLP (US), a Maryland limited liability partnership, and CARYN G. SCHECHTMAN, a natural person,

                Defendants,

  -and-

LINK MOTION INC., a Cayman Islands limited company f/k/a NQ MOBILE INC.

                Nominal Defendant.
-----------------------------------------------------------x

Case No. 1:21-cv-10911 (VM)

**DECLARATION OF NANCY HART IN SUPPORT OF DEFENDANTS' APPLICATION FOR FEES AND COSTS**

I, NANCY HART, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.    I am an attorney at law duly licensed to practice before the courts of the State of New York and before this Court. I am a litigation partner in the law firm of Gibson, Dunn & Crutcher LLP and counsel for Defendants DLA Piper LLP (US) ("DLA Piper") and Caryn G. Schechtman (collectively "Defendants") in the above-captioned matter. Except as indicated otherwise, I have personal knowledge of the information set forth herein based upon my direct involvement in the matters at issue and my review of the documents discussed.

      2.    I respectfully submit this declaration in support of Defendants' application for fees and costs, pursuant to (a) the District Court's March 6, 2024 order sanctioning Plaintiff China AI

1

Capital Limited ("China AI" or "Plaintiff") and its counsel, Michael Maloney, Rosanne Felicello, and Felicello Law P.C. (collectively "Plaintiff's Counsel"), and directing them "to pay the reasonable costs and fees incurred by [Defendants] in defending this action," ECF 65 (the "Sanctions Order"), and (b) this Court's July 18, 2024 order directing Defendants to submit briefing on the amount of the sanctions award, ECF 74.  As further set forth below, the costs and fees Defendants have incurred in defending this action for which they now seek reimbursement total $1,177,248.00.

3. I am a Co-Chair of Gibson Dunn's Law Firm Defense practice group, which specializes in representing law firms and attorneys in a wide range of matters, including actions alleging professional malpractice.  Attached hereto as **Exhibit A** is a true and correct copy of the Chambers and Partners ("Chambers") ranking of Gibson Dunn's Law Firm Defense practice group.[1]  I formerly served as a member of the Professional Responsibility Committee of the Bar of the City of New York, regularly present on issues relating to legal ethics and claims against attorneys, and have a Band Two ranking from Chambers for my Law Firm Defense expertise.  Attached hereto as **Exhibit B** is a true and correct copy of my Chambers ranking.[2]  Over the course of my more than 20-year career, I and my teams have successfully defended law firms in numerous high-stakes cases.  Given that experience, I am familiar with the significant reputational harm public claims of malpractice inflict on sophisticated firms (like DLA) and their individual partner (like Ms. Schechtman) and the need to refute those claims as quickly and efficiently as possible.

4. In December 2021, Plaintiff publicly accused DLA and one of its litigation partners of professional malpractice stemming from DLA's brief appearance as a courtesy on behalf of

---

[1]  Available at https://chambers.com/department/gibson-dunn-crutcher-llp-law-firm-defense-usa-5:3528:12788:1:3688.

[2]  Available at https://chambers.com/lawyer/nancy-hart-usa-5:26611745.

Link Motion in *Baliga v. Link Motion Inc. et al.*, 18-cv-11642 (S.D.N.Y.) (the "*Baliga* Action"). Plaintiff sought to saddle the firm with massive liability of hundreds of millions of dollars based on an opaque and speculative causation theory involving a foreign corporate transaction, a note issued by a third-party Chinese company, and a Hong Kong arbitration that resulted in what turned out to be a sham award of nearly $400 million—and DLA was not involved in any of it. Plaintiff's action was closely tied to the ongoing *Baliga* Action and the contentious legal battle over the receiver the District Court had appointed in that matter to manage Link Motion and its assets.

5. After DLA engaged Gibson Dunn, we worked quickly to investigate the facts and Plaintiff's allegations and the relevant facts and filings concerning the *Baliga* Action, as well as to begin developing DLA's strategy and potential defenses. That work included collecting and reviewing the communications between DLA and Link Motion referenced in the Complaint, as well as other communications relating to DLA's brief involvement with the *Baliga* Action in December 2018 and January 2019; collecting and reviewing Link Motion's public filings and other documents concerning the FL Mobile transaction that formed the core of Plaintiff's damages allegations; reviewing and monitoring relevant filings and decisions in the *Baliga* Action; conducting legal research into issues governed by New York, Federal, and Cayman Islands law that were critical to developing DLA's case strategy and defenses; investigating the Hong Kong arbitration and obtaining the award allegedly issued in that arbitration; and consulting and coordinating with an expert on Cayman Islands law to prepare a declaration for submission to the District Court.

