USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/17/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHINA AI CAPITAL LIMITED,

              Plaintiff,

- against -

DLA PIPER LLP (US), and CARYN SCHECHTMAN,

              Defendants,

- and -

LINK MOTION INC. f/k/a NQ MOBILE INC.,

              Nominal Defendant.

**21 CV 10911(VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On March 6, 2024, this Court adopted the amended Recommendation and Report (the "Sanctions R&R") that Magistrate Judge Valerie Figueredo ("Judge Figueredo") issued on July 28, 2023, recommending that the Court grant a motion for sanctions under Federal Rule of Civil Procedure 11 ("Rule 11"), which defendants DLA Piper LLP (US) and Caryn Schechtman (collectively "DLA Piper") filed against plaintiff China AI Capital Limited and plaintiff's counsel, Michael Maloney and Rosanne Felicello of Felicello Law P.C. (collectively "China AI"). (See Dkt. Nos. 58, 65.)

Pending before the Court are specific objections (see "Objections" or "Objs.," Dkt. No. 102) filed by China AI to

1

Judge Figueredo's subsequent Report and Recommendation (see the "R&R," Dkt. No. 99) issued on May 22, 2025, granting DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs pursuant to Rule 11. For the reasons set forth below, China AI's Objections are hereby **OVERRULED**. The Court adopts the recommendations set forth in the R&R in their entirety.

## I. BACKGROUND

The Court presumes familiarity with the underlying facts of this case from prior R&Rs and orders. (See Dkt. Nos. 58, 65.) Hence, the Court provides only a brief recitation of the procedural history. On September 3, 2024, after the Court adopted Judge Figueredo's Sanctions R&R and ordered China AI to pay the reasonable attorneys' fees and costs incurred by DLA Piper in defending the action (see Dkt. No. 65), DLA Piper filed a memorandum of law in support of their application, seeking an award of $1,174,716.50 in attorneys' fees and $2,531.50 in costs. (See Dkt. No. 78.) DLA Piper also submitted a sworn declaration, which included contemporaneous billing records through August 2024. (See Dkt. Nos. 79-80.) On October 22, 2024, DLA Piper filed a supplemental declaration, which detailed the additional attorneys' fees and costs DLA Piper incurred between September 1, 2024, and October 18, 2024 – adding $50,399 in attorneys' fees to the

2

total. (See Dkt. No. 91.) In sum, DLA Piper sought $1,225,115.50 in attorneys' fees and $2,531.50 in costs.

After briefing by the parties, Judge Figueredo issued her second R&R on May 22, 2025, recommending that the Court award DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs. (See R&R at 6, 29.) Judge Figueredo determined that the award "is reasonable and will serve as an appropriate deterrence for the conduct engaged in by [China AI]," which violated Rule 11(b)(2) and Rule 11(b)(3). (Id. at 6.)

On June 12, 2025, China AI filed Objections to the R&R, specifically opposing: (1) Judge Figueredo's determination that shareholder notice could not be waived; (2) the recommendation to award fees for work on the Rule 11 motion; (3) reliance on matters outside the scope of the Rule 11 notice in determination of a fee; (4) the hourly rates accepted in the R&R; and (5) the overall amount of the recommended award. (See Objections.) On July 3, 2025, DLA Piper submitted a reply. (See "Reply," Dkt. No. 103.) On July 7, 2025, China AI submitted an additional response. (See Dkt. No. 105.)

## II.  **STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1) and Rule 72, the Court may designate a magistrate judge to submit recommendations for

3

the disposition of certain motions. A party may object in writing to the magistrate judge's recommendations, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3).

"However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." Brown v. Colvin, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). "[A]n error is clear when the reviewing court is left with a definite and firm conviction that a mistake has been committed." Levinson v. U.S. Fed. Bureau of Prisons, 594 F. Supp. 3d 559, 563 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). Unless otherwise specified, the Court has reviewed the R&R de novo with respect to each of China AI's specific Objections.

### III. DISCUSSION

Upon de novo review, the Court overrules each of China AI's Objections and adopts Judge Figueredo's R&R in its entirety substantially for the reasons set forth in the R&R – thus awarding DLA Piper $634,525.39 in attorneys' fees and $2,331.50 in costs.