6. The majority of this initial work was performed by mid-level associates for cost-efficiency, under the supervision of myself and Kevin Rosen, the lead lawyer in this case. Mr. Rosen is a senior partner in Gibson Dunn's Los Angeles office and is the leader of Gibson Dunn's

Law Firm Defense group. Over his 36-year career, Mr. Rosen has successfully defended hundreds of claims against scores of law firms. Mr. Rosen consistently has been recognized as one of the leading attorneys in the legal malpractice and ethics field and has the unique Star Individuals ranking from Chambers for his Law Firm Defense expertise. Attached hereto as **Exhibit C** is a true and correct copy of Mr. Rosen's Chambers ranking.[3] Although Mr. Rosen billed more than 140 hours to this matter, Defendants have elected to exclude those hours from this application entirely.[4]

7. Through our investigation, we determined that a number of core allegations in the Complaint—including allegations concerning the foreign transaction and the Hong Kong arbitration at the heart of Plaintiff's causation and damages theories—were false and that there were multiple grounds to move to dismiss Plaintiff's Complaint and to seek Rule 11 sanctions against Plaintiff and its counsel. Accordingly, we had to prepare the briefing of those motions and analyze developments in the *Baliga* Action that could have impacted (and did impact) Plaintiff's claims.

8. Thereafter, and over the course of more than a year, the Gibson Dunn team undertook significant work drafting several substantial motions and other submissions and responding to Plaintiff's frivolous—and ever-changing—legal arguments, factual allegations, and procedural machinations. This included:

    a. A pre-conference submission to Plaintiff's counsel, setting forth the legal and factual bases for DLA's anticipated motion to dismiss, as required by

---

[3] Available at https://chambers.com/lawyer/kevin-rosen-usa-5:273547.

[4] Defendants have also excluded from this application—and do not seek reimbursement for—fees for certain other attorneys, paralegals and support staff.

4

        the District Court's individual practices. The submission was served on Plaintiff's counsel via ECF on March 7, 2022. ECF 18-1

b.     A Rule 11 submission to Plaintiff detailing the legal and factual bases for the Rule 11 motion DLA intended to file unless Plaintiff withdrew its Complaint, as required by Rule 11's "safe harbor" provisions. The 16-page submission, along with accompanying exhibits and a 12-page Notice of Motion, was served on Plaintiff's counsel on March 8, 2022. ECF 37-14.

c.     A pre-conference submission to the District Court, setting forth the legal and factual bases for DLA's anticipated motion to dismiss, including responses to new standing, causation, and damages theories not articulated in Plaintiff's Complaint, as required by the District Court's individual practices, in light of Plaintiff's refusal to withdraw the action. ECF 18.

d.     A memorandum of law in support of DLA's motion to dismiss, which DLA was on the verge of filing when Plaintiff sought leave to voluntarily dismiss the action without prejudice so that its counsel could refile as a direct action in New York State Court.[5]

e.     Correspondence to the District Court concerning Plaintiff's improper request to dismiss the action without the shareholder notice required by Rule 23.1, including a proposed order governing the approval and distribution of such notice. ECF 25, 27, 32.

f.     A memorandum of law, supported by a declaration, in support of DLA's motion seeking Rule 11 sanctions, which was ultimately filed along with 15 supporting exhibits on September 26, 2022, as well as reply briefing in further support of that motion in response to Plaintiff's opposition. ECF 35–37, 45.

g.     Briefing and correspondence to this Court concerning Plaintiff's attempts to postpone a conference on their proposed shareholder notice, and

---

[5] Plaintiff's counsel then filed a direct action in New York State Court: *Link Motion Inc., v. DLA Piper LLP (US) and Caryn G. Schechtman*, Case No. 653322/2022 (N.Y. Sup. Ct.) (the "*LKM* Action"). Gibson Dunn worked to remove the *LKM* Action to federal court and successfully obtained an order dismissing that action dismissed as time-barred. The Second Circuit vacated the judgment of dismissal without considering the timeliness issue because it concluded that the District Court lacked federal subject matter jurisdiction. Although the *LKM* Action was also filed by Michael Maloney and Rosanne Felicello and the complaint was nearly identical to the Complaint in this action, Defendants are not seeking fees in this application for the time spent defending the *LKM* Action at this time. DLA reserves all rights.