A.   SHAREHOLDER NOTICE

In the R&R, Judge Figueredo rejected China AI's argument that "had [DLA Piper] not opposed the voluntary dismissal, no further action would have been necessary in this case." (R&R at 23.) Instead, Judge Figueredo determined that because "Rule 23.1(c) requires that notice of a voluntary dismissal of a derivative action be given to other shareholders," and China AI had not given notice, DLA Piper's opposition to the purported dismissal "did not cause any unnecessary litigation." (Id.) China AI objects to this determination on the basis that Judge Figueredo failed to consider that a district court can waive the notice to shareholders that is ordinarily required under Rule 23.1(c). (See Objs. at 7-9.)

However, on September 12, 2022, China AI filed a letter along with a proposed order for dismissal for the Court's review and consideration. China AI argued that "[DLA Piper] [was] wrong that notice to other shareholders is always required" and stated that the "Court must consider the policy implications of Rule 23.1." (Dkt. No. 26.) The Court declined to sign China AI's proposed order, instead directing China AI to "file with the Court a proposed form of notice of its intent to voluntarily dismiss the action to be provided to all other shareholders . . . as well as a proposal for how

5

such notice shall be distributed that meets the requirements of [Rule] 23.1." (Dkt. No. 28.) Given that the Court explicitly required China AI to provide shareholder notice, it is not persuaded by China AI's attempt to argue, once again, that a district court can waive the notice requirement.

China AI states, correctly, that it "timely filed its revised proposed notice on September 18, 2022." (Objs. at 8; Dkt. No. 30.) Because of this filing, China AI contends that it was therefore "not the impediment to dismissal" and was not responsible for the litigation that occurred after that date. (Id. at 9.) But that argument, too, has already been rejected by this Court. In a decision and order issued on March 6, 2024, which adopted in its entirety Judge Figueredo's Sanctions R&R, this Court found China AI's argument regarding its attempt to voluntarily dismiss the Complaint unpersuasive. (See Dkt. No. 65 at 41.) The Court noted that on March 8, 2022, DLA Piper served papers complying with the Rule 11 safe harbor and China AI did not respond - deciding instead, in a letter filed March 14, 2022, to oppose Defendants' proposed motion to dismiss. (See id.) This Court found that although China AI filed a proposed notice of voluntary dismissal on September 6, 2022, that filing was quickly followed by an attempt by China AI's counsel to bring

6

a direct legal malpractice action in state court on behalf of Link Motion against DLA Piper, and after that direct malpractice action was removed to federal court and dismissed with prejudice, China AI in the instant suit tried to withdraw its proposed voluntary dismissal. (See id.)

Here, China AI argues that the primary relief requested was not a withdrawal of its proposed voluntary dismissal but a stay of the proceedings, and that "the subsequent request for a stay does not change the fact that [China AI] requested dismissal on September 6, 2022." (Objs. at 9.) The Court finds that argument unavailing. Whether China AI sought a stay or the withdrawal of its voluntary dismissal, this Court has already found that the circumstances were "altogether different from a case where a party's voluntary dismissal of a case is actually effective and puts a true end to frivolous litigation." (Dkt. No. 65 at 41.) Therefore, China AI's request for dismissal on September 6, 2022, did not render any litigation that occurred after that date unnecessary.

Finally, the Court is not persuaded by China AI's argument that the Court waived the shareholder notice requirement by dismissing China AI's derivative claim without notice to shareholders. The Court dismissed China AI's complaint in that action *with prejudice* and granted

7

sanctions, in part, because of China AI's false allegations. (See id. at 21, 47.) Those events have no bearing on whether the Court waived the shareholder notice requirement for voluntary dismissal here. Therefore, the Court overrules this specific Objection.

    B.    RULE 11 MOTION

Next, China AI objects to Judge Figueredo's recommendation to award attorneys' fees for work on the Rule 11 motion. It argues that the "record here shows that [DLA Piper] delayed in filing their Rule 11 motion until *after* objecting to [China AI's] earlier filed voluntarily dismissal." (Objs. at 10.) The Court previously addressed and rejected this argument, finding that "China AI provide[d] no reason for failing to raise this argument before Judge Figueredo" in its opposition to the Rule 11 motion. (Dkt. No. 65.) Thus, applying the clearly erroneous standard, the Court is not convinced that Judge Figueredo erred by awarding attorneys' fees for work on the Rule 11 motion. See Levinson, 594 F. Supp. 3d at 563.