5

                    suggestion that it could rescind its prior dismissal and amend the Complaint. ECF 50.

      h.      An opposition to Plaintiff's voluminous objections to You Honor's Report and Recommendation, stating that Plaintiff and its counsel be sanctioned and that DLA be awarded the costs and fees it incurred in defending this action. ECF 64.

      i.      Pursuant to this Court's Order, a settlement demand and letter to this Court explaining the costs and fees sought, and a fee application and this supporting declaration.

9. Gibson Dunn also prepared for and attended a pre-motion conference on the motion to dismiss, a conference to discuss Plaintiff's attempt to withdraw and the issue of shareholder notice, and a settlement conference, all as ordered by the District Court.

10. The core Gibson Dunn team responsible for this matter has been comprised primarily of Mr. Rosen, myself, Of Counsel Peter Wade, and associate Megan Meagher. Another associate, Alisha Siqueira, assisted with legal research, fact investigation, and the development of DLA's defenses; she also drafted portions of DLA's Rule 11 submission and motion to dismiss.

11. I graduated from Boston College Law School in 2003, and I am admitted to practice in the State of New York and before the United States Court of Appeals for the First, Second, Sixth, and Eleventh Circuits, as well as the District Courts for the Southern and Eastern Districts of New York. As noted above, I specialize in representing law firms and attorneys in a wide range of matters, including actions alleging professional malpractice. My hourly billing rate was $1,245 in 2021, $1,350 in 2022, $1,535 in 2023, and $1,675 in 2024. I billed 203.4 hours to this matter for which Defendants seek reimbursement.

12. Mr. Wade started on the matter as a senior associate. He is now an Of Counsel at Gibson Dunn. Mr. Wade is a member of the firm's Law Firm Defense and Securities Litigation Practice Groups. He focuses on complex commercial and business litigation, including law firm defense matters. Mr. Wade has had significant experience representing clients in a wide range of

6

industries in state and federal courts at both the trial and appellate levels, as well as arbitrations. Mr. Wade graduated from Columbia Law School in 2012 and is admitted to practice law in the State of New York and before the U.S. District Courts for the Southern and Eastern Districts of New York and the U.S. Court of Appeals for the First Circuit. Mr. Wade's hourly billing rate was $1,115 in 2022, $1,315 in 2023, and $1,435 in 2024. He did not work on the matter in 2021. Mr. Wade billed 318.2 hours to this matter for which Defendants seek reimbursement.

13. Ms. Meagher is a senior associate in Gibson Dunn's New York office. She is a member of the firm's Litigation, Law Firm Defense, and White Collar Defense and Investigations Practice Groups. Her experience includes representing clients in complex commercial litigation and government investigations involving the U.S. Department of Justice and other enforcement agencies, as well as advising clients on commercial real estate disputes. Ms. Meagher graduated from Georgetown University Law School in 2018 and is admitted to practice in the State of New York and before the U.S. District Court for the Southern District of New York. Ms. Meagher's hourly billing rate was $1,020 in 2022, $1,155 in 2023, and $1,260 in 2024. She did not work on the matter in 2021. Ms. Meagher billed 348.5 hours to this matter for which Defendants seek reimbursement.

14. Ms. Siqueira was a mid-level associate in Gibson Dunn's Litigation Practice Group in New York office when she worked on this matter. She graduated from Harvard Law School in 2018 and is admitted to practice in the State of New York. Ms. Siqueira's hourly billing rate was $1,020 in 2022. She did not work on the matter in 2023 or 2024, and Defendants are not seeking reimbursement for any of the fees billed by her in 2021. Ms. Siqueira billed 118.2 hours to this matter for which Defendants seek reimbursement.

15. I have practiced law for 20 years, and I am familiar with how sophisticated clients retain and manage outside counsel. DLA is a sophisticated buyer of legal services. Gibson Dunn's rates reflect the high level of experience and expertise of counsel at Gibson Dunn. These rates reflect actual market rates and are the same or similar to the customary billing rates that Gibson Dunn regularly charged its fee-paying clients for comparable work during the relevant time periods.