In fact, as China AI acknowledges, Rule 11 "allows, but does not require, the district court to award a prevailing party the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion." (Objs. at 10);

Schottenstein v. Schottenstein, 230 F.R.D. 355, 362 (S.D.N.Y. 2005). As Judge Figueredo explained, this Court already determined that China AI's "decision to continue pursuing this legal-malpractice claim against [DLA Piper] [was] objectively unreasonable" and "necessitat[ed] the filing of the Rule 11 motion." (R&R at 24.)

Numerous district courts have relied on exercise of judicial discretion to award fees and costs. See, e.g., Ilkowitz v. Durand, No. 17-CV-773, 2020 WL 2836264, at *6 (S.D.N.Y. May 31, 2020); Bunnell v. Haghighi, 183 F. Supp. 3d 364, 375 (E.D.N.Y. 2016); LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, No. 12-CV-7311, 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016). Here, the Court agrees with Judge Figueredo that "it would defeat the purpose of Rule 11 if a party successfully established a violation of the rule, but was not awarded the fees and costs it incurred in being forced to file such a motion." (R&R at 25.) Accordingly, the Court overrules this specific Objection.

    C.    EVENTS AFTER SERVICE OF THE RULE 11 NOTICE

China AI also objects to the R&R on the contention that Judge Figueredo improperly relied on matters outside the scope of the Rule 11 notice in determining the total award of fees and costs to recommend. (See Objs. at 11.) In the R&R,

Judge Figueredo references two actions taken by China AI further supporting the sanctions award: (1) China AI filed a malpractice suit against DLA Piper in New York Supreme Court, relying on the same allegations raised in this case; and (2) after receiving notice of DLA Piper's intent to pursue Rule 11 sanctions, China AI "persisted with this suit, multiplying the proceedings by seeking a stay to withdraw the request for voluntary dismissal and amend the complaint." (R&R at 25-26.)

China AI relies on Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012), for the proposition that "only conduct explicitly referred to in the instrument providing notice is sanctionable." (Objs. at 11-12.) It also cites Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 104 (2017), to argue that a sanctions "order is limited to the fees the innocent party incurred solely because of the misconduct." (Id.) China AI contends that because neither action stated above was identified in the Rule 11 notice, Judge Figueredo should not have considered them as part of the analysis. (See id.) Contrary to China AI's argument, however, Judge Figueredo merely relied on the stated actions in support of her determination that China AI's sanctionable conduct – filing a frivolous complaint containing false allegations – warrants

10

a "sizeable award" "to deter the conduct that occurred." (R&R at 25-26.) Judge Figueredo refers to China AI's subsequent actions after the Rule 11 notice as examples of how China AI "continued to engage" in sanctionable conduct "despite the sanction decision" the Court previously issued. (Id.) Judge Figueredo was not determining what conduct was sanctionable but instead bolstering her findings that a large award was needed to deter the conduct that this Court previously found sanctionable. Therefore, the Court rejects China AI's argument and overrules this Objection.

D.   HOURLY RATES

China AI next objects to the hourly rates and the time expended calculations set forth in the R&R. (See Objs. at 13-15.) However, the Court finds that the figures Judge Figueredo used to arrive at the total sanctions award, including the hourly rates recommended for each attorney who performed work on the case – Nancy Hart, Peter Wade, Megan Meagher, and Alisha Siqueira – are reasonable and well-supported by the case law. (See R&R at 6-14.)

First, Judge Figueredo notes that while "Ms. Hart's average hourly rate of $1,408.57 is substantial, '[i]n this district, partner billing rates in excess of $1,000 are not uncommon in the context of complex commercial litigation.'"

11

(Id. at 8.) Judge Figueredo then proceeds to cite numerous recent examples of case law supporting this proposition. (Id.) In addition to comparable rates adopted in this District, the Court also finds that the circumstances Judge Figueredo identifies – for example, "the 'high bar' that must be satisfied before a court will impose sanctions under Rule 11" and the context of a "malpractice claim [seeking] over $580 million in alleged damages and threaten[ing] significant reputational harm" – are sufficiently compelling and in line with the relevant considerations. See, e.g., ATX Debt Fund 1, LLC v. Paul, No. 19-CV-8540, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) ("[D]istrict courts should consider factors such as the time and labor required, the level of skill required to perform the legal service properly, the attorney's customary hourly rate, the amount involved in the case, and the results obtained.").