16. In total, Gibson Dunn attorneys have spent 988.30 hours defending this matter. This time is set forth in the spreadsheet attached hereto as **Exhibit D** (the "Billing Records") that sets forth time entries reflecting the contemporaneous billing records of the aforementioned Gibson Dunn attorneys, which were maintained and used by Gibson Dunn in the ordinary course of business to generate the invoices that were submitted to DLA for legal services on this matter. Each time entry in the Billing Records sets forth (1) the date of legal services; (2) attorney name; (3) the time billed, measured in tenth-of-an-hour intervals; (4) a description of the task or tasks performed[6]; (5) the fees incurred; and (6) the date the invoice that included the services was (or

---

[6] As set forth in the letter motion filed concurrently with this declaration, Defendants respectfully request leave to file, and have provisionally filed, a version of Exhibit D in which the contemporaneous narrative descriptions of Gibson Dunn's legal work on this matter have been redacted to protect privileged information and work product, and to file under seal a version of Exhibit D with more limited redactions for Plaintiff and the Court. If necessary and at the Court's request, Defendants will provide to the Court a fully unredacted version of Exhibit D for *in camera* inspection. *See, e.g.*, *Peerless Network, Inc. v. AT&T Corp.*, 2024 WL 20840, *4 (S.D.N.Y. Jan. 2, 2024) ("The Court has reviewed *in camera* the unredacted billing records for AT&T … [which] include sufficient information to permit the Court to assess the reasonableness of the work performed."); *Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*, 2023 WL 7924626, at *1–2 (S.D.N.Y. Nov. 16, 2023) (granting motion to seal and file attorney billing records with redactions after the moving party provided unredacted records for *in camera* review); *PNC Bank, N.A. v. Dana Transp., Inc.*, 2023 WL 5702165, at *8 (S.D.N.Y. Sept. 5, 2023) ("In an abundance of caution, and because some of the entries provided more limited information as redacted, the Court requested and reviewed the unredacted portions of the billing records to review *in camera*. This review confirms that the topics for the research and discussions were relevant to this dispute, and that most of the time expended was reasonable"). In doing so, and by making

will be)[7] issued to DLA. Each time entry in the Billing Records was (or will be) included in Gibson Dunn's invoices to DLA.

17. This fee application does not seek to recover for any time that Gibson Dunn has recorded and billed to DLA in connection with the related direct action filed by Plaintiff's counsel on behalf of Link Motion directly, *Link Motion Inc. v. DLA Piper LLP (US) and Caryn Schechtman*, No. 22-cv-8313 (S.D.N.Y.). Accordingly, any time billed and amounts paid by DLA in connection with that matter have been excluded from this application.

18. Gibson Dunn has invoiced (or will invoice) DLA for all fees associated with the tasks described in the Billing Records. DLA agreed to pay Gibson Dunn's rates at the outset of the engagement and has paid those fees and confirmed that it will pay the remainder without hold back or objection. The total amount of attorneys' fees incurred by DLA for this matter to date that DLA seeks to recover is $1,174,716.50.

19. In my opinion and based on my experience, all of the work that Gibson Dunn performed in responding to this action was reasonably necessary to respond to (and defend against) the allegations in the Complaint. All of that work was undertaken after consultation with, and at the direction of, DLA, which had every interest in controlling Gibson Dunn's legal spend in this matter.

---

this filing, Defendants do not intend to waive any applicable privilege or protection with respect to the information in Exhibit D, all of which is expressly reserved.

[7] Fees incurred before August 2024 have been invoiced to DLA. Gibson Dunn anticipates invoicing DLA on September 4, 2024 for fees incurred during August 2024. As used in this declaration, the phrase "or will be" refers only to these August 2024 fees that will soon be invoiced to DLA. The amount requested in this fee application does not include fees incurred during September 2024 or fees for anticipated time to analyze Plaintiff's opposition to this fee application, draft a reply to Plaintiff's opposition, or prepare for and attend a hearing on this fee application. DLA will submit a supplemental declaration setting forth those fees at the hearing on this fee application.

20.     In addition to attorney's fees, and pursuant to the Sanctions Order, DLA also seeks the reasonable costs and expenses incurred in connection with this matter.  Attached hereto as **Exhibit E** is a chart itemizing those costs, derived from the invoices submitted to and paid by DLA, which total $2,531.50.  As indicated in the descriptions in Exhibit E, the costs incurred consist primarily of conference call charges, printing and copying costs, notary and filing fees, costs incurred to serve documents on Plaintiff or its counsel, charges for using PACER and other document retrieval and docket monitoring services, and transportation costs.  Gibson Dunn has not passed through to DLA the costs associated with Westlaw, which are substantial, and which was used to conduct the vast bulk of Gibson Dunn's legal research in this matter.  As a result, the associated cost of using that database is not included in this application.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 3, 2024                              */s/ Nancy Hart*
New York, NY                                                    Nancy E. Hart