Second, as to associates Wade and Meagher, Judge Figueredo similarly details the reasonableness of the hourly rates she used to calculate the total sanctions award. (See R&R at 11-12.) The Court agrees with Judge Figueredo's reasoning. Judge Figueredo rejected an hourly rate above $1,000 – which exceeds the usual rate for senior or mid-level associates in this District – and determined that $875 for

12

Ward and $700 for Meagher, while still "at the high end," "appropriately account for the complexities of the instant matter, the hourly rate a sophisticated client paid for the work performed, and the success achieved" for DLA Piper. (Id. at 12.) This finding is well-supported by other case law in this District, on which Judge Figueredo relies. See, e.g., An v. Despins, No. 22-CV-10062, 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024) (finding that a $796 to $895 hourly rate was reasonable); Wells Fargo Trust Co. v. Fast Colombia S.A.S., No. 23-CV-603, 2023 WL 8591953, at *8 (S.D.N.Y. Oct. 16, 2023), adopted by, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (finding that an $800 hourly rate was reasonable).

Third, the Court agrees that, as to associate Siqueira, the requested hourly rate of $1,020 "exceeds the rates typically awarded to mid-level associates" and that the $550 rate Judge Figueredo determined instead is in accord with the case law. (R&R at 13-14); United States ex rel. Yasti v. Nagan Constr., No. 17-CV-7163, 2021 WL 1063437, at *4 (S.D.N.Y. Mar. 18, 2021) (explaining that courts have found an hourly rate of $541 for a fourth-year associate reasonable).

As to the total number of hours, the Court declines to adopt China AI's assertion that it was not "reasonable and necessary for [DLA Piper] to expend significant time and

13

effort to defend this case" as a basis to further reduce the claimed hours. (Objs. at 13.) Here, Judge Figueredo has already recommended and applied an across-the-board thirty-percent reduction in hours, which the Court finds reasonable. (See R&R at 26.) This reduction is supported by sufficient case law – cited in the R&R - in which courts addressed similar arguments to those China AI asserts here. See, e.g., TADCO Constr. Corp. v. Dormitory Auth. of N.Y., No. 08-CV-0073, 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 21, 2016) (applying a fifteen-percent reduction for block billing); Dimopoulou v. First Unum Life Ins. Co., No. 13-CV-07159, 2021 WL 406741, at *4-5 (S.D.N.Y. Feb. 5, 2021) (applying a twenty-percent reduction because tasks such as researching and conducting cites "could have been delegated to junior attorneys"); Wentworth Grp. Inc. v. Evanston Ins. Co., No. 20-CV-6711, 2022 WL 336456, at *7 (S.D.N.Y. Feb. 4, 2022), adopted by, 2022 WL 909794 (S.D.N.Y. Mar. 29, 2022) (applying a twenty-percent reduction where senior attorney "billed time for work that could have been performed by a more junior attorney").

Separately, China AI asserts that Judge Figueredo mistakenly defined "reasonable hourly rate" as the "rate a paying client would be willing to pay" and relied incorrectly

14

on Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008) – which China AI contends was decided under the prevailing party provision of the Voting Rights Act of 1965 and not Rule 11. (Objs. at 13-14.) The Court disagrees and is instead persuaded by case law, also noted by DLA Piper, which applies the same language to a Rule 11 sanctions motion. For example, in Conway v. Conway, the court quotes Arbor Hill in the context of a Rule 11 motion and explains that "the reasonable hourly rate is the rate a paying client would be willing to pay." No. 17-CV-8245, 2019 WL 1331624, at *11 (S.D.N.Y. Mar. 25, 2019).

 Finally, China AI objects to Judge Figueredo's assertion in the R&R that "over $580 million" in damages were alleged in the complaint – contending instead that the correct figure was $180 million – and that, therefore, her reliance on the "magnitude" of damages to justify the hourly rates was unsound. (Objs. at 13-14.) DLA Piper argues that China AI fails to account for an arbitration award approximately equivalent to $396,000,000, which is also alleged in the complaint. (Reply at 19.) Here, the Court finds any discrepancy meaningless. Judge Figueredo relied on the "magnitude of the damages sought" as just one reason, among

many, to support her hourly rate determination. (R&R at 10.) And in either circumstance, DLA Piper still required "the assistance of attorneys" with the requisite "skill and expertise" to defend against a nine-figure case. (R&R at 10.) Accordingly, the Court overrules China AI's Objections as to the hourly rates and time expended.

### E.   TOTAL AWARD

Finally, China AI objects to the overall amount of the sanctions award recommended in the R&R – arguing that "a fee of $634,525.39 is unreasonable in light of the procedural history of the case" because the case "never proceeded beyond the pleading stage." (Objs. at 15-16.) The Court is unpersuaded by the authority China AI cites, which amounts to nothing more than a list compiling disparate examples of cases with similar and dissimilar procedural postures and their corresponding sanctions. (Id. at 15-16.) China AI makes no attempt to explain how any of the factual circumstances present in the purportedly analogous cases – beyond the stage of the litigation - are in any way similar to the circumstances in the case at hand.

China AI further asserts that "[t]he R&R also improperly disregarded the financial information submitted by counsel regarding its inability to pay the award." (Id. at 16.)

16

However, Judge Figueredo addressed this issue, explaining that "[c]ourts in this District have declined to reduce a sanction award based on an inability to pay where the entity has not provided adequate documentation to support the claimed financial duress" and that, here, China AI's "counsel did not submit documentation of the firm's finances, such as yearly revenues and how those revenues are calculated, beyond a single statement that the firm 'generated average annual revenue of approximately $1,150,000.'" (R&R at 26 n.9.)

Here, the Court finds that Judge Figueredo's determination is adequately supported by the cited case law. See, e.g., Midamines SPRL Ltd. v. KBC Bank NV, No. 12-CV-8089, 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (declining to reduce a fee award in part because plaintiff "never provided a financial declaration or any other documents reflecting his asserted lack of income"); An, 2024 WL 1157281, at *5 (declining to reduce sanctions award in part because of plaintiffs' "lack of financial documentation" combined with "Counsels' repeated filing of baseless lawsuits").

Nevertheless, China AI contends that Judge Figueredo "summarily declined" to consider the average annual revenue statement and "should have afforded" China AI's counsel "the

17

opportunity to make an *in camera* submission" - just as it afforded China AI. (Objs. at 17.) The Court, however, is unconvinced by that argument. First, contrary to China AI's assertion that "the ability to pay *should* be considered in determining any award" (see id. (emphasis added)), courts have consistently held that the ability to pay is a consideration within the court's discretion. See, e.g., Oliveri v. Thompson, 803 F.2d 1265, 1281 (2d Cir. 1986) (finding that it is within a district court's "discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay"); Star Mark, 682 F.3d at 179 (same).

Second, counsel here does not assert that China AI – jointly and severally liable for sanctions – cannot pay. (Reply at 23; Dkt. No. 65 at 47 (ordering that "China AI and its counsel will be jointly and severally sanctioned in the amount of the reasonable costs and attorneys' fees").)

Accordingly, the Court finds no reason to sustain China AI's Objection to the total amount of attorneys' fees awarded.

### IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Objections (Dkt. No. 102) raised by plaintiff China AI Capital Limited and plaintiff's counsel,

Michael Maloney and Rosanne Felicello of Felicello Law P.C. (collectively "China AI") to the Report and Recommendation ("R&R," Dkt. No. 99) issued on May 22, 2025, by Magistrate Judge Valerie Figueredo ("Judge Figueredo") in this action, upon the Court's de novo review, are hereby **OVERRULED** with prejudice. The Court adopts the recommendations set forth in the R&R in their entirety substantially for the reasons stated by Judge Figueredo in the R&R; and it is further

**ORDERED** that judgment be entered by the Clerk of Court and an award be made in the amount of $634,525.39 in attorneys' fees and $2,331.50 in costs.

**SO ORDERED.**

Dated:   17 November 2025
         New York, New York

_____
Victor Marrero
U.S.D.J